**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Helen Mosothoane (SBN 254511)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone:   (949) 381-5900
Facsimile:    (949) 271-4040
Email:          bpaino@mcglinchey.com
                    hmosothoane@mcglinchey.com

Attorneys for *Defendant* PNC BANK, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC. a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| STEPHEN AND MELINDA DREHER,<br><br>Plaintiffs,<br><br>v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC. a Pennsylvania Corporation, successor by merger to/with NATIONAL CITY BANK; DREAMBUILDER INVESTMENTS, LLC, A New York Limited Liability Company; and DOES 1-50,<br><br>Defendants. | Case No.:  2:18-cv-07827-MWF-FFM<br><br>Hon. District Judge Michael W. Fitzgerald<br><br>**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing**:<br>Date: December 16, 2019<br>Time: 10:00 a.m.<br>Ctrm: 5A<br><br>Filed concurrently with:<br>Statement of Uncontroverted Facts<br>Request for Judicial Notice<br>Declaration of PNC Bank, N.A.<br>Declaration of Helen Mosothoane<br>[Proposed] Judgment<br><br>Action Filed: September 7, 2018<br>Trial Date: March 2, 2020 |

/././

/././

/././

**TO ALL INTERESTED PARTIES**:

**PLEASE TAKE NOTICE** that on December 16, 2019, at 8:30 a.m.**,** or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald in Courtroom 5A of the above-entitled court, located at 350 West First Street, Los Angeles, California, 90012, *defendant* PNC BANK, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK ("PNC") will, and hereby does, move this Court, pursuant to Federal Rule of Civil Procedure 56, for entry of summary judgment against *plaintiffs* STEPHEN and MELINDA DREHER, ("Plaintiffs") or, in the alternative, partial summary judgment as to the following claims:

Claim No. 1: Plaintiffs' claim for cancellation of lien, which fails because: (i) cancellation of a lien or instrument is not an independent claim, (ii) the lien was expunged pursuant to Court order, rendering the claim moot, (iii) PNC has had no interest in the lien since 2010, and (iv) Plaintiffs lack standing to challenge the subject assignment of Deed of Trust.

Claim No. 2: Plaintiffs' claim for slander of title, which fails because (i) PNC did not record or publish the recorded assignment, (ii) Green Tree was not PNC's agent and PNC did not authorize Green Tree to file the proof of claim at issue; (iii) the filing of the proof of claim did not cloud title to Plaintiffs' property; and (iv) the claim is time-barred.

Claim No. 3: Plaintiffs' claim for common law fraud, which fails because (i) PNC did not make any misrepresentations regarding the assignment of Deed of Trust or lien, (ii) PNC owed no duty to notify Plaintiffs of the assignment of Deed of Trust; (iii) PNC did not make any false representations in order to obtain payments from Plaintiffs during the pendency of Plaintiffs' bankruptcy case; and (iv) the claim is time-barred.

<u>Claim No. 5</u>: Plaintiffs' claim for declaratory relief, which fails because (i) declaratory relief is not an independent cause of action; and (ii) the expungement of the lien ordered by this Court renders Plaintiffs' request moot.

As set forth more fully in the accompanying Memorandum of Points and Authorities (the "<u>Memorandum</u>"), this motion is made on the ground that there is no genuine issue as to any material fact in this action and that PNC is entitled to judgment as a matter of law.

This motion is based on the attached Memorandum, the Statement of Uncontroverted Facts, Request for Judicial Notice, and declarations filed concurrently herewith, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented by the parties at the hearing.

DATED:  November 18, 2019       **McGLINCHEY STAFFORD**

By: _/s/  Helen Mosothoane_
        BRIAN A. PAINO
        HELEN MOSOTHOANE
Attorneys for *Defendant* **PNC BANK, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK**

## <u>LOCAL CIVIL RULE 7-3 CERTIFICATION</u>

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place in person at the settlement conference on October 30, 2019, and subsequently via telephone on November 8, 2019, and in writing on November 12, 2019. As of the date of this filing, the parties have not reached a resolution which eliminates the necessity for this motion.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ......................................................................... 2
    A.  THE LOAN ...................................................................................... 2

    B.  THE SALE OF THE LOAN ............................................................ 2

    C.  PLAINTIFFS' BANKRUPTCY FILING ........................................ 4

    D.  GREEN TREE'S PROOF OF CLAIM ............................................ 4

    E.  PLAINTIFFS' BANKRUPTCY PLAN ........................................... 5

    F.  PLAINTIFFS' PAYMENTS AND SERVICING OF THE LOAN
        DURING BANKRUPTCY ............................................................. 5

    G.  DBI'S RECORDATION OF THE ASSIGNMENT .......................... 6

    H.  THE LAWSUIT ............................................................................... 6

III. LEGAL AUTHORITY ............................................................................. 6

IV. ARGUMENT ............................................................................................ 7
    A.  PNC IS ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' CLAIM FOR CANCELATION OF LIEN ..................... 7

        1.  Cancellation of Instrument is Not a Stand-alone Claim .............. 8

        2.  The Court's Expungement Order Rendered Moot the
            Cancellation of Lien Claim ......................................................... 9

        3.  PNC Had No Interest in the Lien Since 2010 ............................. 9

        4.  Plaintiffs Lack Standing to Challenge the Assignment ............. 10

    B.  PNC IS ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' CLAIM FOR SLANDER OF TITLE ........................... 10

        1.  PNC Did Not Record/Publish the Assignment ......................... 11

        2.  Green Tree Was Not PNC's Agent and PNC Did Not
            Authorize Green Tree to File the Proof of Claim ..................... 11

        3.  Plaintiffs' Slander of Title Claim is Barred by the Statute of
            Limitations ................................................................................ 13

    C.  PNC IS ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' CLAIM FOR FRAUD ................................................. 14

        1.  PNC Did Not Owe a Duty to Plaintiffs to Notify Them of
            the Transfer of Ownership .......................................................... 14

**TABLE OF CONTENTS**

2.    PNC's Receipt of a Few Payments Does Not Amount to Fraud ....................................................................................... 15

3.    Plaintiffs' Claim is Time-Barred ..................................... 16

D.    PNC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF ...................... 16

V.    CONCLUSION ................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................6, 7

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
   818 F.2d 1466 (9th Cir. 1987) ..........................................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................6, 7

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979)........................................................................................9

*Das v. Bank of Am., N.A.*,
   186 Cal. App. 4th 727 (2010) ........................................................................14

*Deutsche Bank Nat. Trust Co. v. Pyle*,
   13 Cal. App. 5th 513 (2017) ..........................................................................10

*Ghuman v. Wells Fargo Bank, N.A.*,
   989 F. Supp. 2d 994 (E.D. Cal. 2013) ...........................................................10

*Grigsby v. Wells Fargo Bank, N.A.*,
   2018 WL 1779338 (C.D. Cal. Apr. 12, 2018) ................................................16

*Howell v. Courtesy Chevrolet, Inc.*,
   16 Cal. App. 3d 391 (1971) ............................................................................12

*Hunsucker v. Sunnyvale Hilton Inn*,
   23 Cal.App.4th 1498 (1994) ..........................................................................12

*ING Bank v. Ahn*,
   758 F. Supp. 2d 936 (N.D. Cal. 2010)...........................................................12

*Jenkins v. JPMorgan Chase Bank, N.A.*,
   216 Cal.App.4th 497 (2013) ............................................................................8

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (E.D. Cal. 2010) ..........................................................16

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
   880 F.Supp.2d 1029 ........................................................................................14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .......................................................................14

*Kelley v. R. F. Jones Co.*,
   272 Cal. App. 2d 113 (1969) ....................................................................12, 13

*Klamath Water Users Protective Ass'n v. Patterson*,
   204 F.3d 1206 (9th Cir. 1999) .......................................................................15

*Lawson v. CitiCorp Trust Bank, FSB*,
   2011 WL 3439223 (E.D. Cal. Aug. 5, 2011)....................................................8

*Logan v. U.S. Bank N.A.*,
   722 F.3d 1163 (9th Cir. 2013) ............................................................... 15

*Mangindin v. Wash. Mut. Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009)..................................................... 16

*Meyer v. One West Bank, F.S.B.*,
   91 F. Supp. 3d 1177 (C.D. Cal. 2015) .................................................... 14

*Powell v. McCormack*,
   395 U.S. 486 (1969).................................................................................. 9

*Saterbak v. JPMorgan Chase Bank, N.A.*,
   245 Cal.App.4th 808 (2016) ..................................................................... 8

*Triton Energy Corp. v. Square D Co.*,
   68 F.3d 1216 (9th Cir. 1995) .................................................................... 7

**Statutes**

11 U.S.C. § 101(5) ......................................................................................... 4
11 U.S.C. § 101(10) ....................................................................................... 4
15 U.S.C. § 1641 .......................................................................................... 15
Cal. Civ. Code § 47(b) .................................................................................. 12
Cal. Civ. Code § 338(g) ................................................................................ 13
Cal. Civ. Code § 2298 .................................................................................. 12
Cal. Civ. Code § 2299 .................................................................................. 12
Cal. Civ. Code § 2300 .................................................................................. 12
Cal. Civ. Code § 2936 .................................................................................... 9
Cal. Civ. Code § 3412 .................................................................................... 8
Cal. Civ. Proc. Code § 338(d)....................................................................... 16

**Rules**

Fed. R. Civ. P. 56 ...................................................................................... 2, 6
Fed. R. Civ. P. 56(a) ...................................................................................... 6
Fed. R. Civ. P. 56(a) – (b) ............................................................................. 6
Fed. R. Civ. P. 56(c) ...................................................................................... 7

**Other Authorities**

3  3
*Arias v. Select Portfolio Servicing, Inc.*,
   2017 LEXIS 207722, at *18, 19 (E.D. Cal. Dec. 18, 2017)........................ 8

*In re Marks*,
   2012 Bankr. LEXIS 5788, at *30 (9th Cir. BAP 2012) ............................. 9

L.R. 7 ............................................................................................................. 3

*Maynard v. Wells Fargo Bank*,
    2013 U.S. LEXIS 130800, at *26 (S.D. Cal. 2013)....................................................10
PNC. *Simmons First Nat'l Bank v. Lehman*,
    2015 U.S. Dist. LEXIS 43421, at *10 (N.D. Cal. April 1, 2015)............................10
*Williams v. Bank of Am. Nat'l Ass'n*,
    2015 U.S. Dist. LEXIS 148337,  at *12-14 (N.D. Cal. October 30, 2015)..............10

**TABLE OF AUTHORITIES**

627232.1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Plaintiffs' claims against PNC represent an attempt to obtain damages from an

4 innocent party based on the conduct of an unrelated third-party that is apparently

5 defunct. Their four enumerated claims against PNC are not only poorly pled, but they

6 are factually and legally baseless. By way of background, PNC entered into a

7 contractual obligation to sell and transfer Plaintiffs' subject loan (defined below) to a

8 third party days before Plaintiffs filed for chapter 11 bankruptcy.  PNC notified

9 Plaintiffs of the transfer of servicing rights but did not inform them of the transfer of

10 ownership of the loan because it did not have an obligation to do so, notwithstanding

11 Plaintiffs' assertions to the contrary.

12

In the bankruptcy proceeding, Plaintiffs' new servicer filed a proof of claim

13 pertaining to the Loan. For reasons unknown to PNC, the claim did not identify the

14 name of the creditor for the claim. The claim did, however, instruct Plaintiffs to send

15 payments and notices to someone other than PNC (i.e., their new servicer). Despite

16 the instructions in the claim and the fact that PNC did not make any representations to

17 Plaintiffs after August of 2010 that it held any interest in the loan, Plaintiffs

18 inexplicably mailed a few payments to PNC during their bankruptcy. PNC either

19 forwarded the payments to the assignee of the deed of trust or returned the payments.

20

There can be no genuine dispute that PNC was under no duty, contractual or

21 otherwise, to notify Plaintiffs of the sale of the loan and PNC ceased to have any

22 interest in the loan in 2010.  Moreover, the subject proof of claim was not filed on

23 behalf of PNC or with PNC's authority, and PNC took no steps to assert an interest in

24 the loan after August of 2010.  Finally, it is undisputed that PNC did not record the

25 assignment following the bankruptcy discharge and the lien has since been expunged.

26 For these reasons, as discussed more fully herein, PNC is entitled to summary

27 judgment on all claims alleged against it in Plaintiffs' Complaint.

28

## II.   STATEMENT OF FACTS[1]

### A.   THE LOAN

On or about April 17, 2007, *plaintiff* Stephen Dreher ("Mr. Dreher") entered into a non-purchase money mortgage loan (the "Loan") with National City Bank, in the original principal sum of $350,000.00, which was reflected in a promissory note (the "Note") secured by a deed of trust (the "Deed of Trust") executed by *plaintiffs* Mr. Dreher and Melinda Dreher (the "Plaintiffs"). (Statement of Uncontroverted Facts ("SUF", No. 1). The Deed of Trust encumbers and established a lien (the "Lien") against the real property located at 546 N. Highland Avenue, Los Angeles, California ("Property"). (SUF, No. 2).

### B.   THE SALE OF THE LOAN

PNC is the successor by merger to National City Bank, which merger took place on or about November 6, 2009. (SUF, No. 3). National City Bank was both the servicer and owner of the Loan until it merged with PNC, at which point PNC became the owner and servicer of the Loan. (SUF, No. 4). On or about July 30, 2010, PNC and American Servicing and Recovery Group, LLC ("ASRG") entered into a "Non-Performing" Loan Purchase and Interim Servicing Agreement (the "Purchase Agreement") whereby PNC sold, for valuable consideration, a pool of loans (the "Pool"), including the Loan, to ASRG. (SUF, No. 5).

Under the Purchase Agreement, PNC agreed to serve as an "Interim Servicer" of the Loan until September 1, 2010 (the "Interim Servicing Period"). (SUF, No. 6). At the request of ASRG, on or about August 12, 2010, PNC executed an Assignment of Deed of Trust (the "Assignment") to Dreambuilder Investments, LLC ("DBI").[2] (SUF, No. 7). Pursuant to DBI's instructions, within 30 days of the July 30, 2010

---

[1]  The facts herein are set forth more fully in the accompanying Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment ("SUF"), which is based on the Complaint, the Declaration of PNC Bank, N.A, the Declaration of Helen Mosothoane, and the Request for Judicial Notice filed concurrently herewith.

[2]  DBI has been defaulted for failure to respond to the Complaint. Plaintiffs have not filed a default judgment motion against DBI.

closing date of the Purchase Agreement, on or about August 25, 2010, PNC sent the original collateral file for the Loan, which included the original Note and Deed of Trust, to DBI's custodian, U.S. Bank. (SUF, No. 8).  PNC maintained a spreadsheet (the "Manifest") identifying the recipients of the collateral files of loans within the Pool. (SUF, No. 9). The Manifest identified U.S. Bank as the recipient of the collateral file for the subject Loan. (SUF, No. 10).

After the sale of the Loan pursuant to the Purchase Agreement, PNC no longer held any ownership or other interest in the Loan, with the exception of the servicing rights during the Interim Servicing Period. (SUF, No. 11). Following the conclusion of the Interim Servicing Period, PNC had no remaining right, title, or interest in the Loan. (SUF, No. 12).

On September 1, 2010, PNC mailed a "goodbye letter" (the "Goodbye Letter") to Mr. Dreher wherein it gave notice of the transfer of servicing rights to the Loan from PNC to DBI. (SUF, No. 13). The letter was mailed to Mr. Dreher's address at 23210 S. Cave Bay Rd., P.O. Box 400, Worley, Idaho, 83876 (the "Worley Idaho Address"). (SUF, No. 14).

Because the Loan was sold as part of a bulk-loan sale to the same purchaser (ASRG), PNC did not retain original copies of the Goodbye Letters for all of the loans that were included in the Pool. (SUF, No. 15).  Instead, PNC retained a sample copy of the letter it sent to borrowers within the Pool. (SUF, No. 16). PNC maintained a spreadsheet (the "Spreadsheet") that identifies the borrowers within the Pool (together with their addresses) to whom it mailed Goodbye Letters. (SUF, No. 17). Mr. Dreher is included on the Spreadsheet and his address is identified as the Worley Idaho Address. (SUF, No. 18). Mr. Dreher's inclusion on the Spreadsheet evidences that he was sent a Goodbye Letter at the Worley Idaho Address. (SUF, No. 19).

Neither the Note nor the Deed of Trust obligate PNC to give notice of the Assignment or transfer of ownership of the Loan. (SUF, No. 20).

///

**MEMORANDUM OF POINTS AND AUTHORITIES**

### C.    **PLAINTIFFS' BANKRUPTCY FILING**

After the sale of the Loan to DBI, on August 5, 2010, Plaintiffs filed a Chapter 11 bankruptcy petition in U.S. Bankruptcy Court for the District of Idaho and identified the Loan in their petition (the "<u>Bankruptcy</u>"). (SUF, No. 21). PNC did not receive notice of the petition or any filings in the Bankruptcy. (SUF, No. 22). PNC did not file a Proof of Claim in the Bankruptcy or authorize any person or entity to file a Proof of Claim in the Bankruptcy on its behalf. (SUF, No. 23).

### D.    **GREEN TREE'S PROOF OF CLAIM**

By Plaintiffs' own admission, on September 1, 2010, Green Tree Servicing LLC ("<u>Green Tree</u>") provided notice to Plaintiffs that it was servicing the Loan. (SUF, No. 24). Thereafter, on October 26, 2010, Green Tree filed a proof of claim (the "<u>POC</u>") in the Bankruptcy in connection with the Loan. (SUF, No. 25). The POC does not identify PNC as the "creditor"[3] for the Loan or otherwise reflect that it was filed on PNC's behalf. (SUF, No. 26). In fact, the creditor field in the POC is blank. (SUF, No. 27). PNC was only referenced in Item 3a of the POC relating to how the debtor may have scheduled the account. (SUF, No. 28). According to the instructions for the proof of claim form, Item 3a reports "a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between [the] proof of claim and the claim as scheduled by the debtor."[4] (SUF, No. 29).

At no point in time did PNC authorize Green Tree to act as its agent with respect to the Loan. (SUF, No. 30). Nor did PNC authorize Green Tree to file the POC. (SUF, No. 31). PNC took no affirmative steps during the Bankruptcy to assert an ownership or any other interest in the Loan. (SUF, No. 32). PNC did not solicit

---

[3] The term "creditor" is generally defined under the Bankruptcy Code as an entity with a claim against the debtor or the debtor's estate. *See* 11 U.S.C. § 101(10). In turn, a "claim" is defined as a "right to payment" or a "right to an equitable remedy." 11 U.S.C. § 101(5).

[4] Put simply, Item 3a of the POC was intended to disclose that Plaintiffs misidentified the creditor for the claim in their schedules.

payments from Plaintiffs during the Bankruptcy. (SUF, No. 33). PNC never informed Plaintiffs that Green Tree was its servicing agent. (SUF, No. 34).

Importantly, the POC indicated that all notices related to the claim should be sent to Green Tree. (SUF, No. 35). The POC also indicated that all payments under the Loan should be sent to Green Tree. (SUF, No. 36).

### E. PLAINTIFFS' BANKRUPTCY PLAN

On August 28, 2012, Plaintiffs filed a Fourth Amended Chapter 11 Plan (the "Bankruptcy Plan"). (SUF, No. 37). The Bankruptcy Plan: (1) acknowledged that Green Tree was the entity asserting a claim on account of the Loan; and (2) converted the Lien from a secured interest to an impaired unsecured debt. (SUF, No. 38). On December 18, 2012, the Bankruptcy Plan was confirmed and the Bankruptcy Court ordered a discharge as of August 28, 2012, upon completion of the Bankruptcy Plan. (SUF, No. 39). On February 27, 2018, the Bankruptcy Court entered a discharge order. (SUF, No. 40).

### F. PLAINTIFFS' PAYMENTS AND SERVICING OF THE LOAN DURING BANKRUPTCY

Despite Green Tree's notice in the POC, Plaintiffs sent monthly payments of $360.26 each to PNC in February, March, April and May of 2013 (the "Checks"). (SUF, No. 41). PNC, unaware that Green Tree was the servicer of the Loan, cashed the Checks and reissued payments to DBI (the "Reissued Checks"). (SUF, No. 42). PNC then received the cancelled Reissued Checks reflecting that they were negotiated by DBI. (SUF, No. 43). PNC returned other payments made by Plaintiffs in late 2013 and early 2014 because it was no longer the servicer of the Loan. (SUF, No. 44).

In 2017, during the pendency of the Bankruptcy, Plaintiffs mailed checks to Land Home Financial Services, Inc. ("Land Home"). (SUF, No. 45).  Land Home returned some checks to Plaintiffs because the servicing of the Loan had been transferred to another entity. (SUF, No. 46).  Then, on or about September 25, 2017, ClearSpring Loan Services, Inc. ("ClearSpring") notified Mr. Dreher that it was the

new servicer of the Loan. (SUF, No. 47). The September 25, 2017 letter from ClearSpring identified "JH Capital V.I., Inc. – Liberty" as the investor for the Loan. (SUF, No. 48).

### G. DBI'S RECORDATION OF THE ASSIGNMENT

On March 24, 2017, DBI recorded the Assignment. (SUF, No. 49). Since PNC had sold its interest in the Loan in 2010, PNC was unaware of the recorded Assignment until Plaintiffs filed this lawsuit. (SUF, No. 50).

### H. THE LAWSUIT

Plaintiffs allege they learned of the recorded Assignment when they attempted to sell the Property on or about June 2018. (SUF, No. 51). Accordingly, on June 20, 2018, Plaintiffs sent DBI a letter demanding a reconveyance deed or payoff demand. (SUF, No. 52). Despite the letter from Plaintiffs, DBI did not release the Lien and Plaintiffs filed this lawsuit. (SUF, No. 53).

On September 7, 2018, Plaintiff commenced this action by filing a complaint (the "Complaint") against PNC and DBI alleging the Lien clouded title, prevented them from concluding the sale of the Property, and caused other consequential damages. (SUF, No. 54). On September 27, 2019, the Court granted Plaintiffs' motion to expunge the Lien. (SUF, No. 55). PNC did not oppose Plaintiffs' motion for expungement of the Lien because it has had no interest in the Lien since July 30, 2010. (SUF, No. 56).

## III. LEGAL AUTHORITY

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment on all or part of a claim at any time until 30 days after the close of discovery. Fed. R. Civ. P. 56(a) – (b). Summary judgment is appropriate if "there is no genuine issue as to any material fact and…the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of

material fact. *Celotex*, 477 U.S. at 323. Once such a showing has been made, the non-moving party must demonstrate the existence of a genuinely disputed fact by citing "to particular parts of material in the record" or "showing that the materials cited [by the movant] do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c).

Importantly, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat a motion for summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Moreover, mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude the use of summary judgment. *See California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). Finally, not every disputed factual issue is material in light of the substantive law that governs the case. Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

## IV.   ARGUMENT

### A.   PNC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR CANCELATION OF LIEN

In their first cause of action against PNC, Plaintiffs seek a judgment canceling the Lien. They claim that the Lien is subject to cancellation because it was effectively extinguished at the conclusion of the Bankruptcy. .  As discussed below, Plaintiffs' cancellation of lien claim is factually and legally baseless as against PNC because (1) cancellation of a lien or instrument is not an independent claim, (2) the Lien was expunged pursuant to Court order, making this request moot, (3) PNC has had no interest in the Lien since 2010, and (4) Plaintiffs lack standing to challenge the Assignment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### 1.  Cancellation of Instrument is Not a Stand-alone Claim

Under Cal. Civ. Code § 3412, a written instrument may be cancelled when "there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." However, cancellation of an instrument is an equitable remedy, not an independent cause of action and, therefore, depends upon other viable substantive causes of action. *Arias v. Select Portfolio Servicing, Inc.*, 2017 LEXIS 207722, at *18, 19 (E.D. Cal. Dec. 18, 2017).  *see also Lawson v. CitiCorp Trust Bank, FSB*, 2011 WL 3439223, at *7 (E.D. Cal. Aug. 5, 2011) ("District courts have persuasively concluded that cancellation of an instrument is an equitable remedy and not an independent basis for liability").  It is not entirely clear why PNC has been named as a party to this claim as it has held no interest in the Lien since 2010. While California does not require the recording of an assignment of deed of trust, the Assignment was, in fact, recorded in March of 2017, **nearly a year-and-a-half before** Plaintiffs filed this lawsuit. Thus, Plaintiffs indisputably knew at the time this case was filed that PNC did not assert any interest in the Lien.

Insofar as Plaintiffs' claim seeks the cancellation of the Assignment, the claim is misguided. Indeed, it is well-settled that an assignment merely substitutes one creditor for another and does not affect a borrower's obligations in any way. *See Jenkins v. JPMorgan Chase Bank, N.A.,* 216 Cal.App.4th 497, 515 (2013). Thus, a judgment cancelling the Assignment would not achieve Plaintiffs' objective of cancelling the Lien; rather, it would merely affect who has the legal right to enforce the Lien. California courts have otherwise recognized that a borrower only has standing to challenge an assignment based on a defect that renders the instrument void. *See Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal.App.4th 808, 815 (2016). Plaintiffs do not allege any grounds that would support a determination that the Assignment is void. Regardless, as is detailed below, Plaintiffs have no other viable claims. Absent a viable antecedent claim, Plaintiffs cannot proceed with a stand-alone cause of action for cancellation of instruments.

## 2. The Court's Expungement Order Rendered Moot the Cancellation of Lien Claim

A claim is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 649 (1979) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The test to determine mootness is whether: (1) "there is no reasonable expectation…that the alleged violation will recur;" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation". *Id.* (citations omitted). Here, PNC did not oppose Plaintiffs' motion to expunge the Lien (as it had no basis to do so given its sale of the Lien in 2010). The Court's order effectively and completely expunged the Lien and there is no expectation by PNC that the Lien will be revived. As the remedy sought by Plaintiffs was obtained, the claim for cancellation of lien is moot. Consequently, there is no genuine issue of material fact as to this claim.

## 3. PNC Had No Interest in the Lien Since 2010

California follows the principle that the assignment of a promissory note carries with it any security, such as a deed of trust. Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security."). Importantly, there is no requirement under California law for an assignment of deed of trust to be recorded. *See In re Marks,* 2012 Bankr. LEXIS 5788, at \*30 (9th Cir. BAP 2012) ("California does not require that assignments of a beneficial interest under a deed of trust be recorded.").

Here, PNC executed the Assignment to DBI on August 12, 2010, nearly two-and-a-half years before the Bankruptcy Plan was confirmed. Even if PNC had not executed the Assignment, the beneficial interest under the Deed of Trust followed the sale of the Loan as a matter of law, without the need for a formal assignment. By virtue of the sale of the Loan under the Purchase Agreement, PNC has had no interest

**MEMORANDUM OF POINTS AND AUTHORITIES**
627232.1

in the Note or Deed of Trust since the July 30, 2010 closing date of the agreement. Regardless, as noted above, the Assignment was, in fact, recorded on March 24, 2017, more than a year before Plaintiffs filed this lawsuit.  PNC had no control over the recordation of the Assignment for it had relinquished its rights in the Deed of Trust in August 2010.  By Plaintiffs' own admission, PNC had no interest in the Lien in 2018 and, thus, it sent a demand letter to DBI only seeking to clear title. For these reasons, this claim could not lie against PNC.

### 4.   Plaintiffs Lack Standing to Challenge the Assignment

Finally, as previously discussed, insofar as they are challenging the Assignment, Plaintiffs lack standing to do so because they are not parties to the assignment.  *See Maynard v. Wells Fargo Bank*, 2013 U.S. LEXIS 130800, at *26 (S.D. Cal. 2013) (A plaintiff "does not have standing to contest" an alleged fraudulent assignment where he/she "is not a party to the assignment."); *see also Williams v. Bank of Am. Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 148337,  at *12-14 (N.D. Cal. October 30, 2015) (plaintiffs lack standing to challenge the validity of an assignment). For all the foregoing reasons, Plaintiffs' claim for cancellation of lien cannot be supported and summary judgment in favor of PNC on this claim is warranted.

### B.   PNC IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR SLANDER OF TITLE

Slander of title has the following elements: "(1) a publication, which is (2) without privilege or justification and thus with express or implied malice, (3) false, either knowingly so or made without regard to its truthfulness and (4) causes pecuniary loss." *Deutsche Bank Nat. Trust Co. v. Pyle*, 13 Cal. App. 5th 513, 527, n. 7 (2017). To meet the first element, Plaintiffs must show "an affirmative act of publication" by PNC. *Simmons First Nat'l Bank v. Lehman*, 2015 U.S. Dist. LEXIS 43421, at *10 (N.D. Cal. April 1, 2015).  Specifically, "[s]lander of title occurs when a person, 'without privilege to do so, *publishes* a false statement that disparages title to property." *Id*. (emphasis added in *Simmons*) (citing *Ghuman v. Wells Fargo Bank,*

1  *N.A.*, 989 F. Supp. 2d 994, 1000 (E.D. Cal. 2013). For the reasons below, Plaintiffs

2  have no viable claim.

3              **1.**     **PNC Did Not Record/Publish the Assignment**

4          Here, Plaintiffs contend that PNC's alleged failure to notify them and the

5  bankruptcy court of the Assignment resulted in "[DBI] having an assignment of the

6  Lien that falsely claims and interest" in the Property despite the bankruptcy discharge

7  of the Lien. (*See* Complaint, ¶ 32).  However, based on the applicable law regarding

8  publication, PNC cannot be held liable because it did not record the Assignment.  In

9  other words, PNC took no "affirmative act" to publish the recorded document that

10 clouded Plaintiffs' title. Indeed, Plaintiffs admit that DBI, not PNC, recorded the

11 Assignment.

12         Furthermore, PNC was under no duty to notify Plaintiffs of the Assignment.

13 Assuming, *arguendo*, that PNC had such a duty, the failure to provide notice of the

14 Assignment does not amount to an affirmative act on the part of PNC to actually

15 record the instrument. To the extent the claim is premised on the Deed of Trust, a

16 failure to remove a recorded security instrument does not constitute publication. *See*

17 *Simmons*, at *10 (the non-recording party's failure to remove a recoded deed of trust

18 from the recorder's office "is not an actionable publication for purposes of a slander of

19 title claim").

20             **2.**     **Green Tree Was Not PNC's Agent and PNC Did Not Authorize**

21                 **Green Tree to File the Proof of Claim**

22         During the course of this litigation, Plaintiffs have suggested that their slander

23 of title claim is based, at least in part, on the POC. The POC does not give rise to a

24 claim for slander of title for several reasons. To start, the POC was not recorded (or

25 published) in the real property records for the Property. Thus, it did not disparage

26 Plaintiffs' title to the Property. Moreover, California law provides that "[a]n absolute

27 privilege attaches to publications made '[i]n any (1) legislative or (2) judicial

28 proceeding, or (3) in any other official proceeding authorized by law, or (4) in the

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   initiation or course of any other proceeding authorized by law and reviewable [by a

2   mandate action].'" *Hunsucker v. Sunnyvale Hilton Inn*, 23 Cal.App.4th 1498, 1502

3   (1994) (quoting Cal. Civ. Code § 47(b)). It necessarily follows that the filing of the

4   POC in the Bankruptcy is privileged. Regardless, Green Tree, not PNC, filed the

5   POC.

6       Plaintiffs' Complaint and discovery responses imply an agency relationship

7   existed between Green Tree and PNC with respect to the POC.  (*See* Complaint, ¶ 28)

8   ("Green Tree and PNC claimed ownership of the Lien during the Bankruptcy

9   Proceedings"). The existence of an agency is not presumed, instead, it is presumed

10  that the "person is acting for himself and not as the agent for another." *ING Bank v.*

11  *Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010). Thus, the party arguing the existence

12  of the agency relationship has the burden of proof. *Id.*  In reviewing the totality of the

13  facts against the applicable law, the only conclusion that can be drawn is that Green

14  Tree was not PNC's agent and it was not authorized to act on behalf of PNC with

15  respect to the Loan.

16      In California, the agency relationship is either actual or ostensible. Cal. Civ.

17  Code § 2298.  "An agency is actual when the agent is really employed by the

18  principal." Cal. Civ. Code § 2299.  It cannot be disputed that Green Tree is not a PNC

19  employee.

20      An ostensible agency exists "when the principal intentionally, or by want of

21  ordinary care, causes a third person to believe another to be his agent who is not really

22  employed by him." Cal. Civ. Code § 2300.  An ostensible agency is proven where (1)

23  the principal intentionally communicated the agency relationship to a third party or (2)

24  the principal negligently caused the third party to believe that the agency relationship

25  existed. *Howell v. Courtesy Chevrolet, Inc.*, 16 Cal. App. 3d 391, 401 (1971).  Where

26  there is no express consent, the agency may be implied by analyzing the facts of the

27  particular case. *Kelley v. R. F. Jones Co.*, 272 Cal. App. 2d 113, 120 (1969).  "[I]f a

28  principal by his acts has led others to believe that he has conferred authority upon an

1    agent, he cannot be heard to assert, as against third parties who have relied thereon in

2    good faith, that he did not intend to confer such power." *Id*.

3          In this case, there is no ostensible agency relationship because PNC did not

4    provide express authorization to Green Tree to file the POC, nor did it take any

5    actions to cause Plaintiffs to believe that PNC was Green Tree's principal.  PNC never

6    informed Plaintiffs that Green Tree was authorized in any way to act as its agent.

7    After the filing of the POC, PNC did not solicit mortgage payments from Plaintiffs.

8    In fact, the few payments received by PNC during the bankruptcy proceeding were

9    either reissued and sent to DBI or returned to Plaintiffs.

10          Moreover, Plaintiffs' agency theory is based, in part, on their misreading of the

11    POC. Indeed, Plaintiffs falsely allege in the Complaint that the POC identifies PNC as

12    the "creditor" for the claim.  The creditor field of the POC was, in fact, blank.  PNC's

13    name was merely referenced in Item 3a to clarify that Plaintiffs may have

14    misidentified PNC as the creditor for the claim.  Further, during the pendency of the

15    Bankruptcy, Plaintiffs mailed payments to other servicers. Additionally, per Plaintiffs'

16    own document production, on September 25, 2017, Plaintiffs received a letter from

17    servicer ClearSpring identifying "JH Capital V.I., Inc. – Liberty" as the investor for

18    the Loan.  This fact alone undermines Plaintiffs' entire case because they were on

19    notice even before completing the Bankruptcy Plan that PNC was not the investor or

20    owner of the Loan.  In light of the foregoing facts, Plaintiffs' belief that Green Tree

21    was PNC's agent is legally and factually unsupportable.

22          **3.    <u>Plaintiffs' Slander of Title Claim is Barred by the Statute of</u>

23          <u>Limitations</u>**

24          To the extent that Plaintiffs' slander of title cause of action against PNC is

25    premised on the recording of the Deed of Trust or Green Tree's filing of a POC, the

26    claim is time-barred.  Under Cal. Civ. Code § 338(g), a slander of title claim carries a

27    three year statute of limitations.  As stated above, the Deed of Trust was recorded in

28    2007 and Green Tree filed the POC in 2010.  Plaintiffs did not bring their claim until

1  2018, nearly eight years from the filing of the POC. Thus, Plaintiffs' claim fails as a
2  matter of law and summary judgment is proper.

3  **C.   PNC IS ENTITLED TO SUMMARY JUDGMENT ON**
4  **PLAINTIFFS' CLAIM FOR FRAUD**

5  The elements of fraud are: "(a) misrepresentation (false representation,
6  concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to
7  defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."
8  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (citations omitted).
9  Plaintiffs' fraud cause of action against PNC rests upon an alleged (1) duty to notify
10 Plaintiffs and the bankruptcy court of the Assignment; and (2) wrongful acceptance of
11 Plaintiffs' mortgage payments during bankruptcy.

12 **1.   PNC Did Not Owe a Duty to Plaintiffs to Notify Them of the**
13 **Transfer of Ownership**

14 Plaintiffs cannot identify any section in the Note or Deed of Trust establishing a
15 duty to give notice of assignments of the Deed of Trust. Even if they could, their claim
16 for fraud would be barred by the economic loss rule. *See JMP Sec. LLP v. Altair*
17 *Nanotechnologies Inc.*, 880 F.Supp.2d 1029, 1042 ("The economic loss rule [states]
18 that no tort cause of action will lie where the breach of duty is nothing more than a
19 violation of a promise which undermines the expectations of the parties to an
20 agreement.") (citation and internal quotations omitted). Nor can Plaintiffs identify a
21 statute or authority giving rise to such a duty. On the contrary, under California law, a
22 borrower-lender relationship generally does not create a fiduciary relationship. *Das v.*
23 *Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740 (2010); *Meyer v. One West Bank,*
24 *F.S.B.*, 91 F. Supp. 3d 1177, 1183 (C.D. Cal. 2015). Thus, Plaintiffs cannot show that
25 PNC misrepresented, concealed or failed to disclose facts about the Assignment where
26 there was no duty owed to Plaintiffs.

27 Plaintiffs may argue that PNC was under a duty to deliver notice of the transfer
28 of the Loan pursuant to Section 2.3 (Recordation of Assignment of Mortgage) of the

**MEMORANDUM OF POINTS AND AUTHORITIES**

Purchase Agreement. This argument fails because Plaintiffs are not a party to the agreement, nor are they intended beneficiaries, and, therefore, they lack standing to enforce the agreement. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) (to recover under a contract the third-party "must show that the contract was made for its direct benefit-that it is an intended beneficiary of the contract."). Moreover, the assignee, not the assignor, of a mortgage loan must inform the borrower of a transfer of the loan. *Logan v. U.S. Bank N.A.*, 722 F.3d 1163, 1172 (9th Cir. 2013) ("Section 404(a) of the [Helping Families Save Their Home Act] added a notice requirement to the Truth In Lending Act, 15 U.S.C. § 1641, under which a *new creditor* must notify the borrower in writing…after a mortgage loan is transferred or assigned.") (emphasis added). For this reason, PNC, the assignor of the Loan, was under no duty to inform Plaintiffs of the loan transfer.

Simply stated, the evidence submitted herewith demonstrates that PNC owed no duty to Plaintiffs and PNC did not make any misrepresentations regarding the Loan or Lien.

## 2. PNC's Receipt of a Few Payments Does Not Amount to Fraud

Plaintiffs cannot prove PNC acted fraudulently in processing four unsolicited mortgage payments during Bankruptcy because PNC did not make any false representations in order to obtain the payments. In fact, in 2010, PNC sent a notice of transfer of servicing rights to Plaintiffs. Further, the POC did not identify PNC as a creditor of the Loan and clearly stated that payments should be sent to Green Tree. Given Plaintiffs' inability to establish a representation, much less a false representation, they cannot establish the "scienter" element of their fraud claim. Likewise, Plaintiffs cannot establish that PNC intended to defraud them in light of the fact that PNC forwarded the payments to DBI. Moreover, Plaintiffs were not justified in relying on PNC's alleged acceptance of payments as: (1) they were notified in the POC that payments should be sent to Green Tree; and (2) both prior to and after they made the payments at issue they knowingly made payments to other servicers. Finally,

**MEMORANDUM OF POINTS AND AUTHORITIES**
627232.1

1  Plaintiffs did not suffer any damages because the payments were ultimately sent to
2  DBI and did not in any way prevent Plaintiffs from completing the Bankruptcy Plan
3  and receiving a discharge.  Simply put, Plaintiffs' fraud claim is baseless. For these
4  reasons, PNC is entitled to judgment on Plaintiff's third claim.

5  ### 3.   Plaintiffs' Claim is Time-Barred

6  Under California law, the statute of limitations for a claim of fraud is three
7  years. *See* Cal. Civ. Proc. Code § 338(d). The evidence submitted herewith
8  demonstrates that PNC informed Plaintiffs that it no longer serviced the Loan in a
9  September 1, 2010 service-transfer notice and again in 2013 and 2014 when it rejected
10 their payments. Additionally, Green Tree filed the POC in 2010 that instructed
11 Plaintiffs to send notices and payments to Green Tree, rather PNC. Thus, Plaintiffs
12 knew by 2014, at the latest, that PNC no longer had any interest in the Loan. Because
13 they did not file this action until 2018, their fraud claim is untimely.

14 ### D.   PNC IS ENTITLED TO SUMMARY JUDGMENT ON
15 ### PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF

16 "Under federal law, declaratory relief is not an independent cause of action, but
17 a remedy." *Grigsby v. Wells Fargo Bank, N.A.*, 2018 WL 1779338, at *12 (C.D. Cal.
18 Apr. 12, 2018). In *Grigsby*, the court dismissed plaintiff's declaratory relief claim
19 because plaintiff's other substantive claims did not survive the motion to dismiss. As
20 such, because Plaintiffs' three other causes of action fail, their declaratory relief cause
21 of action fails. *Id*.

22 Moreover, declaratory relief claims may be dismissed as duplicative and
23 unnecessary where the relief sought is "entirely commensurate with the relief sought
24 through other . . . other causes of action." *Mangindin v. Wash. Mut. Bank*, 637 F.
25 Supp. 2d 700, 707-08 (N.D. Cal. 2009); *see also Jensen v. Quality Loan Serv. Corp.*,
26 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) ("Plaintiff's separate declaratory relief
27 claim should not be used, as here, to determine identical issues subsumed within other
28 claims"). Here, Plaintiffs seek a judicial declaration of superior rights, title and

interest to the Property. (Complaint , ¶ 43).  As the Lien was expunged, Plaintiffs fail to state a claim upon which declaratory relief can be granted.

**V.**    **CONCLUSION**

For all the foregoing reasons, PNC is entitled to summary judgment on all claims alleged against it in Plaintiffs' Complaint.

DATED:  November 18, 2019                    **McGLINCHEY STAFFORD**


By: _/s/  Helen Mosothoane_
BRIAN A. PAINO
HELEN MOSOTHOANE
Attorneys for *Defendant* **PNC BANK, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK**