**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Helen Mosothoane (SBN 254511)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone: (949) 381-5900
Facsimile: (949) 271-4040
Email: bpaino@mcglinchey.com
hmosothoane@mcglinchey.com

Attorneys for *Defendant* PNC Bank, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC. a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| STEPHEN AND MELINDA DREHER,<br><br>　　Plaintiffs,<br><br>　v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC. a Pennsylvania Corporation, successor by merger to/with NATIONAL CITY BANK; DREAMBUILDER INVESTMENTS, LLC, A New York Limited Liability Company; and DOES 1-50,<br><br>　　Defendants. | Case No.: 2:18-cv-07827-MWF-FFM<br><br>**DEFENDANT PNC BANK N.A.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing**:<br>Date:　December 16, 2019<br>Time:　10:00 a.m.<br>Judge:　Hon. Michael W. Fitzgerald<br><br>Filed concurrently with:<br>Notice of Motion and Motion for Summary Judgment<br>Request for Judicial Notice<br>Declaration of PNC Bank, N.A.<br>Declaration of Helen Mosothoane<br>[Proposed] Judgment |

　　　　Pursuant to Local Civil Rule 56-1, *defendant* PNC BANK, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK ("PNC") respectfully submits the following *Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment Or, In the Alternative, Partial Summary Judgment*.

1

Case No. 2:18-cv-07827-MWF-FFM
**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**
1503141.1

## I. UNCONTROVERTED FACTS

| UNDISPUTED FACT | EVIDENTIARY SUPPORT |
|---|---|
| 1. On or about April 17, 2007, *plaintiff* Stephen Dreher ("Mr. Dreher") entered into a non-purchase money mortgage loan (the "Loan") with National City Bank, in the original principal sum of $350,000.00, which was reflected in a promissory note (the "Note") secured by a deed of trust (the "Deed of Trust") executed by *plaintiffs* Mr. Dreher and Melinda Dreher (the "Plaintiffs"). | • Declaration of PNC in Support of Motion for Summary Judgment ("PNC Declaration"), ¶ 5, **Exhibits 1 and 2**.<br>• Declaration of Helen Mosothoane in Support of Motion for Summary Judgment ("Mosothoane Declaration"), ¶ 3, **Exhibit B**, Response to Request for Genuineness of Documents, pg. 35, lines 8-9, 12-15, 18, 19. |
| 2. The Deed of Trust encumbers and established a lien (the "Lien") against the real property located at 546 N. Highland Avenue, Los Angeles, California ("Property"). | • PNC Declaration, ¶ 6, **Exhibit 2**. |
| 3. PNC is the successor by merger to National City Bank, which merger took place on or about November 6, 2009. | • PNC Declaration, ¶ 7, **Exhibit 3**. |
| 4. National City Bank was both the servicer and owner of the Loan until it merged with PNC, at which point PNC became the owner and servicer of the Loan. | • PNC Declaration, ¶ 8. |
| 5. On or about July 30, 2010, PNC and American Servicing and Recovery Group, LLC ("ASRG") entered into a "Non-Performing" Loan Purchase and Interim Servicing Agreement (the "Purchase Agreement") whereby PNC sold, for valuable consideration, a pool of loans (the "Pool"), including the Loan, to ASRG. | • PNC Declaration, ¶ 9, **Exhibit 4**. |
| 6. Under the Purchase Agreement, PNC | • PNC Declaration, ¶¶ 9, 10, **Exhibit** |

Case 2:18-cv-07827-MWF-PVC   Document 75-1   Filed 11/18/19   Page 3 of 11   Page ID #:730

| | |
|---|---|
| agreed to serve as an "Interim Servicer" of the Loan until September 1, 2010 (the "<u>Interim Servicing Period</u>"). | 4, ¶¶ 4.2 ["Appointment"]; 1.1(v) ["Interim Servicing Period"], 1.1(kk) ["Servicing Transfer Date"]. |
| 7. At the request of ASRG, on or about August 12, 2010, PNC executed an Assignment of Deed of Trust (the "<u>Assignment</u>") to Dreambuilder Investments, LLC ("<u>DBI</u>"). | • PNC Declaration, ¶ 11, **Exhibit 5**.<br>• Request for Judicial Notice ("RJN"), **Exhibit 1**. |
| 8. Pursuant to DBI's instructions, within 30 days of the July 30, 2010 closing date of the Purchase Agreement, on or about August 25, 2010, PNC sent the original collateral file for the Loan, which included the original Note and Deed of Trust, to DBI's custodian, U.S. Bank. | • PNC Declaration, ¶¶ 12, 13, **Exhibit 6**. |
| 9. PNC maintained a spreadsheet (the "Manifest") identifying the recipients of the collateral files of loans within the Pool. | • PNC Declaration, ¶ 13, **Exhibit 6**. |
| 10. The Manifest identified U.S. Bank as the recipient of the collateral file for the subject Loan. | • PNC Declaration, ¶ 13, **Exhibit 6**. |
| 11. After the sale of the Loan pursuant to the Purchase Agreement, PNC no longer held any ownership or other interest in the Loan, with the exception of the servicing rights during the Interim Servicing Period. | • PNC Declaration, ¶ 14. |
| 12. Following the conclusion of the Interim Servicing Period, PNC had no remaining right, title, or interest in the Loan. | • PNC Declaration, ¶ 14. |
| | |

3   Case No. 2:18-cv-07827-MWF-FFM
STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
1503141.1

| | | |
|---|---|---|
| | 13. On September 1, 2010, PNC mailed a "goodbye letter" (the "Goodbye Letter") to Mr. Dreher wherein it gave notice of the transfer of servicing rights to the Loan from PNC to DBI. | • PNC Declaration, ¶¶ 15-17, **Exhibits 7 and 8**. |
| | 14. The letter was mailed to Mr. Dreher's address at 23210 S. Cave Bay Rd., P.O. Box 400, Worley, Idaho, 83876 (the "Worley Idaho Address"). | • PNC Declaration, ¶¶ 15, 17, **Exhibit 8**. |
| | 15. Because the Loan was sold as part of a bulk-loan sale to the same purchaser (ASRG), PNC did not retain original copies of the Goodbye Letters for all of the loans that were included in the Pool. | • PNC Declaration, ¶ 16. |
| | 16. Instead, PNC retained a sample copy of the letter it sent to borrowers within the Pool. | • PNC Declaration, ¶ 16, **Exhibit 7**. |
| | 17. PNC maintained a spreadsheet (the "Spreadsheet") that identifies the borrowers within the Pool (together with their addresses) to whom it mailed Goodbye Letters. | • PNC Declaration, ¶ 17, **Exhibit 8**. |
| | 18. Mr. Dreher is included on the Spreadsheet and his address is identified as the Worley Idaho Address. | • PNC Declaration, ¶ 17, **Exhibit 8**. |
| | 19. Mr. Dreher's inclusion on the Spreadsheet evidences that he was sent a Goodbye Letter at the Worley Idaho Address. | • PNC Declaration, ¶ 17, **Exhibit 8**. |
| | 20. Neither the Note nor the Deed of Trust obligate PNC to give notice of the Assignment or transfer of ownership of the Loan. | • PNC Declaration, ¶ 5, **Exhibits 1 and 2**. |

| | |
|---|---|
| 21. After the sale of the Loan to DBI, on August 5, 2010, Plaintiffs filed a Chapter 11 bankruptcy petition in U.S. Bankruptcy Court for the District of Idaho and identified the Loan in their petition (the "<u>Bankruptcy</u>"). | • PNC Declaration, ¶ 9.<br>• RJN, **Exhibit 2**. |
| 22. PNC did not receive notice of the petition or any filings in the Bankruptcy. | • PNC Declaration, ¶ 18. |
| 23. PNC did not file a Proof of Claim in the Bankruptcy or authorize any person or entity to file a Proof of Claim in the Bankruptcy on its behalf. | • PNC Declaration, ¶ 18. |
| 24. By Plaintiffs' own admission, on September 1, 2010, Green Tree Servicing LLC ("<u>Green Tree</u>") provided notice to Plaintiffs that it was servicing the Loan. | • Mosothoane Declaration, ¶ 2, **Exhibit A**, Response to Interrogatory No. 7, pg. 22, lines 15, 16. |
| 25. Thereafter, on October 26, 2010, Green Tree filed a proof of claim (the "<u>POC</u>") in the Bankruptcy in connection with the Loan. | • RJN, **Exhibit 3**. |
| 26. The POC does not identify PNC as the "creditor"[1] for the Loan or otherwise reflect that it was filed on PNC's behalf. | • RJN, **Exhibit 3**. |
| 27. In fact, the creditor field in the POC is blank. | • RJN, **Exhibit 3**. |
| 28. PNC was only referenced in Item 3a of | • RJN, **Exhibit 3**. |

---

[1] The term "creditor" is generally defined under the Bankruptcy Code as an entity with a claim against the debtor or the debtor's estate. *See* 11 U.S.C. § 101(10). In turn, a "claim" is defined as a "right to payment" or a "right to an equitable remedy." 11 U.S.C. § 101(5).

| | | |
|---|---|---|
| | the POC relating to how the debtor may have scheduled the account. | |
| 29. | According to the instructions for the proof of claim form, Item 3a reports "a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between [the] proof of claim and the claim as scheduled by the debtor." | • RJN, **Exhibit 4**. |
| 30. | At no point in time did PNC authorize Green Tree to act as its agent with respect to the Loan. | • PNC Declaration, ¶ 18. |
| 31. | Nor did PNC authorize Green Tree to file the POC. | • PNC Declaration, ¶ 18.<br>• RJN, **Exhibit 3**. |
| 32. | PNC took no affirmative steps during the Bankruptcy to assert an ownership or any other interest in the Loan. | • PNC Declaration, ¶ 19. |
| 33. | PNC did not solicit payments from Plaintiffs during the Bankruptcy. | • PNC Declaration, ¶ 20. |
| 34. | PNC never informed Plaintiffs that Green Tree was its servicing agent. | • PNC Declaration, ¶ 21. |
| 35. | The POC indicated that all notices related to the claim should be sent to Green Tree. | • RJN, **Exhibit 3**. |
| 36. | The POC also indicated that all payments under the Loan should be sent to Green Tree. | • RJN, **Exhibit 3**. |
| 37. | On August 28, 2012, Plaintiffs filed a Fourth Amended Chapter 11 Plan (the | • RJN, **Exhibit 5**. |

| | | |
|---|---|---|
| 1 | "<u>Bankruptcy Plan</u>"). | |
| 2-5 | 38. The Bankruptcy Plan: (1) acknowledged that Green Tree was the entity asserting a claim on account of the Loan; and (2) converted the Lien from a secured interest to an impaired unsecured debt. | • RJN, **Exhibit 5**, pg. 12. |
| 6-9 | 39. On December 18, 2012, the Bankruptcy Plan was confirmed and the Bankruptcy Court ordered a discharge as of August 28, 2012 upon completion of the Bankruptcy Plan. | • RJN, **Exhibit 6**. |
| 10-12 | 40. On February 27, 2018, the Bankruptcy Court entered a discharge order. | • RJN, **Exhibit 7**. |
| 13-21 | 41. Despite Green Tree's notice in the POC, Plaintiffs sent monthly payments of $360.26 each to PNC in February, March, April and May of 2013 (the "<u>Checks</u>"). | • PNC Declaration, ¶ 22, **Exhibit 9**.<br>• Mosothoane Declaration, ¶ 2, **Exhibit A**, Response to Interrogatory No. 17, pg. 32, lines 2-4.<br>• Mosothoane Declaration, ¶ 3, **Exhibit B**, Response to Request for Genuineness of Documents, pg. 35, lines 8-11, 17.<br>• Mosothoane Declaration, ¶ 4, **Exhibit C**.<br>• RJN, **Exhibit 3**. |
| 22-26 | 42. PNC, unaware that Green Tree was the servicer of the Loan, cashed the Checks and reissued payments to DBI (the "<u>Reissued Checks</u>"). | • PNC Declaration, ¶ 23, **Exhibit 10**.<br>• Mosothoane Declaration, ¶ 3, **Exhibit B**, Response to Request for Genuineness of Documents, pg. 35, lines 8-11, 17.<br>• Mosothoane Declaration, ¶ 4, **Exhibit C**. |
| 27-28 | 43. PNC then received the cancelled Reissued Checks reflecting that they | • PNC Declaration, ¶ 23, **Exhibit 10**. |

| | |
|---|---|
| were negotiated by DBI. | |
| 44. PNC returned other payments made by Plaintiffs in late 2013 and early 2014 because it was no longer the servicer of the Loan. | • Mosothoane Declaration, ¶ 5, **Exhibit D**, Bates Number P001015, P001016, P001021, and P001024. |
| 45. In 2017, during the pendency of the Bankruptcy, Plaintiffs mailed checks to Land Home Financial Services, Inc. ("Land Home"). | • Mosothoane Declaration, ¶ 5, **Exhibit D**, Bates Number P001035 and P001036. |
| 46. Land Home returned some checks to Plaintiffs because the servicing of the Loan had been transferred to another entity. | • Mosothoane Declaration, ¶ 5, **Exhibit D**, Bates Number P001035 and P001036. |
| 47. Then, on or about September 25, 2017, ClearSpring Loan Services, Inc. ("ClearSpring") notified Mr. Dreher that it was the new servicer of the Loan. | • Mosothoane Declaration, ¶ 5, **Exhibit D**, Bates Number P001039, P001040, P001041, and P001042. |
| 48. The September 25, 2017 letter from ClearSpring identified "JH Capital V.I., Inc. – Liberty" as the investor for the Loan. | • Mosothoane Declaration, ¶ 5, **Exhibit D**, Bates Number P001039. |
| 49. On March 24, 2017, DBI recorded the Assignment. | • RJN, **Exhibit 1**.<br>• Mosothoane Declaration, ¶ 3, **Exhibit B**, Response to Request for Admission No. 22, pg. 20, lines 21-24. |
| 50. Since PNC had sold its interest in the Loan in 2010, PNC was unaware of the recorded Assignment until Plaintiffs filed this lawsuit. | • PNC Declaration, ¶ 24. |
| | |

| | | |
|---|---|---|
| 51. | Plaintiffs allege they learned of the recorded Assignment when they attempted to sell the Property on or about June 2018. | • Mosothoane Declaration, ¶ 2, **Exhibit A**, Response to Interrogatory No. 5, pg. 21, lines 1, 2, 10, 11. |
| 52. | Accordingly, on June 20, 2018, Plaintiffs sent DBI a letter demanding a reconveyance deed or payoff demand. | • Mosothoane Declaration, ¶ 3, **Exhibit B**, Response to Request for Admission No. 36, pg. 34, lines 14-18.<br>• RJN, **Exhibit 8,** Plaintiffs' Complaint, Dkt. 1, ¶ 20 and Exhibit G. |
| 53. | Despite the letter from Plaintiffs, DBI did not release the Lien and Plaintiffs filed this lawsuit. | • RJN, **Exhibit 8,** Plaintiffs' Complaint, Dkt. 1, ¶ 20.<br>• RJN, **Exhibit 10,** Minute Order, Dkt. 69, pg. 3, ¶ 2. |
| 54. | On September 7, 2018, Plaintiff commenced this action by filing a complaint (the "<u>Complaint</u>") against PNC and DBI alleging the Lien clouded title, prevented them from concluding the sale of the Property, and caused other consequential damages. | • RJN, **Exhibit 8,** Plaintiffs' Complaint, Dkt. 1, ¶¶ 19, 29, 32. |
| 55. | On September 27, 2019, the Court granted Plaintiffs' motion to expunge the Lien. | • RJN, **Exhibit 9,** Plaintiffs' Motion for Partial Summary Judgment, Dkt. 56.<br>• RJN, **Exhibit 10**, Minute Order, Dkt. 69, pg. 1, ¶ 3. |
| 56. | PNC did not oppose Plaintiffs' motion for expungement of the Lien because it has had no interest in the Lien since July 30, 2010. | • RJN, **Exhibit 11,** PNC's Notice of Non-Opposition, Dkt. 58. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**
1503141.1

## II. CONCLUSIONS OF LAW

1. A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

2. The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex*, 477 U.S. at 323. Once such a showing has been made, the non-moving party must demonstrate the existence of a genuinely disputed fact by citing "to particular parts of material in the record" or "showing that the materials cited [by the movant] do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c).

3. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat a motion for summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Moreover, mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude the use of summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). Finally, not every disputed factual issue is material in light of the substantive law that governs the case. Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

4. Cancellation of a lien is not a stand-alone claim and must fail because Plaintiffs' three other claims against PNC cannot lie. This Court granted Plaintiffs' motion for expungement of the lien. Moreover, PNC ceased having an interest in the Loan and Lien in 2010, seven years before DBI recorded the Assignment. Furthermore, Plaintiffs were not a party to the loan purchase agreement providing for

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
1503141.1

the transfer of the Loan.  For these reasons, PNC is not liable for the cancellation of lien claim.

5. The Assignment was recorded by DBI, not PNC. Furthermore, PNC had no duty to notify Plaintiffs of the Assignment and, even if it did, failure to provide notice is not an act of publication. In addition, PNC did not authorize Green Tree to file the POC on its behalf or to otherwise act as its servicing agent with respect to the Loan. Moreover, filing of the POC did not cloud Plaintiffs' title. Finally, the slander of title claim is time-barred.  Accordingly, PNC is not liable for slander of title.

6. PNC did not make any misrepresentations regarding the Assignment where there was no duty owed to Plaintiffs. Also, despite Green Tree's instructions in October 2010 that payments should be sent to Green Tree, as the new servicer of the Loan, Plaintiffs sent payments to PNC in 2013 and 2014. PNC forwarded the unsolicited payments to DBI or returned payments to Plaintiffs. PNC did not cloud Plaintiffs' title to the Property because it did not record the Assignment. Additionally, it was unreasonable for Plaintiffs to rely on PNC's alleged acceptance of payment for they were notified through the POC that payments should be sent to Green Tree. Finally, the fraud clam is time-barred. Thus, PNC is not liable for fraud.

7. Plaintiffs' motion to expunge the Lien was granted, thereby resulting in a declaration of Plaintiffs' superior title and interest to the Property. Consequently, PNC is not liable under the declaratory relief claim.

8. There are no genuine disputes as to any material fact and therefore PNC is entitled to judgment in its favor as a matter of law.

DATED:  November 18, 2019   **McGLINCHEY STAFFORD**

By: */s/ Helen Mosothoane*
     BRIAN A. PAINO
     HELEN MOSOTHOANE
Attorneys for *Defendant* **PNC BANK, N.A., sued erroneously as THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, successor by merger to NATIONAL CITY BANK**

11   Case No. 2:18-cv-07827-MWF-FFM
**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

1503141.1