Daniel L. Rottinghaus, California Bar No. 131949
Scott M. Mackey, California Bar No. 222217
Seema N. Kadaba, California Bar No. 304952
**BERDING & WEIL LLP**
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
Telephone:    925/838-2090
Facsimile:    925/820-5592
drottinghaus@berdingweil.com
smackey@berdingweil.com
skadaba@berdingweil.com

Attorneys for Plaintiffs
STEPHEN and MELINDA DREHER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN and MELINDA DREHER,<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK N.A., a Pennsylvania Corporation, successor by merger to/with National City Bank; DREAMBUILDER INVESTMENTS, LLC, A New York limited liability company; AMERICAN SERVICING AND RECOVERY GROUP LLC, a Texas limited liability company; and DOES 1-50,<br><br>Defendant. | No. 2:18-cv-07827<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>1. **Slander of Title;**<br>2. **Violations of Civil Code § 2941;**<br>3. **Violations of Civil Code § 2937 and U.S. Code § 2605;**<br>4. **Negligence;**<br>5. **Intentional Interference with Prospective Economic Advantage;**<br>6. **Fraud; and**<br>7. **Declaratory Relief**<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFFS Stephen and Melinda Dreher (hereinafter "PLAINTIFFS") hereby claim as follows against Defendant PNC BANK N.A., successor by merger to/with National City Bank (hereinafter "PNC"), Defendant DREAMBUILDER INVESTMENTS, LLC (hereinafter "DreamBuilder"), AMERICAN SERVICING AND RECOVERY GROUP LLC (hereinafter "ASG"), and DOES 1 through 50, inclusive:

///

# THE PARTIES

1. PLAINTIFFS were, and now are, individuals owning real property in the City of Los Angeles, County of Los Angeles, and State of California. PLAINTIFFS are the owners of a single-family residence located at 546 North Highland Avenue, Los Angeles, California, 90036 (hereinafter the "Subject Property").

2. Defendant PNC is, and at all times was, a Pennsylvania corporation providing financial services in the form of underwriting and financing mortgages in the County of Los Angeles, State of California, with its principal place of business within the County of Allegheny, 300 Fifth Avenue, Pittsburgh, Pennsylvania.

3. Defendant DreamBuilder is, and at all times was, a New York limited liability company and is a private mortgage investment company which specializes in the acquisition, management, and liquidation of defaulted mortgages, including in the County of Los Angeles, State of California, with its principal place of business within the County of New York, 300 Wall Street, 5th Floor, New York, New York.

4. Defendant ASG is, and at all times was, a Texas limited liability company and is a business working in the credit sector, focused on mortgage banks and loan correspondents, and providing managerial services for loans, including collecting the mortgage payments and handling business interactions with the borrower throughout the country, including in the County of Los Angeles, State of California, with its principal place of business within the County of Travis, 206 East 9th Street, Suite 1300, Austin, Texas.

5. PLAINTIFFS are informed and believe, and upon such information and belief allege, that DOES 1 through 50, and each of said DOE Defendants being associations, alter egos, partnerships, corporations, and/or individuals, are and were agents, successors-in-interest, affiliates, employees of Defendants (collectively referred to as "DOE Defendants"). Defendants and DOE Defendants are collectively referred to as "Defendants".

///
///
///

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over PLAINTIFFS' claims pursuant to 28 U.S.C. § 1331, as PLAINTIFFS are requesting enforcement of several Orders from the United States Bankruptcy Court, District of Idaho, under 11 U.S. Code § 502(g), 502(h), or 502(i) ("Bankruptcy Orders").

7. This Court has original jurisdiction over PLAINTIFFS' claims pursuant to 28 U.S.C. § 1332, as PLAINTIFFS are domiciled in California, PNC is a Pennsylvania corporation, and DreamBuilder is a New York limited liability company, ASG is a Texas limited liability company, and PLAINTIFFS claim damages in excess of $75,000.00.

8. PLAINTIFFS' state law claims are so related to those under which this Court has original jurisdiction that they form part of the same case and controversy. Supplemental jurisdiction is therefore appropriate over PLAINTIFFS' remaining claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 29 U.S.C. § 1391(b), because the events giving rise to the claims made herein occurred in this Judicial District and the Subject Property that is subject to this action is situated in this Judicial District.

## STATEMENT OF FACTS

10. PLAINTIFF Melinda Dreher was gifted the Subject Property on January 24, 2000. On April 15, 2004, PLAINTIFF Melinda Dreher transferred title to the Subject Property to PLAINTIFFS (husband and wife), as joint tenants. On April 25, 2007, a Deed of Trust for security of a non-purchase money loan was recorded against the Subject Property in the name of National City Bank for $350,000.00 ("Deed of Trust" or the "Lien").

11. On or about October 24, 2008, PNC purchased National City Bank and PNC succeeded to the rights under and pursuant to the Lien.

12. Much like many others, PLAINTIFFS began experiencing financial distress in 2008.

13. On or about July 30, 2010, unbeknownst to PLAINTIFFS, PNC sold the interest to this Lien to ASG in a bulk "Non-Performing Loan Purchase and Interim Servicing Agreement."

1  PNC remained the interim servicer for the Lien and DreamBuilder served as the Guarantor on
2  behalf of ASG. PNC never provided notice of the sale to PLAINTIFFS, although it retained the
3  role of interim servicer. ASG never provided notice to PLAINTIFFS. DreamBuilder never
4  provided notice to PLAINTIFFS.

5        14. On or about August 5, 2010, PLAINTIFFS filed for Bankruptcy under Chapter 11
6  listing PNC as a creditor. On or about October 26, 2010, Green Tree Servicing LLC (hereinafter
7  "Green Tree") took over the servicing of the Lien. On October 26, 2010, the Bankruptcy Court
8  accepted a Proof of Claim from Green Tree, asserting the Lien, listing PNC as the creditor, in the
9  amount of $348,256.43. The Proof of Claim was submitted and included in all of the
10 PLAINTIFFS' Bankruptcy filings. (A copy of the *Proof of Claim* is attached hereto as **Exhibit**
11 **"A"** and incorporated herein by reference.) PNC never provided notice of the sale of the Lien to
12 ASG to PLAINTIFFS or the Bankruptcy Court.

13       15. On August 28, 2012, PLAINTIFFS submitted a "Fourth Amended Chapter 11 Plan
14 and Related Motions" (hereinafter the "Plan") to the United States Bankruptcy Court, District of
15 Idaho. The Plan defined all claims as "any right to payment or right to an equitable remedy against
16 Debtors for breach of performance if such breach gives rise to a right to payment, whether or not
17 such right to payment or right to equitable remedy is reduced to judgment, or whether liquidated
18 or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or
19 unsecured." The Plan placed all allowed claims and allowed interest in specific classes. The Plan
20 designated the Lien as a "Class 7" claim of "National City Bank purportedly made by Green Tree
21 Servicing, LLC in the principal amount of approximately $348,256.43, plus reasonable attorneys'
22 fees and costs and unpaid interest." The Plan converted the Lien from a secured interest to an
23 impaired unsecured debt.

24     The Plan provided, in relevant part, that:

25     a. This "Class 7" claim was placed in the "Class 8" payment category consisting "of
26 all the remaining allowed unsecured claims in the estate [including] . . . $348.256.43 that is
27 unsecured from Class 7."

28 ///

PLAINTIFFS' FIRST AMENDED COMPLAINT

BERDING & WEIL, LLP
2175 N California Blvd Suite 500
Walnut Creek, California 94596

  b. This "Class 7" claim was classified as "wholly unsecured and will be paid as a general unsecured creditor in Class 8."

  c. "[T]he unsecured claims shall be those allowed claims scheduled by the Debtors that are not disputed, contingent, or unliquidated, and those allowed claims filed before the bar date. If an objection has been raised to an otherwise allowed claim, the claim will be allowed in the amount determined by the Court. These creditors shall be paid over a period of 5 years, from the income of the Debtors consistent with this Plan and the "Best Interests of Creditors" test and "Liquidation Analysis" contained in Debtors' Disclosure. Debtors will pay general unsecured creditors approximately $114,969.00 in monthly payments over the life of the Plan, which is approximately 11.6% of their total claims value. Debtors will pay general unsecured creditors according to the following schedule: Month 1 through 15 of the Plan - $1,028.00; Month 16 through 24 of the Plan - $1,245.00; and Month 25 through 60 of the Plan - $2,454.00." (A copy of the Plan is attached hereto as **"Exhibit "B"** and incorporated herein by reference.)

16. On December 18, 2012, the United States Bankruptcy Court, District of Idaho, confirmed PLAINTIFFS' Plan and ordered that completion of the Plan would act as a discharge effective as of the effective date of the Plan of (i) any and all claims arising or occurring prior to the effective date, and (ii) any and all claims of the kind specified in § 502(g), 502(h), or 502(i) of the Code (hereinafter "Confirmation Order"). The Bankruptcy Court held that by terms of the Plan, after completion therein, all property of the estate shall be vested in the Debtors "free and clear" of any and all claims of interest of Creditors, except as is provided in the Plan. (A copy of the *Confirmation Order* is attached hereto as **Exhibit "C"** and incorporated herein by reference.) This Confirmation Order effectively stripped the lien from the Subject Property upon completion of the Plan.

17. PLAINTIFFS adhered to the Plan and completed all of its requirements, including making sixty (60) monthly payments, eleven (11) of which were sent to PNC, on its unsecured mortgage on the Subject Property. On February 27, 2018, the United States Bankruptcy Court, District of Idaho signed an Order granting a discharge under 11 U.S.C. § 1141(d)(5) (hereinafter "Discharge Order") to PLAINTIFFS. PNC and Green Tree were provided a copy of the Discharge

Order. (A copy of the *Discharge Order* is attached hereto as **Exhibit "D"** and incorporated herein by reference.) Upon entry of the Discharge Order, the Lien was effectively stripped from the Subject Property.

18. On March 1, 2018, the United States Bankruptcy Court, District of Idaho signed an Order granting the Stipulated Motion to Close the Case (hereafter "Closing Order"). PNC and Green Tree were provided a copy of the Closing Order. (A copy of the *Closing Order* is attached hereto as **Exhibit "E"** and incorporated herein by reference. All Orders previously mentioned shall be referred to hereinafter as "Bankruptcy Orders".)

19. At no time during the Bankruptcy proceedings, or during the implementation of the Plan and PLAINTIFFS' compliance with the Plan requirements, or subsequent Bankruptcy Orders, did PNC ever reveal that it had, prior to the bankruptcy filing, sold the Lien to ASG or that it assigned the Lien to DreamBuilder.

20. Despite the alleged sale and assignment having been completed sometime between July 30, 2010 and August 12, 2010, pursuant to the bulk sale to ASG, DreamBuilder did not record the assignment until <u>March 24, 2017</u>. (A copy of the purported *Assignment of the Deed of Trust,* along with the *Proof of Filing/Recording,* is attached hereto as **Exhibit "F"** and incorporated herein by reference.) DreamBuilder did not provide notice to PLAINTIFFS of the recording of the purported assignment.

21. After PLAINTIFFS completed the Plan and received the Confirmation and Closing Orders from the Bankruptcy Court, in or about June 2018, PLAINTIFFS attempted to sell and transfer title to the Subject Property before interest rates increased and to take advantage of the appreciated property value in the market. Because they were going to sell the Subject Property, PLAINTIFFS did not renew the lease with its existing tenants. PLAINTIFFS received several offers to purchase the Subject Property, but were unable to conclude a sale because of the Lien impairing the marketability of title to the Subject Property.

22. Despite the impairment, PLAINTIFFS continued a negotiation with a proposed buyer offering to pay $2.175 million for the Subject Property. On June 20, 2018, PLAINTIFFS sent DreamBuilder a letter demanding a release of the Lien on the Subject Property, pursuant to

Civil Code § 2941. DreamBuilder acknowledged receipt of this letter on June 26, 2018. (A copy of the *Letter and Acknowledgement* is attached hereto as **Exhibit "G"** and incorporated herein by reference.) DreamBuilder never responded. DreamBuilder did not remove the Lien. PNC did not remove the Lien. ASG did not remove the Lien. The Lien remained on the Subject Property and prevented PLAINTIFFS from concluding any sale.

23. As a result, in or about July 2018, PLAINTIFFS lost the potential buyer and sale. On July 20, 2018, the First American Title Company (the "Title Company") sent DreamBuilder a request for a Payoff Demand Letter, requesting DreamBuilder provide evidence of any legitimate interest in the Subject Property and, if not, to provide a Deed of Reconveyance, discharging the Lien recorded on the Subject Property. Again, DreamBuilder never responded.

24. On or about August 2018, PLAINTIFFS received another offer from a prospective buyer for the SUBJECT PROPERTY in the amount of $2,056,000.00. PLAINTIFFS attempted to work with the Title Company to overcome the title defect, however, they could not proceed with the Lien on the Subject Property.

25. PLAINTIFFS' attempts at contacting DreamBuilder to demand removal of the Lien proved unsuccessful. DreamBuilder ignored such requests and failed to respond. PLAINTIFFS were able, through this Court, to obtain expungement of the Lien; however, the loss of the sale, the underlying costs associated with Defendants' conduct, the physical, mental, and emotional distresses experienced as a result of the same, remain.

## FIRST CAUSE OF ACTION

**(For Slander of Title Against All Defendants)**

26. PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 25 above.

27. PNC failed to inform PLAINTIFFS of the purported assignment to DreamBuilder, failed to inform the Bankruptcy Court of its assignment, collected eleven (11) payments from PLAINTIFFS during the payment period, failed to inform GreenTree that it was not the holder of the Lien, failed to inform DreamBuilder of the Bankruptcy Orders that stripped the Lien from the Subject Property, and failed to advise the Bankruptcy Court that it did not have an interest in the

-7-

Lien and was no longer a creditor with any interest in the same. A violation of a bankruptcy stay is willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay, including allowing the court to continue to hold the belief that the creditor had a right to the property.

28. The actions of PNC, ASG, and DreamBuilder impaired PLAINTIFFS' ability to market the Subject Property due to improper conduct, resulting in an improper recording of the Lien, an encumbrance that should not have existed. Damages are the loss caused by prevention of the sale and loss caused by deprivation of opportunity to sell to a particular purchaser. The actions of Defendants resulted in the filing of an encumbrance on the Subject Property without justification or authorization, thereby thwarting the sale of the Subject Property.

29. PNC's actions resulted in DreamBuilder having an assignment of the Lien that falsely claims an interest in the Subject Property, despite the Bankruptcy Orders discharging the Lien. PLAINTIFFS have lost a certain buyer and have been unable to sell the Subject Property.

30. WHEREFORE, PLAINTIFFS pray for judgment against all Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(For Statutory Violations of Civil Code § 2941 Against ASG and DOES 1 through 50, inclusive)**

31. PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 30 above.

32. Under Civil Code § 2941, within 30 calendar days after the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust.

33. The trustee shall execute the full reconveyance and shall record or cause it to be recorded in the office of the county recorder in which the deed of trust is recorded within 21 calendar days after receipt by the trustee of the request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees, and other documents as may be necessary to

reconvey, or cause to be reconveyed, the deed of trust.

34. The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation and shall require that the violator forfeit to that person the sum of five hundred dollars ($500).

35. ASG and DreamBuilder failed to comply with the above noted statutory requirements. The legislative intent behind this statutory scheme favors liberal construction to protect all persons falling within their purview.

36. All Defendants owed a duty to PLAINTIFFS under the statute to provide the reconveyance once the debt was satisfied. No party provided the same and PLAINTIFFS were forced to file the instant action to expunge the Lien. PLAINTIFFS were entitled to expect Defendants to perform by statute and the omission of which resulted in harm to PLAINTIFFS. As such, all damages sustained resulting from these violations are recoverable.

37. Civil Code § 2941(d) authorizes the recovery of damages when a party has breached a contractual duty to reconvey a deed of trust based on a tort theory of damages. Here, the offending act is the <u>failure</u> to remove the Lien. As such, loss caused by prevention of a particular sale and loss caused by deprivation of opportunity to sell to a particular purchaser are recoverable.

38. Moreover, as a result of these violations, PLAINTIFFS have experienced worry, frustration, anger, and sleeplessness due to the failure to execute and deliver the request for reconveyance for over a year. PLAINTIFFS are both suffering from fright, nervousness, grief, anxiety, worry, mortification, shock, and humiliation, resulting in physical pain including, but not limited to, irregular heart beat and demonstrated atrial fibrillation.

39. PLAINTIFFS are entitled to recovery for all damages resulting from a violation of Civil Code § 2941, including economic damages, as well as damages arising out of physical, emotional, and mental distress.

40. WHEREFORE, PLAINTIFFS pray for judgment against all Defendants as hereinafter set forth.

///

BERDING & WEIL, LLP
2175 N California Blvd Suite 500
Walnut Creek, California 94596

## THIRD CAUSE OF ACTION

### (For Violations of Civil Code § 2937 and U.S. Code § 2605 Against ASG and DOES 1 through 50, inclusive)

41.     PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 40 above.

42.     Under Civil Code § 2937, any person transferring the servicing of indebtedness as provided in subdivision (a) to a different servicing agent and any person assuming from another responsibility for servicing the instrument evidencing indebtedness, shall give written notice to the borrower or subsequent obligor before the borrower or subsequent obligor becomes obligated to make payments to a new servicing agent.

43.     The Legislature declared that borrowers or subsequent obligors have the right to know when a person holding a promissory note, bond, or other instrument transfers servicing of the indebtedness secured by a mortgage or deed of trust on real property containing one to four residential units located in this state. The Legislature also finds that notification to the borrower or subsequent obligor of the transfer may protect the borrower or subsequent obligor from fraudulent business practices and may ensure timely payments. It was the intent of the Legislature in enacting this section to mandate that a borrower or subsequent obligor be given written notice when a person transfers the servicing of the indebtedness on notes, bonds, or other instruments secured by a mortgage or deed of trust on real property containing one to four residential units and located in this state.

44.     The notices required must be sent by first-class mail, postage prepaid, to the borrower's address designated for loan payment billings. PNC served as the original servicer of the Deed of Trust. PNC then sold the instrument to ASG; however, PNC remained the interim servicer. PNC never provided notice to PLAINTIFFS. GreenTree took over the servicing of the Deed of Trust and neither PNC nor GreenTree provided notice to PLAINTIFFS of this transfer in servicing.

45.     Under U.S. Code § 2605(b), a servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to

any other person. The notice shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan.

46. ASG failed to provide the required notice to PLAINTIFFS of the change in servicing from PNC to GreenTree.

47. Failure to comply with these provisions has resulted in harm to PLAINTIFFS. Under U.S. Code § 2605(f), PLAINTIFFS are entitled to recover actual damages resulting from this failure, as well as additional damages, as the court may allow. In addition to these amounts, in the case of any successful action under this section, the costs of the action, together with any attorneys' fees incurred in connection with such action, are recoverable.

48. WHEREFORE, PLAINTIFFS pray for judgment against all Defendants as hereinafter set forth.

## **FOURTH CAUSE OF ACTION**

### **(For Negligence Against ASG and DOES 1 through 50, inclusive)**

49. PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 48 above.

50. Defendants owed a duty to PLAINTIFFS to provide notice of any change in servicing, as required under the statute schemes noted above.

51. ASG failed to provide notice to PLAINTIFFS of the change in servicing to GreenTree.

52. As a result of the breach of these duties, PLAINTIFFS were harmed and ASG contributed to this harm, as PLAINTIFFS were unable to obtain the rights bargained for under the Bankruptcy Orders, lost the ability to sell their home before the October 2018 date when the first priority lien payments would increase, and incurred thousands of dollars of expenses in expunging the lien and obtaining new lessees for the Subject Property.

53. WHEREFORE, PLAINTIFFS pray for judgment against all Defendants as hereinafter set forth.

///

///

## FIFTH CAUSE OF ACTION

**(For Intentional Interference with Prospective Economic Advantage**

**Against ASG, DreamBuilder, and DOES 1 through 100, inclusive)**

54. PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 53 above.

55. PLAINTIFFS were in the midst of a potential sale of the Subject Property, with economic benefit to PLAINTIFFS, and DreamBuilder knew of this relationship based on the demand letters sent by PLAINTIFFS and the Title Company. DreamBuilder intentionally ignored the demands for a Deed of Reconveyance, with the intent to disrupt PLAINTIFFS' sale of the Subject Property and leverage DreamBuilder's and DOES 1-50's position for a payment that is not due. This resulted in an actual disruption of the potential sale, as PLAINTIFFS could not provide marketable title and lost the sale, resulting in economic harm to PLAINTIFFS caused by DreamBuilder's failure to abide by the Bankruptcy Orders.

56. WHEREFORE, DreamBuilder and DOES 1-50 owe PLAINTIFFS damages for the monies they would have received but for the unfounded lien claim of interest and interference in the Subject Property. DreamBuilder's and DOES 1-50's conduct was done with fraud, malice, and oppression with intent to harm PLAINTIFFS. In addition to recovery of PLAINTIFFS' damages, PLAINTIFFS are entitled to exemplary/punitive damages for the sake of example and by way of punishing DreamBuilder and DOES 1-50.

## SIXTH CAUSE OF ACTION

**(For Fraud Against PNC, DreamBuilder, and DOES 1 through 50, inclusive)**

57. PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 56 above.

58. PNC was served during the Bankruptcy Proceeding with all Bankruptcy Orders. Despite being on notice of the Bankruptcy proceedings, PNC purportedly did not inform ASG, GreenTree, or DreamBuilder of the status of the Lien it allegedly assigned to DreamBuilder, nor did PNC inform PLAINTIFFS of the purported assignment. PNC failed to inform the Bankruptcy Court of its assignment and collected eleven (11) payments from PLAINTIFFS during the

payment period, without following up with PLAINTIFFS as to these payments and without responding to PLAINTIFFS' many attempts to obtain answers from PNC. PNC used deceit and dishonest means to continue to obtain payment from PLAINTIFFS to PLAINTIFFS' detriment and this wrongful act caused PLAINTIFFS to file suit to remove the Lien. PNC committed a willful violation of the bankruptcy stay because PNC knew of the automatic stay and intentionally performed the actions that violated the stay, including allowing the court to continue to hold the belief that the creditor had a right to the Subject Property or associated Lien.

59. DreamBuilder used deceit and dishonest means, by recording an assignment on the Subject Property, contrary to the Bankruptcy Orders, and by failing to provide a Deed of Reconveyance, and by failing to respond to the demand letters from PLAINTIFFS and the Title Company, despite having been provided the Bankruptcy Orders stripping the Lien from the Subject Property. By failing to remove the Lien, DreamBuilder constructively and effectively continues to assert a claim of interest against the Subject Property for the purposes of obtaining further payment or consideration from PLAINTIFFS, despite knowing that PLAINTIFFS do not owe any further payment. DreamBuilder deceitfully recorded its assignment of the Lien and dishonestly continues to claim an unfounded interest in the Subject Property, in violation and in direct disregard of the Bankruptcy Orders.

60. WHEREFORE, Defendants owe PLAINTIFFS damages for the monies they would have received but for the fraudulent acts committed by PNC, DreamBuilder, and DOES 1 through 50, inclusive, as set forth above. This conduct was done with fraud, malice, and oppression with intent to harm PLAINTIFFS. In addition to recovery of PLAINTIFFS' damages, PLAINTIFFS are entitled to exemplary/punitive damages for the sake of example and by way of punishing these bad actors.

### SEVENTH CAUSE OF ACTION

**(For Declaratory Relief Against All Defendants)**

61. PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 60 above.

///

BERDING & WEIL, LLP
2175 N California Blvd Suite 500
Walnut Creek, California 94596

PLAINTIFFS' FIRST AMENDED COMPLAINT

62. A present controversy exists between PLAINTIFFS and Defendants regarding the duties owed to PLAINTIFFS and the liabilities resulting therein.

63. PLAINTIFFS seek a declaration of rights, including any claims under the causes of action as described above.

64. WHEREFORE, PLAINTIFFS pray for judgment against all Defendants as hereinafter set forth.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFFS demand judgment as follows:

ON THE FIRST CAUSES OF ACTION:

1. For damages, according to proof, in excess of $75,000 jointly and severally against all Defendants.

ON THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION:

2. For damages, according to proof, in excess of $75,000 jointly and severally against ASG.

ON THE FIFTH CAUSES OF ACTION:

3. For damages, according to proof, in excess of $75,000 jointly and severally against ASG and DreamBuilder.

ON THE SIXTH CAUSES OF ACTION ONLY:

4. Punitive damages, in accordance with the law, against all Defendants.

ON ALL CAUSES OF ACTION:

5. For prejudgment interest at the legal rate;

6. For costs incurred in this action, including reasonable attorneys' fees and costs, as provided by law and/or pursuant to the Lien; and

7. For any other and further relief as the Court may deem just and proper.

Date: January 3, 2020         **BERDING & WEIL LLP**

By:_____
Daniel L. Rottinghaus
Scott M. Mackey
Attorneys for Plaintiff
Stephen and Melinda Dreher

PLAINTIFFS' FIRST AMENDED COMPLAINT

-14-

BERDING & WEIL, LLP
2175 N California Blvd Suite 500
Walnut Creek, California 94596