**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Helen Mosothoane (SBN 254511)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone:  (949) 381-5900
Facsimile:   (949) 271-4040
Email:        bpaino@mcglinchey.com
                  hmosothoane@mcglinchey.com

Attorneys for *Defendant* **PNC BANK, N.A.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| STEPHEN AND MELINDA DREHER,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK NA., a Pennsylvania Corporation, successor by merger to/with National City Bank; DREAMBUILDER INVESTMENTS, LLC, A New York limited liability company; AMERICAN SERVICING AND RECOVERY GROUP LLC, a Texas limited liability company; and DOES 1-50,<br><br>Defendants. | Case No.:  2:18-cv-07827-MWF-FFM<br><br>Hon. District Judge Michael W. Fitzgerald<br><br>**DEFENDANT PNC BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**<u>Hearing</u>**:<br>Date:  February 24, 2020<br>Time: 10:00 a.m.<br>Ctrm: 5A<br><br><u>Filed concurrently with</u>:<br>Request for Judicial Notice<br>[Proposed] Order<br><br>Action Filed: September 7, 2018<br>Trial Date: March 2, 2020 |

/./././

/./././

/./././

Case No.: 2:18 -CV-07827-MFW-FFM

2607881.1

**TO ALL INTERESTED PARTIES**:

**PLEASE TAKE NOTICE** that, on February 24, 2020, at 10:00 a.m**.**, or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald in Courtroom 5A of the above-entitled court, located at 350 West First Street, Los Angeles, California, 90012, *defendant* PNC BANK, N.A. ("PNC") will, and hereby does, move this Court for an order dismissing this action as against PNC.

This motion (the "Motion") is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that *plaintiffs* Stephen and Melinda Dreher's (the "Plaintiffs") First Amended Complaint ("FAC") fails to state a claim against PNC upon which relief can be granted, thereby, entitling PNC to a dismissal of all claims alleged against it.

This Motion based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and [Proposed] Order filed concurrently herewith, the pleadings and papers on file herein, and on such further written submissions or oral argument as may be presented at or before the hearing on the Motion.

DATED:  January 17, 2020             **McGLINCHEY STAFFORD**

By: */s/  Helen Mosothoane*
    BRIAN A. PAINO
    HELEN MOSOTHOANE
    Attorneys for *Defendant* **PNC BANK, N.A.**

## LOCAL CIVIL RULE 7-3 CERTIFICATION

This Motion is made following attempts by PNC's counsel to discuss a potential resolution of the FAC with Plaintiffs pursuant to L.R. 7-3. PNC's counsel sent a letter to Plaintiffs' counsel on January 10, 2020.  On January 13, 2020, Plaintiffs' counsel indicated an unwillingness to dismiss the claims against PNC. As of the date of this filing, the parties have not reached a resolution which eliminates the necessity for this Motion.

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 2

    A.    THE LOAN AND DEED OF TRUST ........................................... 2

    B.    THE SALE OF THE LOAN .......................................................... 2

    C.    PLAINTIFFS' BANKRUPTCY FILINGS ................................... 3

        1.    The Bankruptcy ................................................................. 3

        2.    Green Tree's Proof of Claim ............................................. 3

        3.    Plaintiffs' Bankruptcy Plan .............................................. 4

    D.    DBI'S RECORDATION OF THE ASSIGNMENT ...................... 5

    E.    THE LAWSUIT .............................................................................. 6

III.  LEGAL AUTHORITY ............................................................................ 6

IV.  ARGUMENT ........................................................................................... 8

    A.    PLAINTIFFS' CLAIM FOR SLANDER OF TITLE FAILS ................. 8

        1.    PNC Had No Interest in the Lien Since 2010 ................... 8

        2.    PNC Did Not Record/Publish the Assignment ................ 9

        3.    The Filing of the POC Does Not Constitute Slander .................... 11

        4.    Plaintiffs Fail to Allege Sufficient Facts Showing Malice ........... 12

        5.    Plaintiffs' Slander of Title Claim is Barred by the Statute of Limitations ...................................................................... 13

    B.    PLAINTIFFS' CLAIM FOR FRAUD FAILS ............................. 14

        1.    PNC Did Not Owe a Duty to Plaintiffs or Other Entities to Notify Them of the Transfer of Ownership ................. 14

        2.    PNC's Receipt of a Few Payments Does Not Amount to Fraud ............................................................................. 16

        3.    PNC Did Not Violate the Bankruptcy Stay or Mislead the Bankruptcy Court ........................................................ 17

        4.    Plaintiffs' Claim is Time-Barred .................................... 18

    C.    PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF FAILS .......... 18

V.    CONCLUSION ..................................................................................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2

PAGE(S)

3

<u>Cases</u>

4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................................6

5

*Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC),*
  530 B.R. 711 (Bankr. C.D. Cal. 2015) ...................................................5, 6

6

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................6, 7

7

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997) .........................................................................7

8

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) .........................................................................7

9

*Das v. Bank of Am., N.A.,*
  186 Cal. App. 4th 727 (2010) .......................................................................15

10

*Deutsche Bank Nat. Trust Co. v. Pyle,*
  13 Cal. App. 5th 513 (2017) ...................................................................8, 12

11

*Eclectic Properties East, LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014) .........................................................................7

12

*Ghuman v. Wells Fargo Bank, N.A.,*
  989 F. Supp. 2d 994 (E.D. Cal. 2013) .........................................................9

13

*Grigsby v. Wells Fargo Bank, N.A.,*
  2018 WL 1779338 (C.D. Cal. Apr. 12, 2018) ...........................................18

14

*Howard v. Schaniel,*
  113 Cal. App. 3d 256 (1980) ........................................................................12

15

*Hunsucker v. Sunnyvale Hilton Inn,*
  23 Cal.App.4th 1498 (1994) .........................................................................11

16

*In re Century Aluminum Co. Sec. Litig.,*
  729 F.3d 1104 (9th Cir. 2013) .......................................................................7

17

*In re Gilead Sciences Sec. Litig.,*
  536 F.3d 1049 (9th Cir. 2008) .................................................................7, 17

18

*ING Bank v. Ahn,*
  758 F. Supp. 2d 936 (N.D. Cal. 2010)........................................................11

19

*Jensen v. Quality Loan Serv. Corp.,*
  702 F. Supp. 2d 1183 (E.D. Cal. 2010) .....................................................18

20

*JMP Sec. LLP v. Altair Nanotechnologies Inc.,*
  880 F.Supp.2d 1029 ......................................................................................14

21

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) .....................................................................14

22

23

24

25

26

27

28

*Klamath Water Users Protective Ass'n v. Patterson*,
   204 F.3d 1206 (9th Cir. 1999) ...............................................................15
*Liberty Mutual Ins. Co.*,
   80 F.3d 336  (9th Cir. 1996) ....................................................................7
*Logan v. U.S. Bank N.A.*,
   722 F.3d 1163 (9th Cir. 2013) ..........................................................15, 17
*Mangindin v. Wash. Mut. Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009)....................................................18
*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ..............................................................7, 8
*Meyer v. One West Bank, F.S.B.*,
   91 F. Supp. 3d 1177 (C.D. Cal. 2015) ....................................................15
*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ...................................................................7
*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................8
*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................14

Statutes

11 U.S.C. § 101(5) ....................................................................................7
11 U.S.C. § 101(10) ..................................................................................7
11 U.S.C. § 362(a) ..................................................................................21
15 U.S.C. § 1641 .....................................................................................19
Cal. Civ. Code § 47(b) ............................................................................15
Cal. Civ. Code § 338(d) ..........................................................................22
Cal. Civ. Code § 338(g) ..........................................................................17
Cal. Civ. Code § 2936 .............................................................................12

Rules

Fed. R. Civ. P. 8(a)(2)............................................................................10
Fed. R. Civ. P. 9(b) ................................................................................18
Fed. R. Civ. P. 12(b)(6) .......................................................................2, 11

Other Authorities

*In re Marks*,
   2012 Bankr. LEXIS 5788 (9th Cir. BAP 2012) .....................................12
*Simmons First Nat'l Bank v. Lehman*,
   2015 U.S. Dist. LEXIS 43421 (N.D. Cal. April 1, 2015)..................13, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Sanchez v. Aurora Loan Servs., LLC (In re Sanchez)*,
    2011 Bankr.LEXIS 5602, at *21 (Bankr. E.D. Cal. 2011)................................14, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In search of a villain after being unable to obtain any further relief from the now defunct co-defendant Dreambuilder Investments, LLC ("DBI"), Plaintiffs continue in their FAC to advance baseless claims against PNC. The FAC specifically enumerates the following three causes of action against PNC: (1) slander of title; (2) fraud; and (3) declaratory relief.  Not only are these claims poorly pled, but they are factually and legally unsupportable. At bottom, Plaintiffs' claims against PNC represent an attempt to extort damages from an innocent party based on the conduct of an unrelated third-party, DBI.

By way of background, PNC entered into a contract to sell and transfer Plaintiffs' loan (defined below) to newly added co-defendant American Servicing and Recovery Group LLC ("ASRG") days before Plaintiffs filed for chapter 11 bankruptcy.  PNC did not inform them of the transfer of ownership of the loan because it did not have an obligation to do so, notwithstanding Plaintiffs' assertions to the contrary.

In the bankruptcy proceeding, Plaintiffs' new servicer filed a proof of claim pertaining to the loan. For reasons unknown to PNC, the claim did not identify the name of the creditor for the claim (a fact that Plaintiffs continue to misrepresent in their filings in this case). The claim did, however, clearly and unequivocally instruct Plaintiffs to send payments and notices to someone other than PNC (i.e., their new servicer). Despite the instructions in the claim, Plaintiffs inexplicably mailed a few payments to PNC during their bankruptcy.

Prior to Plaintiffs' completion of their bankruptcy plan, DBI recorded an assignment of deed of trust evidencing that it was assigned the beneficial interest in Plaintiffs' deed of trust. Plaintiffs claim the recorded assignment clouded title to – and prevented them from selling – the subject property.

1   All three claims against PNC rest upon conclusory and baseless allegations that

2   contradict each other.  Plaintiffs' slander of title and fraud claims fail for essentially

3   the same reasons: (1) PNC has had no interest in the loan since 2010; (2) PNC was

4   under no duty, contractual or otherwise, to notify Plaintiffs or any other entities of the

5   sale of the loan; (3) the subject proof of claim was not filed by or on behalf of PNC

6   and PNC took no steps to assert an interest in the loan after August of 2010; and (4)

7   Plaintiffs admit that PNC did not record the assignment following the bankruptcy

8   discharge.  Moreover, both claims are time-barred. Finally, the declaratory relief claim

9   fails because it is not a stand-alone cause of action and the request for a declaration of

10  superior title is moot due to the expungement of the disputed lien. For these reasons,

11  as discussed more fully herein, Plaintiffs' claims against PNC should be dismissed.

12  ## II.   STATEMENT OF FACTS

13  ### A.   THE LOAN AND DEED OF TRUST

14  On or about April 17, 2007, *plaintiff* Stephen Dreher ("Mr. Dreher") entered

15  into a non-purchase money mortgage loan (the "Loan") with National City Bank, in

16  the original principal sum of $350,000.00, which was reflected in a promissory note

17  (the "Note") secured by a deed of trust (the "Deed of Trust") executed by Plaintiffs.

18  (FAC, ¶10) (*See* Request for Judicial Notice ["RJN"], **Ex. 1**.).  The Deed of Trust

19  encumbers and established a lien (the "Lien") against the real property located at 546

20  N. Highland Avenue, Los Angeles, California ("Property"). (*Id*.) The Deed of Trust

21  was recorded on April 25, 2007.  (*Id*.)

22  ### B.   THE SALE OF THE LOAN

23  PNC is the successor by merger to National City Bank, which merger took

24  place on or about November 6, 2009. (RJN, **Ex. 2**.) National City Bank was both the

25  servicer and owner of the Loan until it merged with PNC, at which point PNC became

26  the owner and servicer of the Loan. (FAC, ¶¶11, 13.)  On or about July 30, 2010, PNC

27  and ASRG entered into a "Non-Performing" Loan Purchase and Interim Servicing

28

Agreement (the "<u>Purchase Agreement</u>") whereby PNC sold a pool of loans (the "<u>Pool</u>"), including the Loan, to ASRG. (FAC, ¶13 and RJN, **Ex. 3**.)

Under the Purchase Agreement, PNC agreed to serve as an "Interim Servicer" of the Loan until September 1, 2010 (the "<u>Interim Servicing Period</u>"). (FAC, ¶13.) Following the sale of the Loan, on or about August 12, 2010, PNC executed an Assignment of Deed of Trust (the "<u>Assignment</u>") to DBI.[1] (FAC, ¶20 and **Ex. F**.)

After the sale of the Loan, pursuant to the Purchase Agreement, PNC no longer held any ownership or other interest in the Loan, with the exception of the servicing rights during the Interim Servicing Period. (FAC, ¶13.) Following the conclusion of the Interim Servicing Period, PNC had no remaining right, title, or interest in the Loan. (FAC, ¶13.)

## C. **PLAINTIFFS' BANKRUPTCY FILINGS**

### 1. **The Bankruptcy**

After the sale of the Loan to ASRG, on August 5, 2010, Plaintiffs filed a Chapter 11 bankruptcy petition in U.S. Bankruptcy Court for the District of Idaho and identified the Loan in their petition (the "<u>Bankruptcy</u>"). (FAC, ¶14).

### 2. **Green Tree's Proof of Claim**

By Plaintiffs' own admission, on or about October 26, 2010, Green Tree Servicing LLC ("<u>Green Tree</u>") began servicing the Loan which had been sold by PNC on July 30, 2010.  (*See* FAC, ¶ 14). On the same day, Green Tree filed a proof of claim (the "<u>POC</u>") in the Bankruptcy in connection with the Loan. (*Id*. and **Ex. A**) The POC does not identify PNC as the "creditor"[2] for the Loan or otherwise reflect that it was filed on PNC's behalf. (*Id*. [POC, p. 1]) In fact, the creditor field in the POC is

---

[1] DBI was defaulted for failure to respond to the original complaint (the "<u>Complaint</u>"). Plaintiffs have not filed a default judgment motion against DBI. The FAC does not bring new claims against DBI.

[2] The term "creditor" is generally defined under the Bankruptcy Code as an entity with a claim against the debtor or the debtor's estate. *See* 11 U.S.C. § 101(10). In turn, a "claim" is defined as a "right to payment" or a "right to an equitable remedy." 11 U.S.C. § 101(5). Because PNC did not hold any right, title or interest in the Loan, it was not a "creditor" of Plaintiffs' bankruptcy estate.

1   blank. (*Id*.) PNC was only referenced in Item 3a of the POC relating to how the debtor

2   may have scheduled the account. (*Id*.) According to the instructions for the proof of

3   claim form, Item 3a reports "a change in the creditor's name, a transferred claim, or

4   any other information that clarifies a difference between [the] proof of claim and the

5   claim as scheduled by the debtor."[3] (RJN, **Ex. 4**.)  Importantly, the POC indicated that

6   all notices related to the claim should be sent to Green Tree. (FAC, ¶14 and **Ex. A**.)

7   The POC also indicated that all payments under the Loan should be sent to Green

8   Tree. (*Id*.)

9       PNC took no affirmative steps during the Bankruptcy to assert an ownership or

10  any other interest in the Loan.  (*See generally* FAC.)

11              **3.    Plaintiffs' Bankruptcy Plan**

12      On August 28, 2012, Plaintiffs filed a Fourth Amended Chapter 11 Plan (the

13  "Bankruptcy Plan"). (FAC, ¶15 and **Ex. B**.) The Bankruptcy Plan: (1) acknowledged

14  that Green Tree was the entity asserting a claim on account of the Loan; and (2)

15  converted the Lien from a secured interest to an impaired unsecured debt. (*Id*.)

16      Plaintiffs allege that they made sixty (60) monthly payments toward the Loan in

17  accordance with the Bankruptcy Plan. (FAC, ¶17). Despite Green Tree's notice in the

18  POC, Plaintiffs allege they sent approximately 11 monthly payments to PNC.[4]  (*Id*.)

19      On December 18, 2012, the Bankruptcy Plan was confirmed and the bankruptcy

20  court ordered a discharge as of August 28, 2012, upon completion of the Bankruptcy

21  Plan. (FAC, ¶16 and **Ex. C**.)

22      Significantly, on January 8, 2018, Plaintiffs filed a Motion for Discharge of

23  Debtors (the "Discharge Motion") in the Bankruptcy wherein they requested the entry

24  of a discharge due to their alleged completion of all of the payments required under

25  the Bankruptcy Plan. (*See* RJN. **Ex. 6**.) The Discharge Motion was supported by a

26
27  [3] Put simply, Item 3a of the POC was intended to disclose that Plaintiffs misidentified the creditor for the claim in their schedules.

28  [4] In the FAC, Plaintiffs allege to have mailed 11 payments to PNC whereas in the original Complaint they alleged they made all 60 payments to PNC. (RJN, **Ex. 5**, ¶¶16, 32, 35.)

1   Declaration in Support of Motion for Discharge of Debtors (the "<u>Declaration</u>") that

2   was signed by Mr. Dreher (and notarized).[5] (*See* RJN, **Ex. 7**.) In the Declaration, Mr.

3   Dreher asserts that he "made all of the payments pursuant to the terms of the

4   [Bankruptcy Plan]." (*See* Declaration, ¶ 3). He attaches an accounting (the

5   "<u>Accounting</u>") of all the payments he made as an exhibit to the Declaration. (*See id.* at

6   **Ex. A**.) The Accounting identifies ClearSpring as the servicer for the Loan and

7   reflects that seven of the eleven payments Plaintiffs tendered to PNC – the last of

8   which was purportedly tendered on January 15, 2014 – were either not cashed or

9   returned. (*See* RJN, **Ex. 7**, pp. 16-18). Moreover, the Accounting reflects that

10  Plaintiffs made payments to Land Home (not PNC) between March 15, 2014, and

11  August 5, 2017 (a period of nearly three-and-a-half years), and thereafter to Home

12  Servicing and eventually ClearSpring.[6] (*See id.*) On February 27, 2018, the

13  bankruptcy court entered a discharge order. (FAC, ¶17 and **Ex. D**.)

14      **D.    <u>DBI'S RECORDATION OF THE ASSIGNMENT</u>**

15      On March 24, 2017, DBI recorded the Assignment. (FAC, ¶20 and **Ex. F**.)

16  Plaintiffs allege they learned of the recorded Assignment when they attempted to sell

17  the Property on or about June 2018, but do not even suggest that PNC took any action

18  to prevent them from discovering the assignment at an earlier point in time. (FAC,

19  ¶¶21, 22.) After learning of the Assignment, on June 20, 2018, Plaintiffs sent DBI a

20  letter demanding a reconveyance deed or payoff demand. (FAC, ¶21 and **Ex. G**.) In

21  the letter to DBI, Plaintiffs specifically stated:

22          Also enclosed please find Green Tree's Proof of Claim
            indicating that it received notice, and ***where notices should be***
23          ***sent***. I would point out that [Green Tree was] also listed on the
            Certificate of Service on the Order Granting Confirmation and
24          Discharge Orders. ***No objection was ever filed by Green Tree***.

25  ───────────────
    [5] Plaintiffs' sworn statements in the Bankruptcy constitute judicial admissions. *See*
26  *Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC)*, 530 B.R. 711, 720
    (Bankr. C.D. Cal. 2015) (collecting cases).
27  [6] The Accounting identifies a total of 62 payments that Plaintiffs purportedly made in
    connection with the Loan. (*See* RJN, **Ex. 7**.) However, ten of these payments were
28  either not cashed or were returned to Plaintiffs. (*See id.*) As a result, Plaintiffs actually
    only made 52 payments.

1    (*See id.* at **Ex. G**) (emphasis added)

2        The letter does not mention PNC or Plaintiffs' belief that PNC had any rights or

3   obligations with respect to the Loan during Bankruptcy. (*Id*.) Plaintiffs did not send a

4   similar letter to PNC for release of the Lien. (*See generally* FAC). Despite the letter

5   from Plaintiffs, DBI did not release the Lien and Plaintiffs therefore filed this lawsuit.

6   (FAC, ¶22.)

7        **E.**     **THE LAWSUIT**

8        On September 7, 2018, Plaintiff commenced this action by filing their original

9   Complaint against PNC and DBI alleging the Lien clouded title, prevented them from

10   completing a sale of the Property, and caused other consequential damages. (RJN, **Ex.**

11   **5** [Complaint, ¶¶18-23].) Subsequently, on September 27, 2019, the Court granted

12   Plaintiffs' motion to expunge the Lien. (*See* Dkt. No. 69) PNC did not oppose

13   Plaintiffs' motion for expungement of the Lien. (*See* Dkt. No. 58).

14        On December 20, 2019, the Court granted, in part, and denied, in part,

15   Plaintiffs' Motion to Amend the Complaint. (*See* Dkt. No. 91) The Court granted

16   Plaintiffs' request to add ASRG as a defendant, but denied Plaintiffs' request to bring

17   new claims against PNC. (*Id*. at p.13.) Plaintiffs filed the FAC on January 3, 2020.

18   (*See* Dkt. No. 92). The FAC excluded the cancellation of lien claim that Plaintiffs

19   included in the original Complaint. (*Id*.)

20   **III.**    **LEGAL AUTHORITY**

21        A "pleading that states a claim for relief must contain . . . a short and plain

22   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

23   8(a)(2). A complaint must "provide enough facts to state a claim to relief that is

24   plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

25   Conclusory labels and allegations, or merely reciting the elements of a cause of action,

26   are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard

27   requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    The complaint must allege facts that "nudge[s] [the] claims across the line from

2    conceivable to plausible." *Eclectic Properties East, LLC v. Marcus & Millichap Co.*,

3    751 F.3d 990, 997 (9th Cir. 2014) (citing *Twombly*, 550 U.S. at 570). Where there are

4    "two possible explanations, only one of which can be true and only one of which

5    results in liability, plaintiffs cannot offer allegations that are merely consistent with

6    their favored explanation but are also consistent with the alternative explanation.

7    Something more is needed, such as facts tending to exclude the possibility that the

8    alternative explanation is true, in order to render plaintiffs' allegations plausible." *In*

9    *re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal

10   quotes and citations omitted).

11   Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may move to

12   dismiss a pleading if it fails to state a claim upon which relief can be granted. When

13   reviewing a motion to dismiss, the allegations in the complaint are deemed to be true

14   and construed most favorably to the pleading party. *Liberty Mutual Ins. Co.*, 80 F.3d

15   336 337-38 (9th Cir. 1996). However, the Court is not required to "'accept as true

16   allegations that contradict matters properly subject to judicial notice or by exhibit. Nor

17   . . . allegations that are merely conclusory, unwarranted deductions of fact, or

18   unreasonable inferences.' " *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th

19   Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

20   2001)).

21   The Court may consider exhibits attached to the complaint and matters of which

22   the court may take judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

23   998 (9th Cir. 2010). Moreover, if the complaint quotes part of a document, the Court

24   may consider and review the full text. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir.

25   1997). The court may also "consider evidence on which the complaint 'necessarily

26   relies' if: (1) the complaint refers to the document; (2) the document is central to the

27   plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the

28   [moving papers]." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Such a

1   document may be treated as "'part of the complaint, and thus [the court] may assume

2   that is contents are true for purposes of a motion to dismiss.'" *Id.* (quoting *U.S. v.*

3   *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

4   **IV.   ARGUMENT**

5       **A.   PLAINTIFFS' CLAIM FOR SLANDER OF TITLE FAILS**

6          Pursuant to the FAC, Plaintiffs contend that PNC's actions and omissions

7   resulted in slander of their title to the Property. (FAC, ¶¶ 27-29.) Slander of title has

8   the following elements: "(1) a publication, which is (2) without privilege or

9   justification and thus with express or implied malice, (3) false, either knowingly so or

10   made without regard to its truthfulness and (4) causes pecuniary loss." *Deutsche Bank*

11   *Nat. Trust Co. v. Pyle*, 13 Cal. App. 5th 513, 527, n. 7 (2017). For the reasons

12   discussed below, Plaintiffs have no viable claim against PNC for slander of title.

13       **1.   PNC Had No Interest in the Lien Since 2010**

14          As a threshold matter, Plaintiffs did not take any action with respect to the Lien

15   because it ceased to have any interest in the Loan in 2010. California follows the

16   principle that the assignment of a promissory note carries with it any security, such as

17   a deed of trust. Cal. Civ. Code § 2936 ("The assignment of a debt secured by

18   mortgage carries with it the security."). Importantly, there is no requirement under

19   California law for an assignment of deed of trust to be recorded. *See In re Marks,*

20   2012 Bankr. LEXIS 5788, at *30 (9th Cir. BAP 2012) ("California does not require

21   that assignments of a beneficial interest under a deed of trust be recorded.").

22          Here, PNC executed the Assignment to DBI on August 12, 2010, nearly two-

23   and-a-half years before the Bankruptcy Plan was confirmed. Even if PNC had not

24   executed the Assignment, the beneficial interest under the Deed of Trust followed the

25   sale of the Loan as a matter of law, without the need for a formal assignment. By

26   virtue of the sale of the Loan under the Purchase Agreement, PNC has had no interest

27   in the Note or Deed of Trust since the July 30, 2010 closing date of the agreement.

28   Regardless, the Assignment was, in fact, recorded on March 24, 2017, more than a

year before Plaintiffs filed this lawsuit.  PNC had no control over the recordation of the Assignment for it had relinquished its rights in the Deed of Trust in August 2010. Notably, Plaintiffs  implicitly acknowledge their awareness that PNC had no interest in the Lien in 2018 as they sent their letter demanding the release of the Lien to DBI, not PNC.

## 2. PNC Did Not Record/Publish the Assignment

Plaintiffs contend that PNC's alleged failure to notify them and the bankruptcy court of the Assignment resulted in "[DBI] having an assignment of the Lien that falsely claims and interest" in the Property despite the bankruptcy discharge of the Lien. (FAC, ¶29.)  To meet the first element of publication, Plaintiffs must show "an affirmative act of publication" by PNC. *Simmons First Nat'l Bank v. Lehman*, 2015 U.S. Dist. LEXIS 43421, at *10 (N.D. Cal. April 1, 2015).  Specifically, "[s]lander of title occurs when a person, 'without privilege to do so, *publishes* a false statement that disparages title to property." *Id*. (emphasis added in *Simmons*) (citing *Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1000 (E.D. Cal. 2013).

Here, PNC cannot be held liable because it did not record the Assignment.  In other words, PNC took no "affirmative act" to publish the recorded document that allegedly clouded Plaintiffs' title. Indeed, Plaintiffs admit that DBI, not PNC, recorded the Assignment. (FAC, ¶20.) Based on their understanding that DBI effectuated the recordation of the Assignment, Plaintiffs sought to clear title by sending a letter to DBI. No such letter was sent to PNC. Even if Plaintiffs had requested PNC's assistance in clearing title, PNC could not have released the Lien because, as noted above, PNC did not have any interest in the Deed of Trust since 2010.

On a more fundamental level, the recording of the Assignment did not, in fact, slander Plaintiffs' title at the time it was recorded. To the contrary, Plaintiffs did not complete their payments under the Bankruptcy Plan until February of 2018, as

evidenced by the entry of the discharge order.[7] The Assignment was recorded nearly a year earlier, on March 24, 2017. (*See* FAC, **Ex. F**.) Thus, at the time the Assignment was recorded, Plaintiffs had not, in fact, discharged their obligations under the Loan. Moreover, the Assignment merely memorialized the inter-creditor transfer of the beneficial interest in the Deed of Trust. It did not create an additional encumbrance that clouded title to the Property. *See Sanchez v. Aurora Loan Servs., LLC (In re Sanchez)*, 2011 Bankr.LEXIS 5602, at *21 (Bankr. E.D. Cal. 2011) ("The transfer of a beneficial interest in a deed of trust is not an act of perfection of a lien []; [t]he lien on the property is perfected at the time the Deed of Trust is recorded.").

Ultimately, Plaintiffs' slander of title claim is premised on PNC's purported failure to: (1) inform Plaintiffs of the assignment to DBI, thereby enabling PNC to collect eleven payments;[8] (2) inform GreenTree that it was not the holder of the Lien; (3) failure to inform DBI of the orders in the Bankruptcy; and (4) advise the bankruptcy court that it held no interest in the Lien. (*See* FAC, ¶ 27). None of these acts constitute a "publication." Furthermore, PNC was under no duty to notify Plaintiffs of the Assignment. Assuming *arguendo* that PNC had such a duty, the failure to provide notice of the Assignment does not amount to an affirmative act on the part of PNC to actually record the instrument. To the extent the claim is premised on the Deed of Trust, a failure to remove a recorded security instrument does not constitute publication. *See Simmons*, 2015 U.S. Dist. LEXIS 43421, at *10 (the non-recording party's failure to remove a recoded deed of trust from the recorder's office "is not an actionable publication for purposes of a slander of title claim").  Absent a publication, the slander of title claim should be dismissed.

---

[7] The Declaration actually reflects that Plaintiffs last tendered a payment on account of the Loan in December of 2017. (*See* RJN, **Ex. 7**, p. 18).
[8] As evidenced by the Declaration, PNC did not, in fact, "collect" eleven payments from Plaintiffs.

**MEMORANDUM OF POINTS AND AUTHORITIES**
627232.1

### 3.   The Filing of the POC Does Not Constitute Slander

During the course of this litigation, Plaintiffs have suggested that their slander of title claim is based, at least in part, on the POC. The POC does not give rise to a claim for slander of title for several reasons. To start, the POC was not recorded (or published) in the real property records for the Property. Thus, it did not disparage Plaintiffs' title to the Property. Moreover, California law provides that "[a]n absolute privilege attaches to publications made '[i]n any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by a mandate action].'" *Hunsucker v. Sunnyvale Hilton Inn*, 23 Cal.App.4th 1498, 1502 (1994) (quoting Cal. Civ. Code § 47(b)). It necessarily follows that the filing of the POC in the Bankruptcy is privileged. Regardless, Green Tree, not PNC, filed the POC.

Plaintiffs' FAC implies an agency relationship existed between Green Tree and PNC with respect to the POC.  (*See* FAC, ¶14) ("[T]he Bankruptcy Court accepted a Proof of Claim from Green Tree, asserting the Lien, listing PNC as the creditor"). The existence of an agency is not presumed, instead, it is presumed that the "person is acting for himself and not as the agent for another." *ING Bank v. Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010). Thus, because Green Tree filed the POC, it is presumed that Green Tree was acting on its own behalf and was not acting as an agent of PNC. Plaintiffs' implication that PNC authorized Green Tree's filing of the POC is unfounded and flawed, particularly because it is based in part on their misreading of the POC. Indeed, Plaintiffs falsely allege in the FAC that the POC lists PNC as the "creditor" for the claim.  In fact, the creditor field of the POC was, in fact, blank. PNC's name was merely referenced in Item 3a to clarify that Plaintiffs may have misidentified PNC as the creditor for the claim.

Further, the Declaration demonstrates that Plaintiffs were aware, as early as January 15, 2014 – when PNC returned their Bankruptcy Plan payment – that Green

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   Tree was not acting on behalf of PNC. (*See* RJN, **Ex. 7**, p. 16). Plaintiffs' FAC also

2   acknowledges that Plaintiffs were aware long ago that PNC was no longer asserting a

3   right to payment on the Loan in any capacity (i.e., directly or through an agent).

4   Indeed, the FAC alleges that Plaintiffs tendered 60 monthly payments on account of

5   the Loan, only eleven of which were sent to PNC. Given that Plaintiffs implicitly

6   admit that they tendered the majority of their payments to an entity other than PNC,

7   their suggestion that PNC was asserting any rights in the Loan is implausible.

8   Additionally, Plaintiffs' June 20, 2018 letter to DBI demonstrates that they were fully

9   aware that notices should be sent to Green Tree as the filer of the POC.  In the same

10  letter, Plaintiffs acknowledge that Green Tree never filed an objection to the

11  discharge. This fact undermines any belief Plaintiffs held that Green Tree was PNC's

12  agent or that PNC was a creditor under the POC during the Bankruptcy.  In light of

13  the foregoing facts, Plaintiffs' belief that Green Tree was PNC's agent is legally and

14  factually unsupportable, and at the very least falls show of satisfying the plausibility

15  standard required under Rule 8.  Even if the filing of the POC could constitute slander,

16  liability for the filing cannot be imputed on PNC because the FAC fails to plausibly

17  establish that Green Tree was acting as PNC's agent.  For these reasons, the slander of

18  title claim fails as against PNC and should be dismissed.

19  ### 4.   **Plaintiffs Fail to Allege Sufficient Facts Showing Malice**

20  Assuming *arguendo* that Plaintiffs could establish the publication element of

21  their claim (they cannot), Plaintiffs' slander of title claim is nevertheless insufficiently

22  plead. This is because it fails to allege facts related to the second element, malice. *See*

23  *Deutsche Bank Nat. Trust Co. v. Pyle*, 13 Cal. App. 5th at 527, n. 7 (2017). "[M]alice,

24  express or implied, in the making of slanderous statements is an essential ingredient of

25  a cause of action for damages for slander of title, *without proof of which such action*

26  *must fail*." *Howard v. Schaniel*, 113 Cal. App. 3d 256, 263 (1980) (emphasis added).

27  Here, Plaintiffs make no factual allegations to demonstrate that PNC acted with

28  malice, whether express or implied, in connection with the recorded Assignment that

**MEMORANDUM OF POINTS AND AUTHORITIES**
627232.1

purportedly clouded their title to the Property. Failure to notify Plaintiffs, the bankruptcy court or third parties of the Assignment, when it had no statutory or contractual obligation to do so, does not prove malice. Assuming Plaintiffs made a couple payments to PNC, there is no indication of how Plaintiffs' willful mailing of payments to PNC led to DBI's recordation of the Assignment, especially when considering that Plaintiffs purported to make 49 payments to some other entity. Finally, Plaintiffs' FAC references a violation of the bankruptcy stay and implies that PNC allowed the bankruptcy court to believe it was a creditor. (FAC, ¶ 27). However, as explained above, the POC was filed by Green Tree,  not PNC. Further, the POC did not identify a creditor and, in fact, left the creditor field blank. Plaintiffs conclusory allegation that "the actions of [PNC] resulted in the filing of an encumbrance on the Subject Property without justification or authorization" does not satisfy the *Iqbal* standard and demonstrates that Plaintiffs have no factual basis to establish that PNC acted with malice, a critical element in a slander of title claim.  As such, this poorly pled claim must fail and dismissal is warranted.

### 5.   <u>Plaintiffs' Slander of Title Claim is Barred by the Statute of Limitations</u>

To the extent that Plaintiffs' slander of title cause of action against PNC is premised on the recording of the Deed of Trust or Green Tree's filing of a POC, the claim is time-barred.  Under Cal. Civ. Code § 338(g), a slander of title claim carries a three year statute of limitations.  As stated above, the Deed of Trust was recorded in 2007 and Green Tree filed the POC in 2010.  By the time PNC returned Plaintiffs' January 15, 2014 payment, (*see* RJN, **Ex. 7**, p. 16), Plaintiffs should have known that PNC no longer asserted an interest in the Loan. Nevertheless, Plaintiffs did not bring their claim until 2018, nearly eight years after the the POC was filed and over four years after PNC returned the last payment it received from them. Thus, Plaintiffs' slander of tile claim fails is untimely and should be dismissed.

/ / /

CASE NO.: 2:18 -CV-07827-MFW-FFM

**MEMORANDUM OF POINTS AND AUTHORITIES**

627232.1

## B.     **PLAINTIFFS' CLAIM FOR FRAUD FAILS**

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (citations omitted). Rule 9(b) of the Federal Rules of Civil Procedure requires a party to "state with particularity the circumstances constituting fraud." Fed. R Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). To meet this standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *See id.* (citation omitted).

Plaintiffs' fraud cause of action against PNC rests upon an alleged (1) duty to notify Plaintiffs, the bankruptcy court, ASRG and Green Tree of the Assignment; (2) wrongful acceptance of Plaintiffs' mortgage payments during bankruptcy; and (3) violation of the bankruptcy stay. (FAC, ¶58.) As explained below, Plaintiffs' fraud claim fails to satisfy the plausibility standard under Rule 8, much less the heightened pleading standard for a claim of fraud.

### 1.     **PNC Did Not Owe a Duty to Plaintiffs or Other Entities to Notify Them of the Transfer of Ownership**

While Plaintiffs suggest that PNC owed them a duty to provide notice of the sale of the Loan, they do not identify any such duty in the FAC. Nothing contained within the Deed of Trust created such a duty. (*See* RJN, **Ex. 1**). Even if the Deed of Trust did impose such a duty, Plaintiffs' claim for fraud would be barred by the economic loss rule. *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F.Supp.2d 1029, 1042 ("The economic loss rule [states] that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement.") (citation and internal quotations omitted). Nor can Plaintiffs identify a statute or other authority giving rise to such a duty. On the contrary, under California law, a borrower-lender relationship generally

**MEMORANDUM OF POINTS AND AUTHORITIES**

does not create a fiduciary relationship. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740 (2010); *Meyer v. One West Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1183 (C.D. Cal. 2015). Thus, Plaintiffs cannot show that PNC misrepresented, concealed or failed to disclose facts about the Assignment where there was no duty owed to Plaintiffs or other third-parties.[9]

Plaintiffs may argue that PNC was under a duty to deliver notice of the transfer of the Loan pursuant to Section 2.3 (Recordation of Assignment of Mortgage) of the Purchase Agreement because it was the interim servicer under the Purchase Agreement. (FAC, ¶13) This argument fails because Plaintiffs are not a party to the agreement, nor are they intended beneficiaries, and, therefore, they lack standing to enforce the agreement. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) (to recover under a contract the third-party "must show that the contract was made for its direct benefit-that it is an intended beneficiary of the contract."). Moreover, the assignee, not the assignor, of a mortgage loan must inform the borrower of a transfer of the loan. *Logan v. U.S. Bank N.A.*, 722 F.3d 1163, 1172 (9th Cir. 2013) ("Section 404(a) of the [Helping Families Save Their Home Act] added a notice requirement to the Truth In Lending Act, 15 U.S.C. § 1641, under which a *new creditor* must notify the borrower in writing…after a mortgage loan is transferred or assigned.") (emphasis added). For this reason, PNC, the assignor of the Loan, was under no duty to inform Plaintiffs of the loan transfer.

Simply stated, the facts, as alleged by Plaintiffs, demonstrate that PNC owed no duty to Plaintiffs and PNC did not make any misrepresentations regarding the Loan or Lien. Plaintiffs cannot argue that failure to notify of the sale of the Loan constitutes "nondisclosure" where, as noted above, there was not duty. Thus, the fraud claim should be dismissed.

---

[9] The allegation that PNC had a duty to notify ASRG of the transfer of the Loan is nonsensical because PNC sold the Loan to ASRG.

## 2. <u>PNC's Receipt of a Few Payments Does Not Amount to Fraud</u>

Plaintiffs' fraud theory borders on the absurd. In essence, Plaintiffs' theory is that PNC failed to notify Plaintiffs, the bankruptcy court, and others of its sale of the Loan so that it could obtain eleven of the sixty payments Plaintiffs were required to tender under their Bankruptcy Plan. On its face, this theory is implausible. But once the Declaration is consulted, the theory loses what little credibility it has in the first instance. Indeed, the Declaration reflects that Plaintiffs sent eleven payments to PNC, all but four of which either returned to Plaintiffs or never negotiated. (*See* RJN, **Ex. 7**, p. 16). Nowhere in the FAC do Plaintiffs allege that PNC actively solicited these payments, much less that it made false representations to obtain them. (*See generally* FAC). Ultimately, Green Tree is the only entity that ever made an affirmative representation in the Bankruptcy related to the payments on the Loan. Green Tree's POC expressly advised Plaintiffs to tender payments to Green Tree, not PNC.

Plaintiffs actually admit in the FAC that, "[o]n or about October 26, 2010, [Green Tree] took over the servicing of the Lien." (FAC, ¶14)  Despite being aware of the transfer of servicing rights and the fact that the POC instructed Plaintiffs to send payments to Green Tree, Plaintiffs unreasonably sent unsolicited payments to PNC. Given Plaintiffs' inability to establish a representation, much less a false representation, they cannot establish the "scienter" element of their fraud claim.

Moreover, Plaintiffs were not justified in relying on PNC's alleged acceptance of payments as: (1) they were aware that Green Tree was the correct servicer; (2) they were notified in the POC that payments should be sent to Green Tree; and (3) both prior to and after they made the payments at issue they knowingly made payments to other servicers. Finally, Plaintiffs did not suffer any damages because they ultimately completed the Bankruptcy Plan and received a discharge.  Simply put, Plaintiffs' fraud claim based on PNC's purported acceptance of unsolicited mortgage payments is baseless. For these reasons, Plaintiffs' fraud claim should be dismissed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

627232.1

### 3.   PNC Did Not Violate the Bankruptcy Stay or Mislead the Bankruptcy Court

Plaintiffs' fraud claim is also based on PNC's purported violation of a bankruptcy stay. They claim that PNC violated the stay by allegedly misleading the bankruptcy court into believing that PNC was the creditor of the underlying debt for the Loan. (FAC, ¶58). Plaintiffs allege, "PNC committed a willful violation of the bankruptcy stay because PNC knew of the automatic stay and intentionally performed the actions that violated the stay, including allowing the court to continue to hold the belief that the creditor had a right to the Subject Property or associated Lien." (*Id.*) As with Plaintiffs' many other allegations, this allegation is conclusory, overbroad and factually deficient. If these conclusory allegations were assumed to be true, they are insufficient to establish the scienter element of a fraud claim.

Notably, Plaintiffs do not identify any specific provision of the automatic stay of 11 U.S.C. § 362(a) that PNC is alleged to have violated – nor, for that matter, do they articulate how a stay violation gives rise to a claim for fraud. This is likely because none of the provisions proscribe the conduct alleged in the FAC. *See* 11 U.S.C. § 362(a). Moreover, the recording of an assignment and filing of a proof of claim do not, as a matter of law, constitute acts in violation of the automatic stay. *See Sanchez*, 2011 Bankr. LEXIS 5602, at *18-21. Regardless, the record reflects that the only affirmative claim to payments on the Loan was made pursuant to the POC, which was filed by Green Tree, not PNC, and did not identify any creditor.  In sum, under *In re Gilead Sciences Sec. Litig.*, the Court cannot accept Plaintiffs' broad and contradictory allegations as true. *In re Gilead Sciences Sec. Litig.*, *supra*, 536 F.3d at 1055 (The Court is not required to "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"). Plaintiffs have not pled a viable claim for fraud and such claim should be dismissed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### 4.   Plaintiffs' Claim is Time-Barred

Under California law, the statute of limitations for a claim of fraud is three years. *See* Cal. Civ. Proc. Code § 338(d). The allegations in the FAC and supporting evidence demonstrate that Plaintiffs were aware, as of October 2010, that Green Tree was the Loan servicer and all payments should be mailed to Green Tree or other servicers. Additionally, Green Tree filed the POC in 2010 that instructed Plaintiffs to send notices and payments to Green Tree, rather PNC. Even under Plaintiffs' best-case scenario, they knew or should have known that PNC no longer claimed any interest in the Loan when it returned their January 15, 2014 payment. (*See* RJN, **Ex. 7**, p. 16). Thus, Plaintiffs knew by 2010 (or January of 2014 at the latest) that PNC no longer had any interest in the Loan. Because they did not file this action until 2018, their fraud claim is untimely.

### C.   PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF FAILS

"Under federal law, declaratory relief is not an independent cause of action, but a remedy." *Grigsby v. Wells Fargo Bank, N.A.*, 2018 WL 1779338, at *12 (C.D. Cal. Apr. 12, 2018). In *Grigsby*, the court dismissed plaintiff's declaratory relief claim because plaintiff's other substantive claims did not survive the motion to dismiss. As such, because Plaintiffs' two other causes of action fail, their declaratory relief cause of action fails. *Id.*

Moreover, declaratory relief claims may be dismissed as duplicative and unnecessary where the relief sought is "entirely commensurate with the relief sought through other . . . other causes of action." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009); *see also Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) ("Plaintiff's separate declaratory relief claim should not be used, as here, to determine identical issues subsumed within other claims"). Here, Plaintiffs seek a judicial declaration of superior rights, title and interest to the Property. (FAC, ¶63).  As the Lien was expunged and PNC claims no

rights in the Property, Plaintiffs fail to state a claim upon which declaratory relief can be granted.

## V.   <u>CONCLUSION</u>

For all the foregoing reasons, PNC respectfully requests the Court grant its Motion to Dismiss Plaintiffs' FAC in its entirety.

DATED:  January 17, 2020                    **McGLINCHEY STAFFORD**


By: _/s/  Helen Mosothoane_
BRIAN A. PAINO
HELEN MOSOTHOANE
Attorneys for *Defendant* **PNC BANK, N.A.,**

**MEMORANDUM OF POINTS AND AUTHORITIES**
627232.1