1  Daniel L. Rottinghaus, California Bar No. 131949
2  Fredrick A. Hagen, California Bar No. 196220
   Seema N. Kadaba, California Bar No. 304952
3  **BERDING & WEIL LLP**
   2175 N. California Blvd, Suite 500
4  Walnut Creek, California 94596
   Telephone:  925/838-2090
5  Facsimile:   925/820-5592
   drottinghaus@berdingweil.com
6  fhagen@berdingweil.com

   Attorneys for Plaintiffs
7  STEPHEN and MELINDA DREHER

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  STEPHEN and MELINDA DREHER,          No. 2:18-cv-07827-MWF-FFM

13            Plaintiffs,               **PLAINTIFFS' REQUEST FOR
                                        JUDICIAL NOTICE IN SUPPORT
14        vs.                           OF OPPOSITION TO DEFENDANT
                                        PNC BANK, N.A.'S MOTION FOR
15  PNC BANK N.A., a Pennsylvania       SUMMARY JUDGMENT OR, IN
    Corporation, successor by merger    THE ALTERNATIVE, PARTIAL
16  to/with National City Bank;         SUMMARY JUDGMENT**
    DREAMBUILDER INVESTMENTS,
17  LLC, a New York Limited Liability   Date:    March 28, 2022
    Company; AMERICAN SERVICING         Time:    10:00 a.m.
18  AND RECOVERY GROUP, LLC, a          Crtrm:   5A
    Texas limited liability company; U.S. Judge:  Hon. Michael W. Fitzgerald
19  BANK NATIONAL ASSOCIATION,
    as Trustee under the July 26, 2010 Pass  Complaint Filed:  September 7, 2018
20  Through Trust Agreement; and DOES
    1-10, inclusive,
21
              Defendants.
22

23        Pursuant to Rule 201(b) and Rule 201(d) of the Federal Rules of Evidence,

24  Plaintiffs Stephen and Melinda Dreher ("Plaintiffs") respectfully submit this request

25  that the Court take judicial notice of the records more particularly described below:

26     • **Exhibit 1**: *Plaintiffs' Second Amended Complaint* filed in this case on April

27       22, 2020.

28     • **Exhibit 2**: *Declaration of Stephen Dreher* in Opposition to PNC's Motion

-1-

for Summary Judgment filed in this case on August 24, 2020.

- **Exhibit 3:** *Declaration of PNC Bank, N.A. (Thomas Morris)* in Support of Motion for Summary Judgment filed in this case on November 18, 2019.


Dated: March 2, 2022                              **BERDING & WEIL LLP**

By:_____
      Fredrick A. Hagen
      Attorneys for Plaintiffs
      STEPHEN and MELINDA DREHER

4876-0627-6882, v. 1
4876-0627-6882, v. 1

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

# EXHIBIT 1

Daniel L. Rottinghaus, California Bar No. 131949
Fredrick A. Hagen, California Bar No. 196220
Seema N. Kadaba, California Bar No. 304952
**BERDING & WEIL LLP**
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
Telephone:  925/838-2090
Facsimile:   925/820-5592
drottinghaus@berdingweil.com
smackey@berdingweil.com
skadaba@berdingweil.com

Attorneys for Plaintiffs
STEPHEN and MELINDA DREHER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN and MELINDA DREHER, | No. 2:18-cv-07827 |
| Plaintiffs, | **PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| vs. | |
| PNC BANK N.A., a Pennsylvania Corporation, successor by merger to/with National City Bank; DREAMBUILDER INVESTMENTS, LLC, A New York limited liability company; AMERICAN SERVICING AND RECOVERY GROUP LLC, a Texas limited liability company; and DOES 1-50, | 1. **Slander of Title;** <br> 2. **Violations of Civil Code § 2941;** <br> 3. **Violations of Civil Code § 2937 and U.S. Code § 2605;** <br> 4. **Negligence;** <br> 5. **Intentional Interference with Prospective Economic Advantage;** <br> 6. **Fraud; and** <br> 7. **Declaratory Relief** |
| Defendant. | **JURY TRIAL DEMANDED** |

PLAINTIFFS Stephen and Melinda Dreher (hereinafter "PLAINTIFFS")

claim as follows against Defendant PNC BANK N.A., successor by merger to/with

National City Bank (hereinafter "PNC"), Defendant DREAMBUILDER

INVESTMENTS, LLC (hereinafter "DreamBuilder"), AMERICAN SERVICING

AND RECOVERY GROUP LLC (hereinafter "ASG"), Defendant U.S. BANK

NATIONAL ASSOCIATION, as Trustee under the July 26, 2010 Pass Through

Trust Agreement (hereinafter "US Bank") and DOES 1 through 50, inclusive:

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

## **THE PARTIES**

1.     PLAINTIFFS were, and now are, individuals owning real property in the City and County of Los Angeles, State of California. PLAINTIFFS are the owners of a single-family residence located at 546 North Highland Avenue, Los Angeles, California, 90036 (hereinafter the "Subject Property").

2.     Defendant PNC is, and at all times was, a Pennsylvania corporation providing financial services in the form of underwriting and financing mortgages in the County of Los Angeles, State of California, with its principal place of business within the County of Allegheny, 300 Fifth Avenue, Pittsburgh, Pennsylvania.

3.     Defendant DreamBuilder is, and at all times was, a New York limited liability company and is a private mortgage investment company which specializes in the acquisition, management, and liquidation of defaulted mortgages, including in the County of Los Angeles, State of California, with its principal place of business within the County of New York, 300 Wall Street, 5th Floor, New York, New York.

4.     Defendant ASG is, and at all times was, a Texas limited liability company and is a business working in the credit sector, focused on mortgage banks and loan correspondents, and providing managerial services for loans, including collecting the mortgage payments and handling business interactions with the borrower throughout the country, including in the County of Los Angeles, State of California, with its principal place of business within the County of Travis, 206 East 9th Street, Suite 1300, Austin, Texas.

5.     Defendant US Bank is, and at all times was, a Delaware corporation, and a banking subsidiary of U.S. Bancorp, providing financial services in the form of underwriting and financing of mortgages in the County of Los Angeles, State of California, with its principal place of business within the County of Hennepin County, 800 Nicollet Mall, Minneapolis, Minnesota.

6.     PLAINTIFFS are informed and believe, and upon such information and belief allege, that DOES 1 through 50, and each of said DOE Defendants being

1    associations, alter egos, partnerships, corporations, and/or individuals, are and were

2    agents, successors-in-interest, affiliates, employees of Defendants (collectively

3    referred to as "DOE Defendants"). Defendants and DOE Defendants are collectively

4    referred to as "Defendants".

5                        **JURISDICTION AND VENUE**

6          7.    This Court has original jurisdiction over PLAINTIFFS' claims under

7    28 U.S.C. § 1331, as PLAINTIFFS are requesting enforcement of several Orders

8    from the United States Bankruptcy Court, District of Idaho, under 11 U.S. Code §

9    502(g), 502(h), or 502(i) ("Bankruptcy Orders").

10         8.    This Court has original jurisdiction over PLAINTIFFS' claims under

11   28 U.S.C. § 1332, as PLAINTIFFS are domiciled in California, PNC is a

12   Pennsylvania corporation, DreamBuilder is a New York limited liability company,

13   ASG is a Texas limited liability company, US Bank is a Delaware corporation, and

14   PLAINTIFFS claim damages in excess of $75,000.00.

15         9.    PLAINTIFFS' state law claims are so related to those under which this

16   Court has original jurisdiction that they form part of the same case and controversy.

17   Supplemental jurisdiction is therefore appropriate over PLAINTIFFS' remaining

18   claims under 28 U.S.C. § 1367.

19         10.   Venue is proper in this Court pursuant to 29 U.S.C. § 1391(b), because

20   the events giving rise to the claims made herein occurred in this Judicial District and

21   the Subject Property that is subject to this action is situated in this Judicial District.

22                          **STATEMENT OF FACTS**

23         11.   PLAINTIFF Melinda Dreher was gifted the Subject Property on

24   January 24, 2000. On April 15, 2004, PLAINTIFF Melinda Dreher transferred title

25   to the Subject Property to PLAINTIFFS (husband and wife), as joint tenants. On or

26   about April 25, 2007, PLAINTIFFS obtained a non-purchase money loan from

27   National City Bank for $350,000 under a promissory note ("Loan" or the "Note")

28   and National City Bank recorded a Deed of Trust against the Subject Property to

PLAINTIFFS' SECOND AMENDED COMPLAINT

-3-

1   secure the Loan for $350,000.00 ("Deed of Trust" or the "Lien").

2       12.     On or about October 24, 2008, PNC purchased National City Bank and

3   PNC succeeded National City Bank's rights under the Note and the Lien.

4       13.     Much like many others, PLAINTIFFS began experiencing financial

5   distress after the 2008 financial crisis.

6       14.     On or about July 30, 2010, unbeknownst to PLAINTIFFS, PNC sold

7   the interest to this Note to ASG in a bulk "Non-Performing Loan Purchase and

8   Interim Servicing Agreement." PNC remained the interim servicer for the Note and

9   DreamBuilder served as the Guarantor on behalf of ASG. PNC never provided

10   notice of the sale to PLAINTIFFS, although it retained the role of interim servicer.

11   ASG never provided notice to PLAINTIFFS. DreamBuilder never provided notice

12   to PLAINTIFFS.

13       15.     On the same day, July 30, 2010, unbeknownst to PLAINTIFFS, ASG

14   sold its interest in this Note to US Bank in a bulk "Mortgage Loan Sale Agreement."

15   This sale triggered a duty of ASG and PNC to send "good-bye" letters to all

16   "obligors" as the seller and interim servicer through August 22, 2010, and US

17   Bank's duty to send "hello" letters to all "obligors", as the buyer, under federal and

18   state law. PLAINTIFFS never received a goodbye or hello letter from any

19   defendants regarding this sale.

20       16.     On or about August 5, 2010, PLAINTIFFS filed for Bankruptcy under

21   Chapter 11 listing PNC as a creditor. On or about October 26, 2010, Green Tree

22   Servicing LLC (hereinafter "Green Tree") took over the servicing of the Loan. On

23   October 26, 2010, the Bankruptcy Court accepted a Proof of Claim from Green

24   Tree, asserting a claim under the Loan in the amount of $348,256.43 and listing

25   PNC as the creditor. Although US Bank now owned the Note, US Bank never filed

26   any claim in the Bankruptcy Court or otherwise notified PLAINTIFFS of the sales

27   of the Note resulting in US Bank owning the Note. The Proof of Claim was

28   submitted and included in all of the PLAINTIFFS' Bankruptcy filings. (A copy of

the *Proof of Claim* is attached hereto as **Exhibit "A"** and incorporated herein by reference.) PNC never provided notice of the sale of the Note to ASG to either PLAINTIFFS or the Bankruptcy Court.

17.     On August 28, 2012, PLAINTIFFS submitted a "Fourth Amended Chapter 11 Plan and Related Motions" (hereinafter the "Plan") to the United States Bankruptcy Court, District of Idaho. The Plan defined all claims as "any right to payment or right to an equitable remedy against Debtors for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured." The Plan placed all allowed claims and allowed interest in specific classes. The Plan designated the Loan as a "Class 7" claim of "National City Bank purportedly made by Green Tree Servicing, LLC in the principal amount of approximately $348,256.43, plus reasonable attorneys' fees and costs and unpaid interest." The Plan converted the Loan from a secured interest to an impaired unsecured debt.

The Plan provided, in relevant part, that:

a.     This "Class 7" claim was placed in the "Class 8" payment category consisting "of all the remaining allowed unsecured claims in the estate [including] . . . $348.256.43 that is unsecured from Class 7."

b.     This "Class 7" claim was classified as "wholly unsecured and will be paid as a general unsecured creditor in Class 8."

c.     "[T]he unsecured claims shall be those allowed claims scheduled by the Debtors that are not disputed, contingent, or unliquidated, and those allowed claims filed before the bar date. If an objection has been raised to an otherwise allowed claim, the claim will be allowed in the amount determined by the Court. These creditors shall be paid over a period of 5 years, from the income of the Debtors consistent with this Plan and the "Best Interests of Creditors" test and "Liquidation

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFFS' SECOND AMENDED COMPLAINT

Analysis" contained in Debtors' Disclosure. Debtors will pay general unsecured creditors approximately $114,969.00 in monthly payments over the life of the Plan, which is approximately 11.6% of their total claims value. Debtors will pay general unsecured creditors according to the following schedule: Month 1 through 15 of the Plan - $1,028.00; Month 16 through 24 of the Plan - $1,245.00; and Month 25 through 60 of the Plan - $2,454.00." (A copy of the Plan is attached hereto as **"Exhibit "B"** and incorporated herein by reference.)

18.   On December 18, 2012, the United States Bankruptcy Court, District of Idaho, confirmed PLAINTIFFS' Plan and ordered that completion of the Plan would act as a discharge effective as of the effective date of the Plan of (i) any and all claims arising or occurring prior to the effective date, and (ii) any and all claims of the kind specified in § 502(g), 502(h), or 502(i) of the Code (hereinafter "Confirmation Order"). The Bankruptcy Court held that by terms of the Plan, after completion therein, all property of the estate shall be vested in the Debtors "free and clear" of any and all claims of interest of Creditors, except as is provided in the Plan. (A copy of the *Confirmation Order* is attached hereto as **Exhibit "C"** and incorporated herein by reference.)  This Confirmation Order effectively stripped the lien from the Subject Property upon completion of the Plan.

19.   PLAINTIFFS adhered to the Plan and completed all of its requirements, including making sixty (60) monthly payments on its unsecured mortgage on the Subject Property. On February 27, 2018, the United States Bankruptcy Court, District of Idaho signed an Order granting a discharge under 11 U.S.C. § 1141(d)(5) (hereinafter "Discharge Order") to PLAINTIFFS. PNC and Green Tree were provided a copy of the Discharge Order. (A copy of the *Discharge Order* is attached hereto as **Exhibit "D"** and incorporated herein by reference.) Upon entry of the Discharge Order, the Note was deemed satisfied and the Lien was effectively stripped from the Subject Property.

20.   On March 1, 2018, the United States Bankruptcy Court, District of

1   Idaho signed an Order granting the Stipulated Motion to Close the Case (hereafter

2   "Closing Order"). PNC and Green Tree were provided a copy of the Closing Order.

3   (A copy of the *Closing Order* is attached hereto as **Exhibit "E"** and incorporated

4   herein by reference. All Orders previously mentioned shall be referred to hereinafter

5   as "Bankruptcy Orders".)

6           21.     At no time during the Bankruptcy proceedings, or during the

7   implementation of the Plan and PLAINTIFFS' compliance with the Plan

8   requirements, or subsequent Bankruptcy Orders, did PNC ever reveal that it had,

9   prior to the bankruptcy filing, sold the Note to ASG or later assigned the Lien to

10  DreamBuilder. Moreover, US Bank never informed the Bankruptcy Court of its

11  interest in the Note or the later assignment if the Lien to DreamBuilder, or how, or

12  whether, PNC or US Bank assigned the Lien to Dreambuilder.

13          22.     Despite the alleged bulk sale of the Note to ASG on July 30, 2010, and

14  the further sale of the Note from ASG to US Bank on July 30, 2010, PNC assigned

15  the Lien to DreamBuilders on August 12, 2010. But DreamBuilder concealed the

16  assignment and did not record the assignment until <u>March 24, 2017</u>. (A copy of the

17  purported *Assignment of the Deed of Trust*, along with the *Proof of*

18  *Filing/Recording*, is attached hereto as **Exhibit "F"** and incorporated herein by

19  reference.) DreamBuilder did not nofity PLAINTIFFS of the assignment of the Lien

20  or the recording of the purported assignment of the Lien.

21          23.     After PLAINTIFFS completed the Plan and received the Confirmation

22  and Closing Orders from the Bankruptcy Court, in or about June 2018,

23  PLAINTIFFS attempted to sell and transfer title to the Subject Property before

24  interest rates increased and to take advantage of the appreciated property value in

25  the market. PLAINTIFFS did not renew the lease with their existing tenants at the

26  Subject Property because they planned to sell. PLAINTIFFS received several offers

27  to purchase the Subject Property but were unable to conclude a sale because of the

28  Lien impairing the marketability of title to the Subject Property.

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFFS' SECOND AMENDED COMPLAINT

24.     Despite the impairment, PLAINTIFFS continued efforts to sell the Subject Property to a buyer offering to pay $2.175 million. On June 20, 2018, PLAINTIFFS sent DreamBuilder a letter demanding a release of the Lien on the Subject Property under Civil Code § 2941. DreamBuilder acknowledged receipt of this letter on June 26, 2018. (A copy of the *Letter and Acknowledgement* is attached hereto as **Exhibit "G"** and incorporated herein by reference.) But DreamBuilder never otherwise responded nor did DreamBuilder remove the Lien. PNC did not remove the Lien. ASG did not remove the Lien. The Lien remained on the Subject Property and prevented PLAINTIFFS from concluding any sale.

25.     As a result, in or about July 2018, PLAINTIFFS lost the contract for the sale of the Subject Property. On July 20, 2018, the First American Title Company (the "Title Company") sent DreamBuilder a request for a Payoff Demand Letter, requesting DreamBuilder provide evidence of any legitimate interest in the Subject Property and, if not, to provide a Deed of Reconveyance, discharging the Lien recorded on the Subject Property. DreamBuilder never responded.

26.     On or about August 2018, PLAINTIFFS received another offer from a prospective buyer for the SUBJECT PROPERTY in the amount of $2,056,000.00. PLAINTIFFS attempted to work with the Title Company to overcome the title defect, however, they could not proceed with the Lien on the Subject Property.

27.     PLAINTIFFS' attempts at contacting DreamBuilder to demand removal of the Lien proved unsuccessful. DreamBuilder ignored such requests and/or failed to respond. PLAINTIFFS were able, through this Court, to obtain expungement of the Lien; however, the loss of the sale, the underlying costs associated with Defendants' conduct, the physical, mental, and emotional distresses experienced as a result of the same, remain, and are the responsibility of Defendants. PLAINTIFFS were not provided proper notice of the sales of the Note, the transfers of servicing, or the assignment of the Lien, as noted herein, to their detriment.

/ / /

# FIRST CAUSE OF ACTION

## (For Slander of Title Against All Defendants)

28.     PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 27 above.

29.     PNC failed to inform PLAINTIFFS or the Bankrupty Court of the sale of Note, transfer of servicing, or the assignment of Lien to DreamBuilder. PNC also may have failed to inform GreenTree that PNC was no longer the holder of the Note or the Lien. PNC also failed to inform DreamBuilder of the Bankruptcy Orders that satisfied the Note and stripped the Lien from the Subject Property. PNC also failed to notify the Bankruptcy Court that PNC no longer had an interest in the Note, that the Note was sold, that the Lien was assigned, or that PNC was otherwise no longer a creditor.

30.     US Bank failed to inform PLAINTIFFS of its purchase of the Note, failed to direct its agent, GreenTree, to amend or correct the Proof of Claim to identify US Bank as the claimant, failed to inform DreamBuilder of the Bankruptcy Orders that stripped the Lien from the Subject Property, and failed to advise the Bankruptcy Court that either US Bank was the holder of the Note and it did not have an interest in the Lien or that the Lien was assigned to  DreamBuilder.

31.     The actions of PNC, ASG, US Bank, and DreamBuilder impaired PLAINTIFFS' ability to market the Subject Property due to improper conduct, resulting in an improper recording of the Lien and assignment, an encumbrance that should not have existed. Damages are the loss caused by prevention of the sale and loss caused by deprivation of opportunity to sell to a certain purchaser under a pending contract. The actions of Defendants resulted in the filing of an encumbrance on the Subject Property without justification or authorization, thereby clouding title and wrongfully interfering with the sale of the Subject Property.

32.     PNC's actions resulted in DreamBuilder recording an assignment of the Lien that falsely claims an interest in the Subject Property, despite the Bankruptcy

PLAINTIFFS' SECOND AMENDED COMPLAINT

1   Orders deeming the Note satisfied and discharging the Lien. PLAINTIFFS have lost
2   a certain buyer and a certain contract and have been unable to sell the Subject
3   Property.
4       33.    US Bank's actions resulted in DreamBuilder retaining and recording an
5   assignment of the invalid Lien and falsely claiming an interest in the Subject
6   Property, despite the Bankruptcy Orders discharging the Lien. As a result,
7   PLAINTIFFS lost a contract to sell the Subject Property due to the cloud on
8   PLAINTIFFS' title and have since been unable to sell the Subject Property.
9       34.    WHEREFORE, PLAINTIFFS pray for judgment against all Defendants
10  as hereinafter set forth.

<b><u>SECOND CAUSE OF ACTION</u></b>

<b>(For Statutory Violations of Civil Code § 2941 Against ASG, US Bank, and
DOES 1 through 50, inclusive)</b>

14      35.    PLAINTIFFS allege and incorporate by reference the allegations in
15  paragraphs 1 through 34 above.
16      36.    Under Civil Code § 2941, within 30 calendar days after the obligation
17  secured by any deed of trust has been satisfied, the beneficiary or the assignee of the
18  beneficiary shall execute and deliver to the trustee the original note, deed of trust,
19  request for a full reconveyance, and other documents as may be necessary to
20  reconvey, or cause to be reconveyed, the deed of trust.
21      37.    The trustee shall execute the full reconveyance and shall record or
22  cause it to be recorded in the office of the county recorder in which the deed of trust
23  is recorded within 21 calendar days after receipt by the trustee of the request for a
24  full reconveyance, the fee that may be charged pursuant to subdivision (e),
25  recorder's fees, and other documents as may be necessary to reconvey, or cause to
26  be reconveyed, the deed of trust.
27      38.    The violation of this section shall make the violator liable to the person
28  affected by the violation for all damages which that person may sustain by reason of

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFFS' SECOND AMENDED COMPLAINT

1   the violation and shall require that the violator forfeit to that person the sum of five

2   hundred dollars ($500).

3       39.    ASG, US Bank, and DreamBuilder failed to comply with the above

4   noted statutory requirements. The legislative intent behind this statutory scheme

5   favors liberal construction to protect all persons falling within its purview.

6       40.    All Defendants owed a duty to PLAINTIFFS under the statute to

7   provide the reconveyance once the debt was satisfied. No party provided the same

8   and PLAINTIFFS were forced to file the instant action to expunge the Lien.

9   PLAINTIFFS were entitled to expect Defendants to perform by statute and the

10  omission of which resulted in harm to PLAINTIFFS. As such, all damages sustained

11  resulting from these violations are recoverable.

12      41.    Civil Code § 2941(d) authorizes the recovery of damages when a party

13  has breached a duty to reconvey a deed of trust based on a tort theory of damages.

14  Here, the offending act is the <u>failure</u> to remove the Lien. As such, loss caused by

15  prevention of a particular sale and loss caused by deprivation of opportunity to sell

16  to a particular purchaser are recoverable.

17      42.    Moreover, as a result of these violations, PLAINTIFFS have

18  experienced worry, frustration, anger, and sleeplessness due to the failure to execute

19  and deliver the request for reconveyance for over a year. PLAINTIFFS are both

20  suffering from fright, nervousness, grief, anxiety, worry, mortification, shock, and

21  humiliation, resulting in physical pain including, but not limited to, irregular

22  heartbeat and demonstrated atrial fibrillation.

23      43.    PLAINTIFFS are entitled to recovery for all damages resulting from a

24  violation of Civil Code § 2941, including economic damages, as well as damages

25  arising out of physical, emotional, and mental distress.

26      44.    WHEREFORE, PLAINTIFFS pray for judgment against all Defendants

27  as hereinafter set forth.

28  / / /

PLAINTIFFS' SECOND AMENDED COMPLAINT

## THIRD CAUSE OF ACTION

### (For Violations of Civil Code § 2937 and U.S. Code § 2605 Against ASG, US Bank, and DOES 1 through 50, inclusive)

45.     PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 44 above.

46.     Under Civil Code § 2937, any person transferring the servicing of indebtedness as provided in subdivision (a) to a different servicing agent and any person assuming from another responsibility for servicing the instrument evidencing indebtedness, shall give written notice to the borrower or subsequent obligor before the borrower or subsequent obligor becomes obligated to make payments to a new servicing agent.

47.     The Legislature declared that borrowers or subsequent obligors have the right to know when a person holding a promissory note, bond, or other instrument transfers servicing of the indebtedness secured by a mortgage or deed of trust on real property containing one to four residential units located in this state. The Legislature also finds that notification to the borrower or subsequent obligor of the transfer may protect the borrower or subsequent obligor from fraudulent business practices and may ensure timely payments. It was the intent of the Legislature in enacting this section to mandate that a borrower or subsequent obligor be given written notice when a person transfers the servicing of the indebtedness on notes, bonds, or other instruments secured by a mortgage or deed of trust on real property containing one to four residential units and located in this state.

48.     The required notices must be sent by first-class mail, postage prepaid, to the borrower's address designated for loan payment billings. PNC served as the original servicer of the Loan secured by the Deed of Trust recorded against the Subject Property. PNC then sold the Note instrument to ASG; however, PNC remained the interim servicer. PNC never provided notice to PLAINTIFFS. GreenTree took over the servicing of the Loan and neither PNC nor GreenTree

1  provided notice to PLAINTIFFS of this transfer in servicing. US Bank also failed to

2  provide the required notices to PLAINTIFFS.

3      49.    Under U.S. Code § 2605(b), a servicer of any federally related

4  mortgage loan shall notify the borrower in writing of any assignment, sale, or

5  transfer of the servicing of the loan to any other person. The notice shall be made to

6  the borrower not less than 15 days before the effective date of transfer of the

7  servicing of the mortgage loan.

8      50.    ASG failed to provide the required notice to PLAINTIFFS of the

9  change in servicing from PNC to GreenTree. US BANK failed to provide the

10  required notice to PLAINTTIFFS of the transfer in servicing.

11      51.    Failure to comply with these provisions has resulted in harm to

12  PLAINTIFFS. Under U.S. Code § 2605(f), PLAINTIFFS are entitled to recover

13  actual damages resulting from this failure, as well as additional damages, as the

14  court may allow. In addition to these amounts, in the case of any successful action

15  under this section, the costs of the action, together with any attorneys' fees incurred

16  in connection with such action, are recoverable.

17      52.    WHEREFORE, PLAINTIFFS pray for judgment against all Defendants

18  as hereinafter set forth.

19  **FOURTH CAUSE OF ACTION**

20  **(For Negligence Against ASG, US Bank, and DOES 1 through 50, inclusive)**

21      53.    PLAINTIFFS allege and incorporate by reference the allegations in

22  paragraphs 1 through 52 above.

23      54.    Defendants owed a duty to PLAINTIFFS to provide notice of any

24  transfer in servicing, as required under the statutes and regulatory schemes noted

25  above.

26      55.    ASG failed to provide PLAINTIFFS notice of the sale or the transfer in

27  servicing to GreenTree. US Bank failed to provide PLAINTIFFS notice of the sale

28  or the transfer in servicing to GreenTree or the assignment to DreamBuilder. None

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFFS' SECOND AMENDED COMPLAINT

1    of these defendants notified Plaintiffs of PNC's purported assignment of the Lien to

2    DreamBuilder after the sale of the Note to US Bank.

3        56.    As a result of the breach of these duties, PLAINTIFFS were harmed

4    and ASG as well as US Bank contributed to this harm, as PLAINTIFFS were unable

5    to obtain the rights bargained for under the Bankruptcy Orders, lost the ability to sell

6    their home before the October 2018 date when the first priority lien payments were

7    scheduled to increase, and incurred thousands of dollars of expenses in expunging

8    the lien and obtaining new lessees for the Subject Property.

9        57.    WHEREFORE, PLAINTIFFS pray for judgment against all Defendants

10   as hereinafter set forth.

11   **FIFTH CAUSE OF ACTION**

12   **(For Intentional Interference with Prospective Economic Advantage**

13   **Against DreamBuilder, US Bank, and DOES 1 through 100, inclusive)**

14       58.    PLAINTIFFS allege and incorporate by reference the allegations in

15   paragraphs 1 through 57 above.

16       59.    PLAINTIFFS were in contract to sell the Subject Property, with

17   economic benefit to PLAINTIFFS, when Plaintiffs discovered the invalid Lien

18   recently recorded by DreamBuilder. DreamBuilder knew of this relationship based

19   on the demand letters sent by PLAINTIFFS and the Title Company. DreamBuilder

20   intentionally ignored the demands for a Deed of Reconveyance, with the intent to

21   disrupt PLAINTIFFS' sale of the Subject Property and leverage DreamBuilder's

22   position for a payment that is not due. In the alternative, DreamBuilder's knew or

23   should have known that the Lien was invalid and failure to reconvey would result in

24   damages to PLAINTIFFS but acted with reckless disregard for PLAINTIFFS.

25   DreamBuilder's conduct resulted in an actual disruption of the potential sale, as

26   PLAINTIFFS could not provide marketable title and lost the sale, resulting in

27   economic harm to PLAINTIFFS caused by DreamBuilder's failure to abide by the

28   Bankruptcy Orders and relevant statutes and regulations.

-14-

60.     PLAINTIFFS were in contract to sell the Subject Property to a buyer, which was an economic benefit to PLAINTIFFS. US Bank knew or should have known that the Lien was no longer valid along with the assignment to DreamBuilder. US Bank's conduct and failures to act resulted in an invalid Lien claim. The invalid Lien resulted in an actual disruption of the potential sale, as PLAINTIFFS could not provide marketable title and lost the contract because of the cloud on title, resulting in economic harm to PLAINTIFFS caused by US Bank's failure to abide by the Bankruptcy Orders and inform PLAINTIFFS of its interest in the Note.

61.     WHEREFORE, DreamBuilder and US Bank owe PLAINTIFFS damages, including damages for the monies they would have received but for the unfounded lien claim of interest and wrongful interference in the sale of the Subject Property. This conduct was done with fraud, malice, and oppression with intent to harm PLAINTIFFS and/or with reckless disregard to PLAINTIFFS' rights and interests. In addition to compensatory damages, PLAINTIFFS are entitled to exemplary/punitive damages.

## SIXTH CAUSE OF ACTION

### (For Fraud Against PNC, DreamBuilder, US Bank and DOES 1 through 50, inclusive)

62.     PLAINTIFFS allege and incorporate by reference the allegations in paragraphs 1 through 61 above.

63.     PNC was served during the Bankruptcy Proceeding with all Bankruptcy Orders. Despite being on notice of the Bankruptcy proceedings, PNC purportedly did not inform ASG, GreenTree, or DreamBuilder of the sale of the Note to US Bank or assignment of the Lien to DreamBuilder, nor did PNC inform PLAINTIFFS of the purported sale or assignment. PNC failed to inform the Bankruptcy Court of the sale or assignment. PNC used deceit and dishonest means to conceal the sale of the Note and assignment of the Lein to continue to obtain payment from

1    PLAINTIFFS to PLAINTIFFS' detriment and this wrongful act caused

2    PLAINTIFFS to damages, including the loss of marketable title for the Subject

3    Property and the need to file a lawsuit to remove the invalid Lien.

4        64.    DreamBuilder used deceit and dishonest means, by recording an

5    assignment on the Subject Property in 2017, contrary to the Bankruptcy Orders, and

6    by failing to provide a Deed of Reconveyance, and by failing to respond to the

7    demand letters from PLAINTIFFS and the Title Company, despite having been

8    provided the Bankruptcy Orders stripping the Lien from the Subject Property. By

9    failing to remove the Lien, DreamBuilder constructively and effectively continues to

10   assert a claim of interest against the Subject Property for the purposes of obtaining

11   further payment or consideration from PLAINTIFFS, despite knowing that

12   PLAINTIFFS do not owe any further payment. DreamBuilder deceitfully recorded

13   its assignment of the Lien and dishonestly continues to claim an unfounded interest

14   in the Subject Property, in violation and in direct disregard of the Bankruptcy

15   Orders.

16       65.    US Bank used deceit and dishonest means by failing to correct the

17   Proof of Claim filed by its agent, GreenTree, concealing the fact that US Bank in

18   fact held the interest in the Note, not PNC. Moreover, US Bank failed to address the

19   improperly recorded Lien by DreamBuilder despite the fact that US Bank owned the

20   Note as of July 30, 2010. US Bank had a duty to inform GreanTree and update the

21   Bankruptcy Court of the sale of the Note and assignment of the Lien but concealed

22   the same from the Bankruptcy Court and PLAINTIFFS, causing damages to

23   PLAINTIFFS. PLAINTIFFS relied on US Bank's concealments and failures to

24   disclose. US Bank's conduct caused PLAINTIFFS loss of a sale and PLAINTIFFS

25   forced to file a lawsuit to remove the Lien.

26       66.    WHEREFORE, Defendants owe PLAINTIFFS damages for the monies

27   they would have received but for the fraudulent acts committed by PNC,

28   DreamBuilder, US Bank, and DOES 1 through 50, inclusive, as set forth above. This

1 | conduct was done with fraud, malice, and oppression with intent to the harm
2 | PLAINTIFFS and/or with reckless disregard for PLAINTIFF'S interests In addition
3 | to recovery of compensatory damages, PLAINTIFFS are also entitled to
4 | exemplary/punitive damages as an example to other potential defendants.

5 | ### SEVENTH CAUSE OF ACTION

6 | **(For Declaratory Relief Against All Defendants)**

7 | 67.    PLAINTIFFS allege and incorporate by reference the allegations in
8 | paragraphs 1 through 66 above.

9 | 68.    A present controversy exists between PLAINTIFFS and Defendants
10 | regarding the duties owed to PLAINTIFFS and the liabilities resulting therein.

11 | 69.    PLAINTIFFS seek a declaration of rights, including any claims under
12 | the causes of action as described above.

13 | 70.    WHEREFORE, PLAINTIFFS pray for judgment against all Defendants
14 | as hereinafter set forth.

15 | ### PRAYER FOR RELIEF

16 | **WHEREFORE**, PLAINTIFFS demand judgment as follows:

17 | ON THE FIRST CAUSES OF ACTION:

18 | 1.    For damages, according to proof, in excess of $75,000 jointly and
19 | severally against all Defendants.

20 | ON THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION:

21 | 2.    For damages, according to proof, in excess of $75,000 jointly and
22 | severally against ASG and US Bank.

23 | ON THE FIFTH CAUSES OF ACTION:

24 | 3.    For damages, according to proof, in excess of $75,000 jointly and
25 | severally against ASG, US Bank, and DreamBuilder.

26 | ON THE SIXTH CAUSES OF ACTION ONLY:

27 | 4.    Punitive damages, in accordance with the law, against all Defendants.

28 | ON ALL CAUSES OF ACTION:

5.    For prejudgment interest at the legal rate;

6.    For costs incurred in this action, including reasonable attorneys' fees and costs, as provided by law and/or under the Note or the Lien; and

7.    For any other and further relief as the Court may deem just and proper.

Date: April 21, 2020                    **BERDING & WEIL LLP**

By: _____
                                        Fredrick A. Hagen
                                        Attorneys for Plaintiff
                                        Stephen and Melinda Dreher

4831-0533-0874, v. 1

PLAINTIFFS' SECOND AMENDED COMPLAINT

EXHIBIT A

Case 10-21037-TLM   Claim 6-1   Filed 10/26/10   Desc Main Document   Page 1 of 14

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | District of Idaho | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Stephen C Dreher | Case Number: 10-21037 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br><br>Green Tree servicing LLC<br>7360 S. Kyrene Rd. T-120 Tempe,Az. 85283<br><br>Telephone number:<br>(866) 270-3285 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>Green Tree Servicing Llc<br>345 St. Peter St -L800R, St. Paul,MN 55102<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | | |
|---|---|---|
| **1. Amount of Claim as of Date Case Filed:**    $_____ 348,256.43<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** _money loaned_<br>(See instruction #2 on reverse side.) | | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** __5583__<br><br>    **3a. Debtor may have scheduled account as:** __PNC__<br>    (See instruction #3a on reverse side.) | | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>**Describe:**<br><br>**Value of Property:**$_____   **Annual Interest Rate**___%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br>if any: $    63,346.14  **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $    348,256.43  **Amount Unsecured:** $_____ | | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | | **Amount entitled to priority:**<br><br>$_____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | | *\*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | |
|---|---|
| **Date:**<br>10/26/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/S/ HERSCHEL HOYT bankruptcy Supervisor | **FOR COURT USE ONLY** |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

EXHIBIT _A_

## PRE PETITION ARREARS BREAKDOWN

**ACCOUNT NAME:**  Stephen C Dreher

**ACCOUNT NUMBER:**  xxxx5583

**CASE NUMBER:**  10-34957

**STATE/DISTRICT:**  District of Idaho

**PROPERTY ADDRESS:**  546 N Highland Ave, Los Angeles, CA

| | | AMOUNT |
|---|---|---|
| PRE-PETITION PAYMENTS: | Monthly Payment | $2,879.37 |
| Past Due From: 10/15/08-07/15/10 | | 22 |
| | TOTAL: | $63,346.14 |

| | AMOUNT | REASON |
|---|---|---|
| FEES AND COSTS | | late fees |
| | | bpo fee |
| | | legal cost |
| TOTAL: | $0.00 | |

**TOTAL ALL PRE-PETITION ARREARS TO BE INCLUDED ON POC REFERRAL**

| | |
|---|---|
| TOTAL PAYMENTS DUE: | $63,346.14 |
| TOTAL FEES AND COSTS: | $0.00 |
| | $63,346.14 |

**Account information:**

| | |
|---|---|
| Date Loan Incurred: | 4/17/07 |
| status: | Loan accelerated to charge off for non-payment |
| Payoff at filing: | $348,256.43 |
| Prin Balance at filing: | $348,256.43 |

**DATE PREPARED:**  10/26/10

**PREPARED BY:**  Herschel Hoyt
Green Tree Servicing, LLC
877-256-4871 x 35250

P000046

National City®

## FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT - National Home Equity
(Not to be Used for Texas Homestead Loans Unless Purchase Money or Refinance of Purchase Money)

| | | |
|---|---|---|
| 1. **DEBTOR(S)** | **STEPHEN C DREHER** | Date _____4/17/2007_____ |

Address    **546 N HIGHLAND AVE**
**LOS ANGELES, California 90036**

2.    **DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means National City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. Property means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

3.    **PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $ ____350,000.00____, which includes a prepaid finance charge of $ ____7253.00____, plus interest from the date of this Note on the principal sum outstanding and other sums owed under this Note at the per annum rate of ____9.250____ %, payable as described in the payment schedule in the Disclosure Statement. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding them to the principal balance of this Note. Interest will be computed on a simple interest basis based upon a 365-day year, but calculated on actual days. Accordingly, your payment history could affect the amount you will pay under this Note.

4.    **PROPERTY.**    **546 N HIGHLAND AVE**
**LOS ANGELES , California 90036**

5.    **DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

6.    **LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; DOCUMENT REQUEST CHARGE.** If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. The late charge will be the greater of 10% of the unpaid monthly payment or $40. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge. This returned instrument charge will be $25. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be $6 per copy. We will not charge you for documents we are required to provide you by law.

7.    **INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and will be responsible for its loss or damage. You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us, provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (x) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverages at your expense which we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. Our mailing address for purposes of this Section is P.O. Box 91596, Cleveland, OH 44101-0351. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

8.    **PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full, you agree to pay a voluntary prepayment charge which will be equal to the greater of ____0____ % of the principal balance at the time of prepayment or $____0.00____. You will only be charged this voluntary prepayment charge during the first ____0____ months of this Note. If we accelerate the entire balance owing under this Note due to your default, you agree to pay an involuntary prepayment charge which will be equal to $150.00. No portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

9.    **SECURITY AGREEMENT.** To the extent permitted by law you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note and (except for the Property if it is a principal residence) your obligations under any other agreement with us or our affiliates: (x) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; (c) all of your deposit accounts with us or our affiliates (except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property.

10.    **PROPERTY MAINTENANCE AND USE.** You will promptly pay all fees, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or otherwise be functionally without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral. You will not use, or permit others to use, the Property (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

NHEFRN1 (07/03)                                                                                        FRNOTE-MULTI-V1_1

P000047

EXHIBIT B

**Patrick J. Geile, ISB No. 6975**
**Matthew K. Shriver, ISB No. 8472**
**FOLEY FREEMAN, PLLC**
**77 East Idaho Street, Suite 100**
**P.O. Box 10**
**Meridian, ID 83680**
**Phone: (208) 888-9111**
**FAX: (208) 888-5130**
**pgeile@foleyfreeman.com**

**Attorneys for Debtors**

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In re: | **Case No. 10-21037-TLM** |
| **STEPHEN CLIFTON DREHER and**<br>**MELINDA LEE DREHER,** | **Chapter 11** |
| **Debtors.** | **FOURTH AMENDED CHAPTER**<br>**11 PLAN AND RELATED**<br>**MOTIONS** |

Stephen and Melinda Dreher, the Debtors, proposes the following Fourth Amended Plan of Reorganization ("Plan"). It is important that you read this plan carefully, and in conjunction with the Debtors' Disclosure Statement to evaluate the impact such Plan will have upon your claim or equity security interest.

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Plan shall have the following meanings:

1. **ADMINISTRATIVE CLAIM:** A cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of

**FOURTH AMENDED CHAPTER 11 PLAN - 1**

EXHIBIT _B_

P000675

the Debtors, and all allowances approved by the Court in accordance with the
Bankruptcy Code.

    2.   **ALLOWED CLAIM:** "Allowed Claim" shall mean a Claim:

        (i)    in which a proof of Claim has been filed with the Court on or prior to
the bar date[1], which claim has been determined by the Bankruptcy Court to be allowed
by law; or

        (ii)    which is scheduled in the Debtors' schedules of assets and
liabilities and statement of financial affairs filed with the Court pursuant to §521 of the
Bankruptcy Code and which has not been listed (or is no longer listed on the
Confirmation Date, if previously so listed) as disputed, contingent or unliquidated; or

        (iii)    in respect of which a proof of claim has been filed with the Court
with §502(h) or §502(i) of the Bankruptcy Code; and in any case as to which no
objection to the allowance thereof has been interposed within any applicable period of
limitation fixed by Bankruptcy Rule or an order of the Court, or as to which, if objections
have been interposed, the Claim has been determined by order of the Court.

    3.   **ALLOWED INTEREST:**   "Allowed Interest" shall mean an interest in
respect of which a proof of interest has been filed with the Court on or prior to the Bar
Date.

    4.   **BANKRUPTCY CODE:**   "Bankruptcy Code" or "Code" shall mean the
United States Bankruptcy Code 11 U.S.C. § 101, *et. seq.*, and any amendments
thereof.

---

[1] The claims bar date was December 16, 2010 for regular creditors and February 1, 2011 for
governmental entities.

**FOURTH AMENDED CHAPTER 11 PLAN - 2**

    **5.**   **CLAIM:**    "Claim" shall mean any right to payment or right to an equitable remedy against Debtors for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

    **6.**   **CLASS:**    "Class" shall mean any class into which Claims or Interests are classified pursuant to the terms of the Plan.

    **7.**   **CONFIRMATION DATE:**   The Order of Confirmation is entered by the Court provided, however, that if a stay of the order confirming the Plan is in effect on such day, then the Confirmation Date shall be the first business day thereafter on which (i) no stay of the order confirming the Plan is in effect and (ii) the order confirming the Plan has not been vacated.

    **8.**   **CONTESTED CLAIM:**    "Contested Claim" shall mean any Claim which is listed or, the schedules filed by the Debtors as contingent, unliquidated or disputed or is, or becomes, the subject of an objection filed with the Court in accordance with the provisions of the Bankruptcy Code and which remains unresolved.

    **9.**   **COURT:**    "Court" shall mean the United States Bankruptcy Court for the District of Idaho, presiding over the cases or, if necessary, the United States District Court for said district having original jurisdiction over bankruptcy cases and the judges thereof.

    **10.**   **EFFECTIVE DATE:** The effective date of the Plan will be the date of the entrance of the Order on Confirmation.

    **11.**   **IN FULL:**    "In Full" shall mean the amount owing as of the date of the

**FOURTH AMENDED CHAPTER 11 PLAN - 3**

P000677

filing of petition, the amount provided in a proof of claim owing as of the date of the filing of the petition, or the amount listed in the bankruptcy schedules filed with the Bankruptcy Court, whichever is less. "In Full" shall further mean a payment without post-petition interest, unless specifically provided for hereinafter.

**12.**   **PERSON:**   "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organizations, or a government or any agency or political subdivision thereof.

**13.**   **REVENUE CODE:** "Revenue Code" shall mean the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 1, *et. seq*.

# ARTICLE ONE

## CLASSIFICATION CLAIMS AND INTEREST

All allowed claims and allowed interest have been placed in the following classes. The Debtors have determined which claims fall into the classes described below. A Proof of Claim or interest which asserts a claim or interest which is property included in more than one class is in a class to the extent it qualifies within the description of such class and is in a different class to the extent it qualifies within the description of such different class.

1.   PRIORITY CLAIMS

A.   CLASS 1:   Consists of all allowed claims against the Debtors entitled to priority pursuant to 11 U.S.C. §507(a)(1), (a)(2) and (a)(3) of the Bankruptcy Code, including domestic support obligations, reimbursement of the expenses of and compensation

P000678

for services rendered by attorneys, accountants and other professional persons employed by the Debtors. This classification also includes those claims premised on §503(b)(1) of the Bankruptcy Code which arose from transactions pursuant to §364(a) of the Bankruptcy Code. The members of the class include the following:

1.      There are no domestic support obligations.

2.      The United States Trustee's Office; and

3.      Patrick J. Geile and Matthew K. Shriver, the attorneys representing the Debtors, together with such other attorneys as the Court may subsequently approve; and

4.      Daniel L. Rottinghaus and Paul W. Windust, the attorneys representing the Debtors with respect to negotiating the mortgage indebtedness on the Debtors' Idaho and California residences; and

5       David Eash, the attorney who previously represented the Debtors in this Chapter 11 case; and

6.      J. Gregory Wasik, the appraiser employed to appraise the Debtors' property located at 546 N. Highland Ave., Los Angeles, California; and

7.      Bernard Turk, CPA, the accounting firm employed to file and prepare the Debtors' 2010 taxes.

B.      CLASS 2:    Consists of all allowed claims having priority by

**FOURTH AMENDED CHAPTER 11 PLAN - 5**

reason of the provision of 11 U.S.C. §507(a)(4) through §507(a)(7)
of the Bankruptcy Code. **There are no such claims in this matter**.

C.   Priority Tax Claims: Consists of allowed claims against the Debtors
entitled to priority pursuant to 11 U.S.C. §507(a)(8), consisting of
claims of governmental entities for taxes or duties in such amounts
as may be allowed by the Bankruptcy Court. There are the
following tax debts:

Class 3: Consists of the allowed claim of the Kootenai County
Treasurer in the amount of $2,504.32. This claim is secured by the
Worley, Idaho property. This claim is impaired.

2.   SECURED CLAIMS

A.   CLASS 4:   Consists of the allowed secured claim of IndyMac
Bank purportedly made by Deustche Bank National Trust Co. in the
principal amount of $1,064,866.23, plus reasonable attorneys' fees
and costs and unpaid interest. This claim is secured by the Worley,
Idaho property in the first position. $414,866.23 of this claim is
unsecured. This claim is impaired.

B.   CLASS 5:   Consists of the allowed secured claim of IndyMac
Bank purportedly made by Deustche Bank National Trust Co. in the
principal amount of $208,626.90, plus reasonable attorneys' fees
and costs and unpaid interest. This claim is secured by the Worley,
Idaho property in the second position. This claim is wholly

**FOURTH AMENDED CHAPTER 11 PLAN - 6**

unsecured. This claim is impaired.

C.    CLASS 6:    Consists of the allowed secured claim of BAC Home

Loan Servicing LP purportedly made by Bank of New York Mellon,

in the principal amount of approximately $1,171,270.19, plus

reasonable attorneys' fees and costs and unpaid interest. This

claim is secured by the Los Angeles, California property in the first

position.

D.    CLASS 7:    Consists of the allowed secured claim of National City

Bank purportedly made by Green Tree Servicing, LLC in the

principal amount of approximately $348,256.43, plus reasonable

attorneys' fees and costs and unpaid interest. This claim is secured

by the Los Angeles, California property in the second position. This

claim is wholly unsecured. This claim is impaired.

3.    UNSECURED CLAIMS

B.    CLASS 8: Consists of all the remaining allowed unsecured claims

in the estate, estimated at $993,757.14. This includes $414,866.23

that is unsecured from Class 4, $208,626.90 that is unsecured from

Class 5 and $348,256.43 that is unsecured from Class 7.

4.    EQUITY INTERESTS

A.    There are no equity interests in this case.

# ARTICLE TWO

## DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES

There are no unimpaired classes.

**FOURTH AMENDED CHAPTER 11 PLAN - 7**

# ARTICLE THREE

### TREATMENT OF IMPAIRED CLASSES

*All impaired classes of claims shall receive the distributions set forth in Article
Four on account and in complete satisfaction of all such allowed claims.*

# ARTICLE FOUR

### DISTRIBUTIONS - TREATMENT OF CLAIMS AND INTEREST

*1.    Priority Claims:*

*CLASS 1:    Consists of all allowed claims pursuant to 11 U.S.C.
§507(a)(1),(a)(2) or (a)(3) of the Bankruptcy Code, including allowed
attorney, accountant or other professional fees; of persons employed by
the Debtors and as approved by the Court. These claims will also include
§503(b)(1) claims which arose from §364(a) transactions. Debtors will pay
these claims in full, unless otherwise agreed, within 365 days of the
effective date of Debtors' Plan or as otherwise ordered by the Court.
Claimants include:*

*(A)    Domestic Support obligations-there is no such obligation in
this case.*

*(B)    United States Trustee's Office, Chapter 11 quarterly fees.
Debtors will pay all such pre-confirmation fees as they come
due. Debtors estimate that these fees will be $3250.00 over
the life of the Plan.*

*(C)    Patrick J. Geile and Matthew K. Shriver of Foley Freeman,
PLLC, attorney for Debtors, in the approximate sum of*

**FOURTH AMENDED CHAPTER 11 PLAN - 8**

$20,000.00 (in addition to any approved interim compensation allowed by the court) to be paid within 24 months following confirmation of Debtors' Plan as a priority expense or as provided in the confirmation order.

(D)  Daniel L. Rottinghaus and Paul W. Windust of Berding & Weil, LLP, attorney for Debtors, in the approximate sum of $3,000.00 (in addition to any approved interim compensation allowed by the court) to be paid within 24 months following confirmation of Debtors' Plan as a priority expense or as provided in the confirmation order.

(E)  David Eash of Ewing Anderson, P.S., prior attorney for Debtors, in the approximate sum of $5,138.50 to be paid as follows: $2569.25 to be paid on the effective date of the plan, with the balance to be paid within 60 days of the effective date with at least half of the remaining balance to be paid within 30 days of the effective date and the remaining balance within 60 days as a priority expense or as provided in the confirmation order.

(F)  J. Gregory Wasik, in the approximate sum of $475.00 to be paid within 12 months following confirmation of Debtors' Plan as a priority expense or as provided in the confirmation order.

(G)  Bernard Turk, CPA, in the approximate sum of $3,000.00 to

**FOURTH AMENDED CHAPTER 11 PLAN - 9**

be paid within 12 months following confirmation of Debtors'
Plan as a priority expense or as provided in the confirmation
order.

*CLASS 2*:     Consists of all allowed claims having priority under 11 U.S.C.
§507(a)(3) through (a)(7) of the Bankruptcy Code. **There are no such creditors of which Debtors are aware.**

*CLASS 3*:     Consists of 11 U.S.C. §507(a)(8) creditors, governmental
units for taxes or duties. Debtors will pay these claims in full, unless
otherwise agreed, in monthly installments within 730 days of the effective
date of Debtors' Plan or as otherwise ordered by the Court. These pre-
petition claims are:

(A)     Debtors shall timely file and pay all post confirmation returns and
taxes, including federal tax deposits and employment returns.
These creditors shall retain all administrative and other remedies
available to them. There are the following tax debts:

CLASS 3:     Consists of the allowed claim of the Kootenai County
Treasurer in the amount of $2,504.32. This claim is secured by the
Worley, Idaho property. This claim is impaired.

2.     Secured Claims:

A.     CLASS 4:     Consists of the allowed secured claim of IndyMac
Bank purportedly made by Deustche Bank National Trust Co. in the
principal amount of $1,064,866.23, plus reasonable attorneys' fees
and costs and unpaid interest. This claim is secured by the Worley,

**FOURTH AMENDED CHAPTER 11 PLAN - 10**

P000684

*Idaho property. This claim is impaired.* **This class will be
"crammed down" to the current value of the collateral of
$650,000.00 with an interest rate of 4% and re-amortized over a
period of 40 years. Debtors have an offer to sell a portion of
this property to their homeowners' association. The amount of
$75,000.00 from the proceeds of this sale will be paid to the
secured creditor, any remaining proceeds will be used by the
Debtors to reinvest back into the property in the form of
improvements to the secured creditors collateral. The Plan is
not contingent upon this sale and ultimately the sale may not
occur if the Debtors and the potential buyer cannot agree upon
the terms of the sale or if the potential buyer decides not to
purchase the property for example. All other terms will remain
the same and Debtors will continue to make payments
pursuant to those terms of the Note and Deed of Trust on this
property from wages the Debtors receive. The remainder of the
note will be paid as a general unsecured creditor in Class 8.**

B.    CLASS 5:    *Consists of the allowed secured claim of IndyMac
Bank purportedly made by Deustche Bank National Trust Co. in the
principal amount of $208,626.90, plus reasonable attorneys' fees
and costs and unpaid interest. This claim is secured by the Worley,
Idaho property in the second position. This claim is impaired.* **This**

**FOURTH AMENDED CHAPTER 11 PLAN - 11**

P000685

*claim is wholly unsecured and will be paid as a general
unsecured creditor in Class 8.*

C.   CLASS 6:   Consists of the allowed secured claim of BAC Home
Loan Servicing LP purportedly made by Bank of New York Mellon,
in the principal amount of approximately $1,171,270.19, plus
reasonable attorneys' fees and costs and unpaid interest. This
claim is secured by the Los Angeles, California property. **The
current interest rate on this claim is 2.3%, Debtors propose to
fix the current interest at 2.3% and will continue to make
payments pursuant to the Note and Deed of Trust on this
property from the rental income Debtors receive.**

C.   CLASS 7:   Consists of the allowed secured claim of National City
Bank purportedly made by Green Tree Servicing, LLC in the
principal amount of approximately $348,256.43, plus reasonable
attorneys' fees and costs and unpaid interest. This claim is secured
by the Los Angeles, California property in the second position. This
claim is impaired. **This claim is wholly unsecured and will be
paid as a general unsecured creditor in Class 8.**

3.   Unsecured Claims:

A.   Consists of all remaining allowed unsecured claims against the
Debtors, without exception. The unsecured claims shall be those
allowed claims scheduled by the Debtors that are not disputed,
contingent or unliquidated and those allowed claims filed before the
bar date. If an objection has been raised to an otherwise allowed

**FOURTH AMENDED CHAPTER 11 PLAN - 12**

*claim, the claim will be allowed in the amount determined by the
Court. These creditors shall be paid over a period of 5 years, from
the income of the Debtors consistent with this Plan and the "Best
Interest of Creditors" test and "Liquidation Analysis" contained in
Debtors' Disclosure. Debtors will pay general unsecured creditors
approximately $114,969.00 in monthly payments over the life of the
Plan, which is approximately 11.6% of their total claims value.
Debtors will pay general unsecured creditors according to the
following schedule:*

> *Month 1 through 15 of Plan -   $1,028.00*
>
> *Month 16 though 24 of Plan -   $1,245.00*
>
> *Month 25 though 60 of Plan -   $2,454.00.*

4.   *Equity Interests. There are no equity interests in this case.*

5.   *Appointment of Disbursing Agent: Stephen and Melinda Dreher shall be
the disbursing agent for the estate.*

# ARTICLE FIVE

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Debtors currently are the lessors for the Los Angeles rental property. The terms
of that agreement are for a monthly payment of $5000.00. Debtors intend to assume
this contract.

# ARTICLE SIX

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN AND MEANS FOR

## EXECUTION OF THE PLAN

**FOURTH AMENDED CHAPTER 11 PLAN - 13**

1.      Funds necessary for the satisfaction for creditors' claims shall be generated from rental income and Debtors' wages.

2.      Debtors shall pay all administrative expenses in full, as approved by the court, pursuant to the terms of this Plan.

3.      Notwithstanding any other provision of the Plan or Reorganization, disputed claims as set forth in the Debtors' Bankruptcy Schedules on file herein and claims which may be contested shall be paid only upon their allowance by the Bankruptcy Court in conformance with the classification of the allowed amount of such claim as set forth herein.

4.      All property of the Debtors shall be retained by them, except as specifically provided for otherwise hereinbefore.

5.      The Debtors shall retain and may enforce any civil action, claim, or interest against any party whatsoever while the Plan is in effect.

6.      The Debtors may elect to contest various claims filed by creditors.

# ARTICLE SEVEN

## PROPERTY DEALT WITH AND LIEN RETENTION

All property of the Debtors is dealt with in the Plan. Secured creditors shall retain their security interest or lien in the property of the Debtors, subject to the provisions of the Bankruptcy code, other agreements between Debtors and lien holders, and this Plan.

# ARTICLE EIGHT

## MODIFICATION OF PLAN

1.      Modification of the Plan may be proposed upon request of the Debtors at any time before confirmation, provided that such Plan, as modified, meets the

**FOURTH AMENDED CHAPTER 11 PLAN - 14**

requirements of 11 U.S.C. § 1122 and § 1123, and the Debtors have complied with 11
U.S.C. § 1125 of the Code.

2.      In addition, the Plan may be modified at any time after confirmation and
before completion of payments under the Plan, whether or not the Plan has been
substantially consummated, upon request of the Debtors, the United States Trustee or
the holder of an allowed unsecured claim, provided that such Plan, as modified, meets
the requirements of 11 U.S.C. § 1122 and § 1123 of the Code and the Court, after
notice and a hearing, confirms such Plan as modified, under 11 U.S.C. § 1129 of the
Code, and the circumstances then existing justify such modifications.

3.      A holder of a claim or interest that has accepted or rejected the Plan shall
be deemed to have accepted or rejected, as the case may be, such Plan as modified,
unless, within the time fixed by the court, such holder changes its previous acceptance
or rejection.

4.      Any modification of the Plan will supersede and render null and void the
previous provision which was modified.

5.      The Debtors may remedy any defects or omissions or reconcile any
inconsistencies in this Plan or in the final Order of the Court confirming the plan in such
manner as may be necessary to carry out the purpose and intent of this Plan so long as
the interest of claimants or interest holders are not materially or adversely affected.

# ARTICLE NINE

## RETENTION OF JURISDICTION

Until the entry of final decree completely closing the case, the Bankruptcy Court
shall retain jurisdiction over all matters necessary to ensure that the purposes and intent
of this Plan are carried out, including but not limited to the following:

**FOURTH AMENDED CHAPTER 11 PLAN - 15**

1.      Determination of requests for payment of claims entitled to priority under §507(a)(1) of the Code, including compensation of claimants entitled thereto;

2.      In the event an appeal is perfected from the order confirming the Plan, the Court shall also retain jurisdiction appropriate to protect the interest of the estate and to enter such orders as are necessary to protect the interest of creditors during the pendency of such appeal.

3.      Hear and determine any objection to a claim or equity security interest when such objection is filed with the Court by the Debtors.

4.      Hear and determine all questions and disputes regarding title to the property of the Debtors or the Debtors' estate;

5.      Correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purpose and intent of the Plan;

6.      To liquidate damages in connection with any disputed claims;

7.      To adjudicate all claims of a security or ownership interest in any property of the estate or in any proceeds thereof;

8.      To allow and classify claims of any creditor, reexamine claims as provided under the Code, and to hear and determine any objection to a claim or equity security interest when such objection is filed with the Court by the Debtors.

9.      Issue any order necessary to implement the Plan or order of confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtors, the Debtors' estate, and the reorganized Debtors in its estate from actions of creditors, equity security holders, or other parties in interest;

10.     Hear and determine any dispute relating to the terms or implementation of

**FOURTH AMENDED CHAPTER 11 PLAN - 16**

the Plan or Order of Confirmation, or to the rights or obligations of any party in interest
with respect thereto and correct any defect, cure any omission, or reconcile any
consistency in the Plan or the order of confirmation as may be necessary to carry out
the purpose and intent of the Plan;

11.     To hear and determine any modification of the Plan pursuant to § 1127 of
the Bankruptcy Code;

12.     To hear and determine any dispute, claim for relief application, adversary
proceeding or contested matter pending commenced after the confirmation date
involving the collection or liquidation of assets of the Debtors, including, without
limitation, any proceeding commenced for the purpose of voiding, recovering or
preserving for the benefit of the estate any transfer of property, obligation incurred by
the Debtors, lien or setoff;

13.     Hear and determine any matter related to the assumption, assignment , or
rejection of an executory contract or unexpired lease of the Debtors; and

14.     Entry of a final decree closing this Chapter 11 case.

Nothing contained herein shall be construed as restricting the Debtors in the
conduct of its business and operation unless the plan specifically provides to the
contrary.

# ARTICLE TEN

## DISCHARGE

Upon Debtors' completion of all payments under the Plan, the Court shall order a
discharge of (i) any and all claims arising or occurring prior to the effective date, and (ii)
any and all claims of the kind specified in §502(g), 502(h), or 502(i) of the Code. Such
discharge will be effective under §1141 of the Code whether or not a Proof of Claim is

**FOURTH AMENDED CHAPTER 11 PLAN - 17**

P000691

filed or deemed filed, such claim is allowed or the holder of such claim has accepted the
Plan.

# ARTICLE ELEVEN

## VESTING OF PROPERTY IN DEBTORS

1.      Upon the effective date of the Plan all property of the estate shall vest in
the Debtors, and shall be held and owned by the Debtors, free and clear of all liens,
claims and interest of all creditors or all interest holders in the Debtors, except to the
extent provided for in the Plan.

2.      Pending performance of the Plan and unless the Court has otherwise
expressly ordered or this Plan otherwise expressly provide, all creditors, will be stayed
from proceeding against the Debtors, the Debtors' assets, or the assets of the estate.

# ARTICLE TWELVE

## MISCELLANEOUS

1.      The headings in the Plan are for the convenience of reference only and
neither constitute a portion of the Plan nor in any manner affect the construction or
meaning of the provisions of the Plan.

2.      The authority of the Debtors to agree to modification, supplements or
amendments of or to any agreements or instruments referred to in the Plan or utilized in
the Debtors' business shall be as provided in such agreement or instrument.

3.      Except to the extent that the Code or other federal law is applicable, the
rights, duties and obligations arising under this Plan shall be governed and construed
and enforced in accordance with the laws of the State of Idaho.

4.      The rights, duties and obligations of any person named or referred to in
this Plan shall be binding upon and shall inure to the benefit of the successors or

**FOURTH AMENDED CHAPTER 11 PLAN - 18**

P000692

assigns of such person.

     5.     Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

     6.     Any notice, pleading, or document, required to be served by law or according to the provisions of this Plan, shall be in writing and shall be served in person or by Certified Mail upon the Debtors as follows:

     Debtors:     Stephen and Melinda Dreher
                 P.O. Box 400
                 Worley, ID 83876

# ARTICLE THIRTEEN

## CONCLUSION

     The Debtors have given due thought and consideration to the complex problems confronting it, and with the assistance of its counsel, has devised and formulated this Plan. This Plan is respectfully submitted with the hope that its equity and fairness will be considered by the parties in interest, whose consent is necessary to perfect it. It is further hoped that all creditors will join in an affirmative vote for the plan in order that they, as well as the Debtors, will receive the maximum benefits to be derived therefrom. The Debtors have not audited the claims or other figures, however, this Plan and approved Disclosure Statement are as accurate as is feasible under the circumstances.

     Attorneys for Debtors:     Patrick J. Geile
                             Matthew K. Shriver
                             P.O. Box 10
                             Meridian, ID 83680

**FOURTH AMENDED CHAPTER 11 PLAN - 19**

DATED 22nd day of August, 2012.

Debtors

/s/
Stephen Dreher

/s/
Melinda Dreher

**FOURTH AMENDED CHAPTER 11 PLAN - 20**

EXHIBIT C

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

In re:                                                    **Case No. 10-21037-TLM**

**STEPHEN CLIFTON DREHER and MELINDA**          **Chapter 11**
**LEE DREHER,**

_____**Debtors.**_____

### CONFIRMATION ORDER

The Debtors, Stephen Clifton Dreher and Melinda Lee Dreher's Fourth Amended Chapter 11 Plan of Reorganization ("Plan"), filed on August 28, 2012, has been transmitted to the creditors and equity security holders. A confirmation hearing was held on October 15, 2012, and hearing for ruling of confirmation of plan was held December 5, 2012. The court holds as follows:

The Debtors' Fourth Amended Chapter 11 Plan ("Plan") dated August 28, 2012 was transmitted to all creditors, equity security holders and such other parties in interest requesting notice.

The Plan complies with the applicable provisions of Section 1129(a) and/or 1129(b) of the Bankruptcy Code.

Any written objections to confirmation of the Debtors' Plan that have been filed with the Court have been resolved by the provisions of the Debtors' Fourth Amended Plan and this Order.

The provisions of Chapter 11 of the Code have been complied with in every respect and the Plan has been proposed in good faith and not by any means forbidden by law.

Each class of holders of claims or interests has accepted the Debtors' Plan or will receive or retain property which, as of the effective date of the Plan, has a value that is not less than the amount such holder would receive or retain if the Debtors' estate were liquidated under Chapter 7 of the Code on such date.

All payments made or promised to be made by the Debtors, or by any person, for services or costs and expenses in or in connection with the plan and incident to this case have been fully disclosed to the Court and are reasonable; or, if to be fixed after confirmation of the Debtors' Plan, will be subject to Court approval. Debtor can pay professional fees to the extent an order has been entered authorizing the payment.

Confirmation of the Debtors' Plan is not likely to lead to liquidation or the need for further

**EXHIBIT**  C                                    P000036

financial reorganization of the Debtors' estate other than what is set forth in the plan.

Except as otherwise provided for in the Plan or in the order of Confirmation,

**COMPLETION OF THE DEBTORS' PLAN OF REORGANIZATION** acts as a discharge effective as of

the effective date of the Plan, of (I) any and all claims arising or occurring prior to the effective date, and

(ii) any and all claims of the kind specified in §502(g), 502(h), or 502(I) of the Code.  Such discharge will

be effective under §1141 of the Code whether or not a Proof of Claim is filed or deemed filed, such claim

is allowed, or the holder of such claim has accepted the Plan.

NOW, THEREFORE IT IS HEREBY ORDERED ADJUDGED AND DECREED AS FOLLOWS:

Debtors' Fourth Amended Plan of Reorganization is CONFIRMED.

All property of the estate shall be vested in the Debtors free and clear of any and all claims or interest of

Creditors, except as is provided in Debtors' Fourth Amended Plan of Reorganization.

// end of text //

DATED:  December 18, 2012



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

Order submitted by Matthew K. Shriver, attorney for the Debtors

APPROVED AS TO FORM:

_____/s/_____
Stephen Clifton Dreher
Debtor


_____/s/_____
Melinda Lee Dreher
Debtor


_____/s/_____
Matthew K. Shriver
Attorney for Debtors

_____/s/_____

Gary Dyer
U.S. Trustee's Office

P000038

Case 10-21037-TLM   Doc 186-1   Filed 12/18/12   Entered 12/18/12 17:11:01   Desc
Order on Cnf of Plan: Notice Recipients    Page 1 of 1

## Notice Recipients

| | | |
|---|---|---|
| District/Off: 0976-2 | User: arutter | Date Created: 12/18/2012 |
| Case: 10-21037-TLM | Form ID: pdf025 | Total: 2 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| db | Stephen Clifton Dreher | PO Box 400 | Worley, ID 83876 |
| jdb | Melinda Lee Dreher | PO Box 400 | Worley, ID 83876 |

TOTAL: 2

P000039

EXHIBIT D

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor 1 | **Stephen Clifton Dreher** | Social Security number or ITIN | **xxx-xx-5442** |
| | First Name   Middle Name   Last Name | EIN   __-_____ | |
| Debtor 2 (Spouse, if filing) | **Melinda Lee Dreher** | Social Security number or ITIN | **xxx-xx-1343** |
| | First Name   Middle Name   Last Name | EIN   __-_____ | |
| United States Bankruptcy Court   **District of Idaho** | | | |
| Case number:   **10-21037-TLM** | | | |

## Order of Discharge

12/15

**IT IS ORDERED:** A discharge under 11 U.S.C. § 1141(d)(5) is granted to:

Stephen Clifton Dreher
aka Steve Dreher

Melinda Lee Dreher

<u>2/27/18</u>

**By the court:** <u>Terry L Myers</u>
United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in an Individual Chapter 11 Case

This order does not close or dismiss the case.

#### Creditors cannot collect discharged debts

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

#### Most debts are discharged

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 11 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

#### Some debts are not discharged

Examples of debts that are not discharged are:

- ♦ debts that are domestic support obligations;

- ♦ debts for most student loans;

- ♦ debts for most taxes;

- ♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

**For more information, see page 2 >**

EXHIBIT 1

♦ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

♦ some debts which the debtors did not properly list;

♦ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

---

**This information is only a general summary of an individual chapter 11 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

---

P000698

Case 10-21037-TLM   Doc 261-1   Filed 02/27/18   Entered 02/27/18 11:45:25   Desc Ch 11 Individual Discharge: Notice Recipients   Page 1 of 2

# Notice Recipients

| District/Off: 0976-2 | User: arutter | Date Created: 2/27/2018 |
|---|---|---|
| Case: 10-21037-TLM | Form ID: 3180RI | Total: 108 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | | |
|---|---|---|
| cr | Wells Fargo Auto Finance | |
| acc | Bernard Turk | |
| cr | Bank of New York Mellon | |
| | | TOTAL: 3 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| tr | US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| aty | David E Eash | davide@feltmanewing.com |
| aty | David Wayne Newman | ustp.region18.bs.ecf@usdoj.gov |
| aty | Forrest R Goodrum | fgoodrum@mgslegal.com |
| aty | Gary W Dyer | gary.w.dyer@usdoj.gov |
| aty | James K Miersma | jbarrett@mccarthyholthus.com |
| aty | Kelly Greene McConnell | litigation@givenspursley.com |
| aty | Kevin C Braley | kbraley@hollandhart.com |
| aty | Kirk Sterling Cheney | kscheney@hollandhart.com |
| aty | Lisa McMahon-Myhran | lmcmahon@robinsontait.com |
| aty | Patrick John Geile | pgeile@foleyfreeman.com |
| aty | Robin M. Long | Robin@kam13trustee.com |
| aty | Timothy S Callender | tcallender@ameriben.com |
| | | TOTAL: 13 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | |
|---|---|---|---|---|
| db | Stephen Clifton Dreher | PO Box 400 | Worley, ID 83876 | |
| jdb | Melinda Lee Dreher | PO Box 400 | Worley, ID 83876 | |
| aty | David Eash   Ewing Anderson | 2101 Lakewood Dr #236 | Coeur d Alene, ID 83814 | |
| cr | Recovery Management Systems Corporation for Capital Recovery | 25 SE 2nd Avenue, Suite 1120 | Miami, FL 33131 | |
| cr | The Bank of New York Mellon   Routh Crabtree Olsen, PS | Mark Moburg | 13555 SE 36th St   Suite 300   Bellevue, WA 98006 | |
| app | Peak Appraisal Service, LLC | 1018 S Tanglewood Rd | Post Falls, ID | |
| cr | Deutsche Bank National Trust Company   Routh Crabtree Olsen, P.S. | c/o Lance E. Olsen | 13555 SE 36th St.   Suite 300   Bellevue, WA 98006 | |
| app | Gregory Wasik   Los Angeles Valuation Group | 1154 N Sycamore Ave | Suite 11 | Los Angeles, CA 90038 |
| cr | Quantum3 Group LLC as agent for   Galaxy Portfolios LLC | PO Box 788 | Kirkland, WA 98083-0788 | |
| cr | Select Portfolio Servicing, Inc. | 3815 South West Temple | Salt Lake City, UT 84115 | |
| cr | Ocwen Loan Servicing, L.P.   c/o Robinson Tait, P.S. | 710 Second Avenue, Suite 710 | Seattle, WA 98104 | |
| cr | Real Time Resolutions, Inc. | 1349 Empire Central Drive, Suite #150 | PO Box 36655 | Dallas, TX 75247-4029 |
| cr | Bank of America, N.A.   c/o Givens Pursley LLP | 601 W Bannock St | PO Box 2720 | Boise, ID 83701 |
| aty | Daniel L Rottinghaus   Berding & Weil, LLP | 3240 Stone Valley Rd | Alamo, CA | |
| aty | Iain A Macdonald   Macdonald & Associates | 221 Sansome Street | Third Floor | San Francico, CA 94104 |
| aty | Paul W Windust   Berding & Weil, LLP | 3240 Stone Valley Rd | Alamo, CA | |
| ust | Carey A Tompkins   US Trustee | 920 West Riverside Ave, Suite 593 | Spokane, WA 99201 | |
| ust | jfiles1 Office of the U.S. Trustee   Office of the U.S. Trustee | 405 E. 8th Avenue | Suite 1100   Eugene, OR 97401 | |
| ust | US Trustee   Washington Group Central Plaza | 720 Park Blvd, Ste 220 | Boise, ID 83712 | |
| 3631436 | ADT Security Systems, Inc | PO Box 371490 | Pittsburgh, PA 15250 | |
| 3631437 | AFNI, Inc   PO Box 3517 | Bloomington, IL 61702-3517 | | |
| 3631435 | Acs/st Ed Ln Mkg Corp | 501 Bleecker St | Utica, NY 13501 | |
| 3631438 | Allied Collection Svcs | 7120 Hayvenhurst Ave Ste | Van Nuys, CA 91406 | |
| 3715515 | American Express Centurion Bank   c o Becket and Lee LLP | POB 3001 | Malvern, PA 19355-0701 | |
| 3631439 | Amex   c/o Beckett Lee | PO Box 3001 | Malvern, PA 19355 | |
| 3631440 | Bac Home Loans Servici | 450 American St | Simi Valley, CA 93065 | |
| 3631443 | Bank of America | PO Box 15726 | Wilmington, DE 19886 | |
| 3631441 | Bank of America | PO Box 787 | Post Falls, ID 83877-0787 | |
| 3631442 | Bank of America   c/o Bronson Cawley Bergman | 415 Lawrence Bell Drive | Williamsville, NY 14221 | |
| 4430548 | Bank of New York Mellon, f/k/a The Bank   Serviced by Select Portfolio Servicing, | 3815 South West Temple   Salt Lake City, UT 84115 | | |
| 3631444 | Bishop, White Marshall, P.   Attorneys at Law | 720 Olive Way Ste 1301 | Seattle, WA 98101-1801 | |
| 3631445 | Cdi Affiliated Service | PO Box 4068 | Boise, ID 83711 | |

| | | | | |
|---|---|---|---|---|
| 3631446 | Creditors Financial Group | PO Box 440290 | Aurora, CO 80044 | |
| 3940971 | Deutsche Bank National Trust Company | 13555 SE 36th St., Suite 300 | Bellevue, WA 98006 | |
| 4028773 | Deutsche Bank National Trust Company | 13555 SE 36th St.,Suite 300, | Bellevue, WA 98006. | |
| 3652357 | Deutsche Bank National Trust Company | c/o McCarthy & Holthus, LLP | 19735 10th Ave NE, Suite N200    Poulsbo, WA 98370 | |
| 3639862 | Discover Bank | Dfs Services LLC | PO Box 3025 | New Albany, OH 43054-3025 |
| 3631448 | Discover Card | PO Box 3008 | New Albany, OH 43054 | |
| 3631449 | Discover Card | PO Box 30395 | Salt Lake City, UT 84130 | |
| 3631447 | Discover Card | PO Box 6103 | Carol Stream, IL 60197 | |
| 3631450 | Discover Fin | Attention: Bankruptcy Department | Po Box 3025 | New Albany, OH 43054 |
| 3631451 | Doolittle Law | PO Box 9385 | Boise, ID 83707 | |
| 3631454 | ER Solutions Inc | PO Box 9004 | Renton, WA 98057 | |
| 3631452 | Enhanced Recovery Corp | 8014 Bayberry Rd | Jacksonville, FL 32256-7412 | |
| 3631453 | Equinox Financial Management | PO Box 455 | Park Ridge, IL 60068 | |
| 3685959 | Green Tree Servicing LLC | 7360 S. Kyrene Rd | Recovery Dept T120 | Tempe, AZ 85283 |
| 3631455 | Hughes Network | c/o NCO Financial Services | PO Box 15243 | Wilmington, DE 19850 |
| 3631456 | IC Systems, Inc | PO Box 64380 | Saint Paul, MN 55164 | |
| 3631460 | IndyMac Mortgage Services | PO Box 4045 | Kalamazoo, MI 49003 | |
| 3631457 | Indymac Bank | Attn:Bankruptcy | Po Box 4045 | Kalamazoo, MI 49003 |
| 3631458 | Indymac Bank | Attn:Bankruptcy | Po Box 4045 | Kalamazoo, MI 49003 |
| 3631459 | Indymac Federal Bank | Home Loan Servicing | 6900 Beatrice Drive | Kalamazoo, MI 49009 |
| 3631461 | Kootenai County Treasurer | PO Box 6700 | Coeur D Alene, ID 83816 | |
| 3631462 | Mortgage Electronic Reg Sys | c/o ReContrust Company | 1800 Tapo Canyon Rd. | Simi Valley, CA 93063 |
| 3633776 | NORDSTROM fsb | POB 6566 | ENGLEWOOD CO 80155 | |
| 3631463 | National City | PO Box 5570 | Cleveland, OH 44101 | |
| 3631465 | National City | 116 Allegheny Center Mall | Pittsburgh, PA 15212 | |
| 3631464 | National City | Retail Direct Inbound | 400 W. Crosstown Pkwy | Kalamazoo, MI 49001 |
| 3631466 | National Enterprise Systems | 29125 Solon road | Solon, OH 44139-3442 | |
| 3631467 | Nordstrom Bank | PO Box 6587 | Englewood, CO 80155 | |
| 3631468 | Nordstrom Bank | PO Box 79137 | Phoenix, AZ 85062 | |
| 3631469 | Nordstrom FSB | Attention: Bankruptcy Department | Po Box 6566 | Englewood, CO 80155 |
| 4431768 | Ocwen Loan Servicing, LLC | Attn: Bankruptcy Department | P.O. Box 24605 | West Palm Beach, FL 33416-4605 |
| 3631470 | One West Bank Group, LLC | c/o Faslo Solutions, LLC | PO Box 202166 | Dallas, TX 75320 |
| 3944805 | OneWest Bank, FSB | P.O. Box 829009 | Dallas, TX 75382 | |
| 3631472 | PNC Bank | PO Box 5570 | Brecksville, OH 44101 | |
| 3631471 | Penn Credit Corporation | PO Box 988 | Harrisburg, PA 17108 | |
| 3965593 | Quantum3 Group LLC as agent for | Galaxy Portfolios LLC | PO Box 788 | Kirkland, WA 98083-0788 |
| 3631475 | RGS Financial | PO Box 852039 | Richardson, TX 75085 | |
| 4432730 | Real Time Resolutions, Inc. | 1349 Empire Central Drive, Suite #150 | PO Box 36655 | Dallas, Texas 75247-4029 |
| 3631473 | Recontrust Company | 2380 Performance Drive | CA6-914-01-94 | Richardson, TX 75082 |
| 3661651 | Recovery Management Systems Corporation | 25 S.E. 2nd Avenue, Suite 1120 | Miami, FL 33131-1605 | |
| 3631474 | Regional Trustee Services Co | 616 First Ave #500 | Seattle, WA 98104 | |
| 3631476 | Sheryl Johnson | c/o Merchant Realty | PO Box 3842 | Cerritos, CA 90703-3842 |
| 3727566 | THE BANK OF NEW YORK MELLON | 400 National Way | Mail Stop: CA6-919-01-23 | Simi Valley, CA 93065 |
| 3738460 | THE BANK OF NEW YORK MELLON | 400 National Way | Mail Stop: CA6-919-01-23 | Simi Valley, CA 93065 |
| 3631477 | Tate Kirlin Associates | 2810 Southampton Road | Philadelphia, PA 19154 | |
| 3631478 | The CBE Group, Inc | PO Box 2594 | Waterloo, IA 50704 | |
| 3631479 | Union Bank Trust | Po Box 82535 | Lincoln, NE 68501 | |
| 3631480 | Usa Servicing Company | Attn: Bankruptcy Unit | Po Box 9400 | Wilkes Barre, PA 18773 |
| 3650130 | Valley Empire Collection | 11707 E Montgomery | Spokane WA 99206 | |
| 3631481 | Verizon | c/c AFNI Inc | 1310 Martin Luther King Drive | Bloomington, IL 61702 |
| 3631482 | Verizon Communications–RPC | 11313 N Sepulveda | Mission Hills, CA 91345 | |
| 3631483 | Verizon Northwest | PO Box 9688 | Mission Hills, CA 91346 | |
| 3631484 | Verizon Northwest | PO Box 9688 | Mission Hills, CA 91346 | |
| 3707341 | Verizon Wireless | PO BOX 3397 | Bloomington, IL 61702 | |
| 3631485 | Verizon Wireless | PO Box 9622 | Mission Hills, CA 91346 | |
| 3631486 | Vly Emp Coll | 11707 E Montgomery | Spokane, WA 99206 | |
| 3647621 | Wells Fargo Auto Finance | 13675 Technology Dr. Bldg C, 2nd Floor | Eden Prairie, MN 55344 | |
| 3631487 | West Asset Purchasing | 101 Convention Center St | Las Vegas, NV 89109 | |
| 3707343 | West Asset Purchasing, LLC | c/o B-Line, LLC | MS 550 | PO Box 91121    Seattle, WA 98111-9221 |
| 3631488 | Wffinancial | Po Box 7648 | Boise, ID 83707 | |

TOTAL: 92

P000700

EXHIBIT E

Case 10-21037-TLM   Doc 264   Filed 03/01/18   Entered 03/01/18 12:39:45   Desc Main
Document      Page 1 of 1

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

In re:

**STEPHEN CLIFTON DREHER and
MELINDA LEE DREHER,**

Debtors.

Case No. 10-21037-TLM

Chapter 11

## ORDER CLOSING CASE

COMING BEFORE THIS COURT on the Stipulated Motion to Close Case, with appropriate notice given, and good cause appearing, the Debtor's Motion is hereby GRANTED.

// end of text //

DATED:  March 1, 2018



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

Submitted by Patrick J. Geile, Attorney for Debtors
APPROVED AS TO FORM:


/s/
_____
Brett Cahoon
Chapter 11 Trustee

EXHIBIT _E_

P000033

Case 10-21037-TLM   Doc 264-1   Filed 03/01/18   Entered 03/01/18 12:39:45   Desc
Order to Close Case PDF: Notice Recipients   Page 1 of 2

## Notice Recipients

| | |
|---|---|
| District/Off: 0976-2 | User: arutter |
| Case: 10-21037-TLM | Form ID: pdf077 |

Date Created: 3/1/2018
Total: 108

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| cr | Wells Fargo Auto Finance |
| acc | Bernard Turk |
| cr | Bank of New York Mellon |

TOTAL: 3

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| tr | US Trustee | ustp.region18.bs.ecf@usdoj.gov |
| aty | David E Eash | davide@feltmanewing.com |
| aty | David Wayne Newman | ustp.region18.bs.ecf@usdoj.gov |
| aty | Forrest R Goodrum | fgoodrum@mgslegal.com |
| aty | Gary W Dyer | gary.w.dyer@usdoj.gov |
| aty | James K Miersma | jbarrett@mccarthyholthus.com |
| aty | Kelly Greene McConnell | litigation@givenspursley.com |
| aty | Kevin C Braley | kbraley@hollandhart.com |
| aty | Kirk Sterling Cheney | kscheney@hollandhart.com |
| aty | Lisa McMahon-Myhran | lmcmahon@robinsontait.com |
| aty | Patrick John Geile | pgeile@foleyfreeman.com |
| aty | Robin M. Long | Robin@kam13trustee.com |
| aty | Timothy S Callender | tcallender@ameriben.com |

TOTAL: 13

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | |
|---|---|---|
| db | Stephen Clifton Dreher | PO Box 400   Worley, ID 83876 |
| jdb | Melinda Lee Dreher | PO Box 400   Worley, ID 83876 |
| aty | David Eash   Ewing Anderson   2101 Lakewood Dr #236   Coeur d Alene, ID 83814 | |
| cr | Recovery Management Systems Corporation for Capital Recovery   25 SE 2nd Avenue, Suite 1120   Miami, FL 33131 | |
| cr | The Bank of New York Mellon   Routh Crabtree Olsen, PS   Mark Moburg   13555 SE 36th St   Suite 300   Bellevue, WA 98006 | |
| app | Peak Appraisal Service, LLC   1018 S Tanglewood Rd   Post Falls, ID | |
| cr | Deutsche Bank National Trust Company   Routh Crabtree Olsen, P.S.   c/o Lance E. Olsen   13555 SE 36th St.   Suite 300   Bellevue, WA 98006 | |
| app | Gregory Wasik   Los Angeles Valuation Group   1154 N Sycamore Ave   Suite 11   Los Angeles, CA 90038 | |
| cr | Quantum3 Group LLC as agent for   Galaxy Portfolios LLC   PO Box 788   Kirkland, WA 98083-0788 | |
| cr | Select Portfolio Servicing, Inc.   3815 South West Temple   Salt Lake City, UT 84115 | |
| cr | Ocwen Loan Servicing, LLC   c/o Robinson Tait, P.S.   710 Second Avenue, Suite 710   Seattle, WA 98104 | |
| cr | Real Time Resolutions, Inc.   1349 Empire Central Drive, Suite #150   PO Box 36655   Dallas, TX 75247-4029 | |
| cr | Bank of America, N.A.   c/o Givens Pursley LLP   601 W Bannock St   PO Box 2720   Boise, ID 83701 | |
| aty | Daniel L Rottinghaus   Berding & Weil, LLP   3240 Stone Valley Rd   Alamo, CA | |
| aty | Iain A Macdonald   Macdonald & Associates   221 Sansome Street   Third Floor   San Francico, CA 94104 | |
| aty | Paul W Windust   Berding & Weil, LLP   3240 Stone Valley Rd   Alamo, CA | |
| ust | US Trustee   Washington Group Central Plaza   720 Park Blvd, Ste 220   Boise, ID 83712 | |
| ust | Carey A Tompkins   US Trustee   920 West Riverside Ave, Suite 593   Spokane, WA 99201 | |
| ust | jfiles1 Office of the U.S. Trustee   Office of the U.S. Trustee   405 E. 8th Avenue   Suite 1100   Eugene, OR 97401 | |
| 3631436 | ADT Security Systems, Inc   PO Box 371490   Pittsburgh, PA 15250 | |
| 3631437 | AFNI, Inc   PO Box 3517   Bloomington, IL 61702-3517 | |
| 3631435 | Acs/st Ed Ln Mkg Corp   501 Bleecker St   Utica, NY 13501 | |
| 3631438 | Allied Collection Svcs   7120 Hayvenhurst Ave Ste   Van Nuys, CA 91406 | |
| 3715515 | American Express Centurion Bank   c o Becket and Lee LLP   POB 3001   Malvern, PA 19355-0701 | |
| 3631439 | Amex   c/o Beckett Lee   PO Box 3001   Malvern, PA 19355 | |
| 3631440 | Bac Home Loans Servici   450 American St   Simi Valley, CA 93065 | |
| 3631443 | Bank of America   PO Box 15726   Wilmington, DE 19886 | |
| 3631441 | Bank of America   PO Box 787   Post Falls, ID 83877-0787 | |
| 3631442 | Bank of America   c/o Bronson Cawley Bergman   415 Lawrence Bell Drive   Williamsville, NY 14221 | |
| 4430548 | Bank of New York Mellon, f/k/a The Bank   Serviced by Select Portfolio Servicing,   3815 South West Temple   Salt Lake City, UT 84115 | |
| 3631444 | Bishop, White Marshall, P.   Attorneys at Law   720 Olive Way Ste 1301   Seattle, WA 98101-1801 | |
| 3631445 | Cdi Affiliated Service   PO Box 4068   Boise, ID 83711 | |

P000034

Case 10-21037-TLM    Doc 264-1    Filed 03/01/18    Entered 03/01/18 12:39:45    Desc
Order to Close Case PDF: Notice Recipients    Page 2 of 2

| | | | |
|---|---|---|---|
| 3631446 | Creditors Financial Group | PO Box 440290 | Aurora, CO 80044 |
| 3940971 | Deutsche Bank National Trust Company | 13555 SE 36th St., Suite 300 | Bellevue, WA 98006 |
| 4028773 | Deutsche Bank National Trust Company | 13555 SE 36th St., Suite 300, | Bellevue, WA 98006. |
| 3652357 | Deutsche Bank National Trust Company | c/o McCarthy & Holthus, LLP | 19735 10th Ave NE, Suite N200   Poulsbo, WA 98370 |
| 3639862 | Discover Bank   Dfs Services LLC | PO Box 3025 | New Albany, OH 43054-3025 |
| 3631448 | Discover Card | PO Box 3008 | New Albany, OH 43054 |
| 3631449 | Discover Card | PO Box 30395 | Salt Lake City, UT 84130 |
| 3631447 | Discover Card | PO Box 6103 | Carol Stream, IL 60197 |
| 3631450 | Discover Fin   Attention: Bankruptcy Department | Po Box 3025 | New Albany, OH 43054 |
| 3631451 | Doolittle Law | PO Box 9385 | Boise, ID 83707 |
| 3631454 | ER Solutions Inc | PO Box 9004 | Renton, WA 98057 |
| 3631452 | Enhanced Recovery Corp | 8014 Bayberry Rd | Jacksonville, FL 32256-7412 |
| 3631453 | Equinox Financial Management | PO Box 455 | Park Ridge, IL 60068 |
| 3685959 | Green Tree Servicing LLC | 7360 S. Kyrene Rd | Recovery Dept T120   Tempe, AZ 85283 |
| 3631455 | Hughes Network   c/o NCO Financial Services | PO Box 15243 | Wilmington, DE 19850 |
| 3631456 | IC Systems, Inc | PO Box 64380 | Saint Paul, MN 55164 |
| 3631460 | IndyMac Mortgage Services | Po Box 4045 | Kalamazoo, MI 49003 |
| 3631457 | Indymac Bank   Attn:Bankruptcy | Po Box 4045 | Kalamazoo, MI 49003 |
| 3631458 | Indymac Bank   Attn:Bankruptcy | Po Box 4045 | Kalamazoo, MI 49003 |
| 3631459 | Indymac Federal Bank   Home Loan Servicing | 6900 Beatrice Drive | Kalamazoo, MI 49009 |
| 3631461 | Kootenai County Treasurer | PO Box 6700 | Coeur D Alene, ID 83816 |
| 3631462 | Mortgage Electronic Reg Sys   c/o ReContrust Company | 1800 Tapo Canyon Rd. | Simi Valley, CA 93063 |
| 3633776 | NORDSTROM fsb | POB 6566 | ENGLEWOOD CO 80155 |
| 3631463 | National City | PO Box 5570 | Cleveland, OH 44101 |
| 3631465 | National City | 116 Allegheny Center Mall | Pittsburgh, PA 15212 |
| 3631464 | National City   Retail Direct Inbound | 400 W. Crosstown Pkwy | Kalamazoo, MI 49001 |
| 3631466 | National Enterprise Systems | 29125 Solon road | Solon, OH 44139-3442 |
| 3631467 | Nordstrom Bank | PO Box 6587 | Englewood, CO 80155 |
| 3631468 | Nordstrom Bank | PO Box 79137 | Phoenix, AZ 85062 |
| 3631469 | Nordstrom FSB   Attention: Bankruptcy Department | Po Box 6566 | Englewood, CO 80155 |
| 4431768 | Ocwen Loan Servicing, LLC   Attn: Bankruptcy Department | P.O. Box 24605 | West Palm Beach, FL 33416-4605 |
| 3631470 | One West Bank Group, LLC   c/o Faslo Solutions, LLC | PO Box 202166 | Dallas, TX 75320 |
| 3944805 | OneWest Bank, FSB | P.O. Box 829009 | Dallas, TX 75382 |
| 3631472 | PNC Bank   PO Box 5570 | Brecksville, OH 44101 | |
| 3631471 | Penn Credit Corporation | PO Box 988 | Harrisburg, PA 17108 |
| 3965593 | Quantum3 Group LLC as agent for   Galaxy Portfolios LLC | PO Box 788 | Kirkland, WA 98083-0788 |
| 3631475 | RGS Financial | PO Box 852039 | Richardson, TX 75085 |
| 4432730 | Real Time Resolutions, Inc. | 1349 Empire Central Drive, Suite #150 | PO Box 36655   Dallas, Texas 75247-4029 |
| 3631473 | Recontrust Company | 2380 Performance Drive | CA6-914-01-94   Richardson, TX 75082 |
| 3661651 | Recovery Management Systems Corporation | 25 S.E. 2nd Avenue, Suite 1120 | Miami, FL 33131-1605 |
| 3631474 | Regional Trustee Services Co | 616 First Ave #500 | Seattle, WA 98104 |
| 3631476 | Sheryl Johnson   c/o Merchant Realty | PO Box 3842 | Cerritos, CA 90703-3842 |
| 3727566 | THE BANK OF NEW YORK MELLON | 400 National Way | Mail Stop: CA6-919-01-23   Simi Valley, CA 93065 |
| 3738460 | THE BANK OF NEW YORK MELLON | 400 National Way | Mail Stop: CA6-919-01-23   Simi Valley, CA 93065 |
| 3631477 | Tate Kirlin Associates | 2810 Southampton Road | Philadelphia, PA 19154 |
| 3631478 | The CBE Group, Inc | PO Box 2594 | Waterloo, IA 50704 |
| 3631479 | Union Bank Trust | Po Box 82535 | Lincoln, NE 68501 |
| 3631480 | Usa Servicing Company   Attn: Bankruptcy Unit | Po Box 9400 | Wilkes Barre, PA 18773 |
| 3650130 | Valley Empire Collection | 11707 E Montgomery | Spokane WA 99206 |
| 3631481 | Verizon   c/c AFNI Inc | 1310 Martin Luther King Drive | Bloomington, IL 61702 |
| 3631482 | Verizon Communications-RPC | 11313 N Sepulveda | Mission Hills, CA 91345 |
| 3631483 | Verizon Northwest | PO Box 9688 | Mission Hills, CA 91346 |
| 3631484 | Verizon Northwest | PO Box 9688 | Mission Hills, CA 91346 |
| 3707341 | Verizon Wireless | PO BOX 3397 | Bloomington, IL 61702 |
| 3631485 | Verizon Wireless | PO Box 9622 | Mission Hills, CA 91346 |
| 3631486 | Vly Emp Coll | 11707 E Montgomery | Spokane, WA 99206 |
| 3647621 | Wells Fargo Auto Finance | 13675 Technology Dr. Bldg C, 2nd Floor | Eden Prairie, MN 55344 |
| 3631487 | West Asset Purchasing | 101 Convention Center St | Las Vegas, NV 89109 |
| 3707343 | West Asset Purchasing, LLC   c/o B-Line, LLC | MS 550 | PO Box 91121   Seattle, WA 98111-9221 |
| 3631488 | Wffinancial | Po Box 7648 | Boise, ID 83707 |

TOTAL: 92

# EXHIBIT F

**This page is part of your document - DO NOT DISCARD**



# 20170333743



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/24/17 AT 10:44AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201703242850008

00013510211



008223281

**SEQ:**
**01**

**DAR - Mail (Intake)**



**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT _F_

Recording Requested By:
Dreambuilder Investments, LLC
Prepared By: PNC Bank N.A.

When Recorded Return To:
Dreambuilder Investments, LLC/Leah
Whitworth
PO Box 458
Kimberling City, MO 65686
Ref#: 000057000005761 / DBI-296712

Document Number:13510211

Batch Number:8223281

CaseNbr:   11133576
Ref Number:   4586109653
Property Address:
546 N HIGHLAND AVE
LOS ANGELES, CA 90036
CA0-ADT          8/12/2010
NCC ID# 3858  DBI ID# 117541

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 6750 Miller Road, Brecksville OH 44141 does hereby grant, sell, assign, transfer and convey unto Dreambuilder Investments, LLC whose address is 30 Wall Street, 8th Floor, New York, NY 10005 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **NATIONAL CITY BANK** |
| Original Borrower(s): | **STEPHEN C DREHER AND MELINDA DREHER, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | National City Bank |
| Date of Deed of Trust: | 4/17/2007 |
| Original Loan Amount: | $350,000.00 |

Recorded in Los Angeles County, CA on: 4/25/2007, book N/A, page N/A and instrument number 20070996104

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on 8/12/2010

PNC BANK, N.A. SUCCESSOR BY MERGER TO
NATIONAL CITY BANK

By: _____
Ronald E. Rooney, President

State of SC, County of Lexington

The foregoing instrument was acknowledged before me, a Notary Public, on 8/12/2010 by Ronald E. Rooney, President of PNC BANK, N.A. SUCCESSOR BY MERGER TO NATIONAL CITY BANK on behalf of the corporation.

Notary Public: Frances Y King
My Commission Expires: 5/26/2020

```
FRANCES Y KING
Notary Public
State of South Carolina
My Commission Expires 05/26/2020
```

EXHIBIT G

# FOLEY FREEMAN, PLLC
### ATTORNEYS AND COUNSELORS AT LAW
### 953 S. INDUSTRY WAY
### P.O. BOX 10
### MERIDIAN, IDAHO 83680

HOWARD R. FOLEY
MARK S. FREEMAN
PATRICK J. GEILE
LEAH F. SHOTWELL
MATTHEW G. BENNETT
LINDA E. WELLS

TELEPHONE: (208) 888-9111
FACSIMILE: (208) 888-5130
WEB SITE: *www.foleyfreeman.com*

June 20, 2018

## VIA CERTIFIED MAIL

Dreambuilder Investments, LLC
30 Wall St., 6th Floor
New York, NY 10005

    *Re:   Stephen and Melinda Dreher*
         *Chapter 11 Bankruptcy 10-21037-TLM*
         *Property located at 546 N. Highland Ave., Los Angeles, CA 90036*
         *Client No. 2660-002*

To Whom It May Concern:

    Our office has been retained by Stephen and Melinda Dreher regarding your violation of the post-discharge injunction by maintaining an interest in the Dreher's real property.

    Mr. and Mrs. Dreher filed for bankruptcy on August 5, 2010 in the District of Idaho. The Drehers later confirmed a Plan and received a discharge, and this case was closed in February of 2018. I am enclosing the Order of Discharge entered on February 27, 2018. Also enclosed please find Green Tree's Proof of Claim indicating that it received notice, and where notices were to be sent. I would point out that they were also listed on the Certificate of Service on the Order Granting Confirmation and Discharge Orders. No objection was ever filed by Green Tree. I have left a phone message, and have not yet received a return phone call.

    Dreambuilders is currently in violation of the post-discharge injunction, and my client will have actual damages due to the fact that he is unable to sell the property, because your client is clouding title to that property.

EXHIBIT *G*

**Page 2**

Demand is therefore made within fourteen (14) days of the date of this letter to file a release of lien for the above-noted property.  If you have any further questions, please feel free to contact my office.

Sincerely,

FOLEY FREEMAN, PLLC

Patrick J. Geile
*pgeile@foleyfreeman.com*

PJG/rmb
Encl.
cc: Client

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **Stephen Clifton Dreher**<br>First Name   Middle Name   Last Name | Social Security number or ITIN   xxx-xx-5442<br>EIN   __-_____ |
| Debtor 2<br>(Spouse, if filing) | **Melinda Lee Dreher**<br>First Name   Middle Name   Last Name | Social Security number or ITIN   xxx-xx-1343<br>EIN   __-_____ |
| United States Bankruptcy Court   District of Idaho | | |
| Case number:  10-21037-TLM | | |

## Order of Discharge

12/15

**IT IS ORDERED:** A discharge under 11 U.S.C. § 1141(d)(5) is granted to:

Stephen Clifton Dreher                              Melinda Lee Dreher
aka Steve Dreher

<u>2/27/18</u>                                            By the court:  <u>Terry L Myers</u>
                                                            United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in an Individual Chapter 11 Case

This order does not close or dismiss the case.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 11 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**Some debts are not discharged**

Examples of debts that are not discharged are:

♦ debts that are domestic support obligations;

♦ debts for most student loans;

♦ debts for most taxes;

♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

**For more information, see page 2 >**

♦ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

♦ some debts which the debtors did not properly list;

♦ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

This information is only a general summary of an individual chapter 11 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.

Form 3180RI                 **Individual Chapter 11 Discharge**                 page 2

Case 10-21037-TLM   Claim 6-1   Filed 10/26/10   Desc Main Document   Page 1 of 14

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | District of Idaho | PROOF OF CLAIM |
|---|---|---|

| | |
|---|---|
| Name of Debtor:<br>**Stephen C Dreher** | Case Number:<br>**10-21037** |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Name and address where notices should be sent:<br><br>**Green Tree servicing LLC**<br>**7360 S. Kyrene Rd. T-120 Tempe,Az. 85283**<br><br>Telephone number:<br>**(866) 270-3285** | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>**Green Tree Servicing Llc**<br>**345 St. Peter St -L800R, St. Paul,MN 55102**<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:   $_____ **348,256.43**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim. |
| 2. Basis for Claim:   **money loaned**<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. Last four digits of any number by which creditor identifies debtor:   **5583**<br><br>3a. Debtor may have scheduled account as:   **PNC**<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br><br>Value of Property:$_____   Annual Interest Rate___%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $  **63,346.14**  Basis for perfection: _____<br><br>Amount of Secured Claim: $  **348,256.43**  Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | Amount entitled to priority:<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | | |
|---|---|---|
| Date:<br>**10/26/2010** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/S/ HERSCHEL HOYT bankruptcy Supervisor | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 10-21037-TLM   Claim 5-1   Filed 10/28/10   Desc Main Document   Page 2 of 4

## PRE PETITION ARREARS BREAKDOWN

ACCOUNT NAME:     Stephen C Dreher
ACCOUNT NUMBER:   xxxx5583
CASE NUMBER:      10-34957
STATE/DISTRICT:   District of Idaho
PROPERTY ADDRESS: 546 N Highland Ave, Los Angeles, CA

|  |  | AMOUNT |
|---|---|---|
| PRE-PETITION PAYMENTS: | Monthly Payment | $2,879.37 |
| Past Due From: 10/15/08-07/15/10 |  | 22 |
|  | TOTAL: | $63,346.14 |

|  | AMOUNT | REASON |
|---|---|---|
| FEES AND COSTS |  | late fees |
|  |  | bpo fee |
|  |  | legal cost |
| TOTAL: | $0.00 |  |

TOTAL ALL PRE-PETITION ARREARS TO BE INCLUDED ON POC REFERRAL

| TOTAL PAYMENTS DUE: | $63,346.14 |
|---|---|
| TOTAL FEES AND COSTS: | $0.00 |
|  | $63,346.14 |

Account information:
| Date Loan Incurred: | 4/17/07 |
|---|---|
| status: | Loan accelerated to charge off for non-payment |
| Payoff at filing: | $348,256.43 |
| Prin Balance at filing: | $348,256.43 |

DATE PREPARED:    10/26/10
PREPARED BY:      Herschel Hoyt
                  Green Tree Servicing, LLC
                  877-256-4871 x 35250

FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT – National Home Equity
(Not to be Used for Texas Homestead Loans Unless Purchase Money for Refinance of Purchase Money)

| | | | |
|---|---|---|---|
| 1 | DEBTOR(S) | STEPHEN C DREHER | Date __4/17/2007__ |

Address      **546 N HIGHLAND AVE**
                 **LOS ANGELES, California 90036**

**2. DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means National City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. Property means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

**3. PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $_____350,000.00_____, which includes a prepaid finance charge of $_____7252.00_____, plus interest from the date of this Note on the principal sum outstanding and other sums owed under this Note at the per annum rate of _____7.250__%, payable as described in the payment schedule in the Disclosure Statement. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding them to the principal balance of this Note. Interest will be computed on a simple interest basis based upon a 365-day year, but calculated on actual days. Accordingly, your payment history could affect the amount you will pay under this Note.

**4. PROPERTY.**      **546 N HIGHLAND AVE**
                       **LOS ANGELES, California 90036**

**5. DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

**6. LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; DOCUMENT REQUEST CHARGE.** If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. This late charge will be the greater of 10% of the unpaid monthly payment or $40. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge. This returned instrument charge will be $25. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be $6 per copy. We will not charge you for documents we are required to provide you by law.

**7. INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and will be responsible for its loss or damage. You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us, provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverage at your expense which we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or from any sums that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you would purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any other insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. Our mailing address for purposes of this Section is P.O. Box 91596, Cleveland, OH 44101-0351. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

**8. PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full, you agree to pay a voluntary prepayment charge which will be equal to the greater of ____0____% of the principal balance at the time of prepayment or $____0.00____. You will only be charged this voluntary prepayment charge during the first ____0____ months of this Note. If we accelerate the entire balance owing under this Note due to your default, you agree to pay an involuntary prepayment charge which will be equal to $_150.00_. No portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

**9. SECURITY AGREEMENT.** To the extent permitted by law you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note and (except for the Property if it is a principal residence) your obligations under any other agreement with us or our affiliates. (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future advances, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; (c) all of your deposit accounts with us or our affiliates (except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property.

**10. PROPERTY MAINTENANCE AND USE.** You will promptly pay all fees, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral. You will not use, or permit others to use, the Property. (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

NHEFRN1 (07/03)



FRNOTE-MULTI-V1_1

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dreambuilder Investments
30 Wall St., 16th Floor
New York, NY 10005

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 1614 6053 4042 62

2. Article Number (Transfer from service label)

7015 0640 0001 7782 7113

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

# EXHIBIT 2

Daniel L. Rottinghaus, California Bar No. 131949
Fredrick A. Hagen, California Bar No. 196220
Seema N. Kadaba, California Bar No. 304952
**BERDING & WEIL LLP**
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
Telephone:  925/838-2090
Facsimile:   925/820-5592
drottinghaus@berdingweil.com
fhagen@berdingweil.com
skadaba@Berdingweil.com

Attorneys for Plaintiffs
STEPHEN and MELINDA DREHER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN and MELINDA DREHER,<br><br>              Plaintiffs,<br><br>       vs.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, successor by merger to/with NATIONAL CITY BANK; DREAMBUILDER INVESTMENTS, LLC, a New York Limited Liability Company; AMERICAN SERVICING AND REOCVERY GROUP, LLC, A Texas limited liability company; U.S. BANK NATIONAL ASSOCIATION, a trustee under the July 26, 2010, Pass Through Trust Agreement; and DOES 1-50,<br><br>              Defendant.<br>_____ / | No. 2:18-cv-07827-MWF (FFM)<br><br>**DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>**Date:  December 14, 2020**<br>**Time:  10:00 a.m.**<br>**Location: Courtroom 5A**<br><br>Complaint Filed: September 7, 2018<br>Trial Date: March 2, 2020 |

I, Stephen Dreher, declare:

    1.     I am a plaintiff in this matter and make this declaration in response to the motions for summary judgment by American Servicing and Recovery Group, LLC ("ASRG") and U.S. Bank National Association ("U.S. Bank") ("collectively herein "Defendants"). I have personal knowledge of the facts attested to herein and,

-1-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1  if called to testify under oath regarding the matters stated, I can and will

2  competently do so.

3      2.    My wife Melinda Dreher and I are the Plaintiffs in this case and the

4  owners of a single-family residence located at 546 North Highland Avenue, Los

5  Angeles, California, 90036 (hereinafter the "Subject Property"). Melinda Dreher

6  was gifted the Subject Property on January 24, 2000. On April 15, 2004, Melinda

7  Dreher transferred title to the Subject Property to us both, as joint tenants.

8      3.    On or about April 25, 2007, my wife and I obtained a non-purchase

9  money loan from National City Bank for $350,000 under a promissory note ("Loan"

10  or the "Note") and National City Bank recorded a Deed of Trust against the Subject

11  Property to secure the Loan for $350,000.00 ("Deed of Trust" or the "Lien").

12      4.    Later, PNC purchased National City Bank and PNC succeeded

13  National City Bank's rights under the Note and the Lien.

14      5.    Like many other homeowners, we began experiencing financial distress

15  after the 2008 financial crisis and fell behind on our payments.

16      6.    Although we were not aware of this at the time, on July 30, 2010, PNC

17  sold its interest in the Note and Deed of Trust to ASRG in a bulk "Non-Performing

18  Loan Purchase and Interim Servicing Agreement." Under that agreement, PNC

19  remained the interim servicer for the loan. PNC never provided notice of the sale to

20  us, although it retained the role of interim servicer. ASRG never provided notice to

21  us. DreamBuilder never provided notice to us.

22      7.    Recently, we learned that on or after July 30, 2010, ASRG sold its

23  interest in this Note and Deed of Trust to US Bank in a bulk "Mortgage Loan Sale

24  Agreement." I understand that these sales triggered a legal duty of ASRG and PNC

25  to send "good-bye" letters as the seller and interim servicer, and US Bank's duty to

26  send "hello" letters to us as the new owner of our loan. We never received

27  "goodbye" or "hello" letters from defendants as to these sales or service transfers.

28      8.    On August 5, 2010, we filed for Bankruptcy under Chapter 11 listing

-2-

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1   PNC as a creditor. PNC received notice from the bankruptcy court of our filing and
2   all subsequent bankruptcy filings, as shown by the proofs of service filed with the
3   bankruptcy court.

4       9.    We would also learn later that on August 12, 2010, PNC executed an
5   assignment of PNC's interest in the Deed of Trust recorded against our home to
6   Dreambuilders Investment, LLC ("DBI") even though PNC's interest in the deed of
7   trust had previously been sold to ASRG and then U.S. Bank. No one notified us of
8   this additional interest created against our title to our home.

9       10.    On October 26, 2010, the Bankruptcy Court accepted a Proof of Claim
10  from Green Tree Servicing LLC, asserting a claim under the Loan in the amount of
11  $348,256.43 with PNC listed as the only creditor. Although we understand US Bank
12  now owned the Note and deed of trust, US Bank never filed any claim in the
13  Bankruptcy Court or otherwise notified us of the sales. PNC never corrected the
14  Bankruptcy Court or filed a Transfer of Claim. The information on the Proof of
15  Claim was thereafter used in all of our Bankruptcy filings. [See ASRG's Request for
16  Judicial Notice ("RFJN") Exh. 5.]

17      11.    PNC never provided us notice of the sale of the Note and deed of trust
18  to us or to the Bankruptcy Court. Because no one notified us of the transfer of
19  ownership, we continued to believe PNC owned the note and deed of trust.

20      12.    Throughout the bankruptcy proceedings, we continued to believe PNC
21  still owned all interest in the loan, including the note and deed of trust. Had we
22  known that PNC sold the note and deed of trust, we would have taken action to
23  ensure that the new owners were included as creditors in the bankruptcy proceeding.

24      13.    On August 28, 2012, we submitted a "Fourth Amended Chapter 11
25  Plan and Related Motions" (hereinafter the "Plan") to the United States Bankruptcy
26  Court, District of Idaho. The Plan designated the Loan as a "Class 7" claim of
27  National City Bank made by Green Tree Servicing, LLC in the principal amount of
28  approximately $348,256.43." The Plan converted the Loan from a secured interest to

-3-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1 | an impaired unsecured debt. Our schedule of payments was as follows: Month 1

2 | through 15 of the Plan - $1,028.00; Month 16 through 24 of the Plan - $1,245.00;

3 | and Month 25 through 60 of the Plan - $2,454.00." [See ASRG's RFJN Exh. 6.]

4 |        14.    On December 18, 2012, the United States Bankruptcy Court, District of

5 | Idaho, confirmed our Plan and ordered that completion of the Plan would act as a

6 | discharge effective as of the effective date of the Plan of (i) any and all claims

7 | arising or occurring prior to the effective date, and (ii) any and all claims of the kind

8 | specified in § 502(g), 502(h), or 502(i) of the Code (hereinafter "Confirmation

9 | Order"). The Bankruptcy Court held that by terms of the Plan, after completion

10 | therein, all property of the estate shall be vested in the Debtors "free and clear" of

11 | any and all claims of interest of Creditors, except as is provided in the Plan. [See

12 | ASRG's RFJN Exh. 7.]

13 |        15.    We carefully adhered to the Plan and completed all requirements,

14 | including making sixty (60) monthly payments on its unsecured mortgage on the

15 | Subject Property so that we could obtain a discharge. We made payments to PNC

16 | which were accepted. When PNC returned a payment in late 2013, the

17 | accompanying letter did not indicate that PNC no longer owned the loan, that PNC

18 | sold the loan and deed of trust to ASRG, or that PNC had created a new lien interest

19 | by executing an assignment of the deed of trust to DBI. [Please see a true and

20 | correct of PNC's November 20, 2013, letter, attached as **Exhibit A**.]

21 |        16.    After the change in servicer, we continued to believe PNC still owned

22 | the loan and deed of trust. In June 2014, I sent a letter to the new servicer, Land

23 | Home Financial Services, Inc., representing that National City Bank (PNC) was the

24 | owner of the loan. No one responded by disclosing that PNC no longer owned the

25 | loan or deed of trust and that PNC had created an invalid interest in the deed of trust

26 | and assigned it to DBI. [Please see a true and correct of my June 6, 2014, letter to

27 | Land Home Financial, attached as **Exhibit B**.]

28 |        17.    On February 27, 2018, the United States Bankruptcy Court, District of

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1 Idaho signed an Order granting a discharge under 11 U.S.C. § 1141(d)(5)

2 (hereinafter "Discharge Order") to us. PNC and Green Tree were provided a copy of

3 the Discharge Order. [See ASRG's RFJN Exh. 10.] Our understanding was that

4 upon entry of the Discharge Order, the Note was deemed satisfied and the valid Lien

5 was effectively stripped from the Subject Property.

6     18.    At no time during the Bankruptcy proceedings, or during the

7 implementation of the Plan and our compliance with the Plan requirements, or

8 subsequent Bankruptcy Orders, did PNC ever reveal that it had, prior to the

9 bankruptcy filing, sold the Note to ASRG or later assigned the Lien to DBI.

10 Moreover, US Bank never informed the Bankruptcy Court of its interest in the Note

11 or the later assignment if the Lien to DBI, or how, or whether, PNC or US Bank

12 assigned the Lien to DBI.

13     19.    During the pendency of our bankruptcy, DBI recorded the invalid

14 assignment of the Deed of Trust on March 24, 2017. [ASRG's RFJN Exh. 3.]

15     20.    In mid-2018, after we completed the Plan and received the

16 Confirmation and Closing Orders from the Bankruptcy Court, we attempted to sell

17 the home before interest rates increased and to take advantage of the appreciated

18 property value in the market. In order to prepare the home for sale, we did not renew

19 the lease with our existing tenants at the Subject Property. We received several

20 offers to purchase the home but were unable to conclude a sale because of PNC's

21 invalid assignment impairing the marketability of title. We did not learn of the

22 invalid assignment until the sale could not go through. This was the first we heard of

23 DBI or its involvement, as this entire time we believe PNC to be the owner of the

24 Note, Deed, and all its interest.

25     21.    Despite the impairment, we continued efforts to sell the Subject

26 Property to a buyer offering $2.175 million. As a result of the invalid assignment, in

27 or about July 2018, we lost the contract for the sale of the home.

28     22.    On or about August 2018, we received another offer from a prospective

-5-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   buyer in the amount of $2,056,000.00. We attempted to work with the title company

2   to complete the sale with the invalid assignment but this was not possible so we lost

3   the potential sale.

4       23.     In February 2020, Dreambuilders Investments, LLC ("Dreambuilders")

5   sent a Notice of Servicing Transfer to our Idaho address, claiming the servicing of

6   our discharged loan was being transferred to Suna Capital. We thereafter sent a

7   qualified written request to Dreambuilders asking for information about the loan,

8   including the identity of the owner of the loan. Dreambuilders responded by

9   referring us to Suna Capital. [Please see a true and correct copy of Dreambuilder's

10  February 28, 2020, goodbye letter, attached as **Exhibit C**.]

11      24.     Suna Capital sent us a "hello" letter dated March 16, 2020, to our Idaho

12  address, indicating Suna Capital would be the new servicer of our discharged loan.

13  We sent a qualified written request asking Suna Capital for information about the

14  loan, including the identity of the owner of the loan. Suna Capital acknowledged

15  receipt but has yet to provide a response to the questions in our qualified written

16  request. [Please see a true and correct copy of Suna Capital's March 16, 2020, hello

17  letter, attached as **Exhibit D**.]

18      25.     We sold the home in early June 2020 for less than the purchase offers

19  we received in 2018.

20      26.     Green Tree did not send us the "hello" letter dated October 12, 2010,

21  purporting to notify us of the September 1, 2010, loan servicing transfer from PNC

22  to Green Tree on September 1, 2010. We never received this letter or any "hello"

23  letter from Green Tree or any notice that U.S. Bank was the owner or creditor for

24  the loan. Green Tree's proof of claim filed in our bankruptcy case on October 26,

25  2010, failed to notify the bankruptcy court that U.S. Bank was the true owner or our

26  loan, not PNC. [Please see a complete copy of the October 12, 2010, Green Tree

27  "hello" letter, obtained by subpoena from Green Tree's files, attached as **Exhibit E**.]

28      27.     The deed of trust for the loan, obtained from Green Tree's files,

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1   includes our Idaho address on the first page. The notice provision of the deed of
2   trust, paragraph 25, provides that notice should be given at the address on the first
3   page of the deed of trust. [Please see a true and correct copy of the deed of trust and
4   note, obtained by subpoena from Green Tree's files, attached as **Exhibit F**.]

5       28.     Copies of PNC notices to us, obtained from Green Tree's files, also
6   show Green Tree should have known to send notices regarding our loan to the Idaho
7   address. [Please see, for example, a true and correct copy of PNC's March 2010
8   letter, obtained by subpoena from Green Tree's files, attached as **Exhibit G**.]

9       29.     Green Tree's one-page letter, dated October 12, 2020, was addressed to
10  the Los Angeles property subject to the loan. [See **Exhibit E**.] We were not living at
11  the Los Angeles property at the time. Whether or not Green Tree's letter was in fact
12  mailed on October 12, 2010, or at all, is unknown. Either way, we never received
13  this letter until the response to our subpoena for Green Tree's files.

14      30.     As of October 12, 2010, we had already filed our August 5, 2010,
15  bankruptcy in Idaho, which provided our Idaho address for notice. Green Tree filed
16  a proof of claim on October 26, 2010, in our bankruptcy, but failed to disclose that
17  U.S. Bank was our new creditor.

18      31.     Had we known ASRG purchased the loan from PNC and/or that ASRG
19  sold it to U.S. Bank, we could have included ASRG and U.S. Bank as creditors in
20  our bankruptcy proceedings.

21      I declare under penalty of perjury under the laws of the State of California
22  that the foregoing is true and correct. Executed this 23rd day of November 2020, at
23  Worley, Idaho.

24                                          STEPHEN DREHER

25  4818-5503-9183, v. 1

26

27

28

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

-7-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

# EXHIBIT A

**PNC BANK**

Date 11/20/2013

Dear Customer:

Thank for your recent payment.  Unfortunately, we must return your check for the reason(s) shown below.

[]       We cannot process post-dated or stale-dated check.

[]       The account referenced is paid in full or settled in full.

[]       The account referenced is in foreclosure.

[x]      PNC Bank no longer services this account.

[]       The check is not payable to PNC Bank, N.A.

If you have any questions concerning the reason(s) we were unable to process your payment, we invite you to call us at 1-888-762-2265.  Thank you.

Sincerely,

PNC Bank, National Association

Enclosure

*The separate laws of Connecticut, The District of Columbia, New York City, North Carolina, and Vermont each require that their respective residents be furnished with this notice:*

*This is an attempt to collect a debt.  Any information obtained will be used for that purpose.*

**Member of The PNC Financial Services Group**
Consumer Lending  PO Box 5570  Cleveland  Ohio  44101
www.pnc.com



EXHIBIT
**9**

P001040

# EXHIBIT B

June 6, 2014          LETTER TO LAND HOME FINANCIAL SERVICES, INC.

**STEPHEN C. DREHER**
**P.O. BOX 400**
**WORLEY, ID 83876**

LAND HOME FINANCIAL
SERVICES, INC.
Attn: Legal Department
1920 Main St., Ste 700
Irvine, CA 92614

June 6, 2014

TO WHOM IT MAY CONCERN/ LEGAL REPRESENTATIVE OF LAND HOME
SERVICES:

BE ON NOTICE that Land Home Financial Services and its client, National City Bank,
are in violation of Federal Law and of the attached order re: Bankruptcy. To wit: The enclosed
notice (Exhibit A), a purported notice of payment delinquency for Account Number 5465013457
[2nd Trust Deed on 546 N. Highland Ave., Los Angeles, CA 90036) is incorrect and is an illegal
attempt to collect a debt from a debtor subject to a Chapter 11 Bankruptcy reorganization plan.
A copy of the plan is also enclosed (Exhibit B.)

As can clearly be seen, this debt was rendered wholly unsecured and is to be paid as a
general unsecured creditor in Class 8. This is explained on page 12 of the plan. Consequently,
Stephen and Melinda Dreher owe 9.3% of the original debt amount, not the full amount as
indicated in the purported notice of delinquency (Exhibit A.) The plan set up a payment
schedule which has been adhered to by the Drehers since the Bankruptcy Court ordered same.
No payments have been missed and the plan continues to be appropriately serviced per the
Court's order.

//
//
//
//
//
//
//
//
//
//

EXHIBIT
**13**

CONFIDENTIAL

**LETTER TO LAND HOME FINANCIAL SERVICES, INC.**

LAND HOME FINANCIAL SERVICES, INC., on behalf of itself and/or its client NATIONAL CITY BANK, is/are hereby requested to CEASE AND DECIST from any further attempts to collect any amount of money whatsoever from the Drehers other than what complies with the Chapter 11 Bankruptcy reorganization plan.  If this behavior persists, the Drehers shall pursue all legal remedies available to them.  Damages sought will include actual attorney fees expended.

Sincerely,

STEPHEN. C. DREHER

CONFIDENTIAL

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 203 |
| Certified Fee | 330 |
| Return Receipt Fee (Endorsement Required) | 270 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 803 |

Postmark Here

7011 0470 0000 8151 1167

Sent To *Land Home Financial*
Street, Apt. No.; or PO Box No. *1920 Main st #700*
City, State, ZIP+4 *Irvine Ca 92614*

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Land Home Financial*
*1920 Main st #700*
*Irvine Ca. 92614*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                     ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
*Holly Beck*

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)        ☐ Yes

2. Article Number
(Transfer from service label)        7011 0470 0000 8151 1167

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

P001249

# EXHIBIT C



February 28, 2020

STEPHEN C DREHER
400 P.O. Box 400
Worley, ID 83876

Loan Number: DBI-296712
Property Address:
546 N HIGHLAND AVE
LOS ANGELES, CA 90036

## NOTICE OF SERVICING TRANSFER

Dear STEPHEN C DREHER,

The servicing of your loan is being transferred effective, March 16, 2020. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. Dreambuilder Investments, LLC ("Dreambuilder") is now collecting your payments. Dreambuilder will stop accepting payments received from your after March 16, 2020. Suna Capital, LLC, will collect your payments going forward. Your new servicer will start accepting payments received from you on March 16, 2020.

**Send all payments due on or after** March 16, 2020 **to:**
Suna Capital, LLC
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435

If you have any questions for either your present servicer, Dreambuilder, or your new servicer Suna Capital, LLC, about your mortgage loan or this transfer, please contact them using the information below:

**Current Servicer Contact Information:**
Dreambuilder Investments, LLC
228 Park Ave. South No. 51100
New York, NY 10003
Toll-Free Customer Service Number:
1-866-561-5600

**New Servicer Contact Information:**
Suna Capital, LLC
Customer Service
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Toll-Free Customer Service Number:
(800) 988-5267 X121
9.00AM – 5:00PM Mon thru' Fri. EST

Please be assured that the transfer of your mortgage loan does not affect any term or condition of the mortgage instruments other than the terms directly related to the servicing of your loan. Mortgage life, accidental death, disability insurance or other optional products billed and collected with your mortgage payment will not be continued upon the transfer to Suna Capital, LLC. If you currently have one or more of these products, it is possible that you may be able to maintain coverage by making arrangements directly through the companies offering the products in question. If you wish to pursue this, you should contact the companies directly.

228 Park Ave South # 51100
New York, NY  10003
T: 866-561-5600   www.dreambuilder.net



Dreambuilder Investments, LLC. will accept payments with respect to this loan up through the day before the transfer date of March 16, 2020. Please send all payments due before March 16, 2020 to:

Arete Portfolio Management LLC
PO Box 845080
Boston, MA 02284-5080

Please note, if your monthly mortgage loan payment is automatically withdrawn from your bank account or if you are interested in setting up this service you must contact Suna Capital, LLC. to determine if this will be offered. Automatic drafting with Dreambuilder Investments, LLC. will discontinue effective with this servicing transfer.

Sincerely,

DBI Asset Management
ams@dreambuilder.net

P001178



## Borrower Notification Attachment Per RESPA

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer.  Your new servicer must also send you this notice no later than 15 days after the effective date.  You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12USC§2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC§2605) gives you certain consumer rights.  If you send any "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment mediums supplied by the servicer, which includes your name and account number, and your reasons for the request.  If you want to send a "qualified written request" to Dreambuilder Investments, LLC regarding the servicing of your loan, it must be sent to this address:

Dreambuilder Investments LLC, 228 Park Ave South No. 51100 New York, NY 10003

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day-period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.  You should seek legal advice if you believe your rights have been violated.

**FDCPA Information:** This communication is an attempt to collect a debt and any information obtained will be used for that purpose, except with respect to any one whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States, in which case this communication is intended solely for informational purposes and does not constitute a demand for payment.

P001180

Dreambuilder Investments, LLC
228 Park Ave. South No. 51100
New York, NY 10003

NEW YORK NY 100



Stephen C Dreher
400 P.O. Box 400
Worley, ID 83876

83876-040000

# EXHIBIT D



Suna Capital, LLC
Loan Servicing Dept.
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Voice: 800-988-5267 Extn. 124
Facsimile: 800-705-3183
Electronic mail: contact@sunacapital.com
Website: www.sunacapital.com

**March 16, 2020**

**Stephen C Dreher**
P O Box 400
Worley, ID 83876

RE:     Suna Capital, LLC Loan Number: **50602153**
        DBI Loan Number: 296712
Property Address:     546 N HIGHLAND AVENUE, LOS ANGELES, CA 90036

**Dear Stephen C Dreher:**

We are writing to notify you that the servicing of your mortgage loan is being transferred effective March 16, 2020 (the "effective date of transfer"). This means that after this date, a new servicer will be collecting payments from you. Nothing else about your mortgage loan will change.

Dreambuilder Investments, LLC ("DBI") is now collecting your payments. DBI will stop accepting payments received from you after March 16, 2020.

Suna Capital, LLC, ("Suna Capital") will collect your payments going forward. As your new servicer, Suna Capital will start accepting payments received from you on or after March 16, 2020.

Please send all payments due on or after March 16, 2020, including any past due payments, to Suna Capital at this address: Suna Capital, LLC, 138-44C Queens Blvd., Suite 616, Briarwood, NY 11435.

If you have any questions for either your present servicer, DBI, or your new servicer, Suna Capital, about your mortgage loan or this transfer, please contact them using the information below:

**Current Servicer Contact Information:**
*Dreambuilder Investments, LLC*
*228 Park Ave. South No. 51100*
*New York, NY 10003*
*Toll-Free Customer Service Number:*
*1-866-561-5600*

**New Servicer Contact Information:**
*Suna Capital, LLC*
*Loan Servicing Department*
*138-44C Queens Blvd. Suite 616*
*Briarwood, NY 11435*
*Toll-Free Customer Service Number:*
(800) 988-5267 Ext. 124
*9.00AM – 5:00PM Mon thru' Fri. EST*

*Important note about insurance:* If you have mortgage life or disability insurance or any type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: because Suna Capital does not collect or remit premiums for such products, in order to maintain coverage, you should contact the provider of the policy directly. Otherwise it may be cancelled.

This communication is from a debt collector but does not imply that Suna Capital is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment.



Suna Capital, LLC
Loan Servicing Dept.
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Voice: 800-988-5267 Extn 124
Facsimile: 800-705-3183
Electronic mail: contact@sunacapital.com
Website: www.sunacapital.com

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

***Unless you notify Suna Capital within thirty (30) days after receiving this letter that you dispute the validity of the debt or any portion of the debt, Suna Capital will assume that the debt is valid. If, within 30 days of receiving this notice, you notify Suna Capital in writing that you dispute the validity of this debt or any portion of the debt, Suna Capital will obtain verification of the debt or a copy of a judgment against you and mail you a copy of such verification or judgment. Suna Capital will provide you with the name and address of the original creditor, if different from the current creditor, if you request this information in writing within 30 days of receiving this notice. Suna Capital, LLC, is the current creditor to whom the debt is now owed.***

**THIS COMMUNICATION CONSISTS OF THREE PAGES (A TWO PAGE "WELCOME LETTER" AND A ONE PAGE "BORROWER NOTIFICATION ATTACHMENT") EACH OF WHICH CONTAINS IMPORTANT INFORMATION YOU SHOULD REVIEW. FOR ADDITIONAL IMPORTANT INFORMATION REGARDING YOUR CONSUMER RIGHTS, PLEASE SEE THE PAGE ENTITLED "BORROWER NOTIFICATION ATTACHMENT."**

Please find enclosed the Borrower Notification Attachment containing important consumer rights information. We encourage you to read it thoroughly. We look forward to serving you. Again, should you have any questions for your new servicer, Suna Capital, relating to the transfer of servicing please call me toll-free at (800) 988-5267, ext. 124, Eastern Time Zone, during normal business hours.

Sincerely,

Santhosh Chinnappala
Asset Manager
Suna Capital, LLC

This communication is from a debt collector but does not imply that Suna Capital is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment.



Suna Capital, LLC
Loan Servicing Dept.
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Voice: 800-988-5267 Extn 124
Facsimile: 800-705-3183
Electronic mail: contact@sunacapital.com
Website: www.sunacapital.com

### Borrower Notification Attachment Per RESPA

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer. Your new servicer must also send you this notice no later than 15 days after the effective date. You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12USC§2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC§2605) gives you certain consumer rights. If you send any "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment mediums supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" to Suna Capital, LLC regarding the servicing of your loan, it must be sent to this address:

Suna Capital, LLC, 138-44C Queens Blvd., Suite 616, Briarwood, NY 11435.

No later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day-period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

**FDCPA Information:** This communication is an attempt to collect a debt and any information obtained will be used for that purpose, except with respect to any one whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States, in which case this communication is intended solely for informational purposes and does not constitute a demand for payment.

This communication is from a debt collector but does not imply that Suna Capital is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment.

# EXHIBIT E

relationships that work
# green tree

PO Box 6172
Rapid City, SD 57709-6172

Tel 1-800-643-0202
GTServicing.com

October 12, 2010

+ 0304717 0000000002 0%6THS 0055397 6
STEPHEN C DREHER
546 N HIGHLAND AVE
LOS ANGELES CA 90036-2020



Re: Green Tree Servicing LLC* ("Green Tree") Account No.: ████5839
Creditor: U.S. Bank National Association, not in its individual capacity, but solely as trustee under the Grand New Start Pass-Through Trust Agreement

Dear Valued Customer:

The servicing of your loan was transferred from PNC Mortgage, a Division of PNC Banks, NA to Green Tree on September 1, 2010. We are pleased to welcome you to Green Tree.

As your new servicer for the referenced account, Green Tree is required to inform you of the following important notice regarding your rights under federal law:

**AS OF AUGUST 31, 2010, YOU OWE $348,256.43. BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, CONTACT CUSTOMER SERVICE AT THE ADDRESS OR TOLL-FREE NUMBER LISTED ABOVE.**

**UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION OF THE DEBT, WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS OF RECEIVING THIS NOTICE, WE WILL OBTAIN VERIFICATION OF THE DEBT (OR OBTAIN A COPY OF A JUDGMENT, IF THE DEBT HAS BEEN REDUCED TO JUDGMENT) AND MAIL THE VERIFICATION TO YOU. IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, WE WILL ALSO PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

To ensure timely posting of your payments, please send all payments to your new servicer at the address indicated below:

**Green Tree
PO Box 94710
Palatine, IL 60094-4710**

We at Green Tree are honored to serve you. If you need to contact us or have any questions, please call Green Tree at 1-866-270-3285, from 6:00 a.m. to 7:00 p.m. MST, Monday through Thursday, or 6:00 a.m. to 12:00 p.m. MST, Friday and Saturday, or write to us in regard to this debt at Customer Service, PO Box 6172, Rapid City, South Dakota 57709-6172.

Respectfully,

Green Tree

*Green Tree Servicing LLC and related entities, including, for certain loans, in Alabama, Green Tree-AL LLC; in Minnesota, Green Tree Loan Company; and in Pennsylvania, Green Tree Consumer Discount Company.

Fair and Accurate Credit Transactions Act Notice: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**This letter is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.**

000042

EXHIBIT F

This document was prepared by PATRICIA RODGERS National City Bank
6750 Miller Road Brecksville, OH 44141
Please return this document after recording to:
NCB, CLS BRECKSVILLE
DOCUMENTATION, LOCATOR 7120
6750 MILLER ROAD
BRECKSVILLE, OH 44141

04/25/07

20070996104

APN#▮▮▮▮▮▮▮▮-001

State of California _____   Space Above This Line For Recording Data

# DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is April 17, 2007....................
   The parties and their addresses are:
   **TRUSTOR:** STEPHEN C DREHER and Melinda Dreher, Husband and Wife as joint tenants

   23210 S CAVE BAY RD WORLEY, Idaho 83876

   ☒ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
   **TRUSTEE:** National City Bank

   DREHER
   MORTGAGEDEED

   013964586109653   XLLH13F

   **LENDER:** NATIONAL CITY BANK

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
   SEE ATTACHED EXHIBIT A

   The property is located in Los Angeles ................................. at ..............................
   (County)
   546 N HIGHLAND AVE ................. , ........LOS ANGELES............................ , California 90036........
   (Address)                                     (City)                                          (ZIP Code)
   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .........350,000.00.... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

Maturity Date: 4/17/2022

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.  Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

(page 1 of 6)

.

—

:

x

OK

**This page is part of your document - DO NOT DISCARD**



**20070996104**  Pages: 009

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County, California

04/25/07 AT 08:00AM

Fee: 46.00
Tax: 0.00
Other: 0.00
Total: 46.00

Modify

**TITLE(S) :**

L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

000015

B.  All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D.  Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5.  **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6.  **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:

A.  To make all payments when due and to perform or comply with all covenants.

B.  To promptly deliver to Lender any notices that Trustor receives from the holder.

C.  Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8.  **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9.  **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10.  **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11.  **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.   Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

*(page 2 of 6)*

other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants, and conveys, to Trustee, in trust for the benefit of Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Trustor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default.

Upon default, Trustor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Trustor agrees that this Security Instrument is immediately effective between Trustor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee in this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.,   Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0805)

(page 3 of 6)

20 45591040

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring at the search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant (including, but not limited to, advances and expenses as described in the AUTHORITY TO PERFORM and INSURANCE sections) in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

*(page 4 of 6)*



Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.,  Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

(page 5 of 6)

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider  ☐ Planned Unit Development Rider  ☒ Other _Signature Addendum_

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_(signature)_ 4/19/07

(Signature)               (Date)            (Signature)                          (Date)
STEPHEN C DREHER

**ACKNOWLEDGMENT:**

(Individual) STATE OF _California_ ....................., COUNTY OF _Alameda_ ...................} ss.
On this _19_ .......... day of _April 2007_ .......... before me _D. L. Manuel-Miller_ ...............
a notary public, personally appeared _Stephen C. Dreher_ ..................................................
~~personally known to me (or~~ proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is/~~are subscribed to the within instrument and acknowledged to me that ~~he/she/~~they executed the same in ~~his/her/~~their authorized capacity(ies), and that by ~~his/her/~~their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _D. L. Manuel Miller_ ...............
Name (typed or printed)
_D. L. Manuel-Miller_

My commission expires: _30 July 2009_ ...............

D. L. MANUEL-MILLER
Commission # 1596256
Notary Public - California
Alameda County
My Comm. Expires Jul 30, 2009

---

### REQUEST FOR FULL RECONVEYANCE

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ................... County, State of California, in book .........., page ............ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ...................

---

Assessor's Identification Number ...................

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006    *(page 6 of 6)*
VMP®-C165(CA) (0605)

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

**Definition:** "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

Mortgagor(s)/Borrower(s) on Security Instrument:
**STEPHEN C DREHER**

Property Address:

**546 N HIGHLAND AVE
LOS ANGELES California 90036**

Lender:          National City Bank

Lender Reference Number:  **0005499745**

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

**NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS**

_Melinda Dreher_  4-18-07
MELINDA DREHER                 Date                                    Date

_____        _____
                              Date                                    Date

_____
                              Date

**ACKNOWLEDGMENT:**
STATE OF  _Idaho_                    COUNTY OF  _Benewah_       }ss.
On this  _18th_  day of  _April 2007_  before me _Ronald V. Osmonson, Notary_
a notary public, personally appeared  _Melinda Dreher_
_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

RONALD V. OSMONSON
Notary Public
State of Idaho

Signature  _Ronald V. Osmonson_
Name (typed or printed):  _Ronald V. Osmonson_
My commission expires:  _02-20-09_

SIGNADD1 (4/2006)

YOUR REFERENCE: 1127764-LA                                    ORDER NO.: 549867-20

9

# EXHIBIT "A"

LOT(S) 9 OF TRACT NO. 6849, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 76, PAGE(S) 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

MORTGAGEDEED_A

013964586109653

Form PR-S

0005499745

National City Bank

**FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT - National Home Equity**
(Not to be Used for Texas Homestead Loans Unless Purchase Money or Refinance of Purchase Money)

1.   DEBTOR(S)     STEPHEN C DREHER                              Date_____4/17/2007_____

      Address      546 N HIGHLAND AVE
                   LOS ANGELES, California 90036

2.      DEFINITIONS AND GENERAL TERMS.   "You" or "your" means the undersigned Debtors. "We", "our" or "us" means National
City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. "Note" means this promissory note and security agreement
and all related attachments and addenda. "Loan" means the loan evidenced by this Note. Property means the real estate securing the payment of this
Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you,
the terms of which are incorporated by reference in this Note.   Disclosures in the Disclosure Statement are contract terms.   You agree that we are
making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

3.      PROMISSORY NOTE.  For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the
principal sum of $    350,000.00   , which includes a prepaid finance charge of $   7253.00   , plus interest from the
date of this Note on the principal sum outstanding and other sums owed under this Note at the per annum rate of    9.250   %, payable as
described in the payment schedule in the Disclosure Statement.   You agree that all past due and unpaid charges owed, including past due interest,
may be capitalized and earn interest by adding them to the principal balance of this Note.  Interest will be computed on a simple interest basis based
upon a 365-day year, but calculated on actual days.  Accordingly, your payment history could affect the amount you will pay under this Note.

4.      PROPERTY.    546 N HIGHLAND AVE
                     LOS ANGELES , California 90036

5.      DISBURSEMENT OF PROCEEDS.  You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such
other form or manner as we choose in our sole discretion.

6.      LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; DOCUMENT REQUEST CHARGE.  If all or
any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note,
you agree to pay a late charge.  This late charge will be the greater of 10% of the unpaid monthly payment or $40.  If any check, draft, negotiable
order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge.  This
returned instrument charge will be $25.  If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each
payment deferred.   If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of
providing copies.  This document request charge will be $6 per copy.  We will not charge you for documents we are required to provide you by law.

7.      INSURANCE.  You are required to insure the Property until this Loan is paid in full or we sell the Property.  You have the risk of loss of
the Property and will be responsible for its loss or damage.  You agree to obtain property insurance coverage (including furnishing existing
coverage from any insurer you want that is acceptable to us, provided that the insurer is authorized to do business in the state or jurisdiction
where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all
risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law.  You must keep the Property fully insured
against loss or damage on terms which are acceptable to us to the extent permitted by law.  All insurance proceeds we receive (including a refund of
premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property.  If the Property is destroyed, you must
still pay us whatever you owe under this Note.  If you fail to maintain the required insurance, we may at our sole option obtain coverages at your
expense which we believe are necessary to protect our interests in the Property.  You agree to pay the expense of such insurance on demand or agree
that we may add such expense to this Loan.  You acknowledge that insurance we purchase may cost substantially more than insurance you could
purchase.  Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note.  You also
assign to us any other insurance proceeds related to the Note or our interest in the Property.  You must promptly provide us with evidence of
insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of
cancellation or material change in coverage.  Our mailing address for purposes of this Section is: P.O. Box 91596, Cleveland, OH 44101-0351.  You
irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any
claim under your insurance or under any insurance with a third party insurer related to the Property, and-to receive and sign all related papers and
documents on your behalf including, checks, drafts and other items payable to you.

8.      PREPAYMENT.  You may voluntarily prepay the principal sum of this Note in part at any time.  If you voluntarily prepay the principal
sum of this Note in full, you agree to pay a voluntary prepayment charge which will be equal to the greater of   0   % of the principal
balance at the time of prepayment or $   0.00   .   You will only be charged this voluntary prepayment charge during the first
   0    months of this Note.  If we accelerate the entire balance owing under this Note due to your default, you agree to pay a voluntary
prepayment charge which will be equal to $150.00.  No portion of the prepaid finance charge described in Section 3 will be refunded.  Subject to
Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

9.      SECURITY AGREEMENT.  To the extent permitted by law you grant us a security interest and waive all applicable property exemptions
and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note and
(except for the Property if it is a principal residence) your obligations under any other agreement with us or our affiliates: (a) the Property including all
equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d)
unless purchased with the proceeds of this Loan.  If we have a prior lien on your principal residence as security for future obligations, we waive such
security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; (c) all of your deposit accounts with us or our affiliates
(except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing.  Our security interest will be a purchase
money security interest if any of the foregoing are purchased with the proceeds of this Loan.  You agree that we are not a fiduciary with respect to our
security interest.  You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce
the indebtedness of this Note, even if you are not in default.  Upon our request, you will deliver any documents that are necessary for us to perfect our
security interest.  You will defend at your expense our security interest in the Property.  To the extent permitted by law, you agree to pay all actual costs imposed
to release our interest in the Property.

10.      PROPERTY MAINTENANCE AND USE.  You will promptly pay all fees, fines, and taxes related to this Loan and the Property.  You
will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse
claims.  You will make all needed repairs.  You will not make any changes to the Property that will decrease its value or decrease its functionality
without our prior written consent.  You will permit us to inspect the Property at a time which is reasonably convenient.  If you do not do any of the
foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral.  You will not use, or
permit others to use, the Property: (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a
manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a
purpose.

NHEFRN1 (07/03)                                                        FRNOTE-MULTI-V1_1

**11.     DEFAULT AND REMEDIES.** You will be in default under this Note if: (a) you fail to make any payment or pay any other amount owing under this Note when due; (b) you fail to keep any of your agreements under this Note or under any other agreement with us or our affiliates; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property or any other property for which we or our affiliates possess a security interest is lost, stolen, destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; or (g) you are in default on any obligation that is secured by a lien on the Property.  If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. You will pay us interest on this balance at the rate set forth in this Note including after default and acceleration and after any judgment; (bb) demand that you vacate the Property and make it available to us at a time which is reasonably convenient.  You agree to comply with such demand; (cc) sell, lease, or otherwise dispose of the Property. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law; and/or (ee) setoff any of your deposit accounts with us or our affiliates (except individual retirement accounts) without demand or notice.

**12.     PROPERTY CONDITION.** You agree that with respect to any Property: (a) it is free from all material defects, in proper operating order and fit for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of them as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (c) we are not a seller, supplier, merchant or warrantor.  Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility.

**13.     ADDITIONAL AGREEMENTS.** You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such right; (e) the provisions of this Note are only to the extent permitted by applicable law.  Any part of this Note which cannot be enforced will be void, but the remaining parts will remain in effect; (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can correct errors in this Note as provided in 15 U.S.C. 1640 upon notice to you even if they are contract terms and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Note to correct errors in the Note.  You can change any term of this Note only in a writing signed by us; (i) the Bank is a national bank located in Ohio and Bank's decision to make this Loan to you was made in Ohio.  Therefore, this Note shall be governed by and construed in accordance with (i) Federal laws and regulations including but not limited to 12 USC § 85 and (ii) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements.  An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address.  Except as otherwise specified, all notices and payments to us must be sent to P.O. Box 5700, Cleveland, OH 44101-0570, or such other place as we may designate.  Our failure or delay in providing you billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that they are authorized to enter into and execute this Note; (o) we will not be responsible for any personal items in or on any vacated Property. We will make a reasonable effort to return such items to you or have you available them from us provided you notify us within 5 business days of our taking possession and itemize such items.  Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession; (p) we may accept late payments or partial payments without losing any of our rights.  If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107.  If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments or other proceeds will be deemed reasonable unless another method is required by law, in which case that method will be deemed reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you.  Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Customer Privacy, P.O. Box 4088, Kalamazoo, MI 49009.  You must include your name, address, account number and social security number; (t) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (u) we are authorized to sign on your behalf any document required to enforce our interests under this Note; (v) disclosures included in this Note but not required by law are not an admission or waiver of rights by us; (w) all actions under this Note including your outstanding are void and such consent may be withheld for any reason; (x) our typewritten name in Section 2 will constitute our signature for purposes of this Note; (y) we have an established business relationship with you, and unless otherwise prohibited by law.  National City may contact you to offer you products and services that National City thinks may be of interest to you.  Such contacts are not unsolicited, and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service; (z) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD/RUDIA provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; (aa) all amounts owed under this Note will be without relief from valuation and appraisement laws; (bb) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations; and (cc) in this Note, the term "affiliates" means current and future affiliates of National City Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co.

**14.     ADDITIONAL NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notice to Cosigner*, "bank" means us.



FRNNOTE-MULTI-V1_2

0005499743

**NOTICE TO COSIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

**NOTICE TO ALL SIGNERS**

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

If the Property is located in California: Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Property is located in Colorado: The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and these may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the Property is located in Florida: Florida Documentary Stamp Tax in the amount required by law has been paid or will be paid directly to the Department of Revenue, and Florida Documentary Stamps have been placed on the taxable instruments as required by Chapter 201, Florida Statutes.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER: 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and in accordance with law you will not be entitled to receive a refund of unearned charges. 4. If you prepay the unpaid balance, you may have to pay a prepayment penalty.

If the Property is located in Iowa and the principal amount of this Loan exceeds $26,000: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If the Property is located in Maryland: We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Property is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the Property is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If the Property is located in Wisconsin: NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU WILL NOT BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

N1IEFRN3 (07/04)



FRNOTE-MULTI-V1_3

THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH IS INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1. SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

STEPHEN C DREHER                                    X _____
Type or print name of Debtor                            Debtor's signature

_____                             X _____
Type or print name of Debtor                            Debtor's signature

_____                             X _____
Type or print name of Debtor                            Debtor's signature

_____                             X _____
Type or print name of Debtor                            Debtor's signature

**FOR MICHIGAN GUARANTORS ONLY:** Guaranty Agreement. For value received, you the undersigned guarantors jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor. The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law. Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

_____                             X _____
Type or print name of Guarantor                         Guarantor's Signature

_____                             X _____
Type or print name of Guarantor                         Guarantor's signature

©2004 National City Corporation

FRNOTE-MULTI-V1_4

000026

# EXHIBIT G

**PNC BANK**

**PNC Bank**
**P.O. Box 5570**
**Brecksville, OH 44101-0570**

Stephen C Dreher
23210 S Cave Bay Rd
Po Box 400
Worley, ID 83876

Date:                    March 5, 2010
Account Number [REDACTED]9653          ("Account")

You are in default of the above referenced Account. Effective immediately, the Account is hereby accelerated and we hereby demand payment in full of the entire amount owing on the Account as described below.

As of the date of this letter your Account has an accelerated balance in full owing of $376,930.98. This balance includes accrued interest and outstanding late charges as of the date of this letter. Further interest charges will continue to accrue until the Account is paid in full.

We will take the necessary action to protect our interests.

Since the balance of your Account is accelerated, nothing less than full payment of the entire indebtedness is now acceptable. If you should choose to continue making payments or submit a single payment in an amount less than the indicated full payoff of your Account, you authorize us to apply such payments to your Account without restriction and without limiting in any manner our ability to pursue the total balance owing on your Account. You agree that any language contained on a check or draft to the contrary shall be void. We expressly reserve our rights and remedies under your contract and at law.

If you have any further questions, please contact the undersigned.

Sincerely,

Sra Associates
Account Specialist
1-- - Ext.

**Notice: See Reverse Side for Important Information**

000039

# EXHIBIT 3

1  Daniel L. Rottinghaus, California Bar No. 131949
   Fredrick A. Hagen, California Bar No. 196220
2  Seema N. Kadaba, California Bar No. 304952
   **BERDING & WEIL LLP**
3  2175 N. California Blvd, Suite 500
   Walnut Creek, California 94596
4  Telephone:  925/838-2090
   Facsimile:   925/820-5592
5  drottinghaus@berdingweil.com
   fhagen@berdingweil.com
6  skadaba@Berdingweil.com

7  Attorneys for Plaintiffs
   STEPHEN and MELINDA DREHER
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  STEPHEN and MELINDA DREHER,          No. 2:18-cv-07827-MWF (FFM)

13            Plaintiffs,

14       vs.                             **DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**
15  THE PNC FINANCIAL SERVICES
    GROUP, INC., a Pennsylvania
16  Corporation, successor by merger
    to/with NATIONAL CITY BANK;
17  DREAMBUILDER INVESTMENTS,            **Date:  December 14, 2020**
    LLC, a New York Limited Liability    **Time:  10:00 a.m.**
18  Company; AMERICAN SERVICING          **Location: Courtroom 5A**
    AND REOCVERY GROUP, LLC, A
19  Texas limited liability company; U.S.  Complaint Filed: September 7, 2018
    BANK NATIONAL ASSOCIATION, a          Trial Date: March 2, 2020
20  trustee under the July 26, 2010, Pass
    Through Trust Agreement; and DOES
21  1-50,

22            Defendant.
                                    /
23  _____

24  I, Stephen Dreher, declare:

25       1.    I am a plaintiff in this matter and make this declaration in response to

26  the motions for summary judgment by American Servicing and Recovery Group,

27  LLC ("ASRG") and U.S. Bank National Association ("U.S. Bank") ("collectively

28  herein "Defendants"). I have personal knowledge of the facts attested to herein and,

-1-

1  if called to testify under oath regarding the matters stated, I can and will

2  competently do so.

3    2. My wife Melinda Dreher and I are the Plaintiffs in this case and the

4  owners of a single-family residence located at 546 North Highland Avenue, Los

5  Angeles, California, 90036 (hereinafter the "Subject Property"). Melinda Dreher

6  was gifted the Subject Property on January 24, 2000. On April 15, 2004, Melinda

7  Dreher transferred title to the Subject Property to us both, as joint tenants.

8    3. On or about April 25, 2007, my wife and I obtained a non-purchase

9  money loan from National City Bank for $350,000 under a promissory note ("Loan"

10  or the "Note") and National City Bank recorded a Deed of Trust against the Subject

11  Property to secure the Loan for $350,000.00 ("Deed of Trust" or the "Lien").

12    4. Later, PNC purchased National City Bank and PNC succeeded

13  National City Bank's rights under the Note and the Lien.

14    5. Like many other homeowners, we began experiencing financial distress

15  after the 2008 financial crisis and fell behind on our payments.

16    6. Although we were not aware of this at the time, on July 30, 2010, PNC

17  sold its interest in the Note and Deed of Trust to ASRG in a bulk "Non-Performing

18  Loan Purchase and Interim Servicing Agreement." Under that agreement, PNC

19  remained the interim servicer for the loan. PNC never provided notice of the sale to

20  us, although it retained the role of interim servicer. ASRG never provided notice to

21  us. DreamBuilder never provided notice to us.

22    7. Recently, we learned that on or after July 30, 2010, ASRG sold its

23  interest in this Note and Deed of Trust to US Bank in a bulk "Mortgage Loan Sale

24  Agreement." I understand that these sales triggered a legal duty of ASRG and PNC

25  to send "good-bye" letters as the seller and interim servicer, and US Bank's duty to

26  send "hello" letters to us as the new owner of our loan. We never received

27  "goodbye" or "hello" letters from defendants as to these sales or service transfers.

28    8. On August 5, 2010, we filed for Bankruptcy under Chapter 11 listing

-2-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   PNC as a creditor. PNC received notice from the bankruptcy court of our filing and

2   all subsequent bankruptcy filings, as shown by the proofs of service filed with the

3   bankruptcy court.

4         9.    We would also learn later that on August 12, 2010, PNC executed an

5   assignment of PNC's interest in the Deed of Trust recorded against our home to

6   Dreambuilders Investment, LLC ("DBI") even though PNC's interest in the deed of

7   trust had previously been sold to ASRG and then U.S. Bank. No one notified us of

8   this additional interest created against our title to our home.

9         10.   On October 26, 2010, the Bankruptcy Court accepted a Proof of Claim

10   from Green Tree Servicing LLC, asserting a claim under the Loan in the amount of

11   $348,256.43 with PNC listed as the only creditor. Although we understand US Bank

12   now owned the Note and deed of trust, US Bank never filed any claim in the

13   Bankruptcy Court or otherwise notified us of the sales. PNC never corrected the

14   Bankruptcy Court or filed a Transfer of Claim. The information on the Proof of

15   Claim was thereafter used in all of our Bankruptcy filings. [See ASRG's Request for

16   Judicial Notice ("RFJN") Exh. 5.]

17         11.   PNC never provided us notice of the sale of the Note and deed of trust

18   to us or to the Bankruptcy Court. Because no one notified us of the transfer of

19   ownership, we continued to believe PNC owned the note and deed of trust.

20         12.   Throughout the bankruptcy proceedings, we continued to believe PNC

21   still owned all interest in the loan, including the note and deed of trust. Had we

22   known that PNC sold the note and deed of trust, we would have taken action to

23   ensure that the new owners were included as creditors in the bankruptcy proceeding.

24         13.   On August 28, 2012, we submitted a "Fourth Amended Chapter 11

25   Plan and Related Motions" (hereinafter the "Plan") to the United States Bankruptcy

26   Court, District of Idaho. The Plan designated the Loan as a "Class 7" claim of

27   National City Bank made by Green Tree Servicing, LLC in the principal amount of

28   approximately $348,256.43." The Plan converted the Loan from a secured interest to

-3-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   an impaired unsecured debt. Our schedule of payments was as follows: Month 1

2   through 15 of the Plan - $1,028.00; Month 16 through 24 of the Plan - $1,245.00;

3   and Month 25 through 60 of the Plan - $2,454.00." [See ASRG's RFJN Exh. 6.]

4          14.   On December 18, 2012, the United States Bankruptcy Court, District of

5   Idaho, confirmed our Plan and ordered that completion of the Plan would act as a

6   discharge effective as of the effective date of the Plan of (i) any and all claims

7   arising or occurring prior to the effective date, and (ii) any and all claims of the kind

8   specified in § 502(g), 502(h), or 502(i) of the Code (hereinafter "Confirmation

9   Order"). The Bankruptcy Court held that by terms of the Plan, after completion

10  therein, all property of the estate shall be vested in the Debtors "free and clear" of

11  any and all claims of interest of Creditors, except as is provided in the Plan. [See

12  ASRG's RFJN Exh. 7.]

13         15.   We carefully adhered to the Plan and completed all requirements,

14  including making sixty (60) monthly payments on its unsecured mortgage on the

15  Subject Property so that we could obtain a discharge. We made payments to PNC

16  which were accepted. When PNC returned a payment in late 2013, the

17  accompanying letter did not indicate that PNC no longer owned the loan, that PNC

18  sold the loan and deed of trust to ASRG, or that PNC had created a new lien interest

19  by executing an assignment of the deed of trust to DBI. [Please see a true and

20  correct of PNC's November 20, 2013, letter, attached as **Exhibit A**.]

21         16.   After the change in servicer, we continued to believe PNC still owned

22  the loan and deed of trust. In June 2014, I sent a letter to the new servicer, Land

23  Home Financial Services, Inc., representing that National City Bank (PNC) was the

24  owner of the loan. No one responded by disclosing that PNC no longer owned the

25  loan or deed of trust and that PNC had created an invalid interest in the deed of trust

26  and assigned it to DBI. [Please see a true and correct of my June 6, 2014, letter to

27  Land Home Financial, attached as **Exhibit B**.]

28         17.   On February 27, 2018, the United States Bankruptcy Court, District of

-4-

1   Idaho signed an Order granting a discharge under 11 U.S.C. § 1141(d)(5)

2   (hereinafter "Discharge Order") to us. PNC and Green Tree were provided a copy of

3   the Discharge Order. [See ASRG's RFJN Exh. 10.] Our understanding was that

4   upon entry of the Discharge Order, the Note was deemed satisfied and the valid Lien

5   was effectively stripped from the Subject Property.

6        18.   At no time during the Bankruptcy proceedings, or during the

7   implementation of the Plan and our compliance with the Plan requirements, or

8   subsequent Bankruptcy Orders, did PNC ever reveal that it had, prior to the

9   bankruptcy filing, sold the Note to ASRG or later assigned the Lien to DBI.

10  Moreover, US Bank never informed the Bankruptcy Court of its interest in the Note

11  or the later assignment if the Lien to DBI, or how, or whether, PNC or US Bank

12  assigned the Lien to DBI.

13       19.   During the pendency of our bankruptcy, DBI recorded the invalid

14  assignment of the Deed of Trust on March 24, 2017. [ASRG's RFJN Exh. 3.]

15       20.   In mid-2018, after we completed the Plan and received the

16  Confirmation and Closing Orders from the Bankruptcy Court, we attempted to sell

17  the home before interest rates increased and to take advantage of the appreciated

18  property value in the market. In order to prepare the home for sale, we did not renew

19  the lease with our existing tenants at the Subject Property. We received several

20  offers to purchase the home but were unable to conclude a sale because of PNC's

21  invalid assignment impairing the marketability of title. We did not learn of the

22  invalid assignment until the sale could not go through. This was the first we heard of

23  DBI or its involvement, as this entire time we believe PNC to be the owner of the

24  Note, Deed, and all its interest.

25       21.   Despite the impairment, we continued efforts to sell the Subject

26  Property to a buyer offering $2.175 million. As a result of the invalid assignment, in

27  or about July 2018, we lost the contract for the sale of the home.

28       22.   On or about August 2018, we received another offer from a prospective

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1    buyer in the amount of $2,056,000.00. We attempted to work with the title company

2    to complete the sale with the invalid assignment but this was not possible so we lost

3    the potential sale.

4         23.    In February 2020, Dreambuilders Investments, LLC ("Dreambuilders")

5    sent a Notice of Servicing Transfer to our Idaho address, claiming the servicing of

6    our discharged loan was being transferred to Suna Capital. We thereafter sent a

7    qualified written request to Dreambuilders asking for information about the loan,

8    including the identity of the owner of the loan. Dreambuilders responded by

9    referring us to Suna Capital. [Please see a true and correct copy of Dreambuilder's

10   February 28, 2020, goodbye letter, attached as **Exhibit C**.]

11        24.    Suna Capital sent us a "hello" letter dated March 16, 2020, to our Idaho

12   address, indicating Suna Capital would be the new servicer of our discharged loan.

13   We sent a qualified written request asking Suna Capital for information about the

14   loan, including the identity of the owner of the loan. Suna Capital acknowledged

15   receipt but has yet to provide a response to the questions in our qualified written

16   request. [Please see a true and correct copy of Suna Capital's March 16, 2020, hello

17   letter, attached as **Exhibit D**.]

18        25.    We sold the home in early June 2020 for less than the purchase offers

19   we received in 2018.

20        26.    Green Tree did not send us the "hello" letter dated October 12, 2010,

21   purporting to notify us of the September 1, 2010, loan servicing transfer from PNC

22   to Green Tree on September 1, 2010. We never received this letter or any "hello"

23   letter from Green Tree or any notice that U.S. Bank was the owner or creditor for

24   the loan. Green Tree's proof of claim filed in our bankruptcy case on October 26,

25   2010, failed to notify the bankruptcy court that U.S. Bank was the true owner or our

26   loan, not PNC. [Please see a complete copy of the October 12, 2010, Green Tree

27   "hello" letter, obtained by subpoena from Green Tree's files, attached as **Exhibit E**.]

28        27.    The deed of trust for the loan, obtained from Green Tree's files,

-6-

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

1   includes our Idaho address on the first page. The notice provision of the deed of

2   trust, paragraph 25, provides that notice should be given at the address on the first

3   page of the deed of trust. [Please see a true and correct copy of the deed of trust and

4   note, obtained by subpoena from Green Tree's files, attached as **Exhibit F**.]

5       28.   Copies of PNC notices to us, obtained from Green Tree's files, also

6   show Green Tree should have known to send notices regarding our loan to the Idaho

7   address. [Please see, for example, a true and correct copy of PNC's March 2010

8   letter, obtained by subpoena from Green Tree's files, attached as **Exhibit G**.]

9       29.   Green Tree's one-page letter, dated October 12, 2020, was addressed to

10  the Los Angeles property subject to the loan. [See **Exhibit E**.] We were not living at

11  the Los Angeles property at the time. Whether or not Green Tree's letter was in fact

12  mailed on October 12, 2010, or at all, is unknown. Either way, we never received

13  this letter until the response to our subpoena for Green Tree's files.

14      30.   As of October 12, 2010, we had already filed our August 5, 2010,

15  bankruptcy in Idaho, which provided our Idaho address for notice. Green Tree filed

16  a proof of claim on October 26, 2010, in our bankruptcy, but failed to disclose that

17  U.S. Bank was our new creditor.

18      31.   Had we known ASRG purchased the loan from PNC and/or that ASRG

19  sold it to U.S. Bank, we could have included ASRG and U.S. Bank as creditors in

20  our bankruptcy proceedings.

21      I declare under penalty of perjury under the laws of the State of California

22  that the foregoing is true and correct. Executed this 23rd day of November 2020, at

23  Worley, Idaho.

24                                    STEPHEN DREHER

25  4818-5503-9183, v. 1

26

27

28

BERDING & WEIL, LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94595

DECLARATION OF STEPHEN DREHER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

# EXHIBIT A

## PNC BANK

Date 11/20/2013

Dear Customer:

Thank for your recent payment.  Unfortunately, we must return your check for the reason(s) shown below.

[]     We cannot process post-dated or stale-dated check.

[]     The account referenced is paid in full or settled in full.

[]     The account referenced is in foreclosure.

[x]     PNC Bank no longer services this account.

[]     The check is not payable to PNC Bank, N.A.

If you have any questions concerning the reason(s) we were unable to process your payment, we invite you to call us at 1-888-762-2265.  Thank you.

Sincerely,

PNC Bank, National Association

Enclosure

*The separate laws of Connecticut, The District of Columbia, New York City, North Carolina, and Vermont each require that their respective residents be furnished with this notice:*

*This is an attempt to collect a debt. Any information obtained will be used for that purpose.*

**Member of The PNC Financial Services Group**
Consumer Lending  PO Box 5570  Cleveland  Ohio  44101
www.pnc.com



EXHIBIT
9

P001040

EXHIBIT B

CONFIDENTIAL

June 6, 2014        LETTER TO LAND HOME FINANCIAL SERVICES, INC.

## STEPHEN C. DREHER
## P.O. BOX 400
## WORLEY, ID 83876

LAND HOME FINANCIAL
SERVICES, INC.
Attn: Legal Department
1920 Main St., Ste 700
Irvine, CA 92614

June 6, 2014

TO WHOM IT MAY CONCERN/ LEGAL REPRESENTATIVE OF LAND HOME
SERVICES:

BE ON NOTICE that Land Home Financial Services and its client, National City Bank,
are in violation of Federal Law and of the attached order re: Bankruptcy. To wit: The enclosed
notice (Exhibit A), a purported notice of payment delinquency for Account Number 5465013457
[2nd Trust Deed on 546 N. Highland Ave., Los Angeles, CA 90036) is incorrect and is an illegal
attempt to collect a debt from a debtor subject to a Chapter 11 Bankruptcy reorganization plan.
A copy of the plan is also enclosed (Exhibit B.)

As can clearly be seen, this debt was rendered wholly unsecured and is to be paid as a
general unsecured creditor in Class 8. This is explained on page 12 of the plan. Consequently,
Stephen and Melinda Dreher owe 9.3% of the original debt amount, not the full amount as
indicated in the purported notice of delinquency (Exhibit A.) The plan set up a payment
schedule which has been adhered to by the Drehers since the Bankruptcy Court ordered same.
No payments have been missed and the plan continues to be appropriately serviced per the
Court's order.

//
//
//
//
//
//
//
//
//
//

EXHIBIT
**13**

P001247

CONFIDENTIAL

**LETTER TO LAND HOME FINANCIAL SERVICES, INC.**

LAND HOME FINANCIAL SERVICES, INC., on behalf of itself and/or its client NATIONAL CITY BANK, is/are hereby requested to CEASE AND DECIST from any further attempts to collect any amount of money whatsoever from the Drehers other than what complies with the Chapter 11 Bankruptcy reorganization plan. If this behavior persists, the Drehers shall pursue all legal remedies available to them. Damages sought will include actual attorney fees expended.

Sincerely,

STEPHEN. C. DREHER

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 203 |
| Certified Fee | | 330 |
| Return Receipt Fee (Endorsement Required) | | 270 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 803 |

Postmark Here

Sent To  *Land Home Financial*
Street, Apt. No.; or PO Box No.  *1920 Main st # 700*
City, State, ZIP+4  *Irvine Ca 92614*

7011 0470 0000 8151 1167

PS Form 3800, August 2006                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Land Home Financial*
*1920 Main st #700*
*Irvine Ca. 92614*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )  *Holly Beck*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7011 0470 0000 8151 1167

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

P001249

EXHIBIT C



February 28, 2020

STEPHEN C DREHER
400 P.O. Box 400
Worley, ID 83876

Loan Number: DBI-296712
Property Address:
546 N HIGHLAND AVE
LOS ANGELES, CA 90036

## NOTICE OF SERVICING TRANSFER

Dear STEPHEN C DREHER,

The servicing of your loan is being transferred effective, March 16, 2020. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change. Dreambuilder Investments, LLC ("Dreambuilder") is now collecting your payments. Dreambuilder will stop accepting payments received from your after March 16, 2020. Suna Capital, LLC, will collect your payments going forward. Your new servicer will start accepting payments received from you on March 16, 2020.

**Send all payments due on or after** March 16, 2020 **to:**
Suna Capital, LLC
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435

If you have any questions for either your present servicer, Dreambuilder, or your new servicer Suna Capital, LLC, about your mortgage loan or this transfer, please contact them using the information below:

**Current Servicer Contact Information:**
Dreambuilder Investments, LLC
228 Park Ave. South No. 51100
New York, NY 10003
Toll-Free Customer Service Number:
1-866-561-5600

**New Servicer Contact Information:**
Suna Capital, LLC
Customer Service
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Toll-Free Customer Service Number:
(800) 988-5267 X121
9.00AM – 5:00PM Mon thru' Fri. EST

Please be assured that the transfer of your mortgage loan does not affect any term or condition of the mortgage instruments other than the terms directly related to the servicing of your loan. Mortgage life, accidental death, disability insurance or other optional products billed and collected with your mortgage payment will not be continued upon the transfer to Suna Capital, LLC. If you currently have one or more of these products, it is possible that you may be able to maintain coverage by making arrangements directly through the companies offering the products in question. If you wish to pursue this, you should contact the companies directly.

228 Park Ave South # 51100
New York, NY  10003
T: 866-561-5600    www.dreambuilder.net

P001177



Dreambuilder Investments, LLC. will accept payments with respect to this loan up through the day before the transfer date of March 16, 2020. Please send all payments due before March 16, 2020 to:

Arete Portfolio Management LLC
PO Box 845080
Boston, MA 02284-5080

Please note, if your monthly mortgage loan payment is automatically withdrawn from your bank account or if you are interested in setting up this service you must contact Suna Capital, LLC. to determine if this will be offered. Automatic drafting with Dreambuilder Investments, LLC. will discontinue effective with this servicing transfer.

Sincerely,

DBI Asset Management
ams@dreambuilder.net



## Borrower Notification Attachment Per RESPA

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer. Your new servicer must also send you this notice no later than 15 days after the effective date. You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12USC§2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC§2605) gives you certain consumer rights. If you send any "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment mediums supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" to Dreambuilder Investments, LLC regarding the servicing of your loan, it must be sent to this address:

Dreambuilder Investments LLC, 228 Park Ave South No. 51100 New York, NY 10003

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day-period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

**FDCPA Information:** This communication is an attempt to collect a debt and any information obtained will be used for that purpose, except with respect to any one whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States, in which case this communication is intended solely for informational purposes and does not constitute a demand for payment.

P001180

Dreambuilder Investments, LLC
228 Park Ave. South No. 51100
New York, NY 10003

NEW YORK NY 100



Stephen C Dreher
400 P.O. Box 400
Worley, ID 83876

83876-040000

# EXHIBIT D



Suna Capital, LLC
Loan Servicing Dept.
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Voice: 800-988-5267 Extn. 124
Facsimile: 800-705-3183
Electronic mail: contact@sunacapital.com
Website: www.sunacapital.com

***March 16, 2020***

**Stephen C Dreher**
P O Box 400
Worley, ID 83876

RE:           Suna Capital, LLC Loan Number: **50602153**
              DBI Loan Number: 296712
Property Address:   546 N HIGHLAND AVENUE, LOS ANGELES, CA 90036

**Dear Stephen C Dreher:**

We are writing to notify you that the servicing of your mortgage loan is being transferred effective March 16, 2020 (the "effective date of transfer"). This means that after this date, a new servicer will be collecting payments from you.  Nothing else about your mortgage loan will change.

Dreambuilder Investments, LLC ("DBI") is now collecting your payments. DBI will stop accepting payments received from you after March 16, 2020.

Suna Capital, LLC, ("Suna Capital") will collect your payments going forward.  As your new servicer, Suna Capital will start accepting payments received from you on or after March 16, 2020.

Please send all payments due on or after March 16, 2020, including any past due payments, to Suna Capital at this address: Suna Capital, LLC, 138-44C Queens Blvd., Suite 616, Briarwood, NY 11435.

If you have any questions for either your present servicer, DBI, or your new servicer, Suna Capital, about your mortgage loan or this transfer, please contact them using the information below:

**Current Servicer Contact Information:**          **New Servicer Contact Information:**
*Dreambuilder Investments, LLC*                    *Suna Capital, LLC*
*228 Park Ave. South No. 51100*                    *Loan Servicing Department*
*New York, NY 10003*                               *138-44C Queens Blvd. Suite 616*
*Toll-Free Customer Service Number:*               *Briarwood, NY 11435*
*1-866-561-5600*                                   *Toll-Free Customer Service Number:*
                                                   (800) 988-5267 Ext. 124
                                                   *9:00AM – 5:00PM Mon thru' Fri. EST*

*Important note about insurance:* If you have mortgage life or disability insurance or any type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: because Suna Capital does not collect or remit premiums for such products, in order to maintain coverage, you should contact the provider of the policy directly.  Otherwise it may be cancelled.

**This communication is from a debt collector but does not imply that Suna Capital is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment.**



Suna Capital, LLC
Loan Servicing Dept.
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Voice: 800-988-5267 Extn. 124
Facsimile: 800-705-3183
Electronic mail: contact@sunacapital.com
Website: www.sunacapital.com

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

***Unless you notify Suna Capital within thirty (30) days after receiving this letter that you dispute the validity of the debt or any portion of the debt, Suna Capital will assume that the debt is valid. If, within 30 days of receiving this notice, you notify Suna Capital in writing that you dispute the validity of this debt or any portion of the debt, Suna Capital will obtain verification of the debt or a copy of a judgment against you and mail you a copy of such verification or judgment. Suna Capital will provide you with the name and address of the original creditor, if different from the current creditor, if you request this information in writing within 30 days of receiving this notice. Suna Capital, LLC, is the current creditor to whom the debt is now owed.***

**THIS COMMUNICATION CONSISTS OF THREE PAGES (A TWO PAGE "WELCOME LETTER" AND A ONE PAGE "BORROWER NOTIFICATION ATTACHMENT") EACH OF WHICH CONTAINS IMPORTANT INFORMATION YOU SHOULD REVIEW. FOR ADDITIONAL IMPORTANT INFORMATION REGARDING YOUR CONSUMER RIGHTS, PLEASE SEE THE PAGE ENTITLED "BORROWER NOTIFICATION ATTACHMENT."**

Please find enclosed the Borrower Notification Attachment containing important consumer rights information. We encourage you to read it thoroughly. We look forward to serving you. Again, should you have any questions for your new servicer, Suna Capital, relating to the transfer of servicing please call me toll-free at (800) 988-5267, ext. 124, Eastern Time Zone, during normal business hours.

Sincerely,

Santhosh Chinnappala
Asset Manager
Suna Capital, LLC

This communication is from a debt collector but does not imply that Suna Capital is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment.



Suna Capital, LLC
Loan Servicing Dept.
138-44C Queens Blvd. Suite 616
Briarwood, NY 11435
Voice: 800-988-5267 Extn 124
Facsimile: 800-705-3163
Electronic mail: contact@sunacapital.com
Website: www.sunacapital.com

## Borrower Notification Attachment Per RESPA

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer. Your new servicer must also send you this notice no later than 15 days after the effective date. You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12USC§2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC§2605) gives you certain consumer rights. If you send any "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment mediums supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" to Suna Capital, LLC regarding the servicing of your loan, it must be sent to this address:

Suna Capital, LLC, 138-44C Queens Blvd., Suite 616, Briarwood, NY 11435.

No later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business-day-period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

**FDCPA Information:** This communication is an attempt to collect a debt and any information obtained will be used for that purpose, except with respect to any one whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States, in which case this communication is intended solely for informational purposes and does not constitute a demand for payment.

This communication is from a debt collector but does not imply that Suna Capital is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment.

EXHIBIT E

relationships that work

# green tree

PO Box 6172
Rapid City, SD 57709-6172

Tel 1-800-643-0202
GTServicing.com

October 12, 2010

+ 0304717 000000002 015THS 0055397 6
STEPHEN C DREHER
546 N HIGHLAND AVE
LOS ANGELES CA 90036-2020



Re: Green Tree Servicing LLC* ("Green Tree") Account No.: ▓▓▓5839
Creditor: U.S. Bank National Association, not in its individual capacity, but solely as trustee under the Grand New Start Pass-Through Trust Agreement

Dear Valued Customer:

The servicing of your loan was transferred from PNC Mortgage, a Division of PNC Banks, NA to Green Tree on September 1, 2010. We are pleased to welcome you to Green Tree.

As your new servicer for the referenced account, Green Tree is required to inform you of the following important notice regarding your rights under federal law:

**AS OF AUGUST 31, 2010, YOU OWE $348,256.43. BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, CONTACT CUSTOMER SERVICE AT THE ADDRESS OR TOLL-FREE NUMBER LISTED ABOVE.**

**UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION OF THE DEBT, WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS OF RECEIVING THIS NOTICE, WE WILL OBTAIN VERIFICATION OF THE DEBT (OR OBTAIN A COPY OF A JUDGMENT, IF THE DEBT HAS BEEN REDUCED TO JUDGMENT) AND MAIL THE VERIFICATION TO YOU. IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, WE WILL ALSO PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

To ensure timely posting of your payments, please send all payments to your new servicer at the address indicated below:

**Green Tree
PO Box 94710
Palatine, IL 60094-4710**

We at Green Tree are honored to serve you. If you need to contact us or have any questions, please call Green Tree at 1-866-270-3285, from 6:00 a.m. to 7:00 p.m. MST, Monday through Thursday, or 6:00 a.m. to 12:00 p.m. MST, Friday and Saturday, or write to us in regard to this debt at Customer Service, PO Box 6172, Rapid City, South Dakota 57709-6172.

Respectfully,

Green Tree

*Green Tree Servicing LLC and related entities, including, for certain loans, in Alabama, Green Tree-AL LLC; in Minnesota, Green Tree Loan Company; and in Pennsylvania, Green Tree Consumer Discount Company.

Fair and Accurate Credit Transactions Act Notice: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

This letter is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

EXHIBIT F

This document was prepared by PATRICIA RODGERS National City Bank

6750 Miller Road Brecksville, OH 44141
Please return this document after recording to:

NCB, CLS BRECKSVILLE
DOCUMENTATION, LOCATOR 7120
6750 MILLER ROAD
BRECKSVILLE, OH 44141

04/25/07

20070996104

APN#▓▓▓▓▓▓-001

_____ State of California _____        DEED OF TRUST        ___ Space Above This Line For Recording Data ___
(With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is April 17, 2007........................
The parties and their addresses are:
TRUSTOR:  STEPHEN C DREHER and Melinda Dreher, Husband and Wife as joint tenants

23210 S CAVE BAY RD WORLEY, Idaho 83876

☒ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and
acknowledgments.
TRUSTEE:  National City Bank

DREHER
MORTGAGEDEED

LENDER:  NATIONAL CITY BANK

013964586109653   XLLH13F

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure
the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants,
conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
SEE ATTACHED EXHIBIT A

The property is located in Los Angeles .........................................  at ...................................................
(County)

546 N HIGHLAND AVE................  ........LOS ANGELES................................, California 90036.........
(Address)                              (City)                                        (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights,
ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at
any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
not exceed $ ........350,000.00.... This limitation of amount does not include interest and other fees and charges validly
made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this
Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described
    below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note
    or contract amounts, interest rates (whether variable), maturity dates, etc.)*

Maturity Date: 4/17/2022

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc. ™ Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

(page 1 of 6)




**This page is part of your document - DO NOT DISCARD**



**20070996104**   Pages: 009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

04/25/07 AT 08:00AM

Fee:  46.00
Tax:  0.00
Other: 0.00

Total: 46.00

**Modify**

**TITLE(S) :**

L E A D   S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

000015

B.  All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D.  Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5.  **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6.  **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
    A.  To make all payments when due and to perform or comply with all covenants.

    B.  To promptly deliver to Lender any notices that Trustor receives from the holder.

    C.  Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8.  **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9.  **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10.  **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11.  **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.,  Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0805)

*(page 2 of 6)*

other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants, and conveys, to Trustee, in trust for the benefit of Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Trustor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default.

Upon default, Trustor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Trustor agrees that this Security Instrument is immediately effective between Trustor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee in this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

*(page 3 of 6)*

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.,  Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant (including, but not limited to, advances and expenses as described in the AUTHORITY TO PERFORM and INSURANCE sections) in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

(page 4 of 6)



Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.,   Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

*(page 5 of 6)*

000019

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
   ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☒ Other _Signature Addendum_

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_S Dreher_   4/19/07

(Signature)                                           (Date)        (Signature)                                (Date)
**STEPHEN C DREHER**

**ACKNOWLEDGMENT:**

(Individual) STATE OF _California_ ...................., COUNTY OF _Alameda_ ................} ss.
On this _19_ ....... day of _April 2007_ .......... before me _D.L. Manuel-Miller_ ..................
a notary public, personally appeared _Stephen C. Dreher_ ...................................................
~~personally known to me (or~~ proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is/are~~ subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~ authorized capacity(ies), and that by ~~his/her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

[Notary seal:
D. L. MANUEL-MILLER
Commission # 1596256
Notary Public - California
Alameda County
My Comm. Expires Jul 30, 2009]

Signature _D. L. Manuel Miller_ .......................
       _D. L. Manuel-Miller_
       Name (typed or printed)

My commission expires: _30 July 2009_ .......................

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ................................ County, State of California, in book ............................, page ........... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: .......................

---

Assessor's Identification Number ................................

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

(page 6 of 6)

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

**Definition:** "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

| | |
|---|---|
| Mortgagor(s)/Borrower(s) on Security Instrument: | Property Address: |
| STEPHEN C DREHER | 546 N HIGHLAND AVE |
| | LOS ANGELES California 90036 |
| Lender:  National City Bank | Lender Reference Number:  0005499745 |

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS

_Melinda Dreher 4-18-07_
MELINDA DREHER                         Date                                      Date

_____                         _____
                                        Date                                      Date

_____
                                        Date

ACKNOWLEDGMENT:
STATE OF _Idaho_ COUNTY OF _Benewah_ }ss.
On this _18th_ day of _April 2007_ before me _Ronald V. Osmonson, Notary_
a notary public, personally appeared _Melinda Dreher_
_____ personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _Ronald V. Osmonson_
Name (typed or printed): _Ronald V. Osmonson_

My commission expires: _02-20-09_

RONALD V. OSMONSON
Notary Public
State of Idaho

SIGNADD1 (4/2006)

000021

YOUR REFERENCE: 1127764-LA

ORDER NO.: 549867-20

9

# EXHIBIT "A"

LOT(S) 9 OF TRACT NO. 6849, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 76, PAGE(S) 85 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

MORTGAGEDEED_A

013964586109653

Form PR-S

000022

0005499745

National City [logo]

**FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT - National Home Equity**
(Not to be Used for Texas Homestead Loans Unless Purchase Money or Refinance of Purchase Money)

1.  **DEBTOR(S)**    STEPHEN C DREHER                          Date ___4/17/2007___

    Address          546 N HIGHLAND AVE
                     LOS ANGELES, California 90036

2.  **DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means National City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. "Property" means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

3.  **PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $ ___250,000.00___, which includes a prepaid finance charge of $ ___7253.00___, plus interest from the date of this Note on the principal sum outstanding and other sums owed under this Note at the per annum rate of ___9.250___ %, payable as described in the payment schedule in the Disclosure Statement. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding them to the principal balance of this Note. Interest will be computed on a simple interest basis based upon a 365-day year, but calculated on actual days. Accordingly, your payment history could affect the amount you will pay under this Note.

4.  **PROPERTY.**    546 N HIGHLAND AVE
                     LOS ANGELES , California 90036

5.  **DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

6.  **LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; DOCUMENT REQUEST CHARGE.** If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. This late charge will be the greater of 10% of the unpaid monthly payment or $40. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge. This returned instrument charge will be $25. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be $6 per copy. We will charge you for documents we are required to provide you by law.

7.  **INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and will be responsible for its loss or damage. You agree to obtain primary insurance coverage (including furnishing existing coverage from any insurer you want that is acceptable to us, provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverages at your expense which we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any other insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. Our mailing address for purposes of this Section is: P.O. Box 91596, Cleveland, OH 44101-0351. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and—if receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

8.  **PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full, you agree to pay a voluntary prepayment charge which will be equal to the greater of ___0___ % of the principal balance at the time of prepayment or $ ___0.00___. You will only be charged this voluntary prepayment charge during the first ___0___ months of this Note. If we accelerate the entire balance owing under this Note due to your default, you agree to pay any prepayment charge which will be equal to $150.00. No portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

9.  **SECURITY AGREEMENT.** To the extent permitted by law you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note and (except for the Property if it is a principal residence) your obligations under any other agreement with us or our affiliates: (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; (c) all of your deposit accounts with us or our affiliates (except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interest in the Property.

10. **PROPERTY MAINTENANCE AND USE.** You will promptly pay all debts, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral. You will not use, or permit others to use, the Property: (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

N-HEFRN1 (07/03)

[barcode]

FRNOTE-MULTI-V1_1

000023

11.   **DEFAULT AND REMEDIES.** You will be in default under this Note if: (a) you (i) to make any payment or pay other amount owing under this Note when due; (b) you fail to keep any of your agreements under this Note or under any other agreement with us or our affiliates; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property or any other property for which we or our affiliates possess a security interest is lost, stolen, destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceeding; or (g) you are in default on any obligation that is secured by a lien on the Property.  If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. You will pay us interest on this balance at the rate set forth in this Note including after default and acceleration and after any judgment; (bb) demand that you vacate the Property and make it available to us at a time which is reasonably convenient.  You agree to comply with such demand; (cc) sell, lease, or otherwise dispose of the Property.  Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law; and/or (ee) setoff any of your deposit accounts with us or our affiliates (except individual retirement accounts) without demand or notice.

12.   **PROPERTY CONDITION.**  You agree that with respect to any Property: (a) it is free from all material defects, is proper operating order and fit for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of them as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (c) we are not a seller, supplier, merchant or warrantor.  Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility.

13.   **ADDITIONAL AGREEMENTS.**  You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent.  We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such rights; (e) the provisions of this Note are only to the extent permitted by applicable law.  Any part of this Note which cannot be enforced will be void, but the remaining parts will remain in effect; (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without modifying or releasing any other party; (h) we can correct errors in this Note as provided in 15 U.S.C. 1640 upon notice to you even if they are contract terms and you agree to be bound by such corrections.  Upon our request, you will promptly re-execute this Note to correct errors in the Note.  You can change any term of this Note only in a writing signed by us; (i) the Bank is a national bank located in Ohio and Bank's decision to make this Loan to you was made in Ohio.  Therefore, this Note shall be governed by and construed in accordance with (i) Federal laws and regulations including but not limited to 12 USC § 85 and (ii) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements.  An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address.  Except as otherwise specified, all notices and payments to us must be sent to P.O. Box 5700, Cleveland, OH 44101-0570, or such other place as we may designate.  Our failure or delay in providing you billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that they are authorized to enter into and execute this Note; (o) we will not be responsible for any personal loans in or on vacated Property.  We will make a reasonable effort to return such items to you or have you available them from us provided you notify us within 5 business days of our taking possession and itemize such items.  Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession; (p) we may accept late payments or partial payments without losing any of our rights.  If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107.  If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments or other proceeds will be deemed reasonable unless another method is required by law, in which case that method will be deemed reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you.  Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you.  Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Customer Privacy, P.O. Box 4068, Kalamazoo, MI 49009.  You must include your name, address, account number and social security number; (t) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (u) we are authorized to sign on your behalf any document required to enforce any interest under this Note; (v) disclosures included in this Note but not required by law are not an admission or waiver of rights by us; (w) all actions under this Note including payment are not subject to set off or other right, and such consent may be withheld for any reason; (x) our typewritten name in Section 2 will constitute our signature for purposes of this Note; (y) we have an established business relationship with you, and unless otherwise prohibited by law.  National City may contact you to offer you products and services that National City thinks may be of interest to you.  Such contacts are not unsolicited, and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service; (z) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD/RIUDIA provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; (aa) all amounts owed under this Note will be without relief from valuation and appraisement laws; (bb) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations; and (cc) in this Note, the term "affiliates" means current and future affiliates of National City Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co.

14.   **ADDITIONAL NOTICES.**  The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights).  You acknowledge receipt of the following notices before becoming obligated.  For purposes of the immediately following *Notice to Cosigner*, "bank" means us.

NHEFRN2A (06/06)



FRNOTE-MULTI-V1_2

0005499745

### NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

### NOTICE TO ALL SIGNERS

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer credit reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

If the Property is located in California: Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Property is located in Colorado: The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, your payments will be lower than the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and these may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the Property is located in Florida: Florida Documentary Stamp Tax in the amount required by law has been paid or will be paid directly to the Department of Revenue, and Florida Documentary Stamps have been placed on the taxable instruments as required by Chapter 201, Florida Statutes.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER: 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and in accordance with law you will not be entitled to receive a refund of unearned charges. 4. If you prepay the unpaid balance, you may have to pay a prepayment penalty.

If the Property is located in Iowa and the principal amount of this Loan exceeds $26,000: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If the Property is located in Maryland: We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Property is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the Property is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If the Property is located in Wisconsin: NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU WILL NOT BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

N1IEFRN3 (07/04)



FRNOTE-MULTI-V1_3

BY SIGNING THIS NOTE YOU AGREE TO ALL ITS TERMS INCLUDING THOSE ON PAGES 1
THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH IS INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS
NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A
COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU
HAVE READ AND RECEIVED A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE
1. SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

STEPHEN C DREHER                              X _____
_____                Debtor's signature
Type or print name of Debtor

_____              X _____
Type or print name of Debtor                    Debtor's signature

_____              X _____
Type or print name of Debtor                    Debtor's signature

_____              X _____
Type or print name of Debtor                    Debtor's signature

**FOR MICHIGAN GUARANTORS ONLY:** Guaranty Agreement.  For value received, you the undersigned guarantors jointly, severally and
unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note.
Upon default, we may proceed against any of you without first proceeding against any Debtor.  The liability of each of you will be primary and will not be
affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law.  Each of you voluntarily and knowingly
waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees
to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and
agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

_____              X _____
Type or print name of Guarantor                 Guarantor's Signature

_____              X _____
Type or print name of Guarantor                 Guarantor's signature

©1999 National City Corporation

N1IEFRN4 (07/04)                           FRNOTE-MULTI-V1_4

000026

# EXHIBIT G

**PNC BANK**

PNC Bank
P.O. Box 5570
Brecksville, OH 44101-0570

Stephen C Dreher
23210 S Cave Bay Rd
Po Box 400
Worley, ID  83876

Date:               March 5, 2010
Account Number⬛⬛⬛⬛9653          ("Account")

You are in default of the above referenced Account.  Effective immediately, the Account is hereby accelerated and we hereby demand payment in full of the entire amount owing on the Account as described below.

As of the date of this letter your Account has an accelerated balance in full owing of $376,930.98.  This balance includes accrued interest and outstanding late charges as of the date of this letter.  Further interest charges will continue to accrue until the Account is paid in full.

We will take the necessary action to protect our interests.

Since the balance of your Account is accelerated, nothing less than full payment of the entire indebtedness is now acceptable. If you should choose to continue making payments or submit a single payment in an amount less than the indicated full payoff of your Account, you authorize us to apply such payments to your Account without restriction and without limiting in any manner our ability to pursue the total balance owing on your Account.  You agree that any language contained on a check or draft to the contrary shall be void.  We expressly reserve our rights and remedies under your contract and at law.

If you have any further questions, please contact the undersigned.

Sincerely,

Sra Associates
Account Specialist
1- - Ext.

**Notice: See Reverse Side for Important Information**

000039