**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Helen Mosothoane (SBN 254511)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone:   (949) 381-5900
Facsimile:   (949) 271-4040
Email:       bpaino@mcglinchey.com
             hmosothoane@mcglinchey.com

Patrick T. Voke, *pro hac vice*
One Boston Place, Suite 2910
Boston, MA 02108
Telephone:   (857) 453-7171
Facsimile:   (617) 830-0655
Email:       pvoke@mcglinchey.com

Attorneys for *Defendant* **PNC BANK, N.A.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| STEPHEN AND MELINDA DREHER,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK, N.A., a Pennsylvania Corporation, successor by merger to/with National City Bank; DREAMBUILDER INVESTMENTS, LLC, a New York Limited Liability Company; AMERICAN SERVICING AND RECOVERY GROUP LLC,  Texas limited liability company; U.S. BANK NATIONAL ASSOCIATION, a Trustee under the July 26, 2010 Pass Through Trust Agreement; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:  2:18-cv-07827-MWF-FFM<br><br>Hon. Michael W. Fitzgerald<br><br>**DEFENDANT PNC BANK, N.A.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing**:<br>Date: April 4, 2022<br>Time: 10:00 a.m.<br>Ctrm: 5A<br><br><u>Filed concurrently with</u>:<br>Evidentiary Objections<br>Supplemental Declaration of Helen Mosothoane |

*Defendant* PNC Bank, N.A. ("<u>PNC</u>") respectfully submits this reply to *plaintiffs* Stephen and Melinda Dreher's ("<u>Plaintiffs</u>") *Opposition to Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment* [Dkt. No. 198] (the "<u>Opposition</u>"). This reply is supported by the points and authorities cited herein and the record currently before the Court.[1]

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in PNC's *Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment* [Dkt. No. 187] (the "<u>Motion</u>").

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................. 1

II. ANALYSIS ........................................................................ 3

    A.  PLAINTIFFS HAVE NOT ESTABLISHED A GENUINE ISSUE OF FACT ON THEIR SLANDER OF TITLE CLAIM ........................... 3

        1.  PNC's Alleged Failure to Comply with Cal. Civ. Code § 2941 ......................................................................... 3

        2.  PNC Did Not Make a False Publication ........................... 5

        3.  The Assignment Was Privileged ..................................... 7

        4.  Plaintiffs Cannot Establish the Requisite Injury ............... 9

    B.  PLAINTIFFS HAVE NOT ESTABLISHED A GENUINE ISSUE OF FACT ON THEIR FRAUD CLAIM ................................... 11

        1.  The Partial Disclosure Doctrine Does Not Apply ........... 11

        2.  Intent ......................................................................... 15

        3.  Justifiable Reliance ..................................................... 16

        4.  Causation and Damages ............................................... 17

    C.  PLAINTIFFS FAIL TO ADDRESS THEIR CLAIM FOR DECLARATORY RELIEF ................................................... 19

III. CONCLUSION ................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Aviel v. Ng*,
  161 Cal.App.4th 809 (2008) ...................................................................................6

*Banares v. Wells Fargo Bank, N.A.*,
  2014 WL 985532 (N.D. Cal. 2014) ......................................................................6

*Cabanas v. Gloodt Assocs.*,
  942 F.Supp. 1295 (E.D. Cal. 1996) .......................................................................9

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
  818 F.2d 1466 (9th Cir. 1987) ........................................................................13, 15

*Clinton v. Los Angeles Men's Cent. Jail*,
  2008 WL 11357860 (C.D. Cal. 2008) ............................................................14, 17

*Costabile v. Natus Med. Inc.*,
  293 F.Supp.3d 994 (N.D. Cal. 2018) ................................................................3, 19

*Cty. of Marin v. Deloitte Consulting LLP*,
  836 F.Supp.2d 1030 (N.D. Cal. 2011) ............................................................11, 12

*Frustuck v. City of Fairfax*,
  212 Cal.App.2d 345 (1963) ..................................................................................19

*Garretson v. Post*,
  156 Cal.App.4th 1508 (2007) .................................................................................7

*Goehring v. Chapman Univ.*,
  121 Cal. App. 4th 353 (2004) ...............................................................................18

*Greenberg v. W.CPE*,
  2013 WL 1628905 (C.D. Cal. 2013) ......................................................................8

*Herron v. Best Buy Co. Inc.*,
  924 F.Supp.2d 1161 (E.D. Cal. 2013) .............................................................11, 17

*In re AB Liquidation Corp.*,
  2006 WL 6810956 (9th Cir. BAP 2006) ...............................................................14

*In re Easterbrook*,
  200 Cal.App.3d 1541 (1988) ................................................................................19

*In re Lopez Miranda*,
  2020 WL 2299959 (9th Cir. BAP 2020) ...............................................................14

*Kacklon v. Markowitz*,
  168 Cal.App.4th 316 (2008) ..............................................................................7, 8

*Kashian v. Harriman*,
  98 Cal.App.4th 892 (2002) ....................................................................................8

*LiMandri v. Judkins*,
  52 Cal.App.4th 326 (1997) ...................................................................................12

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

20352852.1

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
   173 Cal.App.4th 1040 (2009)...........................................................................10

*Monteforte v. Bank of New York Mellon Tr. Co. N.A.*,
   2016 WL 6696059 (E.D. Cal. 2016) ................................................................6

*N. Cal. Dist. Council of Hod Carriers v. Pennsylvania Pipeline, Inc.*,
   103 Cal.App.3d 163 (1980)............................................................................14

*Nguyen v. JP Morgan Chase Bank, N.A.*,
   2012 WL 4942816 (N.D. Cal. 2012)................................................................7

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
   157 Cal.App.4th 835 (2007) ..........................................................................12

*Ordonez v. Saxon Mortgs. Servs.*,
   2009 WL 395488 (E.D. Cal. 2009) ...............................................................12

*Patel v. City of Long Beach*,
   564 F. App'x 881 (9th Cir. 2014).................................................................3, 5

*Schep v. Cap. One, N.A.*,
   12 Cal.App.5th 1331 (2017) ............................................................................7

*SDV/ACCI, Inc. v. AT&T Corp.*,
   522 F.3d 955 (9th Cir. 2008)........................................................................7, 8

*Simmons First Nat'l Bank v. Lehman*,
   2015 WL 1503437 (N.D. Cal. 2015)............................................................3, 4

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ........................................................................14

*Stamas v. Cty. of Madera*,
   795 F.Supp.2d 1047 (E.D. Cal. 2011) ............................................................6

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*,
   205 Cal.App.4th 999 (2012) ...........................................................................6

Statutes

12 U.S.C. §§ 2605...........................................................................................16
Cal. Civ. Code § 47............................................................................................7
Cal. Civ. Code § 1170........................................................................................8
Cal. Civ. Code § 2924(d)....................................................................................7
Cal. Civ. Code § 2934........................................................................................7
Cal. Civ. Code § 2941...........................................................................2, 3, 4, 5

Regulations

12 C.F.R. § 1024.36(d)(2)(i)(A) ......................................................................15

# I.      __INTRODUCTION__

As detailed in the Motion, the only actions alleged to have been taken by PNC in this matter are that: (1) PNC's predecessor (National City) originated the Loan in 2007; (2) PNC sold the Loan to ASRG and provided ASRG with the Assignment, which was indisputably prepared in blank form; and (3) PNC sent Plaintiffs the Returned Payment Letter in 2013 for the purpose of returning mortgage payments that Plaintiffs improperly sent to PNC. From these spare and otherwise innocuous facts, Plaintiffs have constructed factually and legally unsupportable claims against PNC for slander of title and fraud. Ultimately, there is no escaping the fact that Plaintiffs' claims and their alleged damages arise from the actions of DBI, not the actions of PNC. Because DBI has not appeared in this action and is effectively defunct, Plaintiffs are left to pursue recourse from PNC and ASRG on implausible theories.

In an effort to salvage their claims, Plaintiffs raise new, previously unpled theories in their Opposition. Plaintiff's slander of title claim was originally based on PNC's alleged failure to disclose the sale of the Loan, the Assignment, the transfer of servicing, and/or certain orders of the Bankruptcy Court. Plaintiffs then floated the further unpled theory that the mere creation of the Assignment slandered their title. As explained in the Motion, there is no support in law or the facts of this case for Plaintiffs' slander of title claim. So Plaintiffs now advance in the Opposition their newest unpled and unsupportable theory that PNC slandered their title by failing to re-convey the DOT after Plaintiffs received their bankruptcy discharge – which PNC had no authority, obligation or capability to do. Not only is Plaintiffs' new theory procedurally improper, but it is legally baseless because a slander of title claim cannot be premised on inaction, such as a failure to reconvey a deed of trust.

Confronted with indisputable evidence that PNC executed the Assignment to ASRG in blank, Plaintiffs go on to make the implausible argument that the blank Assignment somehow slandered their title and caused them direct and immediate pecuniary loss. As a matter of fact and law, there was nothing slanderous about the

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

blank Assignment as it did not cast any doubt whatsoever on Plaintiffs' ownership of the Property. Regardless, the Assignment was privileged and Plaintiffs fail to establish a basis for overcoming the privilege. Further, there is no evidence that Plaintiffs sustained direct and immediate pecuniary loss due to the creation of the blank Assignment. To the contrary, it is indisputable that the direct cause of Plaintiffs' alleged losses, if any, was DBI's failure to reconvey the DOT upon Plaintiffs' receipt of their bankruptcy discharge in 2018, not PNC's creation of the blank Assignment in 2010.

Plaintiffs' efforts to save their fraud claim fare no better. As an initial matter, the Opposition effectively abandons the fraud theory that Plaintiffs advanced in their SAC in favor of a partial disclosure theory *that was not pled in the SAC*. Contrary to Plaintiffs' contentions in the Opposition, the partial disclosure doctrine does not apply to this case as there was no contractual relationship between PNC and Plaintiffs at the time PNC allegedly made a partial disclosure. Indeed, California courts apply the partial disclosure doctrine only to disclosures made at the time parties *enter into a contract*, not where (as in this case) there is no longer a contractual relationship between the parties. In any event, Plaintiffs' partial disclosure theory fails as a matter of law based on the evidence. The undisputed evidence establishes that U.S. Bank, the owner of the Loan at the time Plaintiffs filed their Bankruptcy, effectively appeared and participated in the Bankruptcy through its agent, Green Tree. The evidence further establishes that PNC received nothing of value from Plaintiffs or any other person or entity after it sold the Loan to ASRG, and that PNC was unaware of the sale of the Loan to U.S. Bank. Put simply, no plausible inference can be drawn from the indisputable evidence that PNC intended to defraud Plaintiffs.

Finally, Plaintiffs fail to establish a genuine issue as to the damage element of their fraud claim. It is indisputable that the direct cause of Plaintiffs' alleged damages was DBI's failure to reconvey the DOT, not PNC's purported failure in 2013 to disclose its sale of the Loan to ASRG. All of Plaintiffs' alleged damages are otherwise

CASE NO.: 2:18 -CV-07827-MFW-FFM
**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

too speculative to support a claim for fraud, an issue they fail to address in the Opposition. For all the foregoing reasons, as well as those set forth in the Motion, PNC is entitled to summary judgment on Plaintiffs' remaining claims.

## II.   ANALYSIS

### A.   PLAINTIFFS HAVE NOT ESTABLISHED A GENUINE ISSUE OF FACT ON THEIR SLANDER OF TITLE CLAIM

The Opposition fails to establish any genuine issue of material fact as to Plaintiffs' slander of title claim. As a result, summary judgment should be entered in PNC's favor on this claim. PNC addresses each of Plaintiffs' arguments in turn.

#### 1.   PNC's Alleged Failure to Comply with Cal. Civ. Code § 2941

Inexplicably, Plaintiffs start their Opposition by arguing for the first time that PNC slandered their title by failing to reconvey the DOT pursuant to Cal. Civ. Code § 2941. Plaintiffs do not plead this theory against PNC in the SAC. (*See generally* SAC). Indeed, the SAC purports to state a claim for alleged violations of Cal. Civ. Code § 2941 *only* against ASRG and U.S. Bank, *not PNC*. (*See* SAC, ¶¶ 35-44). Nowhere in the SAC do Plaintiffs accuse PNC of failing to comply with section 2941, much less allege that this purported failure gives rise to a claim for slander of title. It is well-settled that "a plaintiff cannot raise a new theory for the first time in opposition to summary judgment." *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014) (citations omitted). Because Plaintiffs' "failure to reconvey" theory has been raised for the first time in the Opposition, it should be disregarded.[2]

Regardless, as explained in the Motion, a claim for slander of title must be based on an affirmative act – inaction is insufficient. In *Simmons First Nat'l Bank v. Lehman*, 2015 WL 1503437, at *4 (N.D. Cal. 2015), the counterclaimants based their

---

[2] By virtue of their failure to address it in their Opposition, Plaintiffs have effectively abandoned the theory underlying their slander of title claim set forth in the SAC; namely, the theory that PNC's alleged failure to inform Plaintiffs, the Bankruptcy Court, and others of the sale of the Loan gives rise to their claim for slander of title. *See Costabile v. Natus Med. Inc.*, 293 F.Supp.3d 994, 1014 (N.D. Cal. 2018) (finding that a plaintiff abandoned a theory by failing to address it in a response to a dispositive motion).

slander of title claim on the failure of the plaintiff to remove a deed of trust from the public record. The *Simmons First Nat'l Bank* court rejected this theory, holding:

> By arguing that Simmons wrongfully "maintained" the Deed of Trust, **Defendants attempt to impose liability on Simmons for not taking action to remove the Deed of Trust from the public record. However, a slander of title claim requires an affirmative act of publication.** [Citations Omitted]. **Defendants do not cite any authority supporting their claim that a failure to take action can form the basis of a claim of slander of title under California law. Simmons's failure to remove the Deed of Trust from the recorder's office is not an actionable publication for purposes of a slander of title claim**.

*Simmons First Nat'l Bank,* 2015 WL 1503437, at *4 (emphasis added). Like the counterclaimants in *Simmons First Nat'l Bank*, Plaintiffs fail to cite any authority to support their new theory that inaction by PNC can form the basis for a slander of title claim. Accordingly, Plaintiffs' last-minute attempt to advance a new slander of title theory against PNC based on an alleged failure to reconvey the DOT is legally and factually unsupportable.

Moreover, Plaintiffs' theory completely ignores the relevant timeline of events. Indeed, Plaintiffs' theory relies entirely on their erroneous belief that PNC had some obligation under section 2941 to reconvey the DOT when Plaintiffs received their bankruptcy discharge on February 27, 2018 – nearly 8 years after PNC sold the Loan. (*See* Opposition, 18-21). Section 2941 imposes an obligation on a beneficiary or assignee "to execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." Cal. Civ. Code § 2941(b)(1). When Plaintiffs received their bankruptcy discharge on February 27, 2018, PNC had no remaining interest in the DOT and DBI, *not PNC*, was the beneficiary of record under the DOT. (*See* SUF, ¶¶ 17-18). It is axiomatic that DBI, not PNC, was the only party obligated to take the steps outlined in section 2941. In fact, DBI was the only entity

1   that could have satisfied the requirements of section 2941 as it was in possession of

2   the Note and DOT (through RMG) at the time Plaintiffs received their bankruptcy

3   discharge. (*See* Declaration of Helen Mosothoane, ¶ 20, **Exhibit 19**, 606:20-25,

4   607:1-9, 611:11-22, *Exhibit 4*).

### 2. PNC Did Not Make a False Publication

6   After improperly advancing a new theory for their slander of title claim,

7   Plaintiffs then argue that the mere *creation* of the Assignment constitutes a

8   publication, regardless of its form. Plaintiffs go on to argue that the blank Assignment

9   was "false" because it "falsely assert[s] that PNC still had rights in the [DOT]" when

10  "PNC had [] already sold the Note to ASRG almost two weeks prior." (Opposition, ¶¶

11  14-15). They further argue that "the [Assignment] was unnecessary because PNC had

12  already sold its rights to the [DOT] to ASRG." (Opposition, ¶¶ 18-19). Like their

13  "failure to reconvey" theory, Plaintiffs' theory regarding the falsity of the blank

14  Assignment should be disregarded since it was not pled in their SAC. *See Patel*, 564

15  F. App'x at 882.

16  Even if the Court were to consider this theory, it does not save Plaintiffs'

17  slander of title claim. To the contrary, Plaintiffs' theory is based on their belief that

18  PNC lost the ability to assign the DOT after it sold the Loan to ASRG. This theory

19  ignores PNC's obligations under the ASRG Agreement. Indeed, under the terms of the

20  ASRG Agreement, PNC was expressly obligated to execute the blank Assignment.

21  (*See* ASRG Agreement, Section 2.2(b)(ii)) ("No later than forty-five (45) days after

22  the Closing Date, [PNC] shall deliver to [ASRG] any Assignments of Mortgage, to

23  'blank'…"). Thus, PNC was necessarily authorized to execute the blank Assignment

24  in August of 2010. Notably, U.S. Bank also required the Assignment to be in blank

25  form under the terms of the U.S. Bank Agreement. (*See* U.S. Bank Agreement, § 5.6).

26  Because PNC (as successor to National City) was the beneficiary of record as of

27  August of 2010, it was the proper entity to execute the Assignment in order to ensure

28  a complete chain of assignments of the DOT (*i.e.*, the only way for there to be a

complete chain of assignments for the DOT was for PNC, as successor to the original, record beneficiary, to execute the Assignment).

Another fatal flaw with Plaintiffs' theory is that it ignores the requirement under California law for the false publication *to disparage title to property*. *See Stamas v. Cty. of Madera*, 795 F.Supp.2d 1047, 1067 (E.D. Cal. 2011) ("Slander of title occurs when there is an unprivileged publication of a false statement which disparages title to property and causes pecuniary loss."). To show that the Assignment was disparaging, Plaintiffs must establish that it cast doubt upon the existence or extent of their interest in the Property. *See Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC,* 205 Cal.App.4th 999, 1030 (2012). Significantly, Plaintiffs' Opposition fails to offer any evidence that the Assignment in blank cast doubt on the existence or extent of their title. In fact, *it did not*. Indeed, as explained in the Motion, as a matter of law, an assignment of deed of trust does not cast doubt on one's title to real property. *See Monteforte v. Bank of New York Mellon Tr. Co. N.A.*, 2016 WL 6696059, at *4 (E.D. Cal. 2016) (noting that assignments do not cast doubt on title and instead concern the beneficial interest in a deed of trust, not title to real property); *Banares v. Wells Fargo Bank, N.A.*, 2014 WL 985532, at *8 (N.D. Cal. 2014) (an assignment does not give rise to a claim for slander of title because it does not cast doubt on a borrower's interest in property; it merely substitutes one creditor for another). This is especially true where, as in this case, the property owner remained indebted on the assigned deed of trust at the time of the assignment.

Ultimately, the allegedly false Assignment was only "published" to entities involved in the acquisition of the Loan, including DBI, ASRG, and U.S. Bank, and their respective custodians. Plaintiffs do not allege that any of these entities questioned the extent of their ownership interest in the Property. It would be contrary to the interests of these entities to question Plaintiffs' ownership of the Property as the validity of the DOT was dependent on Plaintiffs owning the parcel. *See Aviel v. Ng*, 161 Cal.App.4th 809, 815-816 (2008) (recognizing that the owner of real property is a

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
20352852.1

necessary party to a deed of trust). For all the foregoing reason, Plaintiffs cannot establish that PNC's act of creating and signing the blank Assignment disparaged their title as it did not cast any doubt upon the existence or extent of their ownership interest in the Property.

### 3.   The Assignment Was Privileged

Plaintiffs' argument that the Assignment was not privileged is irrelevant in light of their inability and failure to establish that PNC made a false publication that disparaged their title. Nevertheless, Plaintiffs' argument is legally unsupportable. As indicated in the Motion, the recording of an assignment is a privileged act under California law. *See Nguyen v. JP Morgan Chase Bank, N.A.*, 2012 WL 4942816, at *4 (N.D. Cal. 2012). The privilege is derived from Cal. Civ. Code § 2924(d), which provides that the "[p]erformance of the procedures set forth in [Article 1 of Division 3 of the California Civil Code]" constitute privileged communications pursuant to section 47 of the California Civil Code. *See* Cal. Civ. Code § 2924(d)(2). Among the procedures set forth in Article 1 of Division 3 of the California Civil Code are those governing the recording of an assignment. *See* Cal. Civ. Code § 2934. In turn, Section 47 creates two privileges, including an absolute privilege (commonly referred to as the "litigation privilege") and a qualified privilege. *See Schep v. Cap. One, N.A.*, 12 Cal.App.5th 1331, 1337 (2017) (citing Cal. Civ. Code §§ 47(b)-(c)).

California courts are split on whether section 47's absolute or qualified privilege applies to actions taken under Article 1 of Division 3 of the California Civil Code. *See id.* (comparing *Kacklon v. Markowitz*, 168 Cal.App.4th 316, 334-341 (2008), with *Garretson v. Post*, 156 Cal.App.4th 1508, 1517 (2007)). Regardless of which privilege applies, the applicability of the privilege is *a question of law* where the facts alleged to give rise to the privilege are undisputed. *See SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 961 (9th Cir. 2008) (discussing standard for qualified privilege); *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002) (discussing standard for litigation privilege).

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1    In this case, the facts giving rise to the privilege are not disputed. More
2  specifically, there is no dispute that PNC signed the Assignment in blank form in
3  August of 2010 and that the document was subsequently recorded in March of 2017. It
4  necessarily follows that the question of whether the Assignment is privileged is a
5  question of law. *See SDV/ACCI, Inc.*, 522 F.3d at 961; *Kashian*, 98 Cal.App.4th at
6  913. Although not entirely clear, Plaintiffs appear to argue that the Assignment was
7  not privileged because it was not immediately recorded. Once again, Plaintiffs do not
8  cite any legal authority in support of their argument. As noted above, the recording of
9  an Assignment is indisputably a privileged act under California law. A necessary
10  requirement for the recording of an assignment is that the instrument be signed and
11  duly acknowledged. *See* Cal. Civ. Code § 1170. By virtue of this requirement, PNC's
12  act of signing the Assignment was necessarily part of the process for recording the
13  instrument under California law. Accordingly, PNC's actions in connection with the
14  Assignment were privileged.

15    In the Opposition, Plaintiffs alternatively argue that the privilege is overcome in
16  this case because there is evidence that PNC acted with malice. Plaintiffs bear the
17  burden of presenting evidence of actual malice. *See Greenberg v. W.CPE*, 2013 WL
18  1628905, at *8 (C.D. Cal. 2013). A showing of malice requires evidence "that the
19  publication was motivated by hatred or ill will towards the plaintiff or by a showing
20  that the defendant lacked reasonable grounds for belief in the truth of the publication
21  and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v.
22  Markowitz,* 168 Cal.App.4th 316, 336 (2008). There is absolutely no evidence, nor
23  could any reasonable inference possibly be made, that PNC's creation of the blank
24  Assignment pursuant to its obligation under the ASRG Agreement was motivated by
25  hatred or ill will towards Plaintiffs, and Plaintiffs make no such argument. Instead,
26  Plaintiffs argue that PNC lacked a reasonable basis to believe the truth of the blank
27  Assignment and therefore acted in reckless disregard for their rights. (*See* Opposition,
28  11-14). This argument ignores altogether the terms of the ASRG Agreement, which

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   imposed an affirmative obligation on PNC to create the blank-Assignment, as noted
2   above. PNC's creation of the Assignment in compliance with the terms of the ASRG
3   Agreement and long-standing industry practice simply does not constitute malice.

4        While Plaintiffs also argue that the use of the blank Assignment increased the
5   chances that the DOT could be assigned "to anyone, at any time," this alleged risk
6   does not constitute malice. Plaintiffs have cited to no evidence demonstrating that
7   PNC's creation of the blank Assignment in accordance with the ASRG Agreement
8   and long-standing industry practice implies a willful disregard for or avoidance of the
9   accuracy of the information contained in the instrument, as is required to establish
10  malice. *See Cabanas v. Gloodt Assocs.,* 942 F.Supp. 1295, 1301-02 (E.D. Cal. 1996)
11  (noting that malice requires a showing of a "willful disregard for or avoidance of
12  accuracy"). This is likely because no such evidence exists. Based upon the foregoing,
13  Plaintiffs have failed to meet their burden of overcoming the privilege that applies to
14  the Assignment.

15           **4.    Plaintiffs Cannot Establish the Requisite Injury**

16        Plaintiffs also argue that there is a genuine issue of material fact as to whether
17  they suffered the requisite pecuniary loss for their slander of title claim. However, the
18  Opposition fails to establish any genuine issue that Plaintiffs suffered a direct and
19  immediate pecuniary loss caused by PNC's alleged slander of title. The Opposition
20  argues that "PNC does not appear to dispute that Plaintiffs suffered damage in a
21  manner common to slander of title claims; *i.e.*, that the 'vendability' of their
22  [P]roperty was detrimentally impacted by the [Assignment]." (Opposition, 26-28).
23  This argument again ignores the salient point: ***at the time the Assignment was***
24  ***created, it did not impact Plaintiffs' rights in the Property in any way***. Simply stated,
25  PNC did not cause Plaintiffs any legally-compensable harm because it did not
26  "slander" their title to the Property in the first place. Indeed, even at the time the
27  Assignment was recorded by a different entity (DBI, through its agent, RMG) in
28  March of 2017, the Assignment did not adversely affect Plaintiffs' rights in the

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Property because they were still obligated on the Loan. In fact, Plaintiffs remained obligated on the Loan until they received their bankruptcy discharge in February of 2018, 8 years after PNC assigned away its rights in the Loan and 11 months after the Assignment was recorded by DBI.

Regardless, Plaintiffs cannot establish that alleged damages related to a purported loss of a sale of the Property in 2018 were directly or immediately caused by PNC's creation of the Assignment (which, again, does not give rise to "slander of title") *nearly eight years earlier*. On the contrary, there is no evidence that PNC's mere creation of the blank Assignment in 2010 directly (much less immediately) caused any prospective buyer  in 2018 (or any other person or entity for that matter) to question the existence or extent of Plaintiffs' ownership of the Property or to otherwise back out of a purchase contract for the Property. Indeed, PNC's evidence establishes indisputably that there was no purchase agreement for the Property in 2018, a fact that Plaintiffs fail to address in the Opposition. Moreover, the sale of the Property was not affected in any way by the mere existence of the Assignment. Instead, the sale was affected, if at all, by DBI's failure to reconvey the DOT in 2018 after Plaintiffs received their discharge. It necessarily follows that the "direct" cause of Plaintiffs' loss of the sale of the Property (and any resulting damages) was DBI's conduct, not PNC's conduct in creating the blank Assignment in August of 2010.

It follows from the foregoing that Plaintiffs cannot prove, and have failed to establish any genuine issue of material fact, that they suffered a direct pecuniary loss due to any slander of title by PNC, much less that their alleged losses were immediate, as is required to state a viable claim for slander of title. *See Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal.App.4th 1040, 1051 (2009). As there are no genuine issues as to any fact material, PNC is entitled to summary judgment as a matter of law on Plaintiffs' slander of title claim.

///

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

20352852.1

**B.**   **PLAINTIFFS HAVE NOT ESTABLISHED A GENUINE ISSUE OF FACT ON THEIR FRAUD CLAIM**

Plaintiffs next advance several arguments in support of their fraud claim. Again, the Opposition fails to address Plaintiffs' pleaded theory of fraud set forth in the SAC. The Opposition instead relies on an unpled "partial disclosure" theory. (*See* Opposition, 13-15). Specifically, Plaintiffs argue that the partial disclosure doctrine applies in this case irrespective of whether there was an ongoing relationship between Plaintiffs and PNC. (*See id.*) Additionally, Plaintiffs argue that there are disputed issues of fact on the intent, justifiable reliance, and damage element of their fraud claim. (*See id.*, 17-18) Each of these arguments fails as a matter of fact and law, as discussed below.

**1.**   **The Partial Disclosure Doctrine Does Not Apply**

In an effort to establish that the partial disclosure doctrine applies in this case, Plaintiffs start by stating the general standard for invoking the doctrine. Under the partial disclosure doctrine, a duty to disclose material facts may arise when a "defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Herron v. Best Buy Co. Inc.,* 924 F.Supp.2d 1161, 1174 (E.D. Cal. 2013). Plaintiffs argue that the issue of materiality in the context of the partial disclosure doctrine is a question of fact. This argument puts the proverbial cart before the horse. Before getting to the materiality element of the partial disclosure doctrine, Plaintiffs must first establish that the doctrine applies to the circumstances of this case. It does not.

At bottom, Plaintiffs' partial disclosure theory is based on their allegation that PNC withheld the fact that it no longer owned the Loan when it advised them in the Returned Payment Letter that it was no longer the servicer of the Loan.  As explained in the Motion, the partial disclosure doctrine has no application in this case. California courts that have applied the partial disclosure doctrine to contractual relationships have done so only in the context of misrepresentations made ***at the time the***

1  *contractual relationship was entered into between the parties*. *See LiMandri v.*
2  *Judkins* 52 Cal.App.4th 326, 337 (1997); *Cty. of Marin v. Deloitte Consulting LLP*,
3  836 F.Supp.2d 1030, 1041–42 (N.D. Cal. 2011) (collecting cases). Plaintiffs wrongly
4  argue that the *Cty. of Marin* case is inapposite, and blatantly ignore the salient facts of
5  the case.

6  By way of background, the plaintiff in *Cty. of Marin* argued that "where parties
7  have an ongoing transactional relationship, and one party disseminates a half-truth, a
8  duty to disclose information necessary to prevent the prior statement from being
9  misleading arises." *Cty. of Marin*, 836 F.Supp.2d at 1041-42. In response to this
10  argument, the *Cty. of Marin* court observed that the cases the plaintiff relied on,
11  including *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
12  157 Cal.App.4th 835, 859-60 (2007), and *Ordonez v. Saxon Mortgs. Servs.,* 2009 WL
13  395488 (E.D. Cal. 2009), "focus on misrepresentations made **at the time the**
14  **transaction or contract was entered into between the parties**." *Cty. of Marin*, 836
15  F.Supp.2d at 1041-42 (emphasis added). The court went on to conclude that half-
16  truths, or partial disclosures, do not constitute fraud absent evidence that a particular
17  transaction between the parties would not have resulted in the absence of the half-truth
18  or partial disclosure. *See id.* at 1042.

19  Significantly, in this case, Plaintiffs do not even allege – much less produce
20  evidence establishing – that PNC's purported partial disclosure in the Returned
21  Payment Letter caused them to enter into a transaction that they would not have
22  entered into in the absence of the partial disclosure. There was otherwise no longer a
23  contractual relationship between the parties when PNC sent the Returned Payment
24  Letter in 2013. It necessarily follows that the partial disclosure doctrine has no
25  application to the facts of this case.

26  Assuming *arguendo* that the partial disclosure doctrine could be applied in
27  cases like this where there is no ongoing contractual relationship between the parties
28  (it does not), PNC is nevertheless entitled to summary judgment. This is because

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' partial disclosure theory is wholly implausible. The Ninth Circuit has held that, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original). Here, the  evidence demonstrates that PNC sold the Loan to ASRG on July 30, 2010, at which point ASRG (not PNC) was obligated to notify Plaintiffs of its acquisition of the Loan. Unbeknownst to PNC, ASRG simultaneously sold the Loan to U.S. Bank and U.S. Bank thereafter appeared in Plaintiffs' Bankruptcy through its agent, Green Tree. Significantly, Green Tree was responsible for keeping U.S. Bank apprised of the filings in the Bankruptcy and was authorized to take various actions on U.S. Bank's behalf, including reconveying the DOT. (*See* SUF, ¶ 28-30). Plaintiffs inexplicably ignored the instructions in Green Tree's Claim for sending notices and payments. They likewise failed to avail themselves of their right to request the identity of the owner of their Loan during the course of the Bankruptcy.

Plaintiffs conveniently ignore the foregoing facts and instead argue that PNC's alleged failure to disclose its sale of the Loan to ASRG when it sent Plaintiffs the Return Payment Letter was material because it prevented them from "including" the new owner of the Loan in the Discharge Order. Not only is this position based on Plaintiffs' mistaken belief that PNC had a legal obligation to disclose its sale of the Loan to ASRG, but Plaintiffs ignore the critical fact that PNC could not have provided Plaintiffs with the identity of the owner of the Loan as of 2013 because it was unaware of the identity of the owner of the Loan at that time. Indeed, as explained in the Motion, PNC had no knowledge of ASRG's simultaneous sale of the Loan to U.S. Bank in 2008 or of the Loan's ownership history in the years thereafter. Thus, even if it wished to do so, PNC could not have disclosed the identity of the owner of the Loan when it sent the Returned Payment Letter to Plaintiffs.

13

Moreover, Plaintiffs' complete indifference to the identity of the owner of the Loan throughout their Bankruptcy cuts against their contention that the identity of the owner of the Loan was material. In other words, at any point during the Bankruptcy, Plaintiffs could have taken steps to identify the owner of the Loan, including by asking Green Tree (or any subsequent servicer) to provide them with this information, as allowed under federal law. The fact that Plaintiffs did not deem it important to identify the owner of the Loan during the course of the Bankruptcy undermines their convenient, after-the-fact argument that the identity of the owner of the Loan was material.

Further, Plaintiffs fail to identify any specific act that they would and could have taken to "include" the new owner of the Loan in the Discharge Order. Their suggestion that they would have undertaken a different (unspecified) course of action in the Bankruptcy *and* succeeded on that course of action is purely speculative, and therefore unavailing. *See Clinton v. Los Angeles Men's Cent. Jail*, 2008 WL 11357860, at *14 (C.D. Cal. 2008) ("[M]ere speculation is not enough to defeat a motion for summary judgment.") (citations omitted); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (conclusory, speculative testimony is insufficient to defeat summary judgment). Plaintiffs' suggestion also ignores the facts that: (1) the true owner of the Loan, U.S. Bank, appeared in the Bankruptcy; and (2) both U.S. Bank and its successors were bound by the orders of the Bankruptcy Court. *See N. Cal. Dist. Council of Hod Carriers v. Pennsylvania Pipeline, Inc.*, 103 Cal.App.3d 163, 172 (1980) ("A principal is bound by the authorized acts of agents and those which he has allowed third persons to believe he has authorized."); *In re Lopez Miranda*, 2020 WL 2299959, at *5 (9th Cir. BAP 2020) (recognizing that a creditor who fails to object to a plan is bound by its terms); *In re AB Liquidation Corp.*, 2006 WL 6810956, at *4 (9th Cir. BAP 2006) (noting that a confirmed plan is binding on all parties and their successors in interest).

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

20352852.1

In short, as a preliminary matter, Plaintiffs' partial disclosure theory fails as the alleged partial disclosure by PNC was not made in the context of an ongoing contractual relationship between the parties. The theory also fails because it is wholly implausible for the reasons set forth above, including the fact that PNC did not know and could not have disclosed to Plaintiffs the identity of the owner of the Loan in 2013. Given the implausibility of Plaintiffs' theory, they are required to present persuasive evidence to support the theory. *See California Architectural Bldg. Prod., Inc.,* 818 F.2d at 1468. They have failed to meet this burden. By extension, Plaintiffs have failed to establish grounds for invoking the partial disclosure doctrine in this case.

### 2.   <u>Intent</u>

Even if Plaintiffs could establish a basis for a fraud claim against PNC on their unpled "partial disclosure" theory (they cannot), there is  no evidence whatsoever that PNC's acted with a fraudulent intent. In arguing that there are genuine issues of material fact on the intent element of their claim, Plaintiffs focus on PNC's alleged inaction during the Bankruptcy rather than the alleged partial disclosure in 2013. They specifically argue that evidence showing PNC received notice of the Bankruptcy (and filings therein) could lead a trier of fact to conclude that PNC acted with fraudulent intent. This argument is nonsensical. Indeed, the evidence makes clear that PNC did not engage in *any* conduct intended to defraud Plaintiffs. To the contrary, PNC's evidence establishes that PNC: (1) did not retain any payments from Plaintiffs after it sold the Loan, (*see* SUF, ¶¶ 37-40); and (2) did not separately sell (or even assign) the DOT to DBI, (*see id*., ¶¶ 59-60). Moreover, as noted above, the  evidence makes clear that U.S. Bank, the actual owner of the Loan at the time Plaintiffs filed their Bankruptcy, appeared and participated in the Bankruptcy through its agent, Green Tree, and was bound by the terms of the Plan.

In any event, if Plaintiffs were confused about the identity of the Loan's owner at any point in time, they could have availed themselves of their right to request this

1   information under applicable federal laws and regulations promulgated for this
2   express purpose, but did not. *See* 12 C.F.R. § 1024.36(d)(2)(i)(A) (requiring a servicer
3   to provide the identity, address, and contact information of the owner of a loan upon
4   receiving a request for the information); 12 U.S.C. §§ 2605(e), (k)(1)(d) (same). No
5   reasonable inference can be drawn from the foregoing facts that PNC had an intent to
6   defraud Plaintiffs at any point in time, much less in 2013, at which point it held no
7   interest in the Loan and was actively trying to return payments to Plaintiffs, not to
8   derive some ongoing economic benefit from them.

9   ### 3.   Justifiable Reliance

10   On the justifiable reliance element of their claim, Plaintiffs argue that they
11   "would have been able to address and eliminate the invalid assignment as part of their
12   bankruptcy plan" had they been aware of it. (*See* Opposition, 15-18). Plaintiffs'
13   argument is meritless. As an initial matter, the argument wrongly presumes that
14   Plaintiffs' fraud theory is based on PNC's failure to disclose that it prepared the blank
15   Assignment. It is not. Rather, it is based on Plaintiffs' contention that, in 2013, PNC
16   wrongly withheld the fact that it sold the Loan in 2008. Nevertheless, while Plaintiffs
17   claim that they would have "been able to address and eliminate" the "invalid"
18   Assignment as part of their Plan had they been aware of it, they fail to offer any
19   evidence in support of this claim – *i.e.,* they do not provide any evidence (or even an
20   explanation for that matter) to show what they would have done to "address and
21   eliminate" the Assignment.

22   Ultimately, Plaintiffs' unpled partial disclosure theory is based on their claim
23   that PNC withheld the fact that it sold the Loan to ASRG, not, as Plaintiffs argue in
24   the Opposition, that PNC withheld the fact it had executed the blank Assignment. At
25   the time PNC made its alleged partial disclosure in 2013, it was unaware of ASRG's
26   sale of the Loan to U.S. Bank. Thus, PNC could not possibly have provided Plaintiffs
27   with the identity of the owner of the Loan as of 2013. The true owner, U.S. Bank,
28   otherwise appeared and participated in the Bankruptcy, and both U.S. Bank and its

1   successors were bound by the Plan. It follows that PNC's alleged partial disclosure

2   had no impact on Plaintiffs' ability to avoid the DOT through the Plan.

3          Any claim by Plaintiffs that their reliance on PNC's alleged partial disclosure in

4   2013 was justifiable defies logic as the disclosure was made three years after the

5   Bankruptcy filing and after U.S. Bank appeared in the Bankruptcy through Green

6   Tree. At any point in time prior to the partial disclosure, Plaintiffs could have

7   determined the identity of the owner of the Loan. There is no evidence Plaintiffs ever

8   made any effort to do so despite the fact that the information was indisputably

9   available to them. Plaintiffs' reliance theory is otherwise based on their pure

10  speculation that they would have taken (and succeeded on) some different, unspecified

11  act in the Bankruptcy had they known that PNC sold the Loan to ASRG. This theory

12  is insufficient to defeat summary judgment. *See Clinton,* 2008 WL 11357860, at *14.

13  For these reasons and the other reasons set forth above, Plaintiffs have failed to

14  establish a genuine issue of fact that they justifiably relied to their detriment on any

15  partial disclosure by PNC.

16              **4.   Causation and Damages**

17         Plaintiffs offer nothing more than perfunctory arguments in support of the

18  damage element of their fraud claim. They first inexplicably argue that their partial

19  disclosure claim is premised on more than just PNC's disclosure in 2013 that it was no

20  longer the servicer of the Loan. Although not entirely clear, they appear to now be

21  relying on an unpled partial disclosure theory that they were damaged by PNC's

22  inaction during the Bankruptcy. Not only is it improper for Plaintiffs to raise this

23  theory for the first time in their Opposition, but the theory is legally unsupportable.

24  This is because the partial disclosure doctrine cannot be based on a complete lack of

25  disclosure – as the name implies, there must be at least a partial disclosure. *See*

26  *Herron v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1174 (E.D. Cal. 2013). Thus, any

27  alleged failure by PNC to disclose something during in the Bankruptcy bears no

28

relation to Plaintiff's partial disclosure theory and cannot be a cause of their alleged damages.

Regardless, Plaintiffs' new focus on PNC's alleged inaction in the Bankruptcy is a red herring. To prevail on their fraud claim, Plaintiffs must establish a causal connection between PNC's partial disclosure in 2013 and their damages. California courts routinely recognize that no liability attaches where a claimant sustains damages due to an unrelated cause. *See Goehring v. Chapman Univ.*, 121 Cal. App. 4th 353, 365 (2004) (citation omitted). It is undisputed that Plaintiffs did not incur any damages until 2018 or later, and that their damages, if any, were all attributable to their alleged inability to sell the Property as a result of the outstanding DOT. By the time the DOT was satisfied through the Discharge Order in February of 2018, PNC had not had any interest in the instrument for nearly eight years and it was no longer the beneficiary of record with the authority to reconvey the instrument. Thus, Plaintiffs did not lose a sale of the Property due to any conduct on the part of PNC. Instead, their purported loss, if any, is directly attributable to DBI's failure to reconvey the DOT. This fact necessarily precludes Plaintiffs from establishing a causal connection between their alleged damages and their fraud claim against PNC.

Plaintiffs' damages claim is also fatally flawed because their damages are purely speculative. The Opposition does not even address this issue. Whether or not Plaintiffs choose to address the issue, the evidence clearly demonstrates that Plaintiffs' claimed damages are entirely speculative. Indeed, Plaintiffs' damages are tied solely to their alleged loss of a sale of the Property in 2018. However, Plaintiffs do not dispute that they did not enter into a contract to sell the Property in 2018. Absent a contract to sell the Property, Plaintiffs cannot establish that they lost a sale of the parcel. Moreover, Plaintiffs' damage theory is based on their speculation that, had they been informed in 2013 that PNC sold the Loan to ASRG, they would have taken ***and succeeded on*** some entirely unspecified action in the Bankruptcy to ensure that the DOT was reconveyed upon the entry of the Discharge Order. "[D]amages which

are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Frustuck v. City of Fairfax*, 212 Cal.App.2d 345, 367-368 (1963); *see also In re Easterbrook*, 200 Cal.App.3d 1541, 1544 (1988) ("[D]amages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable"). Plainly stated, it is indisputable that Plaintiffs' damages in this case and the theory underlying the damages are purely speculative. As a consequence, Plaintiffs cannot establish the damage element of their fraud claim against PNC.

## C.   **PLAINTIFFS FAIL TO ADDRESS THEIR CLAIM FOR DECLARATORY RELIEF**

Plaintiffs do not address their declaratory relief claim in the Opposition. As a result, they should be deemed to have abandoned the claim. *See Costabile*, 293 F.Supp.3d at 1014.

## III.   **CONCLUSION**

For the reasons set forth herein, as well as those stated in the Motion, PNC is entitled to summary judgment on Plaintiffs' remaining claims against PNC.

DATED:  March 16, 2022               **McGLINCHEY STAFFORD**

By: _/s/ Brian A. Paino_
    BRIAN A. PAINO
    HELEN MOSOTHOANE
    PATRICK T. VOKE
Attorneys for *Defendant* **PNC BANK, N.A.**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**     )
                                          )     **ss.**
**COUNTY OF ORANGE**         )

I, Kayla Han, declare:

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 18201 Von Karman Ave., Suite 350, Irvine, California 92612.

On March 16, 2022, I served the document(s) described as **DEFENDANT PNC BANK, N.A.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** as follows:

☐     **BY MAIL**:  As follows:

☐     **FEDERAL** – I deposited such envelope in the U.S. mail at Irvine, California, with postage thereon fully prepaid,

☒     **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I caused said document(s) to be served by means of this Court's Electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF users set forth in the service list obtained from this Court.  Pursuant to Electronic Filing Court Order, I hereby certify that the above documents(s) was uploaded to the website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☐     **BY EMAIL SERVICE** as follows:  By email or electronic transmission:  Based on any agreement between the parties and/or as a courtesy, I sent the document(s) to the person(s) at the email address(es) listed on the service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒     **FEDERAL:**  I declare that I employed in the office of a member of the State Bar of this Court at whose direction the service was made.

Executed on March 16, 2022, at Irvine, California.

_____
Kayla Han

**SERVICE LIST**
**USDC, Central Division Case No. 2:18-cv-07827-MWF-FFM**
**STEPHEN AND MELINDA DREHER v. PNC BANK, N.A., et al.**
**File # 107531.0004**

Daniel Louis Rottingham
Fredrick A. Hagen
Seema N. Kadaba
Paul W. Windust
BERDING & WEIL LLP
2175 N. California Blvd., Suite 500
Walnut Creek, CA 94596

Attorneys for *Plaintiff* **STEPHEN AND MELINDA DREHER**

Tel: (925) 838-2090
Fax: (925) 820-5592
Email: drottinghaus@berdingweil.com
        fhagen@berdingweil.com
        skadaba@berdingweil.com
        pwindust@berdingweil.com

Ian S. Landberg
Molly K. Madden
SKLAR KIRSH LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067

Attorneys for *Defendant* **AMERICAN SERVICING AND RECOVERY GROUP LLC**

Tel: (310) 845-6416
Fax: (310) 929-4464
Email: ilandsberg@sklarkirsh.com
        mmadden@sklarkirsh.com

19266606.1