1    SKLAR KIRSH, LLP
     Ian S. Landsberg (SBN 137431)
2    ilandsberg@sklarkirsh.com
     Molly K. Madden (SBN 281483)
3    mmadden@sklarkirsh.com
     1880 Century Park East, Suite 300
4    Los Angeles, California 90067
     Telephone: (310) 845-6416
5    Facsimile: (310) 929-4469

6    Attorneys for Defendant
     AMERICAN SERVICING AND
7    RECOVERY GROUP LLC

8

9                **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

| | |
|---|---|
| 12   STEPHEN AND MELINDA DREHER, | Case No. 2:18-cv-07827-MWF-FFM |
| 13        Plaintiffs, | The Hon. Michael W. Fitzgerald |
| 14        v. | **DEFENDANT AMERICAN SERVICING AND RECOVERY GROUP LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| 15   PNC BANK, N.A., a Pennsylvania Corporation, successor by merger | |
| 16   to/with National City Bank; DREAMBUILDER INVESTMENTS, | |
| 17   LLC, a New York Limited Liability Company; AMERICAN SERVICING | |
| 18   AND RECOVERY GROUP LLC, Texas limited liability company; U.S. | **Hearing:** |
| 19   BANK NATIONAL ASSOCIATION, a Trustee under the July 26, 2010 Pass | Date:    April 4, 2022 <br> Time:    10:00 a.m. <br> Crtrm.:   5A |
| 20   Through Trust Agreement; and DOES 1-10, inclusive, | |
| 21 | Filed concurrently with: <br> Reply Statement of Uncontroverted Facts |
| 22        Defendants. | |
| 23 | Action Filed:     September 7, 2018 <br> Trial Date:      May 31, 2022 |

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.    INTRODUCTION ..................................................................................... 1

II.   THE COURT SHOULD GRANT THE MSJ AND DISMISS ASRG WITH PREJUDICE ...................................................................................... 2

    A.    Plaintiffs Have Abandoned Their Collusion Theory Of Liability .......... 2

    B.    The Court Should Ignore Plaintiffs' New Theory Of Liability .............. 3

    C.    Plaintiffs Cannot Cite Specific Facts Or Evidence Demonstrating The Existence Of Genuine, Material Issues For Trial ........................... 4

        1.    The Evidence Demonstrates That PNC Did Not Slander Title ....................................................................................... 4

            (a)    PNC Did Not Slander Title By Executing The Assignment In Blank ...................................................... 4

            (b)    PNC Did Not Slander Title By Executing The Assignment On August 12, 2010 ...................................... 8

        2.    Even If The Evidence Supported Slander Of Title By PNC, There Is No Basis To Impute Liability To ASRG ........................ 9

    D.    The Court Should Deny Any Request For Further Discovery Or For Leave To Amend, Because Amendment Would Be Futile And Prejudicial ............................................................................. 10

III.  CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

## STATE CASES

*Kachlon v. Markowitz,*
    168 Cal. App. 4th 316 (2008)......................................................................6

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
    173 Cal. App. 4th 1040 (2009)..................................................................4

*Philips v. Glazer,*
    94 Cal. App. 2d 673 (1949) .......................................................................5

*Piscitelli v. Friedenberg,*
    87 Cal. App. 4th 953 (2001)......................................................................6

*Seeley v. Seymour,*
    190 Cal. App. 3d 844 (1987) ....................................................................5

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*,
    205 Cal. App. 4th 999 (2012)................................................................4, 6

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..................................................................................2

*Banares v. Wells Fargo Bank, N.A.*,
    2014 WL 985532 (N.D. Cal. 2014)........................................................10

*C. W. v. Asuncion*,
    No. 219CV02225RGKGJS, 2020 WL 4873565 (C.D. Cal. June 29,
    2020)........................................................................................................11

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
    818 F. 2d 1466 (9th Cir. 1987)..................................................................2

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
    484 U.S. 1006 (1988) ................................................................................2

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..................................................................................2

*Coleman v. Quaker Oats Co.,*
    232 F. 3d 1271 (9th Cir. 2000)..................................................................3

*Compass Bank v. Petersen,*
    886 F. Supp. 2d 1186 (C.D. Cal. 2012).....................................................4

*Coomes v. Edmonds Sch.Dist. No. 15,*
    816 F. 3d 1255 (9th Cir. 2016)............................................................2, 11

*DeFrenza v. Progressive Express Ins. Co.,*
    345 F. Supp. 3d 1243 (E.D. Cal. 2017) ........................................................... 11

*James v. Dependency Legal Grp.,*
    253 F. Supp. 3d 1077 (S.D. Cal. 2015) ............................................................. 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ........................................................................................ 2

*Monteforte v. Bank of New York Mellon Tr. Co. N.A.,*
    2016 WL 6696059 (E.D. Cal. 2016) ............................................................. 10

*Nelson v. Pima Cmty. Coll.,*
    83 F. 3d 1075 (9th Cir. 1996) ......................................................................... 2

*Nguyen v. JP Morgan Chase Bank, N.A.,*
    2012 WL 4942816 (N.D. Cal. 2012) ............................................................. 6

*Pickern v. Pier 1 Imports (U.S.), Inc.,*
    457 F. 3d 963 (9th Cir. 2006) ......................................................................... 3

*Triton Energy Corp. v. Square D Co.,*
    68 F. 3d 1216 (9th Cir. 1995) ......................................................................... 2

**STATE STATUTES**

California Civil Code Section 2924 ....................................................................... 6

**FEDERAL STATUTES**

Federal Rule of Civil Procedure Rule 8 ............................................................... 3

Federal Rules of Civil Procedure Rule 15 ......................................................... 11

**TREATISES**

Restatement of the Law, Second Edition, Torts ................................................... 5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2        Defendant AMERICAN SERVICING AND RECOVERY GROUP LLC,

3  ("ASRG") respectfully submits this Reply to Plaintiffs Stephen Dreher and Melinda

4  Dreher's ("Plaintiffs") Opposition (the "Opposition") to ASRG's Motion for

5  Summary Judgment or, in the Alternative, Partial Summary Judgment (the "MSJ").

6  For the sake of brevity, all capitalized words herein have the meaning ascribed to

7  them in the MSJ, unless otherwise defined herein.

8  **I.      INTRODUCTION**

9        The Court should grant ASRG's MSJ in its entirety.  There is no genuine

10  dispute as to any material fact, such that ASRG is entitled to judgment as a matter of

11  law on Plaintiffs' sole remaining claim for slander of title.

12        ASRG's MSJ confronted Plaintiffs with overwhelming evidence that ASRG is

13  not liable to Plaintiffs for slander of title.  Plaintiffs have conceded that DBI did not

14  collude with PNC to create a "secret," "fake" assignment to DBI in 2010, either on

15  behalf of ASRG or otherwise.  ASRG has had not had nothing to do with the Loan

16  since 2010.  DBI obtained the *blank* Assignment years later in 2015 in connection

17  with the purchase of a pool of loans (including Plaintiffs' loan) by a DBI joint venture

18  that ASRG had nothing to do with.  DBI then decided to have its agent fill the blank

19  Assignment out to DBI and record it in 2017.  (The lien was not expunged until the

20  following year.)  It is simply a coincidence that DBI happened to come into contact

21  with Plaintiffs' Loan again years after ASRG owned the Loan for less than a day.

22  (*See* SUF No. 64-69.)

23        These facts are indisputable and dispositive. The entire factual and legal basis

24  of Plaintiffs' claim against ASRG has been obliterated.  Recognizing this, Plaintiffs

25  resort in their Opposition to muddying the waters with references to irrelevant matters,

26  disingenuous "disputes" and unsupportable conjecture.  But there is simply no

27  evidence of any wrongful actions by PNC or DBI in connection with the Assignment

28  in 2010, and certainly no wrongdoing that can be imputed to ASRG.

**II.**     **THE COURT SHOULD GRANT THE MSJ AND DISMISS ASRG WITH PREJUDICE**

ASRG has met its initial burden of demonstrating the absence of a disputed issue of material fact on Plaintiffs' slander of title claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Plaintiffs, in turn, have failed to meet their burden to designate specific facts demonstrating the existence of genuine, material issues for trial. Rather than proffering probative evidence from which a jury could reasonably render a verdict in Plaintiffs' favor on their remaining claim for slander of title, Plaintiffs' Opposition resorts to bald assertions of genuine disputes and references to immaterial matters. *See Coomes v. Edmonds Sch. Dist. No. 15*, 816 F. 3d 1255, 1259 n.2 (9th Cir. 2016); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Plaintiffs cannot defeat the MSJ with mere allegation, speculation, hypothetical scenarios or weak possibilities. *See, e.g., Nelson v. Pima Cmty. Coll.*, 83 F. 3d 1075, 1081–82 (9th Cir. 1996); *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). They "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

None of the purported "disputes" raised by Plaintiffs in their Opposition could affect the outcome of their slander of title claim. ASRG is entitled to judgment as a matter of law.

**A.**     **Plaintiffs Have Abandoned Their Collusion Theory Of Liability**

Plaintiffs' slander of title claim survived ASRG's prior MSJ because the Court found a genuine dispute of material fact as to whether DBI and PNC colluded—i.e. whether DBI instructed PNC to execute the Assignment *to DBI*—and whether DBI was performing a task within the scope of its employment with ASRG in the context of this alleged collusion. *See* 2020 Order at. 6, 9. Leading up to the present MSJ,

1   Plaintiffs' _entire theory of liability_ against ASRG depended on their story about two

2   assignments in 2010: (1) one version in blank that PNC sent to U.S. Bank's agent,

3   Green Tree; and (2) a "fake," "secret" version that PNC supposedly made out, and

4   sent, to DBI.

5          Faced with evidence in the MSJ conclusively refuting this tale of collusion and

6   two assignments, Plaintiffs have abandoned that story.  Plaintiffs now concede that

7   PNC executed the Assignment in blank and sent it to Green Tree in 2010 as

8   contemplated by the subject contracts.  That concession is dispositive here, and the

9   Court should grant summary judgment in favor of ASRG.

10          **B.      The Court Should Ignore Plaintiffs' New Theory Of Liability**

11          In a last ditch effort to avoid summary judgment and resuscitate their claim

12   against ASRG, Plaintiffs have invented a new theory.  Plaintiffs now argue in their

13   Opposition that there is a genuine issue of material fact regarding "the degree to

14   which" DBI, on ASRG's behalf, "pushed" for PNC to execute and notarize the

15   Assignment: (A) in blank rather than to a specific entity or through MERS; and (B)

16   after PNC no longer held an interest in the Note or Deed.

17          The Court should disregard Plaintiffs' new theory because it is entirely outside

18   the scope of the operative complaint.  "Federal Rule of Civil Procedure 8(a)(2)

19   requires that the allegations in the complaint give the defendant fair notice of what

20   the plaintiff's claim is and the grounds upon which it rests." _Pickern v. Pier 1 Imports_

21   _(U.S.), Inc._, 457 F. 3d 963, 968 (9th Cir. 2006) (internal marks and citations

22   omitted).  "A complaint guides the parties' discovery, putting the defendant on notice

23   of the evidence it needs to adduce in order to defend against the plaintiff's

24   allegations." _Coleman v. Quaker Oats Co._, 232 F. 3d 1271, 1292 (9th Cir. 2000)

25   ("adding a new theory of liability at the summary judgment stage would prejudice the

26   defendant who faces different burdens and defenses under this second theory of

27   liability.")  A plaintiff cannot introduce evidence beyond the scope of its complaint

28

1    in an effort to avoid summary judgment. *James v. Dependency Legal Grp.*, 253 F.

2    Supp. 3d 1077, 1092-93 (S.D. Cal. 2015).

3         **C.    Plaintiffs Cannot Cite Specific Facts Or Evidence Demonstrating**

4              **The Existence Of Genuine, Material Issues For Trial**

5         Plaintiffs' new theory—that DBI allegedly "pushed" for PNC to execute and

6    notarize the Assignment: (A) in blank rather than to a specific entity or through

7    MERS; and (B) after PNC no longer held an interest in the Note or Deed—does not

8    give rise to any genuine dispute that could possibly impact the outcome at trial.

9    Neither PNC's execution and notarization of the Assignment in blank, nor the timing

10   of same, constitutes a slander of title.  Even if PNC's actions had constituted a slander

11   of title, there is no basis to impute liability to ASRG.

12             **1.    The Evidence Demonstrates That PNC Did Not Slander Title**

13                  **(a)    PNC Did Not Slander Title By Executing The**

14                       **Assignment In Blank**

15        Plaintiffs argue that PNC elected to use a mechanism—an assignment in blank,

16   instead of an assignment to a specific entity or through MERS—that could be assigned

17   to anyone, and recorded, at any time.  However, even if a blank assignment *could* be

18   assigned to anyone, and recorded, at any time, that does not align with the elements

19   of a claim for slander of title.

20        Under California law, "[s]lander of title occurs when there is an unprivileged

21   publication of a false statement [that] disparages title to property and causes pecuniary

22   loss." *Compass Bank v. Petersen*, 886 F. Supp. 2d 1186, 1197 (C.D. Cal. 2012). The

23   elements for a slander of title tort claim are: (1) a publication, (2) without privilege or

24   justification, (3) which is false, and (4) which causes direct and immediate pecuniary

25   loss.  *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.

26   App. 4th 999, 1030 (2012); *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal.

27   App. 4th 1040, 1051 (2009).

28

1    PNC was simply following the subject agreements (and industry standard)

2    when—within 45 calendar days after the Closing Date—it delivered the collateral

3    loan files and blank assignments for the pool of loans (including Plaintiffs' Loan) to

4    U.S. Bank's agent.  (*See* SUF Nos. 9, 23, 25.)

5        Plaintiffs cannot explain how a blank assignment sent from PNC to U.S. Bank's

6    agent constitutes a "publication," when the Assignment was not *communicating*

7    *anything* to U.S. Bank or its agent.  *See* Rest. (2d) of Torts § 630 (1977) (defining

8    "publication" as the communication of an injurious falsehood).  U.S. Bank—as trustee

9    for the beneficial owner under the Sale Agreement, Grand New Start—already *knew*

10   who owned the Loan in August 2010 when it received the blank Assignment, along

11   with the rest of the collateral file.

12       Plaintiffs also cannot explain how a blank assignment is "false" or constitutes

13   a disparagement of title.  The "risk" that the blank Assignment could be assigned and

14   recorded at any time does not render the Assignment false.  What is key in a slander

15   of title claim is whether it is reasonably foreseeable that a purchaser or lessee would

16   alter his or her conduct based on a disparaging statement. *See Seeley v. Seymour,*

17   190 Cal. App. 3d 844, 858–859 (1987).  "To be disparaging[,] a statement need

18   not be a complete denial of title in others, but may be any unfounded claim of an

19   interest in the property which throws doubt upon its ownership." *Philips v. Glazer*,

20   94 Cal. App. 2d 673, 677 (1949).  U.S. Bank was not a purchaser or lessee, and no

21   evidence supports that U.S. Bank—as a result of the blank Assignment—was ever in

22   doubt about the ownership of the property.

23       Additionally, even if the Assignment had been to a specific entity (e.g. Grand

24   New Start) or through MERS, it still could have been subsequently assigned and

25   recorded at any time.  Plaintiffs rely on equivocal, speculative non-expert deposition

26   testimony by DBI's corporate representative, Peter Andrews, to suggest that blank

27   assignments fell out of favor in the industry after 2010 because of chain of ownership

28   concerns.  Plaintiffs do not support this assertion with competent evidence, and a

1  change in industry standard after the August 12, 2010 Assignment would not

2  retroactively render the Assignment a false publication.

3       Furthermore, any action by PNC in connection with the Assignment was

4  privileged; to overcome such privilege, Plaintiffs must demonstrate that the

5  Assignment was created or recorded with malice. *See Nguyen v. JP Morgan Chase*

6  *Bank, N.A.*, 2012 WL 4942816, at *4 (N.D. Cal. 2012) (citing Cal. Civ. Code §

7  2924(d)). Plaintiffs cannot prove malice because they cannot proffer evidence to

8  demonstrate "that the publication was motivated by hatred or ill will towards the

9  plaintiff or by a showing that the defendant lacked reasonable grounds for belief in

10 the truth of the publication and therefore acted in reckless disregard of the plaintiff's

11 rights." *Kachlon v. Markowitz,* 168 Cal. App. 4th 316, 336 (2008).

12      As for the damage element, a claim for slander of title requires *direct,*

13 *immediate* pecuniary loss. *See*, *supra*, *Sumner Hill*, 205 Cal. App. 4th at 1030.

14 Plaintiffs' damages theory is too attenuated and speculative to satisfy this standard.

15 The mere *risk* in 2010 that the Assignment could be assigned to, and recorded by,

16 anyone, does not constitute a direct pecuniary loss, and it is not the natural

17 consequence from the purported disparagement of title. *See Piscitelli v. Friedenberg*,

18 87 Cal. App. 4th 953, 989 (2001) ("[I]t is fundamental that damages which are

19 speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal

20 basis for recovery.")

21      Plaintiffs suggest that, but for the blank Assignment, they would not have

22 experienced a cloud on title when they tried to sell the property in 2018. Plaintiffs

23 ignore the fact that they could have ended up in the *same exact position* ("losing" the

24 sale of their property in 2018)[1] even if the August 12, 2020 Assignment *had* been

25 made out to a specific entity instead of in blank.

26 _____

27 [1] Plaintiffs admit their alleged damages in this action are derivative of their purported
loss of the sale of the property in 2018. (See Plaintiffs' Response to PNC's SUF No.
28 49 [Doc. No. 198-1].)

1    For instance, whether or not PNC executed the Assignment in blank or to a

2    specific entity, that entity could have subsequently chosen to execute a new

3    assignment (in blank, to Stelis or directly to DBI) in connection with Grand New

4    Start's sale of the Loan to Stelis years later.  The assignee could have then chosen to

5    record the Assignment at any point thereafter (e.g., DBI could have recorded the

6    hypothetical new assignment in 2017, just as it did with the blank Assignment).

7    As another example, if PNC had made the Assignment out to a specific entity

8    like U.S. Bank or Grand New Start, it does not follow that said entity would have

9    chosen to record the Assignment, promptly upon receipt or ever.[2]  In other words, it

10   does not follow that Plaintiffs would have received notice of the new owner of the

11   lien (i.e. through the recordation) prior to 2017.  And in fact, Grand New Start could

12   have chosen to fill out the blank Assignment and could have recorded it in 2010 or

13   thereafter.  It chose not to.

14   Plaintiffs' new slander of title theory is a blatant attempt to resurrect their

15   dismissed negligence and statutory notice claims.  (*See* 2020 MSJ.)  Plaintiffs argue

16   that DBI's recordation of the Assignment in 2017 was "foreseeable" in 2010 (*see* Opp.

17   at 11:11), but mere foreseeability has no bearing on falsity or any other element of a

18   slander of title claim.  Additionally, Plaintiffs cannot cite the existence of any duty by

19   a lender to a borrower to execute an assignment to a specific entity or through MERS,

20   rather than in blank.  Plaintiffs also argue they "were never made aware of [the blank]

21   assignment, and were thus stripped of any ability to mitigate the consequences of

22   others' actions." (Opp. at 10:13-15.)  However, slander of title is about disparagement

23   of title; it does not create a duty to notify a property owner about changes in ownership

24   of a deed of trust, and the Court already dismissed Plaintiffs' statutory notice claims.

25

26

27

28

---

[2] Plaintiffs admit that there is no requirement to record assignments.  (See Opp. at 7:27-8:4.)

1    The blank Assignment did not cause Plaintiffs' alleged damages.  The alleged
2    "lost sale" in 2018 comes down to DBI's determination in 2017 that the lien was not
3    stripped and its subsequent decision to record the Assignment, and Plaintiffs' own
4    delay in seeking expungement.[3]

5    The Court should not give credence to Plaintiffs' new theory that the blank
6    Assignment disparaged their title.  A blank assignment does not constitute a slander
7    of title.  If it did, then every blank assignment ever used in the industry could give rise
8    to a claim for slander of title.

9                        **(b)    PNC Did Not Slander Title By Executing The**
10                               **Assignment On August 12, 2010**

11   Whether PNC owned the lien on the day it executed the blank Assignment is
12   irrelevant to Plaintiffs' slander of title claim.  Even if the Assignment could be
13   construed as a "publication," it was not false merely as a result of the date it was
14   executed.  By executing the Assignment on August 12, 2010, PNC was not
15   representing to U.S. Bank or its agent (or anyone else) that PNC owned the on that
16   date.  The Purchase Agreement provided for PNC to deliver the blank assignments
17   within 45 calendar days after the July 30, 2010 Closing Date.  That is what PNC did.

18   Furthermore, no evidence supports that Plaintiffs' alleged damages were the
19   direct result of PNC executing the Assignment on August 12, 2010 instead of, for
20   instance, roughly two weeks before on the Closing Date.  The timing of the execution
21   of the Assignment had no conceivable impact on any other entities' subsequent
22   actions, and no impact on the "lost" 2018 sale of the Property.

23

24

25

26   [3] Plaintiffs admit they received a letter from DBI on June 26, 2018 acknowledging
27   receipt of Plaintiffs' June 20, 2018 letter demanding reconveyance of the deed of trust,
     but indicate they never received a substantive response from DBI.  (See Plaintiffs'
28   Response to PNC's SUF No. 47 [Doc. No. 198-1].)

## 2.   Even If The Evidence Supported Slander Of Title By PNC, There Is No Basis To Impute Liability To ASRG

In their Opposition, Plaintiffs assert that DBI (on behalf of ASRG) "pushed" PNC to execute the Assignment in blank after PNC had sold the Loan.  As detailed above, PNC did not slander Plaintiffs' title through the Assignment.  Even if PNC's conduct had constituted a disparagement of title, however, there is no evidence that DBI "pushed" PNC to slander Plaintiffs' title (on behalf of ASRG or otherwise), and no basis to impute liability to ASRG.  PNC executed the Assignment as the seller of the Loan, and PNC is the one alleged to have "published" the Assignment, not DBI or ASRG.

Throughout the Opposition, Plaintiffs make the unsupported claim that "*certain* evidence *suggests* that DBI, working on behalf of ASRG, *may* have required PNC" to prepare and distribute the Assignment in blank after PNC had sold the Loan. (Emphasis added.)  This evidence appears to be the subject agreements themselves, which provided for the blank assignments.  (*See* ASRG's Reply Statement at Plaintiffs' Fact No. 8.)  No other evidence exists to support that DBI forced PNC to do anything it would not have otherwise done.[4]  Fact discovery closed on February 4, 2022, and trial is set for May 31, 2022.  The evidence before the Court is the same evidence that would be presented to the jury.[5]

Plaintiffs claim that ASRG is vicariously liable for DBI "pushing" PNC to execute to blank Assignment after the sale.  But Plaintiffs' entire vicarious liability theory falls apart without their underlying theory that DBI and PNC colluded to create a fake assignment to DBI.  Plaintiffs cannot cite evidence to support any wrongdoing

---

[4] *See* Cui Decl submitted by PNC in support of its MSJ [Doc No. 187-3] at ¶¶ 8-9 re blank assignments as industry standard used by PNC between 2007 and 2010.

[5] While Mr. Hagen's declaration (Doc. No. 197-2) states that Plaintiffs have not had the opportunity to depose ASRG on "newly produced documents," that outdated statement was pulled from Plaintiffs' papers opposing ASRG's 2020 MSJ.

1   by DBI in connection with the 2010 Assignment, on behalf of ASRG or otherwise.

2   To distract from the absence of any genuine dispute as to ASRG, Plaintiffs refer to

3   irrelevant matters such as the separation agreement between ASRG and DBI, and the

4   repurchase of unrelated loans.

5         Plaintiffs concede that ASRG had nothing to do with DBI's recordation of the

6   Assignment in 2017.  But it is still important to note that *even DBI's actions in 2017*

7   did not constitute a disparagement of title, where the obligations under the Loan were

8   not discharged until the following year.  *See Monteforte v. Bank of New York Mellon*

9   *Tr. Co. N.A.*, 2016 WL 6696059, at *4 (E.D. Cal. 2016) (noting that assignments do

10  not cast doubt on title and instead concern the beneficial interest in a deed of trust, not

11  title to real property); *Banares v. Wells Fargo Bank, N.A.*, 2014 WL 985532, at *8

12  (N.D. Cal. 2014) (an assignment does not give rise to a claim for slander of title

13  because it does not cast doubt on a borrower's interest in property; it merely

14  substitutes one creditor for another)

15        In short, ASRG did not cause Plaintiffs' alleged damages—either directly or

16  vicariously—where ASRG had nothing to do with the 2017 recordation of the

17  Assignment; ASRG did not cause DBI's alleged failure to respond to Plaintiffs'

18  request to release the Lien in 2018; and ASRG did not cause Plaintiffs to delay their

19  decision to seek judicial intervention to expunge the Lien.

20        **D.**     <u>**The Court Should Deny Any Request For Further Discovery Or For**</u>

21                <u>**Leave To Amend, Because Amendment Would Be Futile And**</u>

22                <u>**Prejudicial**</u>

23        Plaintiffs have not suggested that the Court should defer a decision on the MSJ

24  to allow them leave to re-open discovery, but even if they had (or do at oral argument),

25  such a request would be properly denied where, as here: "(1) Plaintiff had sufficient

26  time to conduct discovery; (2) Plaintiff had not acted diligently in this case; and (3)

27  additional discovery would likely not prevent summary judgment, and may have

28  amounted to a fishing expedition." *C. W. v. Asuncion*, No. 219CV02225RGKGJS,

1    2020 WL 4873565, at *2 (C.D. Cal. June 29, 2020).  Plaintiffs have had sufficient

2    time to conduct, and have conducted, discovery as to ASRG.  Any further discovery

3    would be nothing more than a fishing expedition aimed at harassing ASRG into a

4    settlement, and would not yield additional evidence to support any theory of liability

5    against ASRG.  The facts now are the facts Plaintiffs will have a trial.  Plaintiffs will

6    not be able to "come forth with evidence from which a jury could reasonably render

7    a verdict in [their] favor."  *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F. 3d 1255,

8    1259 n.2 (9th Cir. 2016).

9         Similarly, the Court should deny any request for leave to amend, as amendment

10   would be futile.  "When issues are raised in opposition to a motion to summary

11   judgment that are outside the scope of the complaint, the district court should construe

12   the matter raised as a request pursuant to rule 15(b) of the Federal Rules of Civil

13   Procedure to amend the pleadings out of time."  *DeFrenza v. Progressive Express Ins.

14   Co.*, 345 F. Supp. 3d 1243, 1255 (E.D. Cal. 2017) (internal marks and citations

15   omitted).  But leave to amend is proper only if amendment would not be futile and "if

16   it would not prejudice the Defendant or cause undue delay."  *Id.*  Here, amendment

17   would be futile and would only cause further, undue delay and prejudice to ASRG.

18   **III.   CONCLUSION**

19        Based on the foregoing, ASRG respectfully requests that the Court grant

20   summary judgment on all claims against it in Plaintiffs' second amended complaint,

21   with prejudice, and issue an order dismissing ASRG from this action.

22

23

24

25

26

27

28

1    DATED:  March 16, 2022          SKLAR KIRSH, LLP

2

3

4                                           By: _____

5                                                Ian S. Landsberg
                                                 Molly K. Madden
6                                                Attorneys for Defendant
                                                 AMERICAN SERVICING AND
7                                                RECOVERY GROUP LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28