```
                    UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

           HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE



STEPHEN DREHER, et al.,           )
                                  )
          Plaintiffs,             )
                                  )
               vs.                )
                                  )  2:18-CV-7827-MWF
THE PNC FINANCIAL SERVICES GROUP, )
et al.,                           )
                                  )
          Defendants.             )
_____)



                    REPORTER'S TRANSCRIPT OF HEARING

                       Los Angeles, California

                        Monday, April 4, 2022



              _____




                      AMY DIAZ, RPR, CRR, FCRR
                      Federal Official Reporter
                     350 West 1st Street, #4455
                        Los Angeles, CA 90012

   Please order court transcripts here:  www.amydiazfedreporter.com



           AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER
```

```
 1    APPEARANCES OF COUNSEL:

 2
      For the Plaintiffs:
 3

 4              BERDING & WEIL LLP
                By:  Frederick Hagen, Attorney at Law
 5              2175 North California Boulevard, Suite 500
                Walnut Creek, California 94596
 6

 7

 8

 9    For the Defendants:

10
                MCGLINCHEY STAFFORD
11              By:  Brian Paino, Attorney at Law
                18201 Von Karman Avenue, Suite 350
12              Irvine, California 92612

13              SKLAR KIRSH LLP
                By:  Molly Madden, Attorney at Law
14              1880 Century Park East, Suite 300
                Los Angeles, California 90067
15

16

17

18

19

20

21

22

23

24

25
```

|    |          |                                                                      |
|----|----------|----------------------------------------------------------------------|
| 1  | 09:59:30 | THE CLERK:  Calling item number one, case number |
| 2  | 09:59:34 | CV-18-7827-MWF, Stephen and Melinda Dreher vs. The PNC |
| 3  | 09:59:42 | Financial Services Group, Inc., et al. |
| 4  | 09:59:43 | Counsel, please rise and state your appearance for |
| 5  | 09:59:46 | the record. |
| 6  | 09:59:48 | MR. HAGEN: Good morning, Your Honor.  Frederick |
| 7  | 09:59:50 | Hagen for the plaintiffs. |
| 8  | 09:59:50 | THE COURT:  Good morning, Mr. Hagen. |
| 9  | 09:59:53 | MR. PAINO: Good morning, Your Honor.  Brian Paino |
| 10 | 09:59:56 | appearing on behalf of PNC Bank. |
| 11 | 09:59:59 | MS. MADDEN: Good morning, Your Honor.  Molly Madden |
| 12 | 10:00:01 | on behalf of American Servicing and Recovery Group. |
| 13 | 10:00:03 | THE COURT:  Good morning, Counsel. |
| 14 | 10:00:05 | We are here in this very long-running case for the |
| 15 | 10:00:12 | two summary judgment motions. |
| 16 | 10:00:14 | You know, Mister and Mrs. Dreher have clearly been |
| 17 | 10:00:18 | wronged, and I've tried to make sure that they had as much |
| 18 | 10:00:22 | leeway as possible to determine who might have wronged them, |
| 19 | 10:00:29 | but I think at this point we are really reaching the end of |
| 20 | 10:00:35 | the line. |
| 21 | 10:00:35 | You know, as could very well be the case, the actual |
| 22 | 10:00:39 | wrongdoer is defunct or judgment proof, or just there is no |
| 23 | 10:00:49 | point in getting a default judgment.  I know, Mr. Hagen, you |
| 24 | 10:00:52 | will do whatever is correct in that regard. |
| 25 | 10:00:54 | But for what is in front of us now, let me hear from |

| | |
|---|---|
| 1 10:00:59 | the plaintiffs in regard to these summary judgment motions. |
| 2 10:01:05 |       MR. HAGEN: Thank you, Your Honor. |
| 3 10:01:07 |       Well, as you know, Your Honor, there was two prior |
| 4 10:01:11 | summary judgment motions.  The only fact that is really |
| 5 10:01:15 | different from previously is that the assignment was not to |
| 6 10:01:22 | Dreambuilders, it was to blank.  The same facts that it was |
| 7 10:01:28 | executed when PNC no longer owned the loan, the agreement |
| 8 10:01:34 | they had was to deliver it to ASRG, DBI's business partner in |
| 9 10:01:41 | the transaction. |
| 10 10:01:41 |       It was the -- the agreement didn't say that it |
| 11 10:01:45 | had -- they had 45 days to execute it, it said they have |
| 12 10:01:49 | 45 days to deliver it.  And the agreement was July 30th, |
| 13 10:01:55 | 2010; the bankruptcy was August 5th, 2010.  The execution, |
| 14 10:02:00 | not delivery, but the execution of the assignment was two |
| 15 10:02:05 | weeks after the sale.  And almost two weeks after the |
| 16 10:02:07 | bankruptcy was filed, PNC knew there was a bankruptcy.  PNC |
| 17 10:02:12 | was still the interim servicer for the loan for several |
| 18 10:02:17 | weeks, then Green Tree became the servicer. |
| 19 10:02:22 |       They didn't disclose to the Bankruptcy Court that |
| 20 10:02:24 | there was a sale.  The only creditor that was listed on the |
| 21 10:02:28 | proof of claim in the bankruptcy by Green Tree was PNC. |
| 22 10:02:33 |       And so my clients did everything they were supposed |
| 23 10:02:37 | to do, and they achieved the bankruptcy.  They did all the |
| 24 10:02:42 | things required by the Bankruptcy Court. |
| 25 10:02:44 |       If somebody had disclosed to the Bankruptcy Court |

| | | |
|---|---|---|
| 1 | 10:02:48 | that there was a sale, they would have known about the new |
| 2 | 10:02:51 | creditor.  They could have -- the Trustee would be |
| 3 | 10:02:54 | communicating with the new creditor, and none of the damages |
| 4 | 10:02:57 | to my client would have happened. |
| 5 | 10:03:00 |       There is the slander of title.  PNC no longer |
| 6 | 10:03:08 | owned -- PNC no longer owned the deed of trust.  So there was |
| 7 | 10:03:16 | falsity because they had already sold it to somebody, that |
| 8 | 10:03:22 | they gave an assignment in blank to ASRG, or whoever it went |
| 9 | 10:03:27 | to. |
| 10 | 10:03:29 |       That is actually worse that it was in blank, in our |
| 11 | 10:03:32 | opinion, because now anybody can record it; not just -- |
| 12 | 10:03:36 |       THE COURT:  Yeah, but anybody didn't record it. |
| 13 | 10:03:40 |       And the fact is, is that this -- the undisputed |
| 14 | 10:03:43 | evidence in front of me is that this is just typically the |
| 15 | 10:03:46 | way these transactions work. |
| 16 | 10:03:49 |       You know, I'm sure you've bought or sold property at |
| 17 | 10:03:52 | some point, you know, the notary shows up with a stack of 200 |
| 18 | 10:03:59 | or so pages. |
| 19 | 10:04:00 |       I think it's just -- you know, there is just things |
| 20 | 10:04:03 | are done the way they are done, or at least -- and that |
| 21 | 10:04:06 | might -- that potentially could be an issue of fact in some |
| 22 | 10:04:09 | cases, but it doesn't appear to be an issue here. |
| 23 | 10:04:14 |       MR. HAGEN:  Well, Your Honor, I can address that. |
| 24 | 10:04:17 |       The Dreambuilder's principal testified that that was |
| 25 | 10:04:22 | one of the ways these transactions were done.  There was |

```
 1 10:04:25    several options until about 2012 when the title -- he said
 2 10:04:32    the title insurance companies would not allow assignment in
 3 10:04:35    blanks anymore, they wouldn't accept that.  So that is not
 4 10:04:39    the standard practice anymore.
 5 10:04:40              And even if it was a practice, the practice they
 6 10:04:43    chose caused damages to my client.  You know, that is what
 7 10:04:46    caused the damages.
 8 10:04:48              So just because this is how they -- I mean, this was
 9 10:04:53    back in the Wild West where these loans were being
10 10:04:57    securitized and all kinds of things were going on.  This is
11 10:05:01    one of the practices that was stopped because of these kinds
12 10:05:05    of issues.
13 10:05:06              And the partial disclosure, I think, should still be
14 10:05:12    at play, as well, Your Honor, because, again, if -- PNC knew
15 10:05:17    about the loan sale and they didn't disclose it again.
16 10:05:21              I mean, and there is a pecuniary interest going all
17 10:05:24    the way back to the original assignment not to disclose it to
18 10:05:27    the bankruptcy, because if it's in the Bankruptcy Court, the
19 10:05:31    value of the loan is less.
20 10:05:34              So the money that they received from U.S. Bank
21 10:05:40    circuitously would have been less than -- you know, they
22 10:05:43    would have had to do a refund or something like that.  That
23 10:05:46    was the intent.  That was the pecuniary interest that they
24 10:05:49    are protecting.
25 10:05:49              The principal for Dreambuilders even testified that
```

| | | |
|---|---|---|
| 1 | 10:05:54 | he tried to sell the loan previously before he recorded the |
| 2 | 10:05:57 | assignment.  And the investor he tried to sell it to said, |
| 3 | 10:06:03 | This is subject to a bankruptcy, I'm not paying for this.  I |
| 4 | 10:06:05 | mean, that is the pecuniary interest, and that is what led to |
| 5 | 10:06:11 | this fraud.  And that is what led -- I mean, partial |
| 6 | 10:06:14 | disclosure -- and that is what led to the damages to my |
| 7 | 10:06:16 | client. |
| 8 | 10:06:16 | THE COURT:  Well, part -- I mean, part of this is if |
| 9 | 10:06:22 | your argument is, in fact, arguing the things that I have |
| 10 | 10:06:25 | decided in the previous order were incorrect, which you are |
| 11 | 10:06:28 | free to do, and I'm free to change that order until such time |
| 12 | 10:06:31 | as judgment has entered, but obviously, one of the ways I'm |
| 13 | 10:06:37 | approaching this is that I'm not reconsidering that.  And I'm |
| 14 | 10:06:40 | looking to see if what was in doubt has now -- is now no |
| 15 | 10:06:45 | longer subject to a genuine dispute of material fact. |
| 16 | 10:06:52 | Let me ask you this:  If this case went to trial, |
| 17 | 10:06:58 | what would the special verdict form look like?  What exactly |
| 18 | 10:07:02 | would the jury be asked to do here, in your view? |
| 19 | 10:07:06 | MR. HAGEN:  They would be asked to decide the |
| 20 | 10:07:09 | elements of slander of title and partial disclosure.  And the |
| 21 | 10:07:15 | issues that we are discussing, I think there is facts on both |
| 22 | 10:07:19 | sides of the issue. |
| 23 | 10:07:20 | THE COURT:  All right.  I'll give you a chance to |
| 24 | 10:07:22 | respond, but let me hear from the defendants. |
| 25 | 10:07:24 | MR. HAGEN:  Thank you, Your Honor. |

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

| | | |
|---|---|---|
| 1 | 10:07:25 | THE COURT: What is your response here as to why the |
| 2 | 10:07:30 | bankruptcy issues that Counsel just raised don't create |
| 3 | 10:07:35 | issues of fact, especially with the blank assignment? And |
| 4 | 10:07:41 | what's your view as to how the issues that were addressed in |
| 5 | 10:07:49 | the prior two summary judgment orders have now, in fact, not |
| 6 | 10:07:53 | only been addressed or strengthened, but also made into |
| 7 | 10:07:58 | issues of law? |
| 8 | 10:08:03 | MR. PAINO: Thank you, Your Honor. |
| 9 | 10:08:05 | THE CLERK: Counsel, please rise. |
| 10 | 10:08:07 | MR. PAINO: Thank you, Your Honor. I appreciate the |
| 11 | 10:08:09 | Court's time in looking through this voluminous record. |
| 12 | 10:08:13 | To answer the Court's questions and to respond to |
| 13 | 10:08:16 | Counsel's comments, the Court -- first of all, the Court has |
| 14 | 10:08:19 | a very different picture of the transaction, as did we, as we |
| 15 | 10:08:24 | furthered our efforts in discovery. |
| 16 | 10:08:27 | In that sense, one very different fact, that the |
| 17 | 10:08:30 | Court is now aware of, that took some digging on our part, is |
| 18 | 10:08:33 | that the assignment was actually created in blank form. |
| 19 | 10:08:36 | At the heart of the slander of title claim is a |
| 20 | 10:08:41 | requirement that the plaintiffs demonstrate that this |
| 21 | 10:08:45 | instrument, the assignment -- not just the instrument, but |
| 22 | 10:08:48 | the creation of the instrument, in some way defamed their |
| 23 | 10:08:53 | title to real property. And that is simply not what |
| 24 | 10:08:55 | happened. |
| 25 | 10:08:56 | The blank assignment, no third-party approached the |

| | |
|---|---|
| 1 10:09:00 | plaintiffs and said, Hey, we don't think you own the property |
| 2 10:09:03 | because there is this blank assignment out there.  Nobody |
| 3 10:09:06 | even knew about the blank assignment. |
| 4 10:09:07 | In fact, we didn't even discover that the assignment |
| 5 10:09:10 | was in blank form until we propounded discovery and we |
| 6 10:09:13 | determined that the assignment was with an agent for |
| 7 10:09:16 | Dreambuilder. |
| 8 10:09:17 | And the suggestion that there was some high risk |
| 9 10:09:19 | that this assignment was -- it's almost as if the plaintiffs' |
| 10 10:09:23 | position is the blank assignment was posted on a public -- in |
| 11 10:09:28 | a public location, where anybody could have gone and picked |
| 12 10:09:30 | it up and input their names on it.  I would submit to the |
| 13 10:09:33 | Court that even in that circumstance, until the underlying |
| 14 10:09:37 | lien had been satisfied, the assignment wasn't disparaging. |
| 15 10:09:41 | The entity that would have been harmed in that |
| 16 10:09:44 | scenario was the true assignee of the deed of trust.  It |
| 17 10:09:48 | wasn't until 2018, when the plaintiffs received their |
| 18 10:09:52 | discharge and they satisfied the lien by virtue of the |
| 19 10:09:55 | bankruptcy, that this lien or the assignment was even |
| 20 10:09:59 | conceivably disparaging. |
| 21 10:10:01 | I would still argue that it wasn't disparaging even |
| 22 10:10:04 | when it was recorded, because again, it was recorded in 2017; |
| 23 10:10:08 | the debt wasn't satisfied until 2018. |
| 24 10:10:10 | So there simply wasn't -- it was a difference of who |
| 25 10:10:14 | is the assignee that is entitled to enforce this lien; not is |

| | | |
|---|---|---|
| 1 | 10:10:18 | this lien enforceable.  And it wasn't until 2018 that there |
| 2 | 10:10:22 | was even an argument that the lien wasn't enforceable. |
| 3 | 10:10:25 | So that is how I would respond to the slander of |
| 4 | 10:10:30 | title argument. |
| 5 | 10:10:34 | If I understand correctly, I think the argument is |
| 6 | 10:10:36 | on the fraud claims that there was some financial motivation |
| 7 | 10:10:41 | for PNC not to disclose the sale of the loan at the time of |
| 8 | 10:10:45 | the bankruptcy, but they had already sold the loan before the |
| 9 | 10:10:49 | bankruptcy was filed. |
| 10 | 10:10:50 | So I'm not really following that logic. |
| 11 | 10:10:53 | THE COURT:  All right.  What does ASRG have to say? |
| 12 | 10:10:56 | MS. MADDEN:  Thank you, Your Honor. |
| 13 | 10:10:58 | I don't recall that plaintiffs' counsel in his oral |
| 14 | 10:11:00 | argument mentioned ASRG, but I would like to address a couple |
| 15 | 10:11:04 | of these points. |
| 16 | 10:11:05 | I agree with PNC's counsel's points on the issue and |
| 17 | 10:11:10 | the tentative, thank you, Your Honor, as to the lack of any |
| 18 | 10:11:12 | falsity of the alleged publication. |
| 19 | 10:11:15 | As to the damages, even DBI's recordation of the |
| 20 | 10:11:21 | assignment did not cause the damages.  If anything, it was |
| 21 | 10:11:27 | DBI's failure to reconvey in 2018 and/or plaintiffs' failure |
| 22 | 10:11:32 | to timely seek expungement. |
| 23 | 10:11:34 | There is really nothing new before the Court now |
| 24 | 10:11:36 | that would give any reason, in ASRG's view, to reconsider the |
| 25 | 10:11:42 | statutory notice claim, or the negligence claims that were |

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
10:11:45   1   dismissed about two years ago.
10:11:48   2             And ASRG is not involved in the fraud claim, and not
10:11:53   3   involved in any of the allegations about the bankruptcy.  So
10:11:56   4   I don't think there is really anything left to address as to
10:11:58   5   ASRG, but if the Court has any questions, I'm happy to answer
10:12:01   6   them.
10:12:01   7             Thank you, Your Honor.
10:12:02   8             THE COURT:  Thank you.
10:12:02   9             Mr. Hagen, what would you like to say?
10:12:04  10             MR. HAGEN: Yes, Your Honor.
10:12:06  11             You heard Counsel for PNC mention they didn't need
10:12:11  12   to notify the Bankruptcy Court because they had already sold
10:12:13  13   the loan at the time of the bankruptcy filing August 5th.  Of
10:12:18  14   course, then they say it's okay that they execute the
10:12:21  15   assignment several weeks after that.  They already sold the
10:12:26  16   loan, that is the issue.  They don't have the right to assign
10:12:29  17   it at that point.  They are playing catch up.
10:12:31  18             We don't know the conversations that went on, why it
10:12:34  19   was delayed, why it wasn't done at the time of the sale.
10:12:36  20   When there is a big stack of documents that needs to be
10:12:39  21   signed, why that wasn't signed at that time.  We don't know
10:12:41  22   the story there.
10:12:42  23             ASRG -- and DBI was ASRG's agent, and that hasn't
10:12:48  24   changed.  And that issue that avoided summary judgment
10:12:53  25   previously is still at issue.
```

| | | |
|---|---|---|
| 1 | 10:12:55 | The fact -- again, the only difference is the |
| 2 | 10:12:58 | assignment was in blank. It was still improper. They still |
| 3 | 10:13:03 | did not own the loan. It doesn't -- and so the partial |
| 4 | 10:13:08 | disclosure, again, they made an affirmative representation to |
| 5 | 10:13:13 | the Drehers that, We are no longer the servicer of the loan. |
| 6 | 10:13:19 | They were the servicer of the loan when they executed the |
| 7 | 10:13:21 | assignment, and they should have notified the bankruptcy as |
| 8 | 10:13:25 | the servicer of the loan. |
| 9 | 10:13:26 | But, you know, several years later, they are |
| 10 | 10:13:30 | forwarding payments to Dreambuilders that they received from |
| 11 | 10:13:34 | the Drehers, that is PNC forwarding. And they send a letter |
| 12 | 10:13:39 | to my clients saying, Don't send us these payments. We are |
| 13 | 10:13:43 | no longer the servicer. |
| 14 | 10:13:45 | Had they said the full truth, which is, We sold the |
| 15 | 10:13:48 | loan, my clients could have then had an opportunity to figure |
| 16 | 10:13:53 | out who the new creditor was and have them included in the |
| 17 | 10:13:56 | bankruptcy, if it was Dreambuilders, if it was somebody else. |
| 18 | 10:14:02 | And they would have known they have to track down this new |
| 19 | 10:14:05 | creditor. They would have had an opportunity to avoid the |
| 20 | 10:14:08 | damages, Your Honor. |
| 21 | 10:14:09 | THE COURT: All right. Thank you, Counsel. |
| 22 | 10:14:11 | I will -- very briefly, does PNC have anything to |
| 23 | 10:14:16 | say just on the distinction between the time of the sale and |
| 24 | 10:14:24 | the recordation of the -- and the preparation or recordation |
| 25 | 10:14:27 | of the assignment? |

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

| | | |
|---|---|---|
| 1 | 10:14:29 | MR. PAINO: Your Honor, as the Court noted in the |
| 2 | 10:14:32 | tentative, my client was obligated contractually to create |
| 3 | 10:14:37 | the assignment within 40 days of the consummation of the |
| 4 | 10:14:40 | transaction.  So that would be our position on that. |
| 5 | 10:14:42 | The other thing I would note, and it's not been |
| 6 | 10:14:45 | talked about, is the actual owner of the loan, U.S. Bank, at |
| 7 | 10:14:50 | the time of the bankruptcy did, in fact, appear and |
| 8 | 10:14:54 | participate in the bankruptcy through its agent. |
| 9 | 10:14:56 | And this -- and our position is that what the |
| 10 | 10:14:59 | plaintiffs would or could have done is just based on pure |
| 11 | 10:15:02 | speculation.  And the fact that U.S. Bank did effectively |
| 12 | 10:15:06 | appear sort of undermines that speculation. |
| 13 | 10:15:09 | THE COURT:  All right.  Thank you, Counsel. |
| 14 | 10:15:10 | The matter is taken under submission. |
| 15 | 10:15:13 | Counsel, this is only the second time that I've once |
| 16 | 10:15:17 | again had an in-person Monday calendar.  I don't know how you |
| 17 | 10:15:21 | feel about putting on business clothes and driving downtown |
| 18 | 10:15:25 | to be here, but I certainly appreciate having things back in |
| 19 | 10:15:29 | person, and I hope being in the courthouse and feeling like |
| 20 | 10:15:33 | you are really litigators is valuable for you, as well. |
| 21 | 10:15:39 | But I appreciate your being here.  Thank you, |
| 22 | 10:15:41 | Counsel. |
| 23 | 10:15:42 | MR. HAGEN: Thank you, Your Honor. |
| 24 | 10:15:43 | MR. PAINO: Thank you, Your Honor. |
| 25 | | *****     *****     ***** |

```
 1
 2    I certify that the foregoing is a correct transcript from the
 3    record of proceedings in the above-titled matter.
 4
 5
 6
 7    ----------------------------
 8
 9    Amy C. Diaz, RPR, CRR              July 16, 2022
10    S/  Amy Diaz
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER